UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNIVERSAL COMMUNICATION SYSTEMS                )
INC., a Nevada Corporation; MICHAEL J.          )
ZWEBNER, individually; and                      )
others similarly situated                       )
      Plaintiffs,                               )    Civil Action
                                                )    NO. 05-10435-REK
      v.                                        )    CONSOLIDATED WITH
                                                )    NO. 05-11172-REK
LYCOS, INC. and TERRA LYCOS, INC., d/b/a         )
THE LYCOS NETWORK,                               )
      Defendants.                               )
_____)

_____

UNIVERSAL COMMUNICATION SYSTEMS                )
INC., a Nevada Corporation; MICHAEL J.          ),
ZWEBNER, individually; and                      ),   CONSOLIDATED PROCEEDINGS
others similarly situated                       )
      Plaintiffs,                               )    Civil Action
                                                )    NO. 05-11172-REK
      v.                                        )    LEAD CASE
                                                )
LYCOS, INC., d/b/a THE LYCOS                      )
NETWORK and TERRA NETWORKS, S.A. ,               )
JOHN DOE #1 aka "the worm06"                     )
JOHN DOE #2 aka "no_insiders"                    )
JOHN DOE #3 aka "the worm06A"                    )
JOHN DOE #4 aka "65175R"                         )
JOHN DOE #5 aka "Henry_Johnson123" &             )
JOHN DOE #6 aka "quondo1"                         )
JOHN DOE #7 aka "Tobias95"                        )
JOHN DOE #8 aka "CrawleySmith"                    )
      Defendants.                               )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## LYCOS INC.'S MOTION TO DISMISS THE COMPLAINTS

### Introduction

In these two consolidated cases, Plaintiffs Michael J. Zwebner ("Zwebner") and his

company, Universal Communication Systems, Inc., ("Universal") assert a variety of claims

against Defendant Lycos, Inc. ("Lycos") based upon statements made by third parties on the

"Raging Bull" website, an Internet message board.  As explained below, each and every one of

the Plaintiffs' claims for relief against Lycos is meritless and should be dismissed with prejudice.

First and foremost, the Plaintiffs' claims are barred by Section 230 of the Federal

Communications Decency Act, 47 U.S.C. § 230 (hereinafter "Section 230"), which immunizes

Lycos from any and all liability arising from statements posted by third parties on Internet

message boards.  See, e.g., Green v. America Online (AOL), 318 F.3d 465, 470 (3d Cir. 2003);

accord Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997).  Indeed, Plaintiffs effort to

recast their claims as trademark claims in order to avoid the application of Section 230 is invalid

under controlling First Circuit precedent.  See L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d

26, 32-33 (1st Cir. 1987).

Second, even if Plaintiffs' claims were not barred by Section 230, they are precluded by

the broad release set forth in the Lycos Subscriber Agreement, upon which the Plaintiffs purport

to sue.  Under that Release, Plaintiffs are precluded from asserting against Lycos any of the

claims set forth in these consolidated proceedings.

Finally, Plaintiffs' various claims for relief suffer from numerous other defects that

require dismissal.  For example, Plaintiffs' attempts to assert private rights of action under either

47 U.S.C. § 223 and Fla. Stat. § 784.048 are improper as neither of those criminal statutes authorizes a private right of action for civil litigants.   And Plaintiffs' attempt to assert a claim against Lycos under Mass. Gen L. Ch. 93A is invalid, as that claim is based upon a supposed breach of contract..  See, e.g., Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85 (1979).

## I.     <u>SUMMARY OF FACTS</u>

Plaintiff Universal is a Nevada corporation with offices in Miami Beach, Florida.  See Complaint in Case No. 05-11172-REK (hereinafter the "Lead Complaint") ¶ 11; see also Complaint in Case No. 05-10435-REK (hereinafter the "Initial Complaint")  ¶ 9.  Universal is a public company listed on NASDAQ.  See Lead Complaint ¶ 11; Initial Complaint ¶ 9.  Its ticker symbol is "UCSY."  See Lead Complaint ¶ 11; Initial Complaint ¶ 9.  Plaintiff Zwebner is alleged to be Universal's Chairman of the Board of Directors and Chief Executive Officer.  See Lead Complaint ¶ 12; Initial Complaint  ¶ 10.

Defendant Lycos is a Massachusetts-based corporation headquartered in Waltham, Massachusetts.  Lycos operates a variety of Internet websites, including a website entitled "Raging Bull."  See Lead Complaint ¶ 15; Initial Complaint ¶ 12; see generally www.ragingbull.com.  The Raging Bull website provides business information to Lycos subscribers.  See Lead Complaint ¶ 22; Initial Complaint ¶ 18.  The website also contains message boards devoted to discussions about various publicly traded companies, including one devoted to discussions regarding Universal.  See Lead Complaint ¶¶ 22-24; Initial Complaint  ¶¶ 18, 21, 27

In order to access the Raging Bull website and to participate in discussions on the various Raging Bull message boards, parties must complete an on-line registration process.  See Initial

Complaint ¶ 19.  The registration process requires each subscriber to review and accept certain

Terms and Conditions (the "Subscriber Agreement"), a copy of which is attached to the Initial

Complaint as Exhibit 1.  Id. ¶ 19-20 & Exhibit 1.  Once this process is completed, a subscriber is

allowed to access and participate in discussions on Raging Bull's various message boards,

including the "UCSY" message board.  Subscribers typically use a "screen name" or an alias that

conceals the subscriber's true identity and allows for anonymous posting.  Id. ¶ 20.

The Subscriber Agreement states explicitly that, by using Lycos' products and services

(including the Raging Bull website), users agree "to be bound by, and to comply with" the

Subscriber Agreement.  See Initial Complaint, Exhibit 1 at ¶ 1.  Among other things, the

Subscriber Agreement sets forth conditions and restrictions on the use of Lycos websites,

establishes standards for member and user conduct, and describes certain prohibited conduct.

Exhibit 1 at ¶¶ 2, 6.  The Subscriber Agreement states clearly, however, that any enforcement of

those standards is left to Lycos' "sole discretion."  Id.  The Subscriber Agreement also states as

follows:

> Much of the information and Content available through . . . Raging Bull is obtained from,
> or posted by, third parties.  Such third parties are solely responsible for the information or
> content they may available through . . . Raging Bull.  Lycos does not review or endorse
> any postings that appear on the . . . Raging Bull message boards and strongly urges you to
> read and post on the message boards with caution.

Id. ¶ 8.  The Subscriber Agreement also contains a specific disclaimer regarding "third party"

content" explaining that (other than certain generalized screening) Lycos exercises no control

over the content on the web pages that it hosts on certain of its message board sites.  Id. ¶ 13.

Finally, the Subscriber Agreement contains an "Indemnity and Release" clause, which

provides, in part, as follows:

> By using the Lycos Network [or] using the Products and Services . . .you are hereby agreeing to release Lycos and its parents, subsidiaries, affiliates, officers, employees, and licensors from any and all claims, demands, debts, obligations, damages (actual or consequential), costs, and expenses of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, that you may have against them arising out of or in any way related  . . . to the Products or Services or to any disputes regarding use of ideas and/or related materials submitted to Lycos.

Id. ¶ 29.

Prior to the initiation of these lawsuits, Zwebner reviewed and accepted the terms of the Subscriber Agreement and completed the registration process for the Raging Bull website.  Id. ¶ 24.  He then began participating on the Raging Bull message board.  Id.

## II.    PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS

Plaintiffs initiated their claims against Lycos in July 2004, when they filed the Initial Complaint in the United States District Court for the Southern District of Florida.  See Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-21618-CIV-MARTINEZ/Klein (S.D. Fla.).  In response to that Initial Complaint, Lycos filed a Motion to Dismiss under Rule 12(b)(6) as well as a Motion to Transfer Venue to the District of Massachusetts.

On January 19, 2005, the Southern District of Florida issued a stay on all discovery.  That same day, the Plaintiffs filed a second action against Lycos - the Lead Case in this consolidated action.  See Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20149-CIV-MORENO/Garber (S.D. Fla.).  Because this second lawsuit was based on allegations virtually identical to those set forth in the Initial Complaint,[1] Lycos filed another Motion to Dismiss as well as another Motion to Transfer Venue to Massachusetts.

---

[1] Plaintiffs' filing of duplicative cases against Lycos has continued apace.  In addition to these two consolidated actions, Plaintiffs have filed two additional lawsuits against Lycos - each of which is premised on virtually identical allegations about the "Raging Bull" website.  See Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20916-CIV-COOKE/Brown (S.D. Fla.) (filed March 31, 2005 and dismissed sua sponte by the Court on April 12, 2005); Universal Communications

On February 28, 2005, Judge Jose Martinez of the Southern District of Florida granted

Lycos' first Motion to Transfer Venue and issued an Order transferring the case to this Court.

On May 24, 2005, Judge Federico Moreno of the Southern District of Florida issued a similar

order transferring the Lead Case to this Court.

On July 26, 2005, after a hearing, this Court formally consolidated the two cases.  The

Court also denied all pending motions (including the Motions to Dismiss without prejudice) and

ordered the Defendants to re-file any Motions to Dismiss for hearing on September 28, 2005.

### A.    <u>The Lead Complaint</u>

The Lead Complaint purports to allege four separate causes of action against Lycos, each

of which is premised upon Lycos' supposed liability for third party postings on Raging Bull's

message board that are allegedly designed to annoy, defame, and harass the Plaintiffs.  <u>See</u> Lead

Complaint <u>passim</u>.  In Count I, the Plaintiffs allege that Lycos has violated the Florida securities

fraud statute, Fla. Stat. § 517.301, by permitting the posting of misleading messages on the

Raging Bull message board.  <u>See id.</u> ¶¶ 36-37.  In Count II, the Plaintiffs attempt to assert a

private right of action under 47 U.S.C. § 223 by alleging that Lycos' supposed failure to monitor

and curtail the messages on the Raging Bull message board somehow constitutes "cyber

stalking."  <u>See id.</u> ¶¶ 39-47.  In Count III, the Plaintiffs allege that the Lycos' failure to curtail

---

Systems, Inc. v. Lycos, Inc., Case No. 05-20917-CIV-LENARD/Brown (S.D. Fla.) (filed March 31, 2005, and dismissed <u>sua sponte</u> by the Court on April 28, 2005).  These lawsuits are in addition to the numerous other actions that Plaintiffs have filed relating to the "Raging Bull" website.  <u>See, e.g.</u>, <u>Zwebner v. Coughlin</u>, Case No. 05-20169-CIV-COOKE (S.D. Fla); <u>Universal Communications Systems, Inc. v. Turner Broadcasting System, Inc.</u>, Case No. 05-20047-CIV- JORDAN/Brown (S.D. Fla.); <u>Universal Communications Systems, Inc. v. Dembovich</u>, Case No.: 04-27383-CA-01 (11th Jud. Cir. Fla.)(stayed August 5, 2005, pending a ruling from this Court); <u>Zwebner v. John Does - Alias "Tobias"</u>, Case No. 03-22328-CIV-MORENO (S.D. Fla.); <u>Talk Visual Corp. v. Roberto Gonzalez Villasenor, Jr.</u>, Civil No. 000901274 (3d Dist. Ct. Utah); <u>Zwebner v. Villasenor</u>, No. 00-02239 (Mass. Super. Ct.); <u>Zwebner v. John Does Anonymous Found., Inc.</u>, No. 00-CV-01322 (D. Or.); <u>Zwebner v. Dumont</u>, Civil Action No. 98-00682 (D.N.H.).

the dissemination of the misleading messages on the Raging Bull website has tarnished and diluted Universal's trade name in violation of Fla. Stat. § 495.151.[2]  See id. ¶¶ 48-61.  Finally, in Count IV, Plaintiffs attempt to assert a private right of action under Fla. Stat. § 784.048 et seq., by alleging that the Defendants' failure to monitor and curtail the messages on the Raging Bull website constitutes "cyber stalking" under Florida law.  See id. ¶¶  62-68.  The Lead Complaint seeks damages of $100 million for each of Counts I-III as well as injunctions requiring the Defendants to delete all postings on the Raging Bull UCSY message board and the message board itself, and enjoining the Defendants from creating and maintaining any Universal message board.

## B.    The Initial Complaint

The Initial Complaint purports to allege three separate causes of action against Lycos,[3] each premised upon allegations virtually identical to those set forth in the Lead Complaint.  In Count I, the Initial Complaint alleges that Lycos' failure to enforce the standards of conduct set forth in the Subscriber Agreement is a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A.  See id. ¶¶ 22-38.   Counts II and III of the Initial Complaint asserts a claims that are virtually identical to the claims set forth in Counts II  and III of the Lead Complaint  See id. ¶¶ 39-46; ¶¶ 47-55.  Like the Lead Complaint, the Initial Complaint seeks damages of $100 million for each Count, as well as injunctions requiring the Defendants to delete all postings on the Raging Bull "UCSY" message board and the message board itself, and enjoining the Defendants from creating and maintaining any "UCSY" message board.

---

[2] Count III is brought only on behalf of Plaintiff Universal.  See Lead Complaint ¶¶ 49-54.

[3] The Initial Complaint also purports to sue "Terra Lycos", which is not a separately incorporated legal entity. See Initial Complaint ¶¶ 11-12.  Accordingly, Terra Lycos lacks the capacity to be sued.  See Fed. R. Civ. P. 17(b).

### III.  STANDARD OF REVIEW

A motion for dismissal under Federal Rule of Civil Procedure 12(b)(6) will be granted if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  When considering a 12(b)(6) motion, the court is limited to the allegations in the complaint, must accept all facts therein as true, view them in the light most favorable to the party brining the claim, and draw any reasonable inference from them in that party's favor.  Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992).  Where a complaint makes clear that a defendant is entitled to immunity under Section 230, federal courts regularly consider those claims of immunity at the 12(b)(6) stage.  See, e.g., Green, 318 F.3d at 470; Noah v. AOL Time Warner, Inc., 261 F. Supp. 2d 532, 534 (E.D. Va. 2003), aff'd 2004 WL 602711 (4th Cir. 2004).

### IV.  ARGUMENT

**A.      The Plaintiffs' Claims Are Barred By 47 U.S.C. § 230.**

Section 230 of the Communications Decency Act provides, in relevant part, that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  See 47 U.S.C. § 230(c)(1).  The statute further provides "[n]o cause of action may be brought and no liability may be imposed under any state or local law that is inconsistent with this section."  See id. § 230(e)(3).  Taken together, these provisions provide broad statutory immunity for Internet service providers against causes of action based on statements made by third parties on Internet message boards.  Because

each and every one of the Plaintiffs' claims against Lycos is based upon statements made by third parties on an Internet message board, those claims must be dismissed.

As an initial matter, there is no dispute that Lycos is an "interactive computer service" for the purposes of Section 230.  The statute defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet."  See 47 U.S.C. § 230(f)(2).  The allegations in this case make clear that Lycos is a "provider" of an "interactive computer service" for the purposes of Section 230.  See Lead Complaint ¶ 15; Initial Complaint ¶¶ 18-21.  Indeed, the Ninth Circuit has expressly ruled that Lycos is an "interactive computer service" provider entitled to the protections of Section 230.  See Carafano v. Metrosplash.com, 339 F.3d 1119, 1123-24 (9th Cir. 2003).  That decision is consistent with numerous other decisions applying Section 230 to entities that operate Internet-based websites.  See Batzel v. Smith, 333 F.3d 1018, 1030-32 (9th Cir. 2003) (operator of an online newsletter was an "interactive computer service" under Section 230); Green, 318 F.3d at 470 (holding that operator of on-line chat room was entitled to protections of Section 230); Gentry v. eBay, 99 Cal. App. 4th 816, 831 n.7 (2002) (finding that eBay was entitled to the protections of Section 230); Schneider v. Amazon.com, Inc., 31 P.3d 37, 43 (Wash. Ct. App. 2001) (applying Section 230 immunity to the operator of an interactive website); see also Novak, 309 F. Supp. 2d at 452-53 (applying Section 230 immunity to Google, Inc., which maintained a website with an online discussion group).

It is equally clear that Lycos is not the provider of the "information content" about which the Plaintiffs complain.  See 47 U.S.C. § 230(f)(3).  Indeed, the Complaints expressly allege that

various other persons – not Lycos – are the "information content providers" at issue in this case. See Lead Complaint ¶¶ 26-36; Initial Complaint ¶¶ 29-31, 40, 51.  Accordingly, the Plaintiffs' efforts to hold Lycos directly or indirectly liable for the publication of those third parties' statements are barred by Section 230.

The first major case to interpret the scope of Section 230 was Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997).  In Zeran, a plaintiff sued America Online ("AOL") alleging that AOL unreasonably delayed removing allegedly defamatory messages posted by an unidentified third party on an Internet message board, refused to post retractions of those messages, and failed to screen for similar postings thereafter.  See id. at 328.  In response, AOL argued that Section 230 immunized interactive computer service providers from claims based upon information posted by third parties.  See id. at 329.  After the district court entered judgment in AOL's favor, the Fourth Circuit affirmed, explaining that:

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third party user of the service.  Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role.  Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred.

Id. at 330 (emphasis added).

In reaching its conclusion, the Zeran Court reviewed the statutory findings contained in Section 230, including Congress' findings that "the Internet and interactive computer services offer 'a forum for true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.'"  Id. at 330 (citing 47 U.S.C. § 230(a)(3)), and that "it is 'the policy of the United States . . . to preserve the vibrant and

9

competitive free market that presently exists for the Internet and other interactive computer services, <u>unfettered by Federal or State regulation.</u>'" <u>Id.</u> (citing 47 U.S.C. § 230(b)(2)) (original emphasis). The Court recognized that Congress affirmatively chose "not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." <u>Id.</u> at 330-31. Accordingly, the Fourth Circuit held that Section 230 immunized AOL from any liability arising from content provided by third parties to its on-line message boards. <u>Id.</u>[4]

The <u>Zeran</u> decision has been followed by <u>every</u> other federal court that has considered claims against interactive computer services providers based upon the statements of third parties on Internet message boards. <u>See, e.g., Carafano</u>, 339 F.3d at 1124 (explaining that "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process"); <u>Green</u>, 318 F.3d at 471 (holding that Internet service provider was immune from liability under Section 230 for its "decisions relating to the monitoring, screening, and deletion of content" from its network where plaintiff's claims were based on supposedly defamatory statements made by other users in an on-line chat room); <u>Ben Ezra, Weinstein and Co., Inc. v. America Online, Inc.</u>, 206 F.3d 980, 986 (10th Cir. 2000) (holding that Section 230 immunized internet message board operator from civil claims arising from the posting of allegedly incorrect information relating to plaintiff's stock price and share volume); <u>see also Noah</u>, 261 F. Supp. 2d at 537-40 (dismissing claims that AOL failed to prevent participants in an online chat room from making harassing and defamatory

---

[4] Further, Section 230's immunity from liability does not distinguish between "distributors" of web-based information versus "publishers" of such information. <u>See Zeran</u>, 129 F.3d at 332 ("distributor liability . . . is merely a subset, or a species, of publisher liability, and is therefore also foreclosed by § 230"). Interpreting Section 230 to include "distributor liability" would undermine the statute's primary purpose. <u>Id.</u> at 334; <u>see also Blumenthal v. Drudge and America Online, Inc.</u>, 992 F. Supp. 44, 52 (D.D.C. 1998) (same).

comments and explaining the "broad immunity" granted by Section 230's "expansive language"); PatentWizard, Inc. v. Kinko's, Inc., 163 F. Supp.2d 1069, 1071-72 (D.S.D. 2001) (dismissing plaintiff's claims based upon statements made in chat room by user of defendant's computers); Morrison v. America Online, Inc., 153 F. Supp. 2d 930, 933-34 (N.D. Ind. 2001); Blumenthal v. Drudge and America Online, Inc., 992 F. Supp. 44, 46 (D.D.C. 1998) (dismissing plaintiff's claims against AOL where those claims were based upon allegedly false and defamatory statements sent by a third party over the AOL network).

Notably, Section 230 is applicable to Lycos irrespective of Lycos' efforts to control the content that third parties post on its message boards.  Section 230(c)(1) and 230(e)(3) explicitly provide that "no cause of action may be brought and no liability may be imposed under any state or local law" where that cause of action treats a provider or user of an interactive computer service "as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. §§ 230(c)(1), (e)(3) (emphasis added).  See e.g., Patent Wizard, 163 F. Supp. 2d at 1071-72 (applying Section 230 immunity to claim for intentional spoliation of evidence); Schneider, 31 P.3d at 42 (explaining that "the legislative history [of Section 230] demonstrates that Congress intended to extend immunity to all civil claims").  Courts have also applied Section 230's immunity to claims of consumer fraud and other torts requiring heightened proof of intent.  See Green, 318 F.3d at 473; Noah, 261 F. Supp. 2d at 539.

In this case, each of the Plaintiffs' claims against Lycos is based upon Lycos' supposed failure to control the content of statements made by third parties on Lycos' message boards.  For example, Count I of the Lead Complaint alleges that the defendants, including Lycos, "facilitate and/or cause the manipulation of UCSY stock by [third party co-Defendant] . . .(c) of [sic]

publishing the [third party co-Defendant] postings within a message board, which bears the

USCY trade name, so as to disseminate, or enable dissemination of such false information

through third party search engines." [5]  Lead Complaint ¶ 37.  Similarly, Count II of both

Complaints alleges that Lycos failed to curtail use of their telecommunications facility by their

authorized subscribers who annoy, abuse, threaten and harass the Plaintiffs.  See Lead

Complaint, ¶¶ 43-44; Initial Complaint ¶ 44.  Count III of both Complaints likewise alleges that

the Defendants have been ineffective or have ignored the Plaintiffs' repeated requests that they

curtail the dissemination of such false and misleading information by its authorized subscribers

on the Raging Bull web site.  See Lead Complaint ¶¶ 57-60; Initial Complaint  ¶¶ 52-53.

   Because these allegations are precisely the type to which Section 230 immunity applies,

each and every one of the Plaintiffs' claims for relief should be dismissed.

### B.    The Plaintiffs' Trademark Claims are Invalid.

   Apparently cognizant of the threat Section 230 poses to their claims, Plaintiffs have

attempted to plead around Section 230 immunity by asserting claims under Florida's anti-

dilution statute.  See Fla. Stat. § 495.151.[6]  Lead Complaint ¶¶ 50-63; Initial Complaint ¶¶ 47-55.

By disguising their claims as trademark claims, Plaintiffs apparently hope to avail themselves of

a subsection of Section 230 that excepts intellectual property law from the broad immunity

otherwise provided.  See 47 U.S.C. § 230(e)(2).  A careful reading of Plaintiffs' trademark

---

[5] Plaintiffs' "securities fraud" claim against Lycos is invalid for several other reasons.  As an initial matter, Florida law would not control any securities fraud claim because the Subscriber Agreement selects Massachusetts law as the law governing all disputes relating to the Raging Bull website.  See Initial Complaint at Exhibit 1 ¶ 33.  Moreover, as the allegations in the Lead Complaint make clear, Lycos did not make any of the supposedly fraudulent statements described in the Lead Complaint, and therefore cannot be held liable for those statements.  See Fla. Stat. 517.301(c).

[6] Of course, Florida law would not control any trademark dilution claim because the Subscriber Agreement selects Massachusetts law as the law governing all disputes relating to the Raging Bull website, and because the Defendants' conduct occurred—if at all—in Massachusetts.  See Initial Complaint at Exhibit 1 ¶ 33.  For that reason alone, these claims should be dismissed.

claims, however, makes clear that they do not actually assert dilution of any UCSY trademark, but rather seek to curtail speech about that trademark. <u>See</u> Lead Complaint ¶¶ 49-54.

Specifically, Plaintiffs never suggest nor allege that Lycos is attempting to pass off its goods or services as similar to the Plaintiffs' goods or services. Rather, the Plaintiffs simply contend that third parties have used the "UCSY" trade name on the Raging Bull website to talk about Universal in an unflattering manner, and that these discussions have somehow "tarnished" Universal's reputation. <u>See</u> Lead Complaint ¶¶ 49-54. Under any applicable law, such allegations do not state a claim for trade name dilution. <u>See</u> <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482 (1st Cir. 1981) (explaining that a claim for trademark dilution requires proof that the defendant's use of a similar mark has created likelihood of dilution); <u>Bay State Savings Bank v. Baystate Financial Services, LLC</u>, 338 F. Supp. 2d 181,191 (D. Mass. 2004) (same). Accordingly, Universal's effort to transform its displeasure about opinions expressed on the Raging Bull website into a trademark dilution claim should be rejected.

In <u>L.L. Bean, Inc. v. Drake Publishers, Inc.</u>, 811 F.2d 26, 32-33 (1st Cir. 1987), the First Circuit rejected a similar attempt to use an anti-dilution statute to restrict speech about a trademark. In that case, the First Circuit explained that "[i]t offends the Constitution . . . to invoke the anti-dilution statute as a basis for enjoining the noncommercial use of a trademark by a defendant engaged in a protected form of expression . . . If the anti-dilution statute were construed as permitting a trademark owner to enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct." <u>Id.</u> at 32-33; <u>see</u> <u>also</u>

<u>Bally Total Fitness Holding Corp. v. Faber</u>, 29 F. Supp. 2d 1161, 1167-68 (C.D. Cal. 1998).  In this case, as with <u>L.L. Bean</u>, the Plaintiffs are attempting to restrict criticism of their company. Accordingly, their attempt to transform their claims into a cause of action under an anti-dilution statute is improper.

In fact, Section 25 of the <u>Restatement (Third) of Unfair Competition</u> contains a rule intended to address precisely the type of dilution claim asserted in Count III.  That section provides as follows:

> One who uses a designation that resembles the . . . trade name . . . of another, not in a manner that is likely to associate the other's mark with the goods, services of business of the actor, but rather to comment on, [or] criticize . . . the other's goods, services, business, or mark, is subject to liability without proof of a likelihood of confusion . . . only if the actor's conduct meets the requirements of a cause of action for defamation, invasion of privacy, or injurious falsehood.

<u>See</u> Restatement (Third) of Unfair Competition § 25(2) (2004).  This provision is designed to protect "[u]se of another's trademark, not as a means of identifying the user's own goods or services, but as an incident of speech directed at the trademark owner."  <u>See id.</u> at comment i. Because of the free speech concerns that arise through the application of trademark law to mere criticism of a trademark or trade name, the Restatement drafters concluded that "[a]lthough such nontrademark uses of another's mark may undermine the reputation and value of the mark, they should not be actionable under the law of trademarks."  <u>Id.</u>

### C.  **The Plaintiffs Have Released Their Claims Against Lycos.**

Of course, even if Section 230 did not preclude all of the Plaintiffs' claims, those claims must be dismissed because the Plaintiffs have fully released Lycos from any and all potential liability.  As the Initial Complaint acknowledges, Zwebner entered into a Subscriber Agreement

when he signed up to participate on the Raging Bull website.  <u>See</u> Initial Complaint ¶¶ 24-26.  In

addition, by suing to enforce the provisions of the Subscriber Agreement as a third-party

beneficiary, Universal is also bound by all of the Agreement's terms.  <u>See</u> <u>Intergen N.V. v.</u>

<u>Grina</u>, 344 F.3d 134, 146 (1st Cir. 2003) (stating that "a party may be estopped from asserting

that the lack of his signature on a written contract precludes enforcement of the contract [  ] when

he has consistently maintained that other provisions of the same contract should be enforced to

benefit him.") (internal citation omitted).

        The Subscriber Agreement contains a comprehensive release of all of the Plaintiffs'

claims against Lycos.  <u>See</u> Initial Complaint, Subscriber Agreement at Exhibit 1 ¶ 30.  The

Plaintiffs have "agree[d] to release Lycos and its parents, subsidiaries, affiliates . . . <u>from any and</u>

<u>all claims,</u> demands, debts, obligations, damages (actual or consequential), costs, and expenses of

any kind or nature whatsoever, <u>whether known or unknown</u>, suspected or unsuspected, disclosed

or undisclosed, that [he] may have against them <u>arising out of or in any way related to such</u>

<u>disputes</u> and/or to the Products and Services."  <u>Id.</u> (emphasis added).  This language

unequivocally bars the causes of action the Plaintiffs purport to bring against the Defendants.

        The Massachusetts Supreme Judicial Court recently noted its approval of releases that are

broad in scope, reiterating its past position that "broad wording in [a] release operates to settle all

other, unrelated matters . . . ."  <u>Eck v. Godbout</u>, 444 Mass. 724, 728 (2005); <u>see</u> <u>also</u> <u>Naukeag</u>

<u>Inn, Inc. v. Rideout</u>, 351 Mass. 353, 356 (1966) ("A general release . . . is to be given effect,

even if the parties did not have in mind all the wrongs which existed at the time of the release");

<u>accord</u> <u>Atlas Tack Corp. v. Crosby</u>, 41 Mass. App. Ct. 429, 433 (1996) (citing <u>Naukeag Inn,</u>

<u>Inc.</u>); <u>see</u> <u>also</u>, <u>Pride Hyundai, Inc. v. Chrysler Financial Co., LLC</u>, 263 F. Supp. 2d 374, 388

(D.R.I. 2003), aff'd on other grounds, 369 F.3d 603 (1st Cir. 2004) (applying Massachusetts law and explaining that "the mere fact that Plaintiffs bring a Chapter 93A claim does not vitiate the efficacy of the Release"). Here, the general release to which the Zwebner agreed and under which Universal asserts rights should be given full effect. Accordingly, all of the Plaintiffs' claims for relief against the Defendants should be summarily dismissed.

**D.    Plaintiffs' Attempt to Assert a Private Right of Action for "Cyber Stalking" Under 47 U.S.C. §233 is Invalid.**

Count II of both Complaints purports to assert a private right of action under 47 U.S.C. § 223 ("Section 223") for "cyber stalking." See Lead Complaint ¶¶ 62-68, Initial Complaint ¶¶ 39-46. As an initial matter, Section 223 applies only to the use of telephones and telecommunication devices—and (with the exception of certain conduct relating to minors) is expressly inapplicable to conduct relating to the use of interactive computer services. See 47 U.S.C. § 223(h)(1)(B). Thus, the Plaintiffs cannot plausibly contend that the Defendants have violated Section 223 in any way.

Moreover, Section 223 does not create a private right of action for civil litigants. See Jensen v. Shrively, 2003 WL 917969 at *1 (N.D. Cal. Feb. 25, 2003) (explaining that Section 223 does not provide a private right of action); Ghartey v. Chrysler Credit Corp., 1992 WL 373479 at *5 (E.D.N.Y., Nov. 23, 1992) (holding that Section 223 "does not expressly provide for a private right of action to recover damages for violations of section 223, and no such remedy can be implied under the act.").

The Supreme Court has articulated a four-step analysis to determine whether federal criminal statutes may be construed to allow an implied right of action: (1) whether the plaintiff is

of a class for whom Congress intended the law to especially benefit; (2) whether there is any indication of legislative intent to create or deny a private remedy; (3) whether it would be consistent with the underlying purpose of the legislative scheme to imply a private remedy; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate to infer a cause of action based solely on federal law.  See Cort v. Ash, 422 U.S. 66, 78 (1975).  The allegations set forth in Counts II fail to satisfy any one of these four steps.

First, the Plaintiffs are not within the class of people that Congress intended Section 223 to especially benefit.  As a part of the Telecommunications Act of 1996, Congress amended Section 223 to criminalize certain on-line communications while simultaneously enacting Section 230 (including Section 230(c)(1)).  The purpose of these additions was to ensure that the Internet remained a medium that permitted robust expression relatively free of governmental regulation, but that minors were protected as much as possible from the vast array of sexually explicit materials that exist in cyberspace.  See 47 U.S.C. § 230(a)-(b) (articulating congressional findings and policies).

Second, the legislative history of the statute indicates that Congress did not intend Section 223 to apply to people who might not like what members of the public said about them or their companies on Internet message boards.  To the contrary, the Communications Decency Act ("CDA") simultaneously amended Section 223 and created 47 U.S.C. § 230(c)(1), which, as discussed above, immunizes Internet service providers from liability for any statements made by third parties.  This act was a clear expression of congressional intent to foreclose a private right of action under Section 223.  See also 47 U.S.C. § 223(f)(1) ("No cause of action may be brought in any court or administrative agency against any person on account of any activity that is not in

violation of any law punishable by criminal or civil penalty").  In the portion of the Conference Report discussing the amendments to Section 223, the Committee affirmatively stated that Section 223(f)(1) "supplements, without in any way limiting, the 'Good Samaritan' liability protections of new section 230."  See H.R. Rep. No. 104-458, at 191 (1996) (emphasis added).

Third, to imply a private right of action under Section 223 is inconsistent with the underlying purposes of the CDA.  As the Fourth Circuit noted in Zeran, Section 230(c)(1) was enacted to specifically maintain the vigorous nature of Internet communications.  See Zeran, 129 F.3d at 331; see also 47 U.S.C. § 230(a)(3)-(4), (b)(2) (discussing Congressional desire to promote unfettered Internet speech).  Although the government remains free to enforce its criminal laws to "deter and punish trafficking in obscenity, stalking, and harassment by means of [a] computer," see 47 U.S.C. § 230(b)(5), "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages."  Zeran, 129 F.3d at 330-31.

Finally, the theory of liability articulated in Counts II is better described as a variation on the common law theory of publisher liability for defamatory statements, a subset of tort law traditionally relegated to the states.  Not only would it be anomalous to read Section 223 to imply a right of action in such a traditional state-governed area of law but, Section 230(c)(1)'s grant of immunity instructs the inverse for precisely this type of claim.[7]

---

[7] Even if Section 223 did somehow provide a private right of action for "cyber stalking," no such right of action could constitutionally be asserted under the facts of this case because the application of Section 223 in this context would violate the First Amendment.  See United States v. Popa, 187 F. 3d 672 (D.C. Cir. 1999) (holding that section 223 was unconstitutional as applied to a defendant who had been charged with making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass" the then-United States Attorney for the District of Columbia).

**E.    Plaintiffs' Attempt to Assert a Private Right of Action for "Cyber Stalking" Under Fla. State 784.048 is Also Invalid**

Count IV of the Lead Case asserts a claim of cyber stalking under Fla. Stat. § 784.048. Again, as a threshold matter, although Count IV cites the Florida cyber stalking statute, Florida law would not control the claim.  Because the Subscriber Agreement selects Massachusetts law as the law governing all disputes relating to the Raging Bull website, and because the Defendants' conduct occurred—if at all—in Massachusetts, any claim for cyber stalking would arise under Massachusetts law.  See Initial Complaint at Exhibit 1 ¶ 33.

Equally important, the Florida criminal statute invoked by the Plaintiffs contains no private right of action.  To the contrary, that statute provides simply that "[a]ny person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury of the person, or the person's child, sibling, spouse, parent, or dependent, commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in [other parts of the Florida Criminal Code]."  Fla. Stat. § 784.048.  Nowhere in the statute is there any language creating any private right of action.

**F.    The Plaintiffs' Chapter 93A Claim Should Be Dismissed.**

Finally, Count I of the Initial Complaint must also be dismissed because it fails to state a claim in violation of the Massachusetts Consumer Protection Act, M.G. L. ch. 93A ("Chapter 93A").  Plaintiffs' allegations under this count describe a supposed  breach of contract.  See Initial Complaint ¶¶ 22-38.  Specifically, the Plaintiffs' allege that Lycos failed to enforce the "Prohibited Conduct" provisions of the Subscriber Agreement, and therefore "knowingly

exposed" the Plaintiffs to "harassment and abuse" from other network users. See id. ¶¶ 35-38. Such breach of contract allegations are insufficient to state a claim under Chapter 93A as a matter of Massachusetts law. See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979) (holding that an allegation that "the defendants . . . have violated the terms of a commercial agreement . . . [is] not sufficient to support a claim under c. 93A."); see also Pepsi-Cola Metropolitan Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (affirming dismissal of Chapter 93A count for mere breach of contract). This rule also applies where a defendant has been accused of a failure to perform or poor performance on a contract. See, e.g., Mechanics Nat. Bank of Worcester v. Killeen, 377 Mass. 100, 108-09 (1979) (failure to perform); Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 799, 343 N.E.2d 375, 378 (1976) (poor performance). For that reason alone, Plaintiffs' claim under Chapter 93A cannot survive.[8]

## V.    CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that this Court enter an Order granting their Motion and dismissing both of the Complaints in this case with prejudice.

Respectfully submitted,

_____

David A. Bunis        (BBO #550570)
Daniel J. Cloherty    (BBO #565772)
Rachel Zoob-Hill      (BBO #659041)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

Dated: August 9, 2005            *Attorneys for Defendant Lycos, Inc.*

---

[8] Any claim for breach of contract by the Plaintiffs against Lycos would not be actionable in light of the language in the Subscriber Agreement granting Lycos "the right (but not the obligation)" to enforce paragraph 6 of the Subscriber Agreement "in its sole discretion." Noah, 261 F. Supp. 2d at 545-46 (construing nearly identical release language and dismissing breach of contract claim against Internet provider).