UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNIVERSAL COMMUNICATION SYSTEMS INC., a Nevada Corporation; MICHAEL I ZWEBNER, individually; and others similarly situated<br>    Plaintiffs,<br><br>        v.<br><br>LYCOS, INC. and TERRA LYCOS, INC., d/b/a THE LYCOS NETWORK,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br>NO. 05-10435-REK<br>CONSOLIDATED WITH<br>NO. 05-11172-REK |

| | | |
|---|---|---|
| UNIVERSALCOMMUNICATION SYSTEMS INC., a Nevada Corporation; MICHAEL I ZWEBNER, individually; and others similarly situated<br>    Plaintiffs,<br><br>        v.<br><br>LYCOS,INC, d/b/a THE LYCOS NETWORK and TERRA NETWORKS, S.A.,<br>JOHN DOE#1 aka "the worm06"<br>JOHN DOE #2 aka "no_insiders"<br>JOHN DOE #3 aka "the womi06A"<br>JOHN DOE#4aka"65175R"<br>JOHN DOE #5 aka "Henry Johnsonl23"&<br>JOHN DOE#6aka"quondol"<br>JOHN DOE#7aka"Tobias95"<br>JOHN DOE #8 aka"CrawleySmith"<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CONSOLIDATED PROCEEDINGS<br><br>Civil Action<br>NO. 05-11172-REK<br>LEAD CASE |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TERRA NETWORKS S.A.'S MOTION TO DISMISS THE COMPLAINTS

### INTRODUCTION

Defendant Terra Networks, S.A. ("Terra"), a Spanish corporation, files this brief in support of its motion to dismiss the complaint filed by Plaintiffs Michael J. Zwebner ("Zwebner") and his company, Universal Communication Systems, Inc., ("Universal") (collectively "Plaintiffs").

Plaintiffs attempt to establish jurisdiction and liability over Terra based on Terra's previous ownership of Lycos, Inc. ("Lycos"). As a matter of law, a corporate parent is not liable for the actions of its subsidiaries, absent proof sufficient to pierce the corporate veil. In this case, there are no such allegations. Here, while Terra's former subsidiary, Lycos, has valid defenses, any claim Plaintiffs might have would be confined to Lycos.

## THE COMPLAINT

The Complaint defines Lycos, Inc. and Terra Networks, S.A. as separate and discrete legal entities. First Am. Compl. (hereinafter, "Lead Compl.") ¶¶ 13,14. Indeed, the Complaint recognizes that, "On or about August 2, 2004 Terra Networks, S.A. sold its interest in Defendant Lycos, Inc. . . ." Id. ¶ 14 (f). Notwithstanding the fact that these are separate legal entities, Plaintiff alleges that "Upon information and belief, a unity of interest exists between TERRA NETWORKS, S.A. and LYCOS, INC." with each "acting as the agent, representative, and/or principal of each other when performing the acts alleged in this Complaint . . . ." Id. ¶ 14 (g). There are no specific factual allegations that would justify a court disregarding the corporate form of these two distinct legal entities. Nor is there any allegation of Terra conducting business in Massachusetts. Indeed, the only allegation of Terra conducting business in the United States is the vague assertion of other, unidentified "companies or affiliates" of Terra being located in Miami-Dade County, Florida. Complaint ¶ 14 (d).

The Complaint recognizes that Lycos did business under the name "THE LYCOS NETWORK." Lead Compl., Initial Unnumbered Paragraph. Lycos operated a website entitled "Raging Bull." See Initial Complaint ¶ 12. In order to access the website parties were required to complete an on-line registration process. See Initial Complaint ¶ 19. The registration process required each subscriber to accept the Terms and Conditions of the Lycos/Raging Bull

"Subscriber Agreement," a copy of which is attached to the Initial Complaint as Exhibit 1. Id. ¶¶ 19-20 & Exhibit 1.

The Subscriber Agreement stated that "Lycos does not review or endorse any postings that appear on the. . . Raging Bull message boards and strongly urges you to read and post on the message boards with caution." Id. ¶ 8. The Subscriber Agreement also contained a specific disclaimer regarding "Third party content" explaining that (other than certain generalized screening) Lycos exercised no control over the content on the web pages that it hosted on its message board sites. Id. ¶ 13.

Finally, the Subscriber Agreement contained an "Indemnity and Release" clause, which provided, in part, as follows:

> By using the Lycos Network . . . you are hereby agreeing to release Lycos and its parents, subsidiaries, affiliates, officers, employees, and licensors from any and all claims, demands, debts, obligations, damages (actual or consequential), costs, and expenses of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, that you may have against them arising out of or in any way related . . . to the Products or Services or to any disputes regarding use of ideas and/or related materials submitted to Lycos.

Id. ¶ 29 (emphasis added). Prior to the initiation of these lawsuits, Zwebner completed the registration process for the Raging Bull website and accepted the terms of the Subscriber Agreement. Id. ¶ 24.

The Complaint purports to allege four separate causes of action against Terra, based on the conclusory allegation that Terra and its subsidiary, Lycos, had a "unity of interest" and that Terra "exercised control over LYCOS, INC . . . ." Lead Compl. ¶ 14(g). Three of Plaintiffs' four causes of action are based on Florida law. The Lycos Subscriber Agreement, however, stipulates that Massachusetts law applies. Initial Complaint at Ex. 1, ¶ 33.

In Count I, the Plaintiffs allege that Terra has violated the Florida securities fraud statute, Fla. Stat. § 517.301, because Lycos allowed the posting of allegedly misleading messages on its

3

Raging Bull message board. <u>See</u> Lead Compl. ¶¶ 36-37. In Count II, the Plaintiffs attempt to assert a private right of action under 47 U.S.C. § 223 by alleging that Terra, again through its then subsidiary Lycos, somehow committed "cyber stalking." <u>See</u> <u>id.</u> ¶¶ 37-47. In Count III, the Plaintiffs allege that Lycos's failure to curtail the dissemination of the allegedly misleading messages on its Raging Bull website has tarnished and diluted Universal's trade name in violation of Fla. Stat. § 495.151 ¶¶ 48-61. Last, in Count IV, Plaintiffs attempt to assert a private right of action under Fla. Stat. § 784.048 et seq., based on the alleged failure of Lycos and Terra to monitor and curtail the messages on Lycos's Raging Bull website constitutes. <u>See</u> <u>id.</u> ¶¶ 62-68. The Lead Complaint seeks damages of $100 million as well as injunctions requiring the Defendants to delete all postings on the Raging Bull message board.

<h2 style="text-align:center"><u>JURISDICTIONAL FACTS</u></h2>

Terra has never owned or operated the Ragingbull.com website. Rather, it is owned and operated by Terra's former subsidiary, Lycos. <u>See</u> Colchero Dec., ¶¶ 2, 11-12. As more fully discussed in the Colchero declaration, Terra is a holding company for affiliated companies which primarily do business in Spanish-speaking countries. Terra has never sold products or services in Massachusetts. It does not own or lease space in Massachusetts. In 2000, Terra purchased Lycos. On October 5, 2004, Terra sold Lycos to a Korean company, Daum Communications ("Daum"). Under the sale to Daum, Terra has not retained the liabilities of Lycos with regard to this litigation. Colchero Dec. ¶ 5.

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

I.   **Terra Networks S.A., a Spanish Corporation, is Not Subject to Jurisdiction in Massachusetts.**

   A.   **The Absence of Minimum Contacts Between Terra and This Forum Precludes The Constitutional Exercise of Jurisdiction.**

To hear a case, a court must have personal jurisdiction over the parties, "that is, the power

to require the parties to obey its decrees." United States v. Swiss Am. Bank, Ltd., 191 F.3d 30,

35 (1st Cir. 1999).  The Plaintiff bears the burden of proving the court's personal jurisdiction

over the defendant.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir.

1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 674-75 (1st Cir. 1992) (plaintiff must "prove

facts necessary to sustain jurisdiction"; affirming jurisdictional dismissal).  A defendant who

challenges the personal jurisdiction of a district court over it shifts the burden of producing the

facts necessary to establish jurisdiction onto the Plaintiff.  Escude Croz v. Ortho Pharma Corp.,

619 F.2d 902, 904-05 (1st Cir. 1980)(affirming jurisdictional dismissal of claim filed in Puerto

Rico against New Jersey parent company for the purported actions of Puerto Rican subsidiary,

noting, "presumption of corporate separateness" that plaintiff must overcome by "clear

evidence"); See Bearse v. Main St. Invs., 170 F.Supp. 2d 107, 112 (D. Mass. 2001)("[I]t is the

plaintiff's burden to establish that the court has jurisdiction over each and every defendant";

dismissing on jurisdictional grounds);[1]  It has long been the rule that plaintiffs may not rely on

unsupported allegations in their pleadings to make a prima facie showing of personal

jurisdiction. See Chlebda v. H.E. Fortna and Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979) (view

that jurisdictional allegations must be taken as true is an "elementary mistake").

The contours of personal jurisdiction in federal courts are well established.  Due process

requires sufficient "minimum contacts" between the defendant and the forum state so that

"maintenance of the suit does not offend traditional notions of fair play and substantial justice."

World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291-292, 62 L.Ed. 2d 490, 100 S.Ct.

559 (1980); Hanson v. Denckla, 357 U.S. 235, 253, 2 L.Ed., 2d 1283, 73 S.Ct. 1228 (1958) (It is

---

[1] Fed R. Civ. P. 12(d) provides that a defense of lack of jurisdiction over the person, whether made in a pleading or by motion, shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.

essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."); see also, Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945). See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed. 2d 404, 415 n.9 (1984) (Where party seeks jurisdiction over an out of state corporation, the contacts with the forum state must be continuous and systematic).

The constitutional inquiry proceeds in three steps: relatedness, purposeful availment, and reasonableness. See Foster-Miller, 46 F.3d at 144. At the first stage, the court must ask whether the claim at issue arises out of or is related to the defendant's conduct within the forum state. See id.; see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206-07 (1st Cir. 1994). At the second step, the court must scrutinize the defendant's contacts with the forum state to determine whether those contacts constitute purposeful activity, such that being haled into court there would be foreseeable. See Foster-Miller, 46 F.3d at 144; Ticketmaster, 26 F.3d at 207. Beyond these two criteria, the Constitution imposes an overall reasonableness restraint on the exercise of personal jurisdiction. See World-Wide Volkswagen Corp., 444 U.S. at 286, 292; United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).

**B.  The Actions of a Subsidiary Do Not Subject the Parent to Jurisdiction in the Subsidiary's Forum Absent Piercing the Corporate Veil.**

The well-established rule is that a plaintiff cannot establish jurisdiction over a corporate parent unless the plaintiff can affirmatively pierce the corporate veil. De Castro v. Sanifill, Inc., 198 F.3d 282, 284 (1st Cir. 1999) (jurisdiction may be established over parent only when there is "strong and robust" evidence of parental control over subsidiary that renders subsidiary "mere shell"); see, e.g., Russell v. Enterprise Rent-a-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 251-252 (D.R.I. 2001) (plaintiff failed to establish "strong and robust evidence" of parental

control as required by De Castro).  Accord Central States, Southeast & Southwest Areas Pension

Fund v. Reimer Express World Corp., 230 F.3d 934, 940-942 (7th Cir. 2000) ("constitutional due

process requires that personal jurisdiction cannot be premised on corporate affiliation or stock

ownership alone where corporate formalities are substantially observed and the parent does not

exercise an unusually high degree of control over the subsidiary"; affirming jurisdictional

dismissal of claim against Canadian holding company and denial of jurisdictional discovery);

Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000), cert. denied, 534

U.S. 827 (2001)(subsidiary in forum state may not be attributed to parent; affirming dismissal of

claim against Canadian company; registered agent insufficient to establish general jurisdiction).

    Here, Lycos had a separate existence before Terra bought it; existed separately while

Terra owned it; and exists separately now that Terra has sold Lycos, Inc.  As a threshold matter,

Plaintiffs' novel causes of action are not "related" to any contacts of Terra within this forum.

Plaintiffs' claims concern the purported vicarious liability of an internet portal owned by a

Virginia corporation with an office in Waltham, Massachusetts (Lycos, Inc.), to a citizen of

Great Britain (Zwebner), and a Nevada Corporation with an office in Florida (UCSY), for the

actions of a computer user typing allegedly defamatory messages from some unspecified

location, and seeking to impose Florida law.  Terra is not alleged to have any direct involvement

in the creation of the allegedly defamatory internet postings.  Accordingly, there is no

demonstrable nexus between Plaintiffs' claims and any purported forum-based activities of Terra.

    Ownership of the controlling stock of a subsidiary does not confer jurisdiction over an

out of state parent corporation (here, a Spanish corporation) that does not exercise control over

the activities of the subsidiary doing business in Massachusetts.  As the Court stated in

Kleinerman v. Morse, 26 Mass.App. Ct. 819, 823, 533 N.E. 2d 221 (Mass.App.Ct. 1989), "Even

where a non-residential parent owns the controlling share of a subsidiary doing business in Massachusetts, personal jurisdiction does not exist unless the stringent Massachusetts veil-piercing test is satisfied." Accord, In re Lupron Mktg. & Sales Practices Litig., 245 F.Supp.2d 280, 298 (D.Mass.2003); Escude Cruz, 69 F.2d at 905 ("There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.")

Under Massachusetts law, disregarding separate corporate entities is the exception, not the rule. See, Am. Home Assur. Co. v. Sport Maska, Inc. 808 F.Supp. 67, 73 (D.Mass. 1993); Schaefer v. Cybergraphic Sys., Inc., 886 F.Supp. 921, 924 (D.Mass. 1994) ("The concept of limited liability is so basic a principle of corporate law that courts are hesitant to disregard the independent corporate structure as between a parent corporation and its corporate subsidiaries."). The veil may be pierced only when there is evidence of a "confused intermingling between corporate entities or where one corporation actively and directly participates in the second corporation, apparently exercising pervasive control." Am. Home Assur. Co., 808 F.Supp. at 73; My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968).

The Court of Appeals has identified twelve (12) factors to be evaluated when deciding whether a corporation exercises pervasive control over its subsidiary or so intermingles its assets with its subsidiaries to necessitate piercing the corporate veil under Massachusetts law: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business activity; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of the corporate assets by dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporations for transactions of the dominant shareholders; and (12) use

8

of the corporation in promoting fraud." Aoki v. Atto Corp., 323 B.R. 803, 812 (Bankr. App. 1st

Cir. 2005); Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 16 (1st Cir.

1985)(internal citations omitted).

    An examination of the plaintiffs' Zwebner and UCSY First Amended Complaint reveals

that they have pled facts wholly insufficient to satisfy the First Circuit's veil piercing standard.

Rather than pleading facts suggesting that Terra Networks "pervasively controlled" its

subsidiaries, Zwebner and UCSY generically assert that "TERRA NETWORKS, S.A., exercised

and/or had the right to exercise control over both LYCOS, INC. & THE LYCOS NETWORK

including the right to control and/or restrict access to the LYCOS NETWORK." See Lead

Compl. at ¶ 14 (b). Such a bald assertion does not satisfy the plaintiffs' probative burden.

Rather, Massachusetts courts have interpreted pervasive or significant control as actively

"running" the operations of the subsidiary. Kleinerman, 26 Mass.App.Ct. at 823 (citations

omitted). Absent from Zwebner and UCSY's Lead Complaint are any allegations, other than the

lumping of Lycos and Terra as one, that could trigger a veil piercing here. Zwebner and UCSY

simply argue that because a parent has the authority to control a subsidiary, by virtue of its

ownership, it is automatically subject to jurisdiction and liability for the actions of its subsidiary.

    Indeed, it is well recognized that there is necessarily some cooperation and coordination

between a parent and subsidiary, but that such relationship is insufficient to pierce the corporate

veil. See United States v. Bestfoods, 524 U.S. 51, 72, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)

("monitoring of the subsidiary's performance and capital budget decisions, and articulation of

general policies and procedures" is insufficient to pierce the corporate veil.")

    Nor is this the usual case of a veil piercing where the owner/parent has committed some

form of fraud resulting in assetless shell. To the contrary, Lycos Inc., a viable entity before it

became a Terra subsidiary, and a viable entity after Terra sold Lycos Inc. after four years of ownership, is present in this suit, and does not contest jurisdiction in this forum.

The Zwebner and UCSY Lead Complaint is similarly deficient in its attempt to demonstrate the intermingling of parent and subsidiary assets. Rather than asserting specific facts, Zwebner and UCSY again rely on generalities claiming that: "TERRA NETWORKS directly or indirectly, conducted its various business operations through a maize [sic] of companies throughout the world, including operations in the United States" and there is a "unity of interest" between Terra Networks, S.A. See Lead Compl. at ¶ 14(c), (g). There are no allegations that would satisfy a veil piercing under applicable law. Indeed, Plaintiffs have described nothing other than the simple state of affairs between a parent and a subsidiary. Nor have Zwebner and UCSY alleged that Terra Networks, S.A., used Lycos as a tool to perpetuate a fraud. Instead, Zwebner and UCSY attempt to circumvent these requirements by blankly asserting that Terra Networks, S.A. and its subsidiaries shared of "unity of interest." The plaintiffs, however, fail to define what constitutes a unity of interest.

Faced with a factually similar scenario where a plaintiff failed to demonstrate that the actions of a subsidiary and a parent corporation were inextricably linked, the Massachusetts District Court refused to pierce the veil stating: "Where the affairs of the corporations are not so intertwined as to demonstrate that the two corporations are, in reality, a single entity, the parent cannot be held responsible on an alter ego theory…" Am. Home, 808 F.Supp. at 73 (citations omitted). As in American Home, the facts pled in this case are insufficient to suggest that Terra Networks, S.A. and its subsidiary, Lycos, were so entwined to be termed a single entity. At best, Zwebner and UCSY have shown that Terra Networks, S.A. owned Lycos at the time of the alleged conduct at issue.

As noted in the affidavit of the former Legal Director of Terra (now an attorney with Telefonica), Terra had limited contact with Massachusetts and certainly not systematic and continuous contacts. Terra, in fact, has no offices in Massachusetts. It has no bank accounts or sales in Massachusetts. Its only connection with the forum is through its subsidiary. Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) ("the standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions") (internal quotation marks omitted).

Terra has not registered to do business, did not own property in Waltham, and did not lease the Lycos office space. Other than for very limited visits, Lycos had no employees in Waltham. Lycos had its own management, determined its own pricing, and had its own bank accounts. Terra did not control the content of the Lycos portal, and specifically did not control the content of the Ragingbull.com website. That site was and remains owned and operated by Lycos, Inc.

To be sure, Plaintiffs had some reason to believe that jurisdiction might be proper in Massachusetts. Terra erroneously listed the Waltham office of Lycos, Inc. as an office of Terra. The office, however, was that of Lycos, Inc. and not Terra. Declaration of Diego Colchero at ¶ 7. This error, itself, does not confer jurisdiction as the test is whether a defendant actually exercised systematic and continuous contacts in the forum. For example, even where a defendant is registered to do business in a state, (and Terra was not registered in Massachusetts), the Court must still evaluate the nature and quality of the contacts, and determine that they are substantial before jurisdiction may attach. Sofrar, S.A. v. Graham Eng'g Corp., 35 F. Supp. 2d 919, 921 (S.D.Fla.1999) (finding no jurisdiction even though defendants appointed an agent for

service of process and were registered to do business in the state).[2]

For a time, Terra had appointed Lycos, Inc. as its agent to receive process in connection with its issuance of ADRs which were listed on the New York Stock Exchange. It is well established that the appointment of an agent does not confer jurisdiction in the forum where the agent is located. Sandstrom v. Chemlawn Corp., 904 F. 2d 83 (1st Cir. 1990) (affirming jurisdictional dismissal even though defendant Chemlawn registered an agent for service of process, advertised, and litigated in the forum; recognizing that an agent for service of process is "not an agent who conducts business."). See Consolidated Dev. Corp., 216 F.3d at 1293 (offering of debentures in United States, and appointment of agent in connection therewith are insufficient to establish general jurisdiction in forum where claim is unrelated to issuance of debentures); Bankhead Enter., Inc. v. Norfolk & Western Ry Co., 642 F.2d 802, 805 (5th Cir., Unit B, April 15, 1981); Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir.1992); Ratliff v. Cooper Lab., Inc. 444 F.2d 745, 748 (4th Cir.1971). As the Siemer court aptly stated:

> To assert, as plaintiffs do, that mere service on a corporate agent automatically confers general jurisdiction displays a fundamental misconception of corporate jurisdictional principles. This concept is directly contrary to the historical rationale of International

---

[2] Terra's corporate website does not confer jurisdiction. The mere maintenance of a website accessible from Massachusetts is insufficient to establish personal jurisdiction over a corporation. See, e.g., Comer v. Comer, 295 F. Supp. 2d 201, 209 (D.Mass. 2003) ("Neither the United States Supreme Court nor, it appears, any court within this circuit has held that a mere internet presence, without more, establishes personal jurisdiction."); Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d 230, 232 (D.Mass. 2003) (While "[t]he First Circuit has not addressed the question whether an interactive website, located outside Massachusetts and directed at Massachusetts residents only in the sense that it is directed at residents of every state, may on its own fulfill the requirement of purposeful availment . . . [m]ost courts confronting this issue have required 'something more.' . . .") (citation omitted); High Country Investor, Inc. v. McAdams, Inc., 221 F. Supp. 2d 99, 103-04 (D.Mass 2002) (granting motion to dismiss for lack of personal jurisdiction because advertising over the internet did not constitute sufficient contact with Massachusetts); Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65, 72 (D.Mass. 2001) ("Despite [the plaintiff's] suggestion to the contrary, the capability of [the defendant's] website to support an order from Massachusetts without more does not establish a course of conduct in Massachusetts."); Northern Light Tech., Inc. v. Northern Lights Club, 97 F. Supp. 2d 96, 106 (D.Mass. 2000) ("The mere existence of a web site is not sufficient to show purposeful availment.").

Shoe and subsequent Supreme Court decisions....A registered agent ... hardly amounts to the "general business presence" of a corporation so as to sustain an assertion of general jurisdiction.

Siemer, 966 F.2d at 183.

While the listing of stock on the NASDAQ Exchange required Terra to appoint an agent, this suit has nothing to do with the former shares of Terra and/or Terra's relationship to its former shareholders.[3]

Terra's contacts to Massachusetts through its subsidiary are no greater than those contacts in the seminal Helicopteros case in which the Court found personal jurisdiction absent. In Helicopteros, the Supreme Court found that a Texas district court could not exercise jurisdiction over a Colombian corporation that sent its chief executive officer to Houston for contract negotiations; accepted into its New York bank accounts checks drawn on a Houston bank; bought equipment and training services from a Texas corporation; and sent personnel to that corporation's Texas facilities for training. 466 U.S. at 416; see also Glater v. Eli Lilly & Co., 744 F.2d 213, 217 (C.A. N.H. 1984) (manufacturer who advertised, employed eight sales representatives to distribute information, and sold products to distributors in the forum was not subject to general jurisdiction); See Donatelli v. Nat'l Hockey League, 893 F.2d 459 (1st Cir. 1990) (ten years of providing league officials at exhibition hockey games, scouting, providing television broadcasts, and selling products bearing the National Hockey League (NHL) logo,

---

[3] Nor is jurisdiction supported here by Plaintiffs' vague allegations of conspiracy. It is well established in this circuit that a complaint must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Kadar v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977); see Hayduk v. Lanna, 775 F.2d 441 443-444 (dismissing conspiracy claim and stating, "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated)(citations omitted); Beagan v. Harvard Medical School, 1981 U.S. Dist. LEXIS 10303 (dismissing conspiracy in the absence of "factual allegations" that identify "the nature of the alleged conspiracy, its object, or any overt act committed in furtherance of it." As the only basis of the vague conspiracy is Terra's ownership of Lycos, such allegations cannot form the basis of personal jurisdiction over Terra here.

taken together, did not meet the due process test)).

In sum, Plaintiffs cannot establish jurisdiction over Terra because Plaintiffs have not alleged and cannot establish the elements necessary to pierce the corporate veil. Terra's contacts with Massachusetts through the ownership of a subsidiary, have nothing to do with Plaintiffs' claims, and are therefore "unrelated" to this forum for purposes of jurisdictional analyses. As Terra has not engaged in continuous and systematic contacts with Massachusetts such that it is "doing business" in Massachusetts. In the absence of "strong and robust" evidence to pierce the veil, "purposeful availment" is not present." Accordingly, the Court should dismiss Plaintiff's Complaint against Terra because Terra is not subject to personal jurisdiction.

### C.    Under the Circumstances, The Exercise of Jurisdiction Would Not Comport With Fair Play and Substantial Justice.

In constitutional terms, the jurisdictional inquiry is not a mechanical exercise. The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis. See, e.g., Worldwide Volkswagon, 444 U.S. at 292; Int'l Shoe, 326 U.S. at 320. "This means that, even where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal." 163 Pleasant Street Corp., 960 F.2d 1088; accord Donatelli, 893 F.2d at 464-65. The hallmark of reasonableness in the context of personal jurisdiction is "fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 320, 90. This Circuit has looked to five factors that include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

163 Pleasant Street Corp., 960 F.2d at 1085.

First, given Terra's lack of contacts with the forum, and the Commonwealth's distance from Terra's location in Spain, Massachusetts would be an extremely burdensome forum for Terra. This burden is entitled to substantial weight in calibrating the jurisdictional scales. Indeed, the Court has stated that this element, alone among the gestalt factors, is "always a primary concern." Worldwide Volkswagon, 444 U.S. at 292. Indeed, cases dismissed on reasonableness grounds have generally been located an appreciable distance from the forum. See, e.g., Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 114, 107 S.Ct. 1026, SS USLW 4197, 94 L.Ed. 2d 92 (1987) (Japanese defendant sued in California); Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488-90 (9th Cir. 1993) (Swedish defendant sued in California; defamation action); Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993) (Filipino defendant sued in Washington); Casualty Assur. Risk Ins. Brokerage Co. v. Dillon, (District of Columbia defendant sued in Guam; defamation action); Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 302 (1986) (British defendant sued in California).

Second (and notwithstanding the Massachusetts' interest in resolving the dispute between Lycos and Plaintiffs), as between plaintiff's Zwebner, a British citizen, UCSY, a Nevada corporation, and Terra, a Spanish corporation, Massachusetts has little interest in this dispute. As for the third and fourth factors, the only defendant necessary for the convenient and effective resolution of this controversy is Terra's former subsidiary Lycos. Lycos has appeared and does not contest jurisdiction. Accordingly, the Court will have jurisdiction over the party that owns the Ragingbull.com website that allegedly contained defamatory postings. While Terra believes that Lycos itself is not liable, there is no claim that Lycos could not satisfy a judgment against it.

Thus Plaintiffs will be able to achieve effective relief in this litigation, and the Court will be able

to effectively adjudicate a final resolution of the controversy without the presence of Terra.

While Terra does not have minimum contacts with the forum, it is contrary to the notion

of fair play and substantial justice for the Court to exercise jurisdiction over Terra, a Spanish

company, in Massachusetts based on Terra's ownership of Lycos where Terra has no connection

to the underlying claim and no presence in this forum.

## II.    TERRA'S ARGUMENTS IN THE ALTERNATIVE

Even assuming *arguendo* that the Court were to find personal jurisdiction over Terra, the

case should still be dismissed for reasons articulated in the brief of Defendant Lycos, Inc.[4]

### A.    All of Plaintiffs' Claims Are Barred By 47 U.S.C. § 230.

Section 230 of the Communications Decency Act provides, in relevant part, that "[no

provider. . . of an interactive computer service shall be treated as the publisher or speaker of any

information provided by another information content provider." 47 U.S.C. § 230(c)(1).  The

statute further provides "[n]o cause of action may be brought and no liability may be imposed

under any state or local law that is inconsistent with this section." See id. § 230(e)(3). Taken

together, these provisions provide broad statutory immunity for Internet service providers against

causes of action based on statements made by third parties on internet message boards.  Because

each and every one of the Plaintiffs' claims against Terra is based upon statements made by third

parties on an Internet message board, those claims must be dismissed.  Zeran v. America Online

Inc., 129 F.3d 327, 330 (4th Cir. 1997) ("By its plain language, § 230 creates a federal immunity

to any cause of action that would make service providers liable for information originating with a

---

[4] As Defendant Lycos, Inc. has already comprehensively briefed the almost identical legal issues pertaining to
statutory immunity and Plaintiffs' failure to state a claim, Terra merely refers the Court to pertinent authority.  Terra
incorporates by reference the applicable arguments of Lycos, Inc. seeking dismissal of Counts I through IV.

third party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred.").[5]

In this case, each of the Plaintiffs' claims against Terra is based upon Terra's supposed failure to control Lycos, and in turn, Lycos' alleged failure to control the content of statements made by third parties on Lycos' message boards. For example, Count I of the Lead Complaint alleges that the defendants, including Terra, "facilitate and/or cause the manipulation of UCSY stock by [third party co-Defendants . . (c) of [sic] bpublishing the [third party co-Defendant postings within a message board, which bears the USCY trade name, so as to disseminate, or enable dissemination of such false information through third party search engines."[6] Lead Compl. ¶ 37. Similarly, Count II of the Complaint alleges that Terra, through Lycos failed to curtail use of their telecommunications facility by their authorized subscribers who annoy, abuse,

---

[5] The Zeran decision has been followed by every other federal court that has considered claims against interactive computer services providers based upon the statements of third parties on Internet message boards. See, Carafano, 339 F.3d at 1124 (explaining that "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process"); Green, 318 F.3d at 471 (holding that Internet service provider was immune from liability under Section 230 for its "decisions relating to the monitoring, screening, and deletion of content" from its network where plaintiff's claims were based on supposedly defamatory statements made by other users in an online chat room); Ben Ezra, Weinstein and Co., Inc. v. Am. Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (holding that Section 230 immunized internet message board operator from civil claims arising from the posting of allegedly incorrect information relating to plaintiff's stock price and share volume); see Noah v. AOL Time Warner, Inc., 261 F.Supp. 2d 532, 537-40 (E.D. Va. 2003) (dismissing claims that AOL failed to prevent participants in an online chat room from making harassing and defamatory comments and explaining the "broad immunity" granted by Section 230's "expansive language"); PatentWizard. Inc. v. Kinko's. Inc., 163 F. Supp. 2d 1069, 1071-72 (D.S.D. 2001) (dismissing plaintiff's claims based upon statements made in chat room by user of defendant's computers); Morrison v. Am. Online. Inc., 153 F. Supp. 2d 930, 933-34 (ND. Ind. 2001); Blumenthal, 992 F. Supp. at 46 (dismissing plaintiff's claims against AOL where those claims were based upon allegedly false and defamatory statements sent by a third party over the AO L network).

[6] Plaintiffs' "securities fraud" claim contained in Count I against Terra is invalid for several other reasons. As an initial matter, Florida law would not control any securities fraud claim. Moreover, as the allegations in the Lead Complaint make clear, Terra did not make any of the supposedly fraudulent statements described in the Lead Complaint, and therefore cannot be held liable for those statements. See Fla. Stat. § 517.301(c).

threaten and harass the Plaintiffs.  See Lead Compl. ¶¶ 43-44.  See also Count IV.  Count III of the Complaint likewise alleges that the Defendants have been ineffective or have ignored the Plaintiffs' repeated requests that they curtail the dissemination of such false and misleading information by its authorized subscribers on the Raging Bull web site. See Lead Compl. ¶¶ 57-60.  Because these allegations are precisely the type to which Section 230 immunity applies, each and every one of the Plaintiffs' claims for relief should be dismissed.

**B.      The Plaintiffs' Trademark Claims are Invalid.**

In Count III, Plaintiffs have attempted to plead around Section 230 immunity by asserting claims under Florida's anti-dilution statute. See Fla. Stat. § 495.15 1.[7]  See Lead Complaint ¶¶ 48-61. The Court must dismiss this claim because a careful reading of Plaintiffs' trademark claims makes clear that they do not actually assert dilution of any UCSY trademark, but rather seek to curtail speech about that trademark. See Lead Complaint ¶¶ 49-54.[8]

**C.      The Plaintiffs Have Released Their Claims Against Terra.**

Even if Section 230 did not preclude all of the Plaintiffs' claims, those claims must be dismissed because the Plaintiffs have fully released Terra from any and all potential liability. Terra is entitled to such release, not only because the liability asserted under Plaintiffs' novel claims is derivative of Lycos' purported liability, but also because the subscriber agreement

---

[7] Of course, Florida law would not control any trademark dilution claim because the Subscriber Agreement selects Massachusetts law as the law governing all disputes relating to the Raging Bull webs site, and because the Defendants' conduct occurred—if at all—in Massachusetts and/or Spain.  For that reason alone, these claims should be dismissed.

[8] See Pignons S.A. de Mecanique de Precision v. Polaroid Corn., 657 F.2d 482 (1st Cir. 1981) (explaining that a claim for trademark dilution requires proof that the defendant's use of a similar mark has created likelihood of dilution); Bay State Savings Bank v. Baystate Financial Services, LLC, 338 F. Supp. 2d 181,191 (D. Mass. 2004) (same). Accordingly, Universal's effort to transform its displeasure about opinions expressed on the Raging Bull website into a trademark dilution claim should be rejected. See L.L. Bean. Inc. v. Drake Publishers. Inc., 811 F.2d 26, 32-33 (1st Cir. 1987).

expressly releases[9] Lycos' "parent." As the then parent of Lycos, Terra is expressly entitled to the benefit of the Release.[10]

D.    **Plaintiffs' Attempt to Assert a Private Right of Action for "Cyber Stalking" Under 47 U.S.C. § 233 is Invalid.**

Count II of both Complaints purport to assent a private night of action under 47 U.S.C. § 223 ("Section 223") for "cyber stalking" See Lead Complaint ¶¶ 62-68, Initial Complaint ¶¶ 39-46. As an initial matter, Section 223 applies only to the use of telephones and telecommunication devices—and (with the exception of certain conduct relating to minors) is expressly inapplicable to conduct relating to the use of interactive computer services. See 47 U.S.C. § 223(h)(1)(B). Thus, the Plaintiffs cannot plausibly contend that the Defendants have violated Section 223 in any way. Nor does Section 223 create a private right of action.[11]

As referenced in the Lycos Memorandum, the allegations set forth in Counts II fail to satisfy any of the four elements required to imply a private cause of action. See Cort v. Ash, 422

---

[9] The Massachusetts Supreme Judicial Court recently noted its approval of releases that are broad in scope, reiterating its past position that "broad wording in [a] release operates to settle all other, unrelated matters. Eck v. Godbout, 444 Mass. 724, 728 (2005); see also Naukeag Inn Inc. v. Rideout, 351 Mass. 353, 356 (1966) ("A general release. . . is to be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release"); accord Atlas Tack Corp. v. Crosby, 41 Mass. App. Ct. 429, 433 (1996) (citing Naukeag Inn, Inc.); see also, Pride Hyundai. Inc. v. Chrysler Fin. Co. LLC, 263 F. Supp. 2d 374, 388 (D.R.I. 2003), aff'd on other grounds, 369 F.3d 603 (1st Cir. 2004) (applying Massachusetts law and explaining that "the mere fact that Plaintiffs bring a Chapter 93A claim does not vitiate the efficacy of the Release"). Here, the general release to which the Zwebner agreed and under which Universal asserts rights should be given full effect. Accordingly, all of the Plaintiffs' claims for relief against the Defendants should be summarily dismissed.

[10] The Subscriber Agreement contains a comprehensive release of all of the Plaintiffs' claims against Lycos. See Initial Complaint, Subscriber Agreement at Exhibit 1 ¶ 30. The Plaintiffs have "agree[d] to release Lycos and its parents, subsidiaries, affiliates . . . from any and all claims, demands, debts, obligations, damages (actual on consequential), costs, and expenses of any kind on nature whatsoever, whether known or unknown, suspected on unsuspected, disclosed on undisclosed, that [he] may have against them arising out of on in any way related to such disputes and/or the Products and Services." Id. (emphasis added).

[11] See Jensen v. Shrively, 2003 WL 917969 at * 1 (N .D. Cal. Feb. 25, 2003) (explaining that Section 223 does not provide a private night of action); Ghartey v. Chrysler Credit Corp., 1992 WL 373479 at *5 (E.D N.Y., Nov. 23, 1992) (holding that Section 223 "does not expressly provide for a private night of action to recover damages for violations of section 223, and no such remedy can be implied under the act.").

U.S. 66, 78 (1975).  See H.R. Rep. No. 104-458, at 191 (1996); Zeran, 129 F.3d at 331.[12]

**E.**     **Plaintiffs' Attempt to Assert a Private Right of Action for "Cyber Stalking" Under Fla. Stat. § 784.048 Also is Invalid.**

The Florida criminal statute invoked by the Plaintiffs contains no private right of action.

To the contrary, that statute provides simply "[a]ny person who willfully, maliciously, and

repeatedly follows, harasses, or cyberstalks another person, and makes a credible threat with the

intent to place that person in reasonable fear of death on bodily injury of the person, on the

person's child, sibling, spouse, parent, on dependent, commits the offense of aggravated stalking,

a felony of the third degree, punishable as provided in [other parts of the Florida Criminal Code."

Fla. Stat § 784.048.  Nowhere in the statute is there language creating any private night of action.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court enter an

Order granting their Motion and dismissing both of the Complaints in this case with prejudice.

TERRA NETWORKS, S.A.

Thomas G. Rohback (Pro Hac Vice)
James J. Reardon, Jr.
BBO#566161
LeBoeuf, Lamb, Greene & MacRae, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel: (860)293-3596
Fax: (860)293-3555

Dated: August 16, 2005

---

[12] Even if Section 223 did somehow provide a private right of action for "cyber stalking," no such right of action could constitutionally be asserted under the facts of this case because the application of Section 223 in this context would violate the First Amendment.  See United States v. Popa, 187 F. 3d 672 (D.C. Cir. 1999) (holding that section 223 was unconstitutional as applied to a defendant who had been charged with making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass" the then-United States Attorney for the District of Columbia).

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNIVERSAL COMMUNICATIONS SYSTEMS, :
INC., MICHAEL J. ZWEBNER and others :
Similarly situated, :
                          :
         Plaintiffs, :         CIVIL ACTION
                         :         NO. 05-10435-REK
                         :         CONSOLIDATED WITH
vs. :         NO. 05-11172-REK
                         :
LYCOS, INC. d/b/a THE LYCOS NETWORK & :
TERRA NETWORKS, S.A., et al., :
                         :
         Defendants. :

_____ :

UNIVERSAL COMMUNICATIONS SYSTEMS, :
INC., a Nevada Corporation, and :
MICHAEL J. ZWEBNER, :
                         :
         Plaintiffs, :         CONSOLIDATED PROCEEDINGS
                         :
vs. :         CIVIL ACTION
                         :         NO. 05-11172-REK
LYCOS, INC., a Spanish Company with its USA :         LEAD CASE
Offices in Miami Dade County, Florida, d/b/a :
LYCOS NETWORK and :
TERRA NETWORKS, S.A., :
                         :
         Defendants. :

_____ :

## DECLARATION OF DIEGO COLCHERO IN SUPPORT OF DEFENDANT TERRA NETWORKS, S.A.'S MOTION TO DISMISS

I DIEGO COLCHERO, declare:

1.     I am an attorney admitted to practice law in the Kingdom of Spain, and I am the

former business legal director of the named defendant, Terra Networks, S.A. ("Terra") I am

currently an attorney with Telefonica International, SA. I submit this Declaration in support of

Terra's Motion to Dismiss filed in connection with the above-captioned matter. I have personal

knowledge of the facts and circumstances discussed herein and could testify competently to them if called to do so.

2. Terra was a Spanish corporation with its corporate office at Calle Nicaragua, No. 54, 08029 Barcelona, Spain, and its principal place of business in Madrid, Spain. Technically, Terra has been merged out of existence with its recent merger with Telefonica. Prior to the merger with Telefonica, Terra operated as a holding company for subsidiary companies located primarily in Spanish-speaking countries. Terra conducts no business of its own in Massachusetts. Terra does not actively solicit business in Massachusetts, and Terra has not sold any products or services in Massachusetts.

3. Terra does not have—and has not had—offices located in the United States. Terra does not own or lease real property, does not own personal property, and does not maintain a bank account in Massachusetts.

4. On or about October, 2000 Terra acquired Lycos, Inc., a Virginia corporation, in a stock transaction whereby Lycos, Inc. became a wholly-owned subsidiary of Terra. Lycos Inc. is an internet portal found at Lycos.com.

5. On or about October 5, 2004, Terra sold Lycos, Inc. to Daum Communications. Terra has not retained the liabilities, if any, of Lycos, Inc in connection with this litigation.

6. Terra also owned the stock of another corporation located in the United States— Terra Networks, U.S.A. based in Florida. At all times, that company operated as a separate legal entity with its own officers, employees, and bank accounts.

7. While Terra does operate a corporate website accessible throughout the world, that website is entirely a passive site, used for the dissemination of information only about itself and its affiliates. That website incorrectly lists an address in Waltham, Massachusetts as an

operational headquarters. That address was and remains the office of former subsidiary Lycos, Inc.

8.  I am aware that Terra had listed Lycos as an authorized agent for service of process in the United States in certain SEC filings relating solely to Terra's issuance of American depository shares (which allow investors in the U.S. to hold shares in non-U.S. companies). Terra has, however, never registered Lycos as an authorized agent for service of process in any State in the United States.

11.  During the time that Lycos, Inc. was a subsidiary of Terra, Lycos functioned as a separate legal entity with its own officers, employees, assets and bank accounts.

12.  Lycos, Inc. owned and operated the Raging Bull website alleged in the Complaint filed in the above referenced matter. The Raging Bull website was never controlled or maintained by Terra. Lycos, Inc. pursued its own business and had its own managers, its own accounts, its own facilities, and offers its own products and services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of August, 2005.

_____
DIEGO COLCHERO