**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
(Boston Division)

| | |
|---|---|
| UNIVERSAL COMMUNICATION ) | |
| SYSTEMS, INC. (A Nevada Corporation), ) | |
| MICHAEL J. ZWEBNER (individually) & ) | |
| Others Similarly Situated ) | |
| Plaintiffs ) | CIVIL ACTION |
| vs. ) | NO. 05-10435-REK |
| ) | CONSOLIDATED WITH |
| LYCOS INC. *dba* THE LYCOS ) | NO. 05-11172-REK |
| NETWORK & TERRA LYCOS, INC. ) | |
| / | |

CONSOLIDATED PROCEEDINGS

| | |
|---|---|
| UNIVERSAL COMMUNICATION ) | |
| SYSTEMS, INC. (A Nevada Corporation), ) | |
| MICHAEL J. ZWEBNER (individually) & ) | |
| Others Similarly Situated ) | |
| Plaintiffs ) | CIVIL ACTION |
| vs. ) | CASE NO. 05-11172-REK |
| ) | LEAD CASE |
| LYCOS INC. *dba* THE LYCOS ) | |
| NETWORK & TERRA NETWORKS, S.A.,) | |
| JOHN DOE #1 aka *"the_worm06"*, ) | |
| JOHN DOE #2 aka *"no_insiders"*, ) | |
| JOHN DOE #3 aka *"the_worm_06A"*, ) | |
| JOHN DOE #4 aka *"65175R"*, ) | |
| JOHN DOE #5 aka *"Henry_Johnson123"* &) | |
| JOHN DOE #6 aka *"quondo1"* ) | |
| JOHN DOE #7 aka *"Tobias95"* ) | |
| JOHN DOE #8 aka *"CrawleySmith"* ) | |
| Defendants ) | |
| / | |

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS [DE 66, 67]

Introductory Comment – The two cases before this Court are each predicated upon misconduct by the Defendant, LYCOS. The Lead Case, CASE NO. 05-11172-REK, is cast in terms of a stock manipulation/security fraud action (Count I). Each and every allegation of Count I of the Lead Case, Paragraphs 25-37, inclusive, are incorporated in each and every claim that follows. By contrast, the Trailing Case, CASE NO. 05-10435-REK, in cast in terms of a consumer fraud, based upon misleading statements made to induce subscribers to the LYCOS Network (Count I). Each and every allegation of Count I of the Trailing Case, Paragraphs 22-38, inclusive, and incorporated in each and every claim that follows.

Accordingly, all of the claims set forth in the Lead Case are materially different, both substantively, and in their contextual setting, and, thus, implicate distinct arguments regarding the immunity defense asserted by LYCOS. The instant Opposition is focused exclusively on the Lead Case, and their exemption from immunity under the Communication Decency Act – *47 USC §230* - ("CDA").

For all intents and purposes, the Plaintiffs have abandoned the Trailing Case. At the time of designation of the junior case as the Lead Case, the Court indicated at the time of entry of its Procedural Order, relative to designation of case priority, that whatever is left remaining in the Trailing case, after resolution of the Lead Case, would be dealt with at that time. Accordingly, the LYCOS Motion To Dismiss, is contrary to the Court's admonishment to counsel to simplify the issues, because of its commingling of the issues of the Trailing Case with the Lead Case, and, is thus otherwise inappropriate for the reasons stated in this paragraph.

1

## SUMMARY OF OPPOSITION

1.      The Defendants, Lycos, Inc., (also "LYCOS") is a necessary and indispensable party to this litigation, in that a disposition adverse to the other named Defendants, "...may (i) as a practical matter impair or impede...(Lycos)...ability to protect...(Lycos')...interest...", Rule 19(a)(2), Fed.R.Civ.Proc.. LYCOS is also indispensable, in that complete relief cannot be afforded to the Plaintiffs in its absence, Rule 19(a)(1). LYCOS is estopped to deny that it is either indispensable, or that its interests and the interests of the poster Defendants are coincident, or that its may be potentially adversely effected by a disposition of this litigation in favor of the Plaintiffs, and against the other named Defendants in this action, *See* Third Party Intervenor Lycos, Inc.'s Motion To Intervene With Supporting Memorandum Of Law, in *Universal Communications Systems, Inc. v. Dembovich et al*, Case No. 04-27383-CA-01 (Fla. DC, 11th Judicial Circuit), Annexed hereto as Exhibit "1"; and Third Party Intervenor Lycos, Inc.'s Memorandum Of Law In Support Of Its Motion To Dissolve Or Amend Final Judgment Of Injunction, in *Universal Communications Systems, Inc. v. Dembovich et al*, Case No. 04-27383-CA-01 (Fla. DC, 11th Judicial Circuit), annexed hereto as Exhibit "2".

2.      It is generally accepted that the CDA was enacted to overrule the N.Y. Supreme Court decision holding Prodigy Services, Corp. strictly liable[1], as a distributor of defamatory third party postings. *Zeran v. America Online, Inc. (AOL)*, 129 F.3d 327, 331 (4th Cir.1997). No one has suggested, until now, that the CDA, immunity accorded to an internet service provider, acting as a "publisher", is absolute, or that an internet service provider is accorded

---

[1] Prodigy argued that it could only be held liable from and the time it acquired knowledge of the defamatory postings. The Court rejected the Prodigy argument because Prodigy actively engaged in the screening of the postings and thus was treated as a "publisher" by the Court.

2

greater protection than afforded to traditional media defendants.    Not even the cases, cited by LYCOS in its Motion (@ 10), support this extreme position.

> Defendant (AOL) initially argued that it was entitled to <u>absolute</u> immunity as an interactive computer service.    At oral argument (on its Motion For Summary Judgment), however, Defendant conceded that <u>§ 230</u> would not immunize Defendant with respect to information Defendant developed or created by itself.    <u>In addition</u>, Defendant conceded that in an appropriate situation, an interactive computer service could also act as an information content provider by <u>participating</u> in the <u>creation or development</u> of information, and thus not qualify for <u>§ 230</u> immunity, *Ben Ezra, Weinstein* & Company 206 F.3d 980 ,985 @ FN4 (10th Cir. 2000)  (emphasis added)

Under the facts of this case, LYCOS is guilty of "culpable assistance" of the posters who misuse its Network, by virtue of the construct and operation of its Network.    More specifically, the construct of the LYCOS Network permits the enrollment of individuals, as "subscribers", under multiple pseudonyms/alias, to avoid their detection and discipline for violation of LYCOS regulations.    In addition, the operation of the LYCOS Network is geared to increasing user traffic through a calculated process of linking of the offensive materials on the UCSY message board on the Raging Bull site, to its other financial sites, e. g. Quote.Com, the principle LYCOS portal for its <u>financial</u> information and services.    The natural consequence of this linkage of the UCSY message board to financial sites, such as Quote.Com, results in pervasive dissemination of misinformation about the Plaintiffs, so as to lend itself to the manipulation (depression) of the UCSY stock price, by short sellers, who profit from such manipulation.

Clearly, the traditional media defendants are not exempt from the publication of an article in reckless disregard for truth, whether such article appears in a newspaper, or on a newspaper <u>web site</u>, which is hosted on the internet by the newspaper, *Norton v. Glenn*, 860 A.2d 24, (Pa. 2004), Cert. Denied, 125 S.Ct. 1700, 161 L.Ed.2d 539, 73 USLW 3462, 73 USLW 3566, 73 USLW 3569 (U.S.Pa. Mar 28, 2005) (NO. 04-979).    In its review of the U.S. Supreme Court cases relating to publisher liability, the *Norton* Court rejected the media defendants claim of

3

blanket immunity in the reporting of political subject matter, Id @ 56, citing *Herbert v. Lando*, 441 U.S. 153. 179, 99 S.Ct. 1635.

Plaintiff maintains that established principles of publisher liability, under prior Supreme Court decisions, have and remain unaffected by the enactment of CDA immunity; and, that an internet service provider's performance of a publisher's traditional functions, does not diminish its responsibility, or immunize the performance of such functions, in reckless disregard for the truth.

3.    No immunity is accorded, under the CDA, or for that matter under any other statute, because of an entity's status as an "internet service provider".    An internet service provider has immunity, under *47 USC §230(c)(1)& (2)* of the Communication Decency Act (also "CDA"), from liability for the content of postings appearing upon its network of web services in its exercise of "...(a) publisher's traditional editorial functions, such as deciding whether to publish, withdraw, postpone, or alter content." *Green v. America On-Line, Inc., (AOL)*, 318 F.3d 465. (3rd Cir. 2003); *Zeran v. America Online, Inc. (AOL)*, 129 F.3d 327, 330 (4th Cir.1997). Lest it be forgotten, the District Court in *Zeran*, held that the policy provisions, and the explicit exemptions contained in the CDA, reflects the Congress' unambiguous intent to retain state law remedies, except in event of clear conflict between those remedies and the CDA, *Zeran v. America Online, Inc.,* 958 F.Supp. 1124, 1131 (E.D.Va.1997), *affirmed* 129 F.3d 327, *certiorari denied* 118 S.Ct. 2341, 524 U.S. 937, 141 L.Ed.2d 712.    The *Zeran* District Court went on to find that the Congressional purpose in enacting the CDA was not to preclude State regulation of the internet, "...but rather to eliminate obstacles to the private development of blocking and filtering technologies capable of restricting inappropriate online content.", *Id.* @ 1131.

4

Where, as in this case, a service provider, such as LYCOS, is derelict in the construct and operation of its services, and engages in activities that

(a)     are outside or distinct from "a publisher's traditional editorial functions"[2];

(b)     are otherwise explicitly exempted from immunity under the CDA, (e.g. *47 UCS §230(c)(1), (2) & (3)*);

(c)     violates State law, the enforcement of which is not otherwise inconsistent with <u>all</u> of the policy objectives recited in *47 USC §230(b);* <u>or</u>

(d)     involves an activity "in concert or participation" with a party[3], who is not exempt under *47 UCS §230(c)(1)* and/or *(c)(2)*, <u>and</u> which is the subject to a validly entered injunction by Court of competent jurisdiction[4],

the qualified "Good Samaritan" immunity, accorded to internet service providers, by *47 USC §230(c)(1)& (2)*, is unavailing.

4.      The judicial interpretation of the scope of the immunity accorded under *47 USC §230(c)(1)& (2)*, is neither settled, nor has any Court previously applied a claim for "Good

---

[2]     The *Zeran* decision is often cited for its analysis of the immunity issue in terms of "publisher" and "distributor" liability.   This analysis and legal conclusion by the *Zeran* Court that a "distributor" was merely a subset of "publisher", has been characterized by legal scholars and commentators as a "questionable" and "verbal gymnastics". See also dissent in *Jane Doe, legal guardian for John Doe*, 783 So.2d 1010, 1018-21 (Fla. 2001), which is strongly critical of *Zeran* Court analysis, as contrary to (a) the legislative intent in the enactment of "internet service provider" immunity under *47 USC §230;* and, (b) Section 577, Restatement Of Torts (Second) which does not support the legal conclusion that a "distributor" is merely a subset of "publisher".

[3]     Lycos has also urged an interpretation of the DCA that would frustrate enforcement of an injunction under Rule 65(d), Fed. R. Civ. Proc., and otherwise undermine the "institutional integrity of the judiciary", which is contrary to established law, *Federal Trade Commission v. Productive Marketing, Inc.*, 136 F.Supp.2d 1096, 2001-1 Trade Cases P 73,305; *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 61 F.3 94 (1st Cir. 1995); Rule 1.610(c), Fla.R.Civ.Proc., *Temporarily Yours v. ManPower, Inc.*, 377 So.2d 825 (Fla. 1st DCA 1979)),

[4]     The interpretation of the CDA urged upon this Court by LYCOS would undermine the "institutional integrity of the Judicial Branch", See Separation Of Powers analysis in *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, (1986) 106 S.Ct. 3245, 92 L.Ed.2d 675, 54 USLW 5096; and, more recently, the dissent in *Mistretta v. United States*, 488 U.S. 361, (1989), 109 S.Ct. 647, 102 L.Ed.2d 714, 57 USLW 4102, 1 Fed.Sent.R. 377

Samaritan" immunity to the type of aggravated cyber stalking situation presented herein[5], See *John Doe et al. v. GTE Corp. et al.*, 347 F.3d 655, 659 (7th Cir. 2003), as to the 7th Circuit's voiced concerns[6] over prior judicial interpretation of *47 USC §230*; and Declaration by Plaintiff, Zwebner, filed concurrent herewith.    This *GTE* Court also specifically held that liability can attach to conduct of an internet service provider where it provides "culpable assistance" to a wrongdoer, or engages in action. e. g. by directing network traffic to the offensive site, which has the effect of "promot(ing) the wrongful venture's success", *Id.* @ 659..    Under the facts of this case. LYCOS is guilty of providing "culpable assistance" to the abusive posters, as a result of its Network subscription practices (permitting registration of an individual under multiple pseudonyms/aliases); and, has actively engaged in the "promotion" of the "UCSY" message board on the Raging Bull hosted site, through its linkage of the UCSY message board to other hosted sites on the Lycos Network.    Such "culpable assistance" is not in dispute!

    5.    As a threshold matter, LYCOS asserts that this Court is required to interpret the scope of a release contained within a Subscriber Agreement between the individual Plaintiff, ZWEBNER, and LYCOS.    The corporate Plaintiff, UCSY, is not a party to the LYCOS Subscriber Agreement with the individual Plaintiff, ZWEBNER; nor, do any of the claims asserted in the Amended Complaint arise out of the Plaintiffs use[7] of the LYCOS Network of

---

[5]  The statute has also never been interpreted relative enforcement of an injunction against an ISP (which is not a named party to a litigation) for acting in concert with a named "poster"-Defendant – which is precisely the issue pending before the State Courts in Florida, in *Universal Communications Systems, Inc. v. Dembovich et al*, Case No. 04-27383-CA-01 (Fla. DC, 11th Judicial Circuit)

[6]  The GTE Court voicing skepticism, as to the logic of prior judicial interpretation of a "good samaritan" statute that would "..induce ISPs to do nothing about the distribution of indecent and offensive materials via the internet...(and, at the same time)...end up defeating claims by victim of tortious or criminal conduct...", *GTE Corp* @ 660

[7]  LYCOS concedes in its Motion @ page 4, Subscriber Agreement "Indemnity & Release" clause, which limits the application of the Release to all claim arising out of "use" of the LYCOS Network.  As is patently obvious, none of

6

services_ but rather the use of the LYCOS Network by others. Accordingly, applying ordinary contract principles, all of the claims of the Plaintiff are outside the intended scope of the release, and remain unaffected by the release.

Even if the Court determines that the claims arise out of the either of the Plaintiffs' use of the LYCOS Network, Massachusetts Courts will not give effect to a release in an agreement between parties, if to do so would frustrate a public policy set forth in a statute enacted for the protection of the public. All of the statutory claims asserted by the Plaintiffs against LYCOS are based upon well-defined and recognized principles for advancement and protection of the public interest. Thus, the "release" asserted by LYCOS is unenforceable as a matter of law, *North American Consolidated, Inc. V. Kopka*, 644 F. Supp. 191, 194 (D. Mass 1986), citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895 (1945), and *Continental Corp. V. Gowdy, et al.* 283 Mass. 204, 217, 286 N.E. 244 (1933); Accord:, *Canal Electric Company, et al. v. Westinghouse Electric Corp.*, 406 Mass. 369, 548 N.E. 182 (1990)

6. As to the LYCOS contention that either the Lead and/or Trailing Cases arise out of, or simply involve, a breach of contract, not only is such assertion patently false, but even if accurate, is unavailing. Massachusetts Courts have held that facts supporting "deceitful conduct", based, for example, upon a claim under MGLA, Chapter 93A, are distinct from those facts which give rise to a breach of contract claim; and, contractual provisions, which purport to limit liability under such contract, do not bar recovery in circumstance involving "deceitful conduct", *Standard Register Co. v. Bolton-Emerson, Inc.* 38 Mass. App. Ct. 545, 649 N.E.2d 791, 794 (1995) citing *VMark Software, Inc. V. EMC Corp.*, 37 Mass App.Ct. 610, 619-621, 642

---

the claims are based upon the Plaintiffs use of anything, but rather the construct and operation of the LYCOS Network by LYCOS.

7

N.E. 587 (1994). citing *Bates v. Southgate*, 31 N.E. 2d 551 (1941) for the long standing principle that a party may not escape liability for misrepresentation by resort to a limitation of liability provision in a standard agreement. All of the claims asserted in both the Amended Complaint of the Lead Case, and in the original Complaint of the Trailing Case, involve "deceitful conduct". Accordingly, each case is clearly within the contemplation of the *Standard Register* decision, and, thus, Plaintiffs are not limited in their remedies to a claim for breach of contract.

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

I.    Supplemental Statement To LYCOS "Summary Of Facts" – The Lycos Network comprises a vast array of sites, which are more or less topic specific/focus upon a particular interest or discipline.   In addition, many of these specialized sites serves as "portals" to other related sites, by providing links to other sites on the LYCOS Network.   Under the facts of this case, LYCOS uses its QUOTE.COM site as a portal to promote the "UCSY" message board within its Raging Bull, by linking a user retrieved stock quotations on its QUOTE.COM financial services sites, to the corresponding stock specific message board on the Raging Bull site.   More specifically, when a stock quotation for "UCSY" is retrieved on Quote.Com, both the "UCSY" stock quotation and the following menu to featured links is displayed:

**Quote** | UCSYNews | UCSY 🐂Msg Brd | UCSYChart | UCSYLiveChart

The icon appearing after the ticker symbol "UCSY" is the "Raging Bull", and directly connects the user to the "UCSY" message board ("UCSY 🐂Msg Brd") on the Raging Bull web site for further information regarding the company.   Through this practice of "linkage" of the Raging Bull UCSY 🐂Msg Brd to other sites within the LYCOS Network, LYCOS increases traffic

8

within it Network and, thereby, directly profits[8] from such practice.    Accordingly, the LYCOS motivation in providing such linkage is based upon purely <u>selfish commercially objectives</u>, and provides "culpable assistance" to a wrongdoer, by directing network traffic to the offensive message board on it's Raging Bull site, thereby "promot(ing) the wrongful venture's success.", *John Doe et al. v. GTE Corp. et al.*, 347 F.3d 655, 659 (7th Cir. 2003).

II.    <u>The Complaint</u> – All of the Counts of the Amended Complaint are based upon a violation of a State[9] (Florida) or Federal statute, which implicate, and are rooted in furtherance of the protection of some public interest.    The explicit language of the CDA *(47 USC 230(b))* reflects Congress' clear and unambiguous intent to retain state law remedies, except in the event of clear conflict between those remedies and the CDA, *Zeran v. America Online, Inc., E.D.Va.1997, 958 F.Supp. 1124, 1131* affirmed 129 F.3d 327, certiorari denied 118 S.Ct. 2341, 524 U.S. 937, 141 L.Ed.2d 712.

<div align="center">Count I</div>

A.    <u>Count I</u> asserts a claim under Florida Securities Law, *F.S. §517.301*, for LYCOS knowingly facilitating the manipulation of the UCSY stock by the co-Defendants, through its dissemination of <u>its</u> compilation of false information through the LYCOS financial web sites.

1.    <u>The Amended Complaint</u> - The allegations specific to the actions of LYCOS are set forth in Paragraphs 35 & 36, inclusive of Count I of the Amended Complaint.

---

[8]    It is generally understood that the advertising revenues LYCOS can charge its sponsors is based upon the volume of traffic it can generate within various sites and environments within its Network.

[9]    LYCOS has asserted that Massachusetts not Florida law applies to the claims asserted in Counts I, III & IV – all statutory claims, based upon violations of Florida statutes, LYCOS Motion To Dismiss @ 12, FN[6].

2.    Florida Law - Florida Securities law makes the knowing dissemination of false

information, in a financial publication relating to a security, illegal.

517.301. Fraudulent transactions; falsification or concealment of facts

(1) It is unlawful and a violation of the provisions of this chapter for a person:

..(c)...to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

3.    Policy Objective Of CDA (47 USC 230(b))

(b) Policy

...(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services (emphasis added)

Currently, under the present construct and operation of the LYCOS Raging Bull web site,

there is no user control over the misinformation that is received, nor does LYCOS takes any

responsibility for the misinformation posted on its Network by a few irresponsible individuals.

Moreover, the unbridled practice of the posting of misinformation on the LYCOS Network is

fostered by LYCOS through its protection of such posters from detection, and its refusal to

comply with discovery of information that could lead to their identity and their punishment[10].

This LYCOS protection of the identity of such individual subscriber information remains in

place, even when such subscriber conduct is intended for an illegal purpose[11].   Accordingly, the

---

[10]   It is emphasized that the LYCOS Privacy Policy with its subscribers explicitly waives the disclosure of subscriber registration information upon the issuance of subpoena, LYCOS "Privacy Policy", Paragraph 5, annexed hereto as Exhibit "3"; See also Zwebner Declaration @ ppgh. 9

[11]   The LYCOS Subscriber Agreement acknowledges certain categories of "Prohibited Conduct", which are inclusive of the abuse, harassment, cyber stalking and stock manipulation, that is the subject matter of the Plaintiffs' claims. If LYCOS does not police its own Network, or more critically, does not structure the subscriber registration process to allow for it to effective police its own Network, it cannot take refuge in the CDA, to the extent its own policies conflict with the policies of the CDA.

10

LYCOS construct and operation of its Raging Bull web site conflicts with the CDA policy set forth above.

The foregoing abuses, and failure to comport the operation of the LYCOS Network with the Congressional purpose in the enactment of the CDA, as stated in the above policy objective of the CDA, is the direct result of the LYCOS <u>structuring of its registration process</u> in a manner by which its registered users are permitted to subscribe, and re-subscribe, to its Network under "<u>multiple pseudonyms/alias</u>" (Paragraph 36, Amended Complaint).   It is emphasized that these <u>same</u> abuses continue by these <u>same</u> few individuals, under different pseudonyms/alias, even after one of these registered users has had his prior subscription cancelled by LYCOS for engaging in the repeated acts of misconduct, as set forth the Amended Complaint, *See* also Zwebner Declaration @ ppghs 5-6, annexed hereto as <u>Exhibit "4"</u>

There in nothing in the exercise of a "publisher's traditional editorial functions", under the 4th Circuit decision in *Zeran*, which can be said to condone, encourage, or justify the foregoing LYCOS practices and abuses[12].   The Court is reminded of the District Court decision in *Zeran*, as to the Congressional purpose in the enactment of the CDA not to pre-empt State law, *Zeran v. AOL*, 958 F.Supp. @ 1131; <u>and</u>, the 7th Circuit decision in *GTE, Doe et al. v. GTE Corp. et al.*, 347 F.3d @ 569, which opined that liability can attach to an internet service provider "culpable assistance" to a wrongdoer <u>or</u> by its "promot(ing) the wrongful venture's success"[13].    In this case, such practices and abuses are not only contrary to Congressional

---

[12] *Norton v Glenn*, 860 A.2d 48 (Pa. 2004)

[13] c.f. *Metro-Goldwyn-Mayer (MGM) Studios, Inc. v. Grokster*, 125 S.Ct. 2764 (2005) - Supreme Court reversal of Circuit Court decision upholding statutory immunity under the copyright law, based upon the software provider furnishing assistance to infringer, which was tantamount to inducing infringement of MGM copyright.    The Supreme Court went on to direct the District Court to entertain the MGM Motion For Summary Judgment where there is apparent evidence sufficient of an unlawful objective to conclude, as a matter of law, that the software

11

objectives and policy considerations, which form the basis of the CDA, but also fosters the dissemination of misinformation to both LYCOS subscribers and non-subscribers on the LYCOS Network.

4.     Explicit Exemption From Immunity - *47 USC §230(e)(1)* -The Florida Securities law is based, in large measure, upon the Federal Securities Act of 1933 and the Securities Exchange Act of 1934.  The objective of these laws are to protect the public from being mislead as to its investment decisions.    The stock manipulation practices, sought to be addressed in Count I, are recognized as illegal under both Federal and State law.   Clearly the enforcement of the Securities laws is consistent, with the exemption under *47 USC §230(e)(1)* from the immunity accorded by the CDA.

(e) Effect on other laws

(1) No effect on criminal law

> Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, or any other Federal criminal statute.(emphasis added)

5.     The Plaintiffs' Claim Under Count I Has Not Been Released - The enforcement of the Florida Security laws is based upon protection of the public interest in orderly securities markets, and the prevention of the distortion thereof through the systematic creation and dissemination of misinformation calculated to manipulate the securities markets.    Accordingly, the release asserted by LYCOS, as preclusive of Count I of the Amended Complaint, is ineffective and unenforceable, as contrary to public policy, *North American Consolidated, Inc. V. Kopka*, 644 F. Supp. 191, 194 (D. Mass 1986), citing *Brooklyn Savings Bank v. O'Neil*, 324

---

provided intended its product to be used for an illegal purpose, notwithstanding that there were substantial legitimate uses for the same software.

12

U.S. 697, 704, 65 S.Ct. 895 (1945), and *Continental Corp. V. Gowdy, et al.* 283 Mass. 204, 217,

286 N.E. 244 (1933); Accord:, *Canal Electric Company, et al. v. Westinghouse Electric Corp.*,

406 Mass. 369, 548 N.E. 182 (1990).   Quoting "well settled principles in Massachusetts", the

*Kopka* Court recognized, reaffirmed and applied the following standard of review for

determination of the effectiveness of a waiver of rights contained in a private agreement:

> Where laws are enacted on grounds of general policy, their uniform application
> for the protection of all citizens alike is desirable, and an agreement to waive their
> provisions is generally declared invalid, but where they are designed solely for the
> protection of rights of private property, a party who may be affected can consent to a
> course of action, which if taken against his will, would not be valid. *Kopka @* 194

When the Supreme Judicial Court Of Massachusetts was requested to review a similar

issue four years later in 1990, upon certification of a question of State law from the same Federal

District Court, it reaffirmed the "well settled principles in Massachusetts" law quoted above

from the *Kopka* decision, *Canal Electric Company, et al. v. Westinghouse Electric Corp.*, 406

Mass. 369, 548 N.E. 182 (1990)   In holding that such Limitation Of Liability in *Canal Electric*

provision to both enforceable against a claimant, and preclusive of a claim under MGLA 93A,

Section 11 (commercial claim), the Court indicated that the enforcement of such provision did

not frustrate the public policy of the statute, *Id. @* 378-79 -- the frustration of the public policy

underlying a statutory claim being the "touch stone" for the enforceability, *vel non*, of a release.

   6.    Count I States A Legally Cognizable Claim Under Florida Securities Law - The

allegations of the Amended Complaint comport in substance to the pleading requirements of

Florida securities law.   LYCOS has not challenged the sufficiency of the pleading allegations

under Florida law.   Florida recognize a private right of action under Florida securities law to

both seek the enforcement thereof, in the nature of an injunction, and to obtain monetary

compensation for damages. *§517.241(3)*, Fla. Stats..   There is nothing inconsistent between the

13

enforcement of Florida securities law against LYCOS and the immunity accorded under the CDA. Insofar as LYCOS' own subscriber agreement recognizes the illegality in the use of its Network to engage in stock manipulation, it is estopped to contend that private enforcement of *§517.241(3)*, Fla. Stats., conflicts with the objects of the CDA. Accordingly, the LYCOS Motion To Dismiss Count I should be denied.

## Count II

B.     Count II asserts a private right of action against LYCOS for violation of the Federal Law Anti-Cyber Stalking Law, specifically a claim under *47 USC §223*, for both damages and to enjoin[14] LYCOS from knowingly permitting the use of its services by another, to send anonymous threatening and abusive communications to the Plaintiffs (Federal Anti-Cyber Stalking).

*Cort* Factors Analysis - An analysis of the *47 USC §223* confirms (a) the Plaintiffs are explicitly within the "class of persons" for whose special benefit the statute was intended to protect – a stalking victim; (b) the statute explicitly contains "duty creating language" that is directed to an entity in the position of LYCOS – the service provider and (c) the assertion of a private right of action is consistent with the underlying purpose of the legislative scheme – to penalize the stalker, *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080 (1975); See also *Shotz v. City Of Plantation, et al.*, 344 F.3d 1161, 1167-68 (11th Cir. 2003), citing *Love v. Delta Air Lines*, 310 F. 3d 1347 (11th Cir. 2002). Because of the pervasiveness of this problem, the recognition of "private attorney general status" for the Plaintiffs is both necessary and appropriate, under the

---

[14]  Count II includes a damage demand, based upon the LYCOS "culpable assistance" in "promot(ing) the wrongful venture's success" (Count I), and thus is premised upon LYCOS having forfeited any right or claim to immunity. Should the Court find that CDA immunity preclude recovery of damages, then Plaintiffs would still be entitled to prospective injunctive relief against LYCOS sought in Count II..

facts of this case, to effectively curtail such abuses – even if only to extent of allowing a private party to obtain injunctive relief for cyber stalking– as in the case of Florida law, *§784.046*, Fla. Stats..

This Federal statute explicitly recognizes a "cause of action" in favor of an individual against a private party who engages in cyber stalking of such individual, or against the owner of a telecommunication facility, which knowingly permits the use such telecommunication facility to harass or abuse of such individual, *47 USC 223(f)(1)*. Absent any qualifying language, the phrase "cause of action" is to be accorded its generally accepted and ordinary meaning. Within the context of this statute, the phrase "cause of action" is clearly inclusive of a violation of a right or duty owed to an individual, which is recognized at law or in equity (a private claim)[15], See *Proctor v. Gissendaner*, 579 F. 2d 876, 880 FN (5) (5th Cir. 1978) interpreting the phrase "cause of action".

The Plaintiffs interpret *47 USC 223(f)(1)* as supporting their contention that an exemption from regulation under this statute is dependent upon an internet service provider conforming its conduct to the requirements of the CDA.

> (1) No cause of action may be brought in any court or administrative agency against any person on account of any activity that is not in violation of any law punishable by criminal or civil penalty, and that the person has taken in good faith to implement a defense authorized under this section or otherwise to restrict or prevent the transmission of, or access to, a communication specified in this section. (emphasis added)

It need not be belabored, that the construct and operation of the LYCOS Network does not comport with the performance of "a publisher's traditional functions" under the CDA. This is the only defense, "authorized under this section or otherwise", that would defeat a cause of

---

[15]   This reference to a "cause of action" within this statute is in sharp contrast to other language appearing in the statute which subjects a violator to criminal prosecution.

15

action against LYCOS for violation of this statute.    Accordingly, LYCOS construct of its site and conduct in the operation of such site, are subject to regulation under *47 USC 223.*

The scope of the *47 USC 223* is inclusive of emails and other forms of <u>anonymous</u> electronic communication transmitted over the LYCOS Network, See *American Civil Liberties Union v. Reno.* E.D.Pa.1996, 929 F.Supp. 824, affirmed 117 S.Ct. 2329, 521 U.S. 844, 138 L.Ed.2d 874 – holding that "a computer modem is a telecommunications device under the Communications Decency Act (CDA)"

1.    <u>The Amended Complaint</u> – The allegations specific to the actions of LYCOS, under Count II, are set forth in Paragraphs 39 to 42, inclusive.

2.    <u>Policy Objective Of CDA – 47 USC 230(b)</u> – Enforcement of the Federal anti-cyber stalking statute is in harmony with the policy objective of the Communications Decency Act ("CDA")

3.    <u>Explicit Exemption From Immunity – 47 USC 230(e)(1)</u> -

*47 USC §230(e)(1),* provides, in pertinent part, that

Nothing in this section (*47 USC §230*) shall be construed to impair the enforcement of section 223 or 231 of this title…or any other Federal criminal statute, *47 USC §230(e(1)*

See also *Perfect 10, Inc. v. CCBILL, LLC, et al., 340 F.Supp.1077, 1107 (C.D. Calif 2004)*

4.    <u>LYCOS Is Not An "Interactive Computer Service" With The Contemplation Of</u> <u>47 USC §230(f)(2)</u> – At the outset, LYCOS acknowledges that the exemption provided in 47 USC 223 is <u>tied to</u> "'Good Samaritan' liability protections of new section 230", Motion To Dismiss @ 18.  Conversely, where "'Good Samaritan'" liability protections" do not apply, no exemption from regulation under 47 USC 223 is accorded to LYCOS.   More specifically, an "interactive computer service" within the contemplation and meaning of *47 USC §230(f)(2)*, is

16

limited to an entity that is eligible for statutory immunity and one to which immunity can be accorded, under the CDA.    Conversely, LYCOS by engaging in conduct that is outside a "publisher's traditional editorial functions", LYCOS has forfeited such protections, and, thus, it's operations do not fall within the ambit of CDA.  It is once again emphasized that immunity does not attach simply as a result of entity being characterized, or to its assertion of its status, as an "internet service provider", but rather is limited to its actions in the construct and operation of its site.   Accordingly, LYCOS is not exempt from regulation under *47 USC §223*, any more than the other named Defendants, who utilize the internet to make anonymous, threatening communications to the Plaintiffs.

    5.    Count II States A Legally Cognizable Claim Under 47 USC §223 - The explicit language of *47 USC §223(f)(1)*[16] subjects "any person" to a "cause of action" in "any court" for conduct specified in this statute, unless[17] "...that...person has taken in good faith (measures) ...to restrict or prevent the transmission of, or access to, a communication specified in this section." (emphasis added)   LYCOS relies upon two unreported decision as precedent for its challenged to the sufficiency of Count II.   Neither case provides an incisive analysis of the statute, and simply state a legal conclusion.    The legislative history referenced by LYCOS (Motion (@ 18) is not otherwise inconsistent with a finding that the explicit reference to a "cause of action" in language of the statute implicates private enforcement.   Accordingly, the LYCOS Motion To Dismiss Count II should be denied.

---

[16]    It is noted that the Defendant have also made reference to this same provisions on page 15 of their Memorandum.    The Defendants' quotation purports to be a complete reproduction of this sub-section (f)(1), however, has obviously omitted the language set forth herein.  Plaintiffs regard this practice as both misleading and unprofessional.

[17]   The statute employs a "double negative" in the defining the condition under which such claim may be brought

17

## Count III

C.    Count III asserts a claim under the Florida Anti-Dilution Statute, *§495.151*, Fla.
Stats., for unauthorized commercial use of the corporate Plaintiff's "UCSY" trademark in a
manner which is likely to cause injury to the corporate Plaintiff's business reputation.

1.    The Amended Complaint – The allegations specific to the actions of LYCOS,
under Count III, are set forth in Paragraphs 55 to 60, inclusive.

2.    Florida Law – Florida anti-dilution law makes the unauthorized use of the
trademark of another actionable, where such unauthorized use is likely to injure the business
reputation of the trademark owner. Chapter *495.151 et seq.*, Florida Statutes, entitled "Injury to
business reputation: dilution:" provides in pertinent part that

> Every person, association… adopting and using a mark, (or) trade name…may proceed
> by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin
> subsequent use by another of the same or any similar mark, (or) trade name…if it
> appears to the court that there exists a likelihood of injury to business reputation, or
> dilution of the distinctive quality of the mark (or) trade name… notwithstanding the
> absence of competition between the parties or of confusion as to the source of goods or
> services.

The protection afforded to trademark owners in Florida, under the Florida Anti-Dilution
statute, is based upon the Florida legislature's desire to protect the trademark owner's investment
in his trademark; and, provides a remedy against the possible misuse thereof by others, to the
detriment of the business reputation of the trademark owner, *Four Seasons Hotels & Resorts,
B.V. et al. v. Consorcio Barr, S.A.*, 267 F.Supp 2d 1268, 1333 (S.D. Fla. 2003). The Florida
statute is dissimilar from the Federal anti-dilution statute, in that it not limited to enforcement of
rights in a "famous" trademark *Id.*

3.    Policy Objective Of CDA (47 USC 230(b) – The claim asserted in Count III of

18

the Amended Complaint is in harmony with the policy objectives of the CDA.

4.    Explicit Exemption From Immunity – (47 USC 230(e)(2))

(e) Effect on other laws

...(2) No effect on intellectual property law

Nothing in this section shall be construed to limit or expand any law
pertaining to intellectual property.

There is no dispute or question that the Plaintiffs' "UCSY" trademark is "intellectual
property" within the contemplation and meaning of the foregoing exemption of the CDA, *Perfect
10, Inc. v. CCBILL, LLC*, 340 F.Supp. 2d 1077, 1107 (C.D. Calif. 2004).

5.    The Plaintiffs Claim Under Count III Has Not Been Released – The asserted
release is ineffective to bar a claim under Count III of the Amended Complaint, for the same
reasons stated herein above, which respect to Counts I & II – the claim is not derivative from the
Plaintiffs' use of the LYCOS Network, and/or enforcement of such release is contrary public
policy.   Moreover, the corporate Plaintiff, UCSY, the trademark owner, never signed any
Subscriber Agreement with LYCOS.   Accordingly, the Plaintiff, UCSY, did not agree to be
bound by the terms of the Subscriber Agreement, nor can the parties to such Agreement have
intended it to apply to a non-signatory.

6.    Count III States A Legally Cognizable Claim Under §495.151, Fla. Stats. – The
allegations of the Amended Complaint comport in substance to the requirement of Florida anti-
dilution law.   LYCOS has not challenge the sufficiency of the pleading allegations of Count III
under Florida law.   The Courts of Florida recognize a right in a trademark owner to protect his
trademark property from the unauthorized use by others, even in the absence of competition,

19

*Four Seasons Hotels & Resorts, B.V. et al. v. Consorcio Barr, S.A.* @ 1333   LYCOS is not exempt, under the CDA, from the enforcement of the Florida anti-dilution law by the Plaintiff, UCSY, to prevent the LYCOS unauthorized commercial use of the "UCSY" trademark.

LYCOS asserts, without any legal support, that the "choice of law" rule for interpretation of the Florida anti-dilution statute, dictates that application of Massachusetts law, Motion To Dismiss. @ 12, FN[6].   Because of the intellectual dishonesty evident upon the face of this argument, neither explanation nor response is required.

Insofar as the unauthorized commercial use of the "UCSY" mark by LYCOS does not involve portraying the Plaintiff, "UCSY", as the "object of parody", but rather comprises a compilation of business information relating to the "UCSY", knowing the same to be both inaccurate and misleading (an "injurious falsehood" – Section. 25, Restat. Unfair Comp.), the precedent relied upon by LYCOS, in support of dismissal of this Count IV, is unavailing.  More specifically, the *LL Bean* decision, because it obviously involves a dissimilar set of facts and different state statute, (Maine anti-dilution statute), is neither controlling nor persuasive precedent.   Moreover, the standards applicable to a cause of action under the Florida anti-dilution statute are less demanding than under the Federal anti-dilution statute, *Four Seasons Hotels & Resorts, B.V. et al. v. Consorcio Barr, S.A.* @ 1333.    Accordingly, the LYCOS reliance upon the California District Court decision in *Bally Total Fitness Holdings Corp. v. Faber*, which based its decision upon the Federal anti-dilution statute, is misplaced, (Motion To Dismiss @ 14).

Accordingly, for all of the above reasons, the LYCOS Motion must be denied as to Count III.

20

## Count IV

D.     Count IV asserts a claim under *§784.046, Fla. Stats.,* for violation of the Florida Anti-Stalking Law.     It is noted that the Plaintiffs' Amended Complaint has erroneously designated this claim under *F.S. §784.048* instead of *F.S. §784.046* – an obvious typographical error.

1.     The Amended Complaint - The allegations specific to the actions of LYCOS are set forth in paragraphs 65-68, inclusive, of Count IV of the Amended Complaint.

2.     Florida Law – The Florida anti-stalking law makes it unlawful to cyberstalk a person within the State of Florida.  A victim in Florida of cyberstalking can privately petition a Court in Florida, under *§784.046, Fla. Stats.,* to restrain acts of "repeated violence".

> (1) As used in this section, the term:
>
> > (a) "Violence" means any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person.
>
> > (b) "Repeat violence" means two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member.
>
> (2) There is created a cause of action for an injunction for protection in cases of repeat violence....

Chapter 784.048. Fla. Stats.. expanded the a definition of "stalking" to include the use of the internet.

> (d) "Cyberstalk" means to engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication. directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose.

3.     Policy Objective Of CDA (47 USC 230(b)(5))-

21

(b) Policy

It is the policy of the United States--

> (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

4.    Explicit Exemption From Immunity Under CDA (47 USC 230) -

(e) Effect on other laws

(3) State law

> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section...

5.    The UCSY Claim Against Lycos Has Not Been Released – As noted previously, and once again emphasized, Massachusetts Courts will not give effect to a release in an agreement between parties, if to do so would frustrate a public policy set forth in a statute enacted for the protection of the public. The enforcement of the Florida anti-stalking law is deeply rooted in "public policy' concerns for the protection of individuals from repeated assaults and intrusions upon their privacy; and, the realization that only limited public resources are available to protect such victims from such threats and harassment.

6.    Florida Law Recognizes A Private Right Of Action To Enforce The Criminal Anti-Stalking Law – The Courts in Florida recognized a private right of action to enjoin "repeated violence" (by cyberstalking) over the internet, *§784.046, Fla. Stats..* The procedure adopted under the Florida Anti-Stalking statute is very simply, and requires submission of an affidavit in support of a petition for injunctive relief. The Plaintiffs are submitting concurrent herewith an Declaration by the individual Plaintiff, Zwebner, Exhibit "4", which documents the aggravating circumstances which entitle him to the relief requested in Count IV.

22

7. Count IV States A Legally Cognizable Claim Under §784.046, Fla. Stats - The allegations of the Amended Complaint comport in substance to the pleading requirements of Florida anti-stalking law. LYCOS has not challenged the sufficiency of the pleading allegations under Florida law. The Florida anti-stalking law comports in its objective with *47 USC. §223*, the Federal Anti-Stalking law. Florida law does not exempt internet service providers from enforcement of *§784.046, Fla. Stats.*. The Florida anti-stalking law is otherwise consistent with the Federal objectives of the CDA, as reflected in the policy objectives of the CDA reproduced above. Accordingly, the LYCOS Motion must be denied as to Count IV.

## LYCOS Is Indispensable To This Litigation

E. This Litigation Cannot Proceed Without A Preliminary Determination By This Court As To Application Of CDA Immunity To The Enforcement Of An Injunction Under Rule 65(d) - LYCOS does not want out of this case because it has an indivisible/common interest *vis-à-vis* its subscribers, even the subscribers who repeatedly violate its own Terms & Conditions of use of the LYCOS Network. This fact is not in dispute, as is evident from the pleadings filed by it in ongoing pending State court litigation in Florida – Exhibits "I" & "II" annexed hereto.

1. Rule 19 Precludes Dismissal - Because of the LYCOS intervention in the pending State Court litigation, and its assertion of the same CDA immunity to enforcement of the Injunction against under the Florida equivalent of Rule 65(d), Fed.R.Civ.Proc., the State Court has stayed its enforcement of the Injunction against LYCOS, pending this Court's determination of the application and scope of CDA immunity, if any, to be to LYCOS.

2. CDA Immunity Does Not Preclude Enforcement Of An Injunction Against LYCOS Under Rule 65(d) - This Court shall be confronted with similar issues, as the State Court

23

in Florida, should it find that Plaintiffs are entitled to an injunction against one or more of the named Defendants who are also LYCOS Network subscribers. As is evident, an interpretation of the CDA, which would preclude enforcement of an injunction against LYCOS under Rule 65(d), would frustrate the inherent powers of the Federal courts to insure compliance with its orders and, otherwise undermine the "institutional integrity of the Judicial Branch", See Separation Of Powers analysis in *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, (1986) 106 S.Ct. 3245, 92 L.Ed.2d 675, 54 USLW 5096; and, more recently, the dissent in *Mistretta v. United States*, 488 U.S. 361, (1989), 109 S.Ct. 647, 102 L.Ed.2d 714, 57 USLW 4102, 1 Fed.Sent.R. 377.

### Summary & Conclusion

The LYCOS Motion To Dismiss should be denied because LYCOS

(a)    does not have CDA immunity, as a result of LYCOS of "culpable assistance" of the posters who misuse its Network, to be held to account for the harm caused to the Plaintiffs ;

(b)    has an indivisible/common interest *vis-à-vis* its subscribers Defendants, in the propagation of misinformation, relating to the Plaintiffs, on its Network the Plaintiffs,

(c)    is an "indispensable" party, in whose absence complete relief cannot be accorded to the Plaintiffs, Rule 19, Fed.R.Civ.Proc.. .

Respectfully,

John H. Faro, Esq. (BBO #159260)
Faro & Associates
44 W. Flagler Street, Suite 1100
Miami, FL 33130
Phone (305) 424-1112
Fax    (305) 424-1114

24

EXHIBIT "1"

25

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY

GENERAL JURISDICTION

CASE NO: 04-27383-CA-01

UNIVERSAL COMMUNICATION
SYSTEMS. INC.. and AIRWATER CORP..

Plaintiffs.

v.

PEDRO DEMBOVICH and ROBERTO
VILLASENOR. a.k.a worm_06. scri_852.
worm_06A. no_insiders. quondo1. 65175R.
Blacksheep9110. ovejanegra0. Blacksheedip.
Doggonebad911. pinkherring. ovanegra0.
Busholini. silvesterca. and wolfbitsser0.

Defendants.

_____/

## THIRD-PARTY INTERVENOR LYCOS, INC.'S
## MOTION TO INTERVENE WITH SUPPORTING MEMORANDUM OF LAW

Lycos. Inc. ("Lycos"). hereby respectfully moves this Court to allow Lycos to intervene

in this matter so that it may present its objections to the Final Judgment of Injunction issued on

March 7, 2005. For the reasons set forth at length in Lycos' Motion to Dissolve or Amend the

Final Judgment of Injunction. filed today with this Motion to Intervene. Lycos respectfully

submits that the Final Judgment of Injunction is invalid and unconstitutional as a matter of law.

Thus. Lycos is taking the affirmative act of intervening in order to avoid any contempt

proceeding that may flow from the Final Judgment of Injunction. Accordingly, as presented

more fully in the below Memorandum of Law. Lycos requests that this Court issue an order

granting Lycos' Motion to Intervene.

## I

## RELEVANT HISTORY[1]

Lycos is a Massachusetts company that, among other things, operates Internet message boards on which individuals may post statements, comments, and other information about companies and their officers and directors. See Affidavit Of Jaime Carney In Support Of Lycos, Inc.'s Motion To Dissolve Or Amend The Final Judgment Of Injunction ¶¶ 1-3 ("Carney Affidavit")[2]. These Internet message boards are accessible to the public, and act as a kind of electronic town square or park, wherein free speech flourishes. One of the many Internet websites that Lycos supports is www.ragingbull.com. See Carney Affidavit ¶ 3. The Raging Bull website includes a collection of message boards that, among other things, allows investors and other members of the public to obtain and disseminate information about publicly traded corporations. See Carney Affidavit ¶ 3. There are over one million registered users of the Raging Bull website. See Carney Affidavit ¶ 4. A topic of conversation on Lycos' Raging Bull message board is Plaintiff Universal Communications Systems, Inc. See Carney Affidavit ¶ 3. The Plaintiffs, Universal Communications Systems, Inc., and Airwater Corp., filed the Complaint in this case on December 28, 2004, seeking $100 million in damages and injunctive relief against two Defendants, Pedro Dembovich and Roberto Villasenor. The Defendants did

---

[1] A more complete recitation of the factual history of this and related matters is provided in Third-Party Intervenor Lycos, Inc.'s Memorandum Of Law In Support Of Its Motion To Dissolve Or Amend The Final Judgment Of Injunction, and the Affidavit Of Jaime Carney In Support Of Lycos, Inc.'s Motion To Dissolve Or Amend The Final Judgment Of Injunction, both filed today.

[2] A fax copy of the Carney Affidavit is being filed with this motion. The original affidavit will be filed with the Court as soon as possible.

not answer the Complaint. After a hearing, an Order of Default was entered on February 14, 2005, and after a second hearing, a Final Judgment of Injunction was entered on March 7, 2005. That injunction provides, among other things, that:

> Anyone, or any entity, with notice of this judgment which republishes any past internet posting made by Defendants or any of Defendant[s'] alias[es] (or any other alias of Defendants known to said persons or entities) which identifies Plaintiffs or Michael Zwebner and/or which aids and/or assists either Defendant in violation of this order is also in violation and could be held in criminal and/or civil contempt.

Final Judgment of Injunction at 2-3 (dated March 7, 2005) (emphasis added).

Subsequently, by letter dated March 11, 2005, the Plaintiffs' attorney, Robert H. Cooper, Esq., sent a copy of the Final Judgment of Injunction to Lycos, Inc., seeking to put Lycos on notice of the injunction and thereby make Lycos subject to the terms of the injunction. See Carney Affidavit ¶ 5 and Exhibit A thereto. Presumably, the Plaintiffs intend to institute a contempt proceeding against Lycos for violating the injunction. Lycos files this Motion to Intervene so that it may obtain relief from the Final Judgment of Injunction.

## II

## LEGAL STANDARD

Intervention is controlled by Florida Rule of Civil Procedure 1.230, which provides:

> Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.

Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505 (Fla. 1992), in turn, sets out the process for determining whether intervention is appropriate under Rule 1.230:

> First, the trial court must determine that the interest asserted is appropriate to support intervention. [Second, o]nce the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention.

-3-

Union Cent. Life Ins. Co., 593 So.2d at 507 (citation omitted).

Turning to the first part of the process, the test to determine what interest entitles a party

to intervene is set forth in Morgareidge v. Howey, 78 So. 14, 15 (Fla. 1918):

> [T]he interest which will entitle a person to intervene . . . must be in the matter in
> litigation, and of such a direct and immediate character that the intervenor will
> either gain or lose by the direct legal operation and effect of the judgment. In
> other words, the interest must be that created by a claim to the demand in suit or
> some part thereof, or a claim to, or lien upon, the property or some part thereof,
> which is the subject of litigation.

As for the second part of the process, "In deciding this question the court should consider a

number of factors, including the derivation of the interest, any pertinent contractual language, the

size of the interest, the potential for conflicts or new issues, and any other relevant

circumstance." Union Cent. Life Ins. Co., 593 So.2d at 507-08.

Case law establishes that "[i]ntervention should be liberally allowed." See, e.g., National

Wildlife Federation Inc. v. Glisson, 531 So.2d 996, 998 (Fla. App. Ct. 1st Dist. 1988) (citing

Miracle House Corp. v. Haige, 96 So.2d 417 (Fla. 1957)). The standard of review of an order

granting intervention is abuse of discretion. See, e.g., Hausmann ex rel. Doe v. L.M., 806 So.2d

511, 513 (Fla. App. Ct. 4th Dist. 2001) (citing State, Dep't of Legal Affairs v. Rains, 654 So.2d

1254, 1255 (Fla. App. Ct. 2d Dist 1995)).

## III

## ARGUMENT

### A.   Lycos' Interest In This Matter Supports Its Intervention

Lycos, by virtue of being subject to the Final Judgment of Injunction, has an interest in

this matter that makes intervention appropriate. See Union Cent. Life Ins. Co., 593 So.2d at 507.

As Morgareidge, 78 So. at 15, explains, "the interest which will entitle a person to intervene . . .

-4-

must be in the matter in litigation. and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."

Here. it is clear that the Plaintiffs believe Lycos falls under the reach of the Final Judgment of Injunction because it applies. on its face. to "[a]nyone. or any entity. with notice of this judgment . . . ." Final Judgment of Injunction at 2. Plaintiffs have sent a letter to Lycos purporting to put it on notice and bind Lycos by the injunction. Therefore. if Lycos fails to comply with the injunction. Lycos is at risk of being "held in criminal and/or civil contempt." Id. at 3. Thus. because Lycos operates an Internet message board where the public is free to discuss Plaintiff Universal Communications Systems. Inc.. Lycos is at risk of violating the injunction. Lycos, as a result. "will . . . lose by the direct legal operation and effect of the judgment." Morgareidge, 78 So. at 15. Accordingly. Lycos has precisely the type of interest that makes intervention appropriate.

## B. This Court Should Exercise Its Sound Discretion To Permit Lycos To Intervene

There is no good reason to deny intervention. and every reason to allow it. First, the injunction entered in this matter came as the result of a default judgment. and therefore, the Court was not provided with the benefits of opposing argument through the workings of the adversary system. Allowing intervention will permit Lycos to present its arguments as to why the Final Judgment of Injunction is invalid and unconstitutional as a matter of law.

Second. the application of the Final Judgment of Injunction to a provider of an interactive computer service. such as Lycos. is in direct conflict with the policies of the United States government. In particular. the United States Congress has made findings that the Internet and interactive computer services offer "a forum for true diversity of political discourse, unique opportunities for cultural development. and myriad avenues for intellectual activity." 47 U.S.C.

§ 230(a)(3). Accordingly, it is "the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation. " 47 U.S.C. § 230(b)(2) (emphasis added). The substantive provisions of the federal Communications Decency Act, 47 U.S.C. §230, have implemented this policy. Allowing Lycos to intervene will allow the Court to consider and comply with these important federal policies and law that encourage and protect the growth of the Internet.

Third, if Lycos is allowed to intervene, the intervention will be "in subordination to, and in recognition of. the propriety of the main proceeding," Fla. R. Civ. P. 1.230, since the intervention will be limited to challenging the legality, scope, and content of the Final Judgment of Injunction.

Finally, allowing Lycos' Motion to Intervene is an appropriate and sound decision, as it will enable Lycos to present its arguments in an orderly fashion, in the context of an original litigation concerning the merits of the injunction, and not in the context of a costly and extraordinary hearing concerning contempt. It will therefore also advance judicial economy.

Balanced against these compelling reasons to allow Lycos to intervene, any opposition to intervention is without merit. By sending Lycos a copy of the Final Judgment of Injunction, Plaintiffs have made clear that they seek to bind Lycos by the outcome of this lawsuit. There can thus be no argument by Plaintiffs that Lycos should be barred from being a party to this case.

IV

## CONCLUSION

WHEREFORE, for the foregoing reasons. Lycos respectfully requests that this Court

issue an order:

1) granting Lycos' Motion to Intervene: and

2) granting any other relief this Court deems just and mete.

Dated: March 29, 2005

Respectfully submitted.

BLACK. SREBNICK. KORNSPAN & STUMPF. P.A.
*Attorneys for Lycos. Inc.*
201 S. Biscayne Boulevard. Suite 1300
Miami. Florida 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

By _____

Larry A. Stumpf. Esq.
Florida Bar No.: 280526
Aaron Anthon. Esq.
Florida Bar No.: 0609341

David A. Bunis. Esq.
Daniel J. Cloherty. Esq.
Nicholas J. Walsh. Esq.
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston. MA 02210
Tel: (617) 371-1000
Fax: (617) 371-1037
Of Counsel

-7-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *Third-Party Intervenor Lycos, Inc. 's Motion to Intervene With Supporting Memorandum of Law* was sent via facsimile and U.S. Mail this 29th day of March, 2005 to: **Robert H. Cooper, Esq.**. Robert H. Cooper. P.A.. 2999 NE 191 Street, Suite 704. Aventura. Florida 33180. and **David A. Bunis, Esq.**. Dwyer & Collora, LLP, 600 Atlantic Avenue. Boston. MA 02210.

By _____

Larry A. Stumpf, Esq.
Aaron Anthon, Esq.

EXHIBIT "2"

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY

GENERAL JURISDICTION

CASE NO: 04-27383-CA-01

UNIVERSAL COMMUNICATION
SYSTEMS, INC., and AIRWATER CORP.,

      Plaintiffs,

      V.

PEDRO DEMBOVICH and ROBERTO
VILLASENOR, a.k.a. worm_06, scri_852,
worm_06A, no_insiders, quondo1, 65175R,
Blacksheep9110, ovejanegra0, Blacksheedip,
doggonebad911, pinkherring, ovanegra0,
busholini, silvesterca, and wolfbitzzer0,

      Defendants.

_____/

### THIRD-PARTY INTERVENOR LYCOS, INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISSOLVE OR AMEND THE FINAL JUDGMENT OF INJUNCTION

BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.
*Attorneys for Lycos, Inc.*
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

David A. Bunis, Esq.
Daniel J. Cloherty, Esq.
Nicholas J. Walsh, Esq.
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210
Tel: (617) 371-1000
Fax: (617) 371-1037
Of Counsel

Dated: March 29, 2005

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

RELEVANT BACKGROUND................................................................................................ 3

LEGAL STANDARD GOVERNING RELIEF FROM JUDGMENT .................................... 5

ARGUMENT........................................................................................................................ 5

A.  The Final Judgment Of Injunction Is Invalid And Unconstitutional As A
    Matter Of Law, And Should Be Dissolved ...................................................................5

    1.  The Underlying Default Judgments Are Procedurally Defective And
        Should Be Vacated, And The Final Judgment Of Injunction Dissolved ................5

    2.  The Communications Decency Act Bars The Final Judgment Of
        Injunction From Applying To Lycos .......................................................................9

    3.  The Final Judgment Of Injunction Violates The First And Fourteenth
        Amendments To The United States Constitution And Article I, Section 4
        Of The Florida Constitution...................................................................................12

        a.  The Final Judgment Of Injunction Is An Unconstitutional Prior
            Restraint Of Speech ......................................................................................12

        b.  The Final Judgment Of Injunction Is Impermissibly Overbroad...............15

B.  In The Alternative, The Final Judgment Of Injunction Should Be Amended
    So That It Does Not Apply To Third Parties Or, At The Least, Lycos......................17

CONCLUSION .................................................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 19

i

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 14 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

I

## INTRODUCTION

This case is one of a series of cases in what appears to be a long-running conflict between, on one side, the Plaintiffs and Michael Zwebner, Chairman and Chief Executive Officer of one of the Plaintiff corporations, and on the other, a group of individuals, apparently including someone by the name of Roberto Villasenor, who make allegedly disparaging statements about the Plaintiffs and Mr. Zwebner. Mr. Zwebner and the Plaintiffs have filed at least nine other lawsuits attempting to prevent Mr. Villasenor and others from discussing him and his companies.[1] Several of these lawsuits are currently pending.[2]

Importantly from Lycos, Inc.'s ("Lycos"), standpoint, two of these lawsuits name Lycos as a defendant, and seek to hold Lycos liable for the statements of third parties, such as Mr. Villasenor, that are published on Lycos' Internet message boards.[3] In those two lawsuits,

---

[1]   Lycos is aware of: Zwebner v. Coughlin, Case No. 05-20169-CIV-COOKE (S.D. Fla.); Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20149-CIV-MARTINEZ/Klein (S.D. Fla.); Universal Communications Systems, Inc. v. Turner Broadcasting System, Inc., Case No. 05-20047-CIV- JORDAN/Brown (S.D. Fla.); Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 04-21618-CIV-MARTINEZ/Klein (S.D. Fla.), transferred to the District of Massachusetts, and renumbered 05-CV-10435-REK (D. Mass.); Zwebner v. John Does - Alias "Tobias", Case No. 03-22328-CIV-MORENO (S.D. Fla.); Talk Visual Corp. v. Roberto Gonzalez Villasenor, Jr., Civil No. 000901274 (3d Dist. Ct. Utah); Zwebner v. Villasenor, No. 00-02239 (Mass. Super. Ct.); Zwebner v. John Does Anonymous Found., Inc., No. 00-CV-01322 (D. Or.); Zwebner v. Dumont, Civil Action No. 98-00682 (D.N.H.).

[2]   They include: Zwebner v. Coughlin, Case No. 05-20169-CIV-COOKE (S.D. Fla.); Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20149-CIV-MARTINEZ/Klein (S.D. Fla.); Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 04-21618-CIV-MARTINEZ/Klein (S.D. Fla.), transferred to the District of Massachusetts, and renumbered 05-CV-10435-REK (D. Mass.).

[3]   They are: Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20149-CIV- MARTINEZ/Klein (S.D. Fla.), and Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 04-21618-CIV-MARTINEZ/Klein (S.D. Fla.), transferred to the District of Massachusetts, and renumbered 05-CV-10435-REK (D. Mass.).

Case 1:05-cv-11172-REK    Document 72-2    Filed 08/19/2005    Page 15 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

because the federal Communications Decency Act, 47 U.S.C. § 230, provides Lycos absolute immunity from discovery and liability for publishing statements of third parties, Plaintiff Universal Communications Systems, Inc., and Mr. Zwebner have met with little success to date.

Frustrated in every other court, the Plaintiffs have filed this lawsuit as their latest ploy to seek to impose liability on Lycos for publishing the statements of third parties. Well aware that neither Defendant named in this matter would appear, the Plaintiffs filed this case, obtained a default judgment, and then acquired a Final Judgment of Injunction that stretches far beyond the scope of this matter and enjoins all third parties – anyone, worldwide, and forever – with an eye toward capturing within its reach Lycos in particular. By obtaining a default judgment in a lawsuit that carefully excluded Lycos as a party and then sending a copy of the resulting injunction to Lycos, the Plaintiffs seek to obtain what they could not by suing Lycos directly: a judgment that would be good against Lycos in contravention of the protections granted by federal law.

For the reasons explained in detail below, the Final Judgment of Injunction should be dissolved, or in the alternative, amended to exclude third parties or at least Lycos. The basis for this relief is: (1) the underlying default judgments are procedurally defective; (2) the Final Judgment of Injunction is barred by the Communications Decency Act, 47 U.S.C. § 230; and (3) the Final Judgment of Injunction violates the First and Fourteenth Amendments to the United States Constitution and Section 4 of Article I of the Florida Constitution because it is an improper prior restraint of speech and it is impermissibly overbroad in scope.

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 16 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

## II

## RELEVANT BACKGROUND

Lycos is a Massachusetts company that, among other things, operates Internet message boards on which individuals may post statements, comments, and other information about companies and their officers and directors. See Affidavit Of Jaime Carney In Support Of Lycos, Inc.'s Motion To Dissolve Or Amend The Final Judgment Of Injunction ¶¶ 1-3 ("Carney Affidavit"). These Internet message boards are accessible to the public, and act as a kind of electronic town square or park, wherein free speech flourishes. One of the many Internet websites that Lycos supports is www.ragingbull.com. See Carney Affidavit ¶ 3. The Raging Bull website includes a collection of message boards that, among other things, allows investors and other members of the public to obtain and disseminate information about publicly traded corporations. See Carney Affidavit ¶ 3. There are over one million registered users of the Raging Bull website. See Carney Affidavit ¶ 4. A topic of conversation on Lycos' Raging Bull message board is Plaintiff Universal Communications Systems, Inc. See Carney Affidavit ¶ 3.

Universal Communications Systems, Inc., and Mr. Zwebner have already sued Lycos directly in federal court.[4] In those lawsuits, the plaintiffs seek to hold Lycos liable for the statements of third parties, such as Mr. Villasenor, that are published on Lycos' Internet message boards. However, because the federal Communications Decency Act, 47 U.S.C. § 230, provides Lycos absolute immunity from discovery and liability for publishing statements of third parties, Plaintiff Universal Communications Systems, Inc., and Mr. Zwebner have to date met with little success. Nonetheless, Lycos maintains that it is in those direct actions, where it is a named

---

[4]     They cases are: Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 05-20149-CIV- MARTINEZ/Klein (S.D. Fla.), and Universal Communications Systems, Inc. v. Lycos, Inc., Case No. 04-21618-CIV-MARTINEZ/Klein (S.D. Fla.), transferred to the District of Massachusetts, and renumbered 05-CV-10435-REK (D. Mass.).

Case 1:05-cv-11172-REK    Document 72-2    Filed 08/19/2005    Page 17 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al
CASE NO: 04-27383-CA-01*

defendant. that its liability – or lack thereof – should be determined. not in this matter, in which Lycos has not heretofore been a party.

The Plaintiffs. Universal Communications Systems. Inc.. and Airwater Corp.. filed the Complaint in this case on December 28. 2004. seeking \$100 million in damages and injunctive relief against two Defendants, Pedro Dembovich and Roberto Villasenor. See Complaint at 7, 8, 10. and 12. The Defendants did not answer the Complaint. After a hearing, an Order of Default was entered on February 14, 2005, and after a second hearing. a Final Judgment of Injunction was entered on March 7, 2005. See Exhibit A attached hereto. That injunction provides, among other things. that:

> Anyone, or any entity. with notice of this judgment which republishes any past internet posting made by Defendants or any of Defendant[s'] alias[es] (or any other alias of Defendants known to said persons or entities) which identifies Plaintiffs or Michael Zwebner and/or which aids and/or assists either Defendant in violation of this order is also in violation and could be held in criminal and/or civil contempt.

Final Judgment of Injunction at 2-3 (dated March 7, 2005) (emphasis added).

Subsequently. by letter dated March 11, 2005, the Plaintiffs' attorney. Robert H. Cooper. Esq.. sent a copy of the Final Judgment of Injunction to Lycos. Inc.. seeking to put Lycos on notice of the injunction and thereby make Lycos subject to the terms of the injunction.[5] See Carney Affidavit ¶ 5 and Exhibit A thereto. Presumably. the Plaintiffs intend to institute a contempt proceeding against Lycos for violating the injunction. Lycos seeks relief from the Final Judgment of Injunction.

---

[5]    Lycos is not a party to this matter and will only become one if it's Motion to Intervene. filed today. is granted by the Court. The United States Supreme Court has made clear that "one is not bound by a judgment in personam in a litigation in which he is not designated a party or to which he has not been made a party by service of process." Hansbury v. Lee. 311 U.S. 32, 40 (1940); see Martin v. Wilks. 490 U.S. 755, 761 (1989) (non-parties cannot be bound by judgments).

4

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 18 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

III

## LEGAL STANDARD GOVERNING RELIEF FROM JUDGMENT

Florida Rule of Civil Procedure § 1.540(b) provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a
party's legal representative from a final judgment, decree, order, or proceeding for
the following reasons: . . . (4) that the judgment or decree is void; or (5) that . . .
it is no longer equitable that the judgment or decree should have prospective
application.

"[A] judgment alleged to be void may be attacked at any time because the judgment creates no

binding obligation on the parties, is legally ineffective and is a nullity." Greisel v. Gregg. 733

So.2d 1119, 1121 (Fla. App. Ct. 5th Dist. 1999) (emphasis in original); see also Kennedy v.

Richmond. 512 So.2d 1129, 1130 (Fla. App. Ct. 4th Dist. 1987) ("[a] judgment entered without

service of process is void and will be set aside and stricken from the record on motion at any

time").

### IV

## ARGUMENT

### A.    The Final Judgment Of Injunction Is Invalid And Unconstitutional As A Matter Of Law, And Should Be Dissolved

#### 1.    The Underlying Default Judgments Are Procedurally Defective And Should Be Vacated, And The Final Judgment Of Injunction Dissolved

The Plaintiffs contend in their Complaint that service of process on the Defendants by

substituted service on the Florida Secretary of State was proper under Fla. Stat. §§ 48.161 and

48.181. See Complaint ¶¶ 7-11. The relevant portion of those statutes provides:

The acceptance by any person . . . who are residents of any other state or country,
. . . and any person who is a resident of the state and who subsequently becomes a
nonresident of the state or conceals his or her whereabouts, of the privilege
extended by law to nonresidents and others to operate, conduct, engage in, or
carry on a business or business venture in the state, or to have an office or agency
in the state, constitutes an appointment by the persons . . . of the Secretary of State

5

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 19 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

Fla. Stat. § 48.181(1). The critical elements for proper service under this statute, then, are: (1) a defendant residing outside Florida or a resident of Florida who has either moved or conceals his or her whereabouts; (2) the defendant doing business in Florida; and (3) an action "arising out of any transaction or operation connected with or incidental to the business or business venture." Fla. Stat. § 48.181(1). The Plaintiffs have failed to offer any evidence as to the second and third requirements as to either Defendant, and failed to even plead the third requirement in the Complaint, and therefore, as explained below, the default judgment against both Defendants is invalid. An invalid default judgment, by necessity, makes any injunction issued pursuant to that judgment invalid as well.

To begin, Florida courts have made clear that Fla. Stat. § 48.181 "should be strictly construed and that the party seeking to invoke its benefits has the burden of clearly showing that the situation presented justifies the application of the statute." Sausman Diversified Investments, Inc. v. Cobbs Co., 208 So.2d 873, 874 (Fla. App. Ct. 3d Dist. 1968) (discussing earlier version of statute); see George Fischer, Ltd. v. Plastiline, Inc., 379 So.2d 697, 699 (Fla. App. Ct. 2d Dist. 1980) (discussing present version of statute) ("Statutory provisions for substituted service of process are strictly construed."). Not only do plaintiffs bear the burden of establishing the application of the statute, plaintiffs must also adequately plead the elements of the statute in their complaints. See, e.g., Caribe & Panama Investments, S.A. v. Christensen, 375 So.2d 601, 603 (Fla. App. Ct. 3d Dist. 1979) (plaintiff "must plead sufficient facts to justify the application of the statute in order to withstand a legal challenge to such service"); Palmer Johnson Yachts v.

6

Case 1:05-cv-11172-REK    Document 72-2    Filed 08/19/2005    Page 20 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

Ray Richard, Inc., 347 So.2d 779, 780 (Fla. App. Ct. 3d Dist. 1977) ("it is necessary that the jurisdictional basis for service upon a non-resident defendant be alleged in the complaint").

As noted above, the Florida substituted service statute requires that a proposed defendant be doing business in Florida. The Complaint does make such conclusory allegations for each defendant. See Complaint ¶¶ 9-10. Their supporting affidavits, however, omit any reference to conducting business in Florida. More importantly, the Complaint completely fails to plead that the causes of action that the Plaintiffs bring "aris[e] out of any transaction or operation connected with or incidental to the business or business venture." Fla. Stat. § 48.181(1). This requirement is often called "connexity," which means, in short, that the mere "fact that a non-resident does business in Florida is not enough to obtain jurisdiction over it. In addition, there must be some connection between the cause of action pleaded and the business operations conducted in Florida." Moo Young v. Air Canada, 445 So.2d 1102, 1104 (Fla. App. Ct. 4th Dist. 1984); see also Gulf Atlantic Transport Co. v. Offshore Tugs, Inc., 740 F. Supp. 823, 828 (M.D. Fla. 1990) (discussing "connexity"); Bloom v. A.H. Pond Co., Inc., 519 F. Supp. 1162, 1168 (S.D. Fla. 1981) (same).

Florida courts have long required that "connexity" be alleged on the face of the complaint. See, e.g., Tire Group Intern., Inc. v. Confianca Mudancas & Transportes, 776 So.2d 1057, 1059 (Fla. App. Ct. 3d Dist. 2001) ("The complaint must allege specific facts which show that . . . the cause of action arose from business activities within this state."); CommerceBank, N.A. v. Taylor, 639 So.2d 1058, 1059 (Fla. App. Ct. 3d Dist. 1994) (same); Caribe & Panama Investments, S. A., 375 So.2d at 603 (same). "If these jurisdictional allegations are not made, service is not perfected and the trial court lacks jurisdiction over the defendant." Pelycado Onroerend Goed B.V. v. Ruthenberg, 635 So.2d 1001, 1003 (Fla. App. Ct. 5 Dist. 1994).

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 21 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

Failure to allege "connexity" in the complaint is fatal. In Pelycado Onroerend Goed

B.V., the plaintiff failed to make the appropriate allegations in his complaint, and the Court held:

> When these jurisdictional allegations are not made, it is error for the trial court to
> fail to vacate its order and quash service. These errors were not slight and the
> complaint should be dismissed without prejudice . . . . [Plaintiff] did allege that
> the appellants were a foreign corporation . . . . and alleged that appellants do
> business in the State of Florida . . . [but Plaintiff] never alleged that the cause of
> action arose out of the appellants' business activities within the state. Failure to
> make this allegation means that the appellants are not amenable to substituted
> service of process under section 48.181.

Pelycado Onroerend Goed B.V., 635 So.2d at 1003 (emphasis added). See, e.g., Hertz Corp. v.

Abadlia, 489 So.2d 753, 754 (Fla. App. Ct. 4th Dist. 1985) ("The complaint does not

demonstrate any connection between the cause of action and appellants. business activities in

Florida, and therefore the jurisdictional allegations of the complaint are not sufficient to invoke

long-arm jurisdiction . . ."); Firestone Steel Products Co. of Canada v. Snell, 423 So.2d 979, 980

(Fla. App. Ct. 3d Dist. 1982) (reversing denial of motion to dismiss for lack of jurisdiction in

part because of plaintiff's failure to allege "connexity"). Conclusory allegations that omit

"connexity" are insufficient. See, e.g., Connell v. Ott Research & Development, Inc., 377 So.2d

219, 221 (Fla. App. Ct. 3d Dist. 1979); Hartman Agency, Inc. v. Indiana Farmers Mut. Ins. Co.,

353 So.2d 665, 666 (Fla. App. Ct. 2d Dist. 1978).

Thus, since the Complaint utterly fails to allege the jurisdictional prerequisite of

"connexity," this Court had no jurisdiction over the Defendants, and therefore the default

judgments entered against them are invalid, and the Final Judgment of Injunction is null and void

and without any legal effect. See, e.g., Pennoyer v. Neff, 95 U.S. 714 (1877). The default

judgments should therefore be vacated and the Final Judgment of Injunction dissolved.

8

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 22 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

### 2. The Communications Decency Act Bars The Final Judgment Of Injunction From Applying To Lycos

Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (hereinafter "Section 230"), immunizes Lycos from any and all liability for any alleged failure to stop or curtail defamatory statements made by a third party on an Internet message board. Specifically, Section 230(c)(1) provides, in relevant part, that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[6]  Critically, Section 230(e)(3) further provides that "[n]o cause of action may be brought and no liability may be imposed under any state or local law that is inconsistent with this section." (emphasis added). Taken together, these provisions provide Internet service providers a broad statutory immunity from liability based on statements made by third parties on Internet-based message boards.

The leading case interpreting the scope of Section 230 is Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997). In Zeran, a plaintiff sued America Online ("AOL") alleging that AOL unreasonably delayed removing allegedly defamatory messages posted by an unidentified third party on an Internet message board, refused to post retractions of those messages, and failed to screen for similar postings thereafter. See Zeran, 129 F.3d at 328. In response, AOL argued

---

[6]    Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet." See 47 U.S.C. § 230(f)(2). The statute further defines an "information content provider" as "any person or entity that is responsible in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Lycos is a "provider" of an "interactive computer service" for the purposes of Section 230. See Green v. America Online (AOL), 318 F.3d 465, 470 (3d Cir. 2003), (holding that Lycos, as operator of on-line chat room, was entitled to protections of Section 230); cf. Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1124-25 (9th Cir. 2003) (holding that Lycos-affiliated entity was entitled to the protections of Section 230). The Complaint also clearly alleges that the Defendants would be the "information content providers" at issue in this case. See Green, 318 F.3d at 470.

Case 1:05-cv-11172-REK    Document 72-2    Filed 08/19/2005    Page 23 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

that Section 230 immunized interactive computer service providers from claims based upon information posted by third parties. See id. at 329. After the district court entered judgment in AOL's favor, the Fourth Circuit affirmed, explaining that:

By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content – are barred.

Id. at 330 (emphasis added).

In reaching its conclusion, the Zeran Court reviewed the specific statutory findings contained in Section 230, including Congress' findings that "the Internet and interactive computer services offer 'a forum for true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.'" id. at 330 (citing 47 U.S.C. § 230(a)(3)), and that "it is 'the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" Id. at 330 (citing 47 U.S.C. § 230(b)(2)) (emphasis in original). As a result, Congress made a specific policy choice "not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." Id. at 330-31. Accordingly, the Fourth Circuit held that Section 230 immunized AOL from any liability arising from content provided by third parties to its on-line message boards. See id.[7]

The Zeran decision has been followed by every other federal court of appeals that has considered claims against providers of interactive computer services based upon the statements of third parties on Internet message boards. See, e.g., Carafano, 339 F.3d at 1124 (explaining that "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process");

Case 1:05-cv-11172-REK    Document 72-2    Filed 08/19/2005    Page 24 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

Importantly, the Florida Supreme Court has followed the reasoning of the Fourth Circuit's decision in Zeran. In Doe v. America Online, Inc., 783 So. 2d 1010, 1011 (Fla. 2001), Florida's highest state court specifically addressed the issue of whether "a computer service provider with notice of a defamatory third party posting is entitled to immunity under" Section 230(c)(1), and whether the state law tort claims raised by the plaintiff were thus barred by Section 230(e)(3). The Doe Court adopted the Zeran court's reasoning and held that Florida tort claims against AOL based upon a third party's postings in an AOL chat room were in fact barred by Section 230. See id. at 1013. Finding that "the gravamen of Doe's alleged cause of action" was a theory of liability "based upon the negligent failure to control the content of users' publishing of allegedly illegal postings on the Internet," the Florida Supreme Court held that Zeran's reasoning compelled it to affirm the trial court's dismissal with prejudice of the plaintiff's claims. Id. at 1012-13, 1017-18.

---

Green, 318 F.3d at 471 (holding that Lycos, as operator of on-line chat room, was immune from liability under Section 230 for its "decisions relating to the monitoring, screening, and deletion of content" from its network where plaintiff's claims were based on supposedly defamatory statements made by other users in an on-line chat room); Ben Ezra, Weinstein and Co., Inc. v. America Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (holding that Section 230 immunized internet message board operator from civil claims arising from the posting of allegedly incorrect information relating to plaintiff's stock price and share volume).

Other courts have applied Zeran's broad view of the Section 230 in a variety of contexts. See, e.g., Noah v. AOL Time Warner, Inc., 261 F. Supp. 2d 532, 537-40 (E.D. Va. 2003), aff'd 2004 WL 602711 (4th Cir. 2004) (dismissing claims that AOL failed to prevent participants in an online chat room from making harassing and defamatory comments); PatentWizard, Inc. v. Kinko's, Inc., 163 F. Supp. 2d 1069, 1071-72 (D.S.D. 2001) (dismissing plaintiff's claims based upon statements made in chat room by user of defendant's computers); Morrison v. America Online, Inc., 153 F. Supp. 2d 930, 933-34 (N.D. Ind. 2001) (dismissing plaintiff's claims against AOL where those claims were based upon allegedly false and defamatory statements sent by a third party over the AOL network); Blumenthal v. Drudge and America Online, Inc., 992 F. Supp. 44, 46 (D.D.C. 1998) (holding that AOL was immune from suit for its publication of an allegedly defamatory story provided to AOL by a third party); Schneider v. Amazon.com, Inc., 31 P.3d 37, 41-42 (Wash. Ct. App. 2001) (affirming dismissal of state law claims against an internet service provider where claims were based upon statements posted by a third party in an on-line forum, including a statement that the plaintiff was a "felon").

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 25 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

Here. the Plaintiffs seek to impose liability through sidestepping the normal judicial process and obtaining – through a default judgment – a broad injunction that applies to Internet service providers such as Lycos. This Court has issued a Final Judgment of Injunction that provides. among other things:

> Anyone. or any entity. with notice of this judgment which republishes any past
> internet posting made by Defendants or any of Defendant[s'] alias[es] (or any
> other alias of Defendants known to said persons or entities) which identifies
> Plaintiffs or Michael Zwebner and/or which aids and/or assists either Defendant
> in violation of this order is also in violation and could be held in criminal and/or
> civil contempt.

Final Judgment of Injunction at 2-3 (dated March 7. 2005) (emphasis added). As explained above at length. liability for Section 230 expressly disallows liability for "republishing" any third party statement. and therefore. the Final Judgment of Injunction is inconsistent with Section 230, at least as it applies to Lycos and those similarly situated. Since criminal and/or civil contempt is a form of liability. the Final Judgment of Injunction is a clear violation of Section 230. which states, "no liability may be imposed under any state or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Accordingly. the Final Judgment of Injunction should be dissolved because Section 230 of the Communications Decency Act bars its application to Internet service providers such as Lycos.

### 3. The Final Judgment Of Injunction Violates The First And Fourteenth Amendments To The United States Constitution And Article I, Section 4 Of The Florida Constitution

#### a. The Final Judgment Of Injunction Is An Unconstitutional Prior Restraint Of Speech

Prior restraints on speech constitute "the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). "[P]ermanent injunctions . . . that actually forbid speech activities are classic examples of prior

Case 1:05-cv-11172-REK   Document 72-2   Filed 08/19/2005   Page 26 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

restraints" because they impose a "true restraint on future speech." Alexander v. United States, 509 U.S. 544, 550 (1993). Put another way, "an injunction against speech is the very prototype of the greatest threat to First Amendment values, the prior restraint." Madsen v. Women's Health Center, Inc., 512 U.S. 753, 797 (1994) (Scalia, J., concurring in judgment in part and dissenting in part).

As this Court is well aware, the First Amendment is applied to Florida through the Fourteenth Amendment.[8] See, e.g., Lovell v. City of Griffin, 303 U.S. 444, 450 (1938); Gitlow v. New York, 268 U.S. 652, 666 (1925). Thus, under both the Federal and Florida constitutions, there exists a "deep-seated American hostility to prior restraints." Nebraska Press Ass'n, 427 U.S. at 589. As the United States Supreme Court has explained, "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." Vance v. Universal Amusement Co., 445 U.S. 308, 317 (1980) (quotation marks and citation omitted). The Plaintiffs "thus carries a heavy burden of showing justification for the imposition of such a restraint." Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971), that is, a compelling governmental interest in imposing the injunction under the strict scrutiny analysis applied to infringements on fundamental rights.

---

[8]     The Final Judgment of Injunction also violates Article I, Section 4 of the Florida Constitution through the same analysis provided in this memorandum. Section 4 provides:

> Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the party shall be acquitted or exonerated.

Fla. Const., Art. I, § 4.

13

Case 1:05-cv-11172-REK    Document 72-3    Filed 08/19/2005    Page 1 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

In this matter, in addition to the multifarious ways in which the Final Judgment of Injunction violates the First Amendment rights of the Defendants, it goes even further in attempting to bind third parties – anyone, worldwide, and forever – on notice of the injunction. Again, it provides, among other things, that:

> Anyone, or any entity, with notice of this judgment which republishes any past internet posting made by Defendants or any of Defendant[s'] alias[es] (or any other alias of Defendants known to said persons or entities) which identifies Plaintiffs or Michael Zwebner and/or which aids and/or assists either Defendant in violation of this order is also in violation and could be held in criminal and/or civil contempt.

Final Judgment of Injunction at 2-3 (dated March 7, 2005). Such a prohibition on future speech activities is plainly an unconstitutional prior restraint on speech, and should be dissolved. There can be no showing of a compelling government interest in this case because there is none. If any remedy were available to Plaintiffs here against Lycos – which, for the reasons discussed above the federal Communications Decency Act prohibits – it would have to lie in damages. The injunctive relief obtained is a prior restrain on speech and is thus unconstitutional.

The same result has been obtained in countless cases, including cases in Florida, and should be followed here. See, e.g., CBS, Inc. v. Davis, 510 U.S. 1315, 1317 (1994) (finding injunction preventing television broadcast unconstitutional despite allegations that broadcast would be defamatory and cause economic harm); Nebraska Press Ass'n, 427 U.S. at 556 (rejecting prior restraint gag order); New York Times Co. v. United States, 403 U.S. 714 (1971) (the "Pentagon Papers" case) (holding injunction preventing publication of confidential government documents unconstitutional); Near v. Minnesota ex rel. Olson, 283 U.S. 697, 706, 722-23 (1931) (holding unconstitutional an injunction prohibiting future publication of newspaper despite prior publishing of defamatory articles); Animal Rights Foundation of Florida, Inc. v. Siegel, 867 So.2d 451 (Fla. App. Ct. 5th Dist. 2004) (holding injunction

14

Case 1:05-cv-11172-REK   Document 72-3   Filed 08/19/2005   Page 2 of 26

*Universal Communications Systems, Inc. et al vs. Dembovich et al*
*CASE NO: 04-27383-CA-01*

preventing specific statements by animal rights protestors unconstitutional prior restraint); Florida Pub. Co. v. Brooke, 576 So.2d 842 (Fla. App. Ct. 1st Dist. 1991) (holding unconstitutional an injunction prohibiting paper from publishing letter despite risk of harm to minor).

**b.    The Final Judgment Of Injunction Is Impermissibly Overbroad**

An injunction "issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin pointed objective permitted by constitutional mandate and the essential needs of the public order." Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 183 (1968). The Final Judgment of Injunction is so tremendously overbroad that, even were it not an unconstitutional prior restraint, it would be unconstitutionally overbroad under both the United States and Florida Constitutions.

Foremost, the Final Judgment of Injunction purports to remedy the offenses in the Complaint, which claims that the Defendants are using tortious speech to interfere with the Plaintiffs' business. Yet the Final Judgment of Injunction attempts to bind:

Anyone, or any entity, with notice of this judgment which republishes any past internet posting made by Defendants or any of Defendant[s'] alias[es] (or any other alias of Defendants known to said persons or entities) which identifies Plaintiffs or Michael Zwebner and/or which aids and/or assists either Defendant in violation of this order is also in violation and could be held in criminal and/or civil contempt.

Final Judgment of Injunction at 2-3 (dated March 7, 2005) (emphasis added). The connection between the Defendant's alleged misconduct and the publishing of all of the Defendants' speech about the Plaintiffs or Mr. Zwebner is tenuous. The injunction makes no attempt to limit its reach to certain types of speech made by the Defendants – for instance, defamatory speech, or speech attempting to interfere with the Plaintiffs' business (whatever that might be) – but instead

15

Case 1:05-cv-11172-REK   Document 72-3   Filed 08/19/2005   Page 3 of 26

*Universal Communications Systems, Inc. et al vs. Demhovich et al*
*CASE NO: 04-27383-CA-01*

enjoins all speech, including opinions and truthful statements about the Plaintiffs, thus sweeping within its scope speech that is plainly protected. The First Amendment protects opinions, see, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990), as well as the truth. See, e.g., Fla. Const., Art. I, § 4 ("In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the party shall be acquitted or exonerated."). The injunction outlaws third parties from republishing, for example, a sentence by the Defendants such as "Michael Zwebner's name is Michael Zwebner." Neither the United States nor Florida Constitution abides such an overbroad restraint of free speech.

Second, the Final Judgment of Injunction applies to anyone, worldwide, including non-parties; its scope is therefore unreasonable and unconstitutional. See, e.g., Martin, 490 U.S. at 761 (non-parties cannot be bound by judgments); Hansbury, 311 U.S. at 40 (same). A moment's reflection shows that, upon receipt of a letter from the Plaintiffs notifying it of the injunction, any media entity, such as a newspaper, that published an article that quoted from the Defendants' postings would be in violation of this injunction. Countless other nonsensical examples are easily brainstormed. The scope of this injunction clearly reaches a great deal of speech that is protected, and it is therefore unconstitutional.[9]

Third, the injunction is so overbroad that it has no end date: it enjoins speech forever into the future, even after Mr. Zwebner dies, and would continue even if the Plaintiff corporations were disbanded. The law does not recognize defamation claims against the deceased. See, e.g., Gruschus v. Curtis Publishing Co., 342 F.2d 775, 776 (10th Cir. 1965).

---

[9]    Interestingly, the Final Judgment of Injunction also protects a non-party: Michael Zwebner.

In sum, there can be no doubt that the Final Judgment of Injunction is unconstitutionally overbroad under both the federal and state constitutions.

**B.      In The Alternative, The Final Judgment Of Injunction Should Be Amended So That It Does Not Apply To Third Parties Or, At The Least, Lycos**

In the alternative, should this Court decide not to dissolve the Final Judgment of Injunction, at the least, it should strike those provisions that apply to third parties, or, at the very least, exempt Lycos from its reach.  Amending or modifying the injunction will not necessarily save it from the constitutional infirmities discussed above.  See, e.g., Board of Airport Commissioners v. Jews for Jesus, Inc., 482 U.S. 569, 575-76 (1987) (declining to narrow an overbroad regulation because even a narrowed regulation would still violate the First Amendment).  Nonetheless, if this Court does not dissolve the Final Judgment of Injunction, it should, at the very least, narrow the Injunction so as to strike all provisions that apply to Lycos and others similarly situated.

17

V

## CONCLUSION

For the reasons explained above, Lycos respectfully requests that the Court issue an order

granting Lycos' Motion to Dissolve or Amend the Final Judgment of Injunction, and dissolve the

Final Judgment of Injunction or, alternatively, strike the third-party provisions in the Final

Judgment of Injunction, or at the least, exempt Lycos from the reach of the Final Judgment of

Injunction.

> Respectfully submitted,
> BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.
> *Attorneys for Lycos, Inc.*
> 201 S. Biscayne Boulevard, Suite 1300
> Miami, Florida 33131
> Tel: (305) 371-6421
> Fax: (305) 371-6322

> By _____
>
> > Larry A. Stumpf, Esq.
> > Florida Bar No.: 280526
> > Aaron Anthon, Esq.
> > Florida Bar No.: 0609341

> David A. Bunis, Esq.
> Daniel J. Cloherty, Esq.
> Nicholas J. Walsh, Esq.
> DWYER & COLLORA, LLP
> 600 Atlantic Avenue
> Boston, MA 02210
> Tel: (617) 371-1000
> Fax: (617) 371-1037
> Of Counsel

Dated: March 29, 2005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *Third-Party Intervenor Lycos. Inc.'s Memorandum Of Law In Support Of Its Motion To Dissolve Or Amend The Final Judgment Of Injunction* was sent via facsimile and U.S. Mail this 29th day of March. 2005 to: **Robert H. Cooper, Esq.**. Robert H. Cooper, P.A.. 2999 NE 191 Street. Suite 704, Aventura, Florida 33180, and **David A. Bunis, Esq.**. Dwyer & Collora. LLP. 600 Atlantic Avenue. Boston, MA 02210.

By _____

Larry A. Stumpf. Esq.
Aaron Anthon, Esq.

19

EXHIBIT "3"



Lycos Info
Home > **Privacy
Policy**

## Privacy Policy

**-Lycos Info Home**

**-Privacy Policy**

- Account Info
- COPPA
- DoubleClick
- Contact Us

Lycos Info Home

Terms and Conditions

Privacy Policy

Link To Lycos

Parental Controls

Missing Kids

Jobs@Lycos

### Lycos Network Privacy Policy



**TRUSTe
Certification**

Lycos is a licensee of the TRUSTe Privacy Program. TRUST
independent, non-profit organization with a mission to buil
confidence in the Internet by promoting the principles of di
informed consent. Because Lycos wants to demonstrate its
to your privacy, we have agreed to disclose our information
and have our privacy practices reviewed and audited for cc
TRUSTe. The TRUSTe program covers only information tha
through the Lycos Network, and does not cover informatior
collected through software downloaded from the network.

Welcome to the Lycos Network, owned and produced by Lycos, Inc. and i
and affiliate corporations, successors, and assigns (collectively referred tc
All Products and Services on the Lycos Network (as defined in our Terms
Conditions) are made available subject to this Privacy Policy. By using ou
Services, you agree, without limitation or qualification, to be bound by th
Policy or any other privacy or data collection policy applicable to any indiv
Network Web site and to receive any required legal notices regarding our
practices through the continuous posting of a clear and conspicuous link t
version of this Privacy Policy throughout the Lycos Network near the bott
pages. If you become an inactive user, we will adhere to the policies and
described in this Privacy Policy, which may be revised from time to time.

Please note that the Lycos Network contains links to other sites and occas
other sites to be co-branded with the Lycos name. Web sites that are link
Network sites or carry the Lycos brand for co-branding or marketing purp
have privacy policies which differ from that of the Lycos Network.

The Lycos Network Privacy Policy discloses our privacy practices and cont
information about the following:

1. What information of yours does the Lycos Network collect?
2. What organization is collecting the information?
3. What are "cookies" and "Web beacons" and how does Lycos use th
4. How does the Lycos Network use the information?
5. With whom does the Lycos Network share

the information that is collected?
6. How can you access or edit your information?
7. What is the opt-out policy for the Lycos Network?
8. What types of security procedures are in place to protect against the loss, misuse or alteration of your information?
9. How does the Lycos Network comply with the Children's Online Pri Protection Act (COPPA)?
10. What can you do to better protect yourself on the Internet?

**1. What information of yours does the Lycos Network collect?**
Our goal is to become your favorite Internet destination by providing the services, and product offerings that are most relevant to you. To achieve Lycos Network must collect information so we can understand what make from its millions of other unique users. While you are not required to regi services on the Lycos Network, some Products and Services may not func or may not be accessible unless you do.

Information collected online is usually defined as being either **anonymou personally identifiable.**

- **Lycos collects anonymous information**, which refers to data th tied back to a specific individual. For example, Lycos collects some each time a visitor comes to a Lycos Network site so we can impro quality of the visitor's online experience. Lycos collects the visitor': (e.g., whether the user is logged on from ibm.com or aol.com), re (e.g., the Internet address of the last Web page visited by a user l over to a Lycos Network site), and browser and platform type (e.g browser on a Macintosh platform). Lycos also collects aggregate so from its HotBot and Lycos search services for internal reporting tal advertising, and the Lycos 50 list of popular search terms. Lycos c user information for purposes of product monitoring, product impr targeted advertising. In addition, Lycos collects your responses to displayed on the Lycos Network; these anonymous and optional su seek your opinions about the Products and Services or the advertis displayed on the Lycos Network. You do not have to register with 1 Network before we can collect this anonymous information.

- **Personally identifiable information** refers to data that tells us : who you are, such as your name and postal address, which may b addition to the anonymous data described above. Lycos collects pe information in the following ways from different parts of its networ sites:

  a. **Lycos Network Registration:** When you register to use one c on the Lycos Network, you provide Lycos with your name, posta Code, email address, birth date, gender, telephone number, occ marital status and other information. While not all of this data i our services to function, we are better able to customize your e you volunteer complete and accurate information. Users who cc registration process are given a Lycos Network ID and can take

advantage of the many offerings across the Lycos Network.

b. **Matchmaker.com Registration:** When you register to use
   Matchmaker.com, you provide Lycos with an email address, bir
   ZIP Code. For members of the majority of the Matchmaker.com
   Lycos collects your credit card information in connection with y
   for the service. If you complete the Matchmaker.com questionn
   collects and posts all of your responses, plus the ZIP Code you
   any photos or images that you post. At the end of the registrati
   you are asked whether you are interested in receiving informat
   certain topics that may be of interest; Lycos collects your respc
   questions. Occasionally, the "Matchmaker" of the community tc
   belong may send a survey to the community; if you answer the
   collects your survey responses.

c. **Lycos Messenger Registration:** When you register to use Ly
   you must provide Lycos with information such as your email ad
   age, and gender; your city, country, and ZIP code of residence;
   preference of language. In addition, you may voluntarily supply
   about your personal interests. You may elect to make Lycos Me
   registration information accessible to other users by checking tl
   next to that information. If you do not check the "public" box n
   then that item will not be disclosed to other users. For a descri
   the public registration information will be made available to oth
   please click here.

d. **Other Registration:** In addition to registration for various serv
   Lycos Network, we may ask you for personal information at oth
   including when you enter a sweepstakes, contest or promotion
   the Lycos Network. As described below, our co-brand partners a
   personal information. If you purchase premium services we will
   valid credit card number. If you choose not to provide the requ
   information, the Lycos Network may not be able to offer you so
   personalized services that depend on this type of information tc

e. **Correspondence:** If you contact the Lycos Network, we may k
   of that correspondence. We do not collect any email addresses
   communicate with the Lycos Network via email. We use the inf
   provided so that we may respond to the email.

Lycos reserves the right to collect certain information and store it in conn
your account. This information includes information about the different sit
visit within the Lycos Network as well as the time and frequency at which
them. This information also includes the content that you transmit or pos
Network. For further information about Lycos's policy on maintaining tran
posted content, please see the Lycos Network Terms and Conditions.

**2. What organization is collecting the information?**
When you register for a service within the Lycos Network, that informatio
collected and maintained solely by the Lycos Network unless specifically s
otherwise at the point of collection. If data is collected and/or maintained
company other than Lycos, we will tell you at the point of collection. If yo

to share your information with that company, you can choose not to use t

Click here to see a list of companies that work with Lycos to provide you ' variety of Products and Services.

Lycos runs many promotions and sweepstakes across its Network. These may be sponsored or co-sponsored by third-party companies. Data collec promotion is typically shared with the sponsor or co-sponsor. Lycos will ir the point of collection whether or not we are sharing your personal data ε your participation in a promotion or sweepstakes. If you do not want to h Network share your data, you can choose not to participate in the promot sweepstakes.

Be aware that Lycos Network sponsors and other advertisers have links o that take you to external sites. Some of these sites may collect personally information from you, and third-party advertising networks for Lycos like may use cookies and Web beacons in their advertisements to collect certε from you. While Lycos hopes that all third parties involved adhere to our regarding the privacy of our users, the Lycos Network Privacy Policy does third-party data collection practices and the Lycos Network does not assu responsibility for any actions of third parties.

**3. What are "cookies" and "Web beacons" and how does Lycos us** In addition to the personally identifiable information that Lycos actively cı you register, we also collect anonymous information passively using **cook beacons**. This technology plays an important role in making the Internet there is much confusion among Internet users about what cookies and Wι are and how they are used.

A **cookie** is a small text file containing a unique identification number tha transferred from a Web site to the hard drive of your computer so that th administrator may identify your computer and passively track its activitie: site. This unique number identifies your Web browser to our computer sy: whenever you visit one of the sites in the Lycos Network. A cookie will no site to learn any personally identifiable information (such as your real nar address) that you have not otherwise disclosed.

Cookies allow Lycos to automatically remember your Web browser when ' Network of Web sites. To help serve you better, Lycos generally uses coo

- **Allow us to deliver products and services more efficiently.** Ε certain registration and preference information on cookies or assoι with registration, preference or profile information stored on our cι can deliver products and services that use such information more ι efficiently for more users. This information is normally saved in an form that only Lycos can interpret.

- **Prevent others from using your account.** On some Lycos Netw cookies help us efficiently determine that only one user is logged ι same member name at a time.

- **Measure statistics** such as audience size and traffic patterns. Th is only collected in aggregate form and will not be linked to your p

identifiable information.

- **Display advertisements.** Cookies let us know whether a Web brc
  seen a particular advertisement (so we can show you a variety of :
  count the number of advertisements displayed to a particular brow
  use cookies to customize the advertising you see based on non-pe
  identifiable demographic information that you provide when you re
  party advertising networks for Lycos (like DoubleClick) may issue (
  Lycos Network and other sites when serving advertisements. Click
  information on our relationship with DoubleClick.

The use of cookies is an industry standard, and they are currently used o
Web sites. It is possible to adjust your Web browser preferences to alert '
cookie is sent to your hard drive, or to refuse cookies altogether. While Ly
require you to use cookies, keep in mind that certain sites and services w
properly if you set your browser to refuse all cookies.

**Web beacons**, also known as clear GIFs or single-pixel GIFs, are small ir
Lycos may place on Web pages and within Web-based email newsletters 1
Working in conjunction with cookies, Web beacons allow Lycos to accurat
number of unique users who have visited a specific page on the Lycos Ne
number of times those pages are displayed. We can also use Web beacon
know how many people opened a Web-based email newsletter. This infor
collected in aggregate form and will not be linked to your personally ident
information.

Without cookies and Web beacons, it would be difficult for Lycos to know
have a larger audience than others. Tracking audience size helps us to be
understand when to launch new services and enhance the current offerinc
mind that any image file on a Web page can act as a Web beacon. Third-ι
advertising networks for Lycos like DoubleClick may use Web beacons in 1
advertisements.

Because Web beacons work in conjunction with cookies, you can prevent
beacon from collecting anonymous information by setting your Web brow
all cookies or the Lycos Network cookie in particular. Web beacons are bu
Web pages, so non-functional Web beacons will continue to appear even i
the Lycos Network cookie.

### 4. How does the Lycos Network use the information it collects?

Any personally identifiable information you share with Lycos when registe
Products and Services at any of our Network sites is maintained and acce
Lycos unless specifically stated otherwise. Lycos requests information froι
that users can enjoy customized experiences across the Lycos Network, iı
personalization services, interactive communications, online games and n
Most of these Products and Services are available to you at no cost, and l
advertisements so we can continue to provide great content and services
charge. We can also better prepare future content based on your interest

The following are examples of how the Lycos Network may use the inforn
collects:

- Lycos uses the information collected (both anonymous and person personalize and enhance the content you see on the Lycos Networ news, stock portfolios, weather reports, sports scores, horoscopes advertisements and more. In some cases, our Products and Servic work unless you have volunteered accurate information (for exam| your valid ZIP Code to display weather conditions in your local are

- Lycos collects anonymous data and shares it with third-party adve aggregate form. We will disclose to those advertisers the numbers users who have certain demographic characteristics and the numb people who have seen and "clicked" on a particular display. We wi to those advertisers the overall demographics available regarding "clicked" on their advertisement. In addition, we may disclose ano results from online surveys to third-party advertisers or to Lycos's service providers. No personally identifiable information will be dis of this process.

- Lycos also uses the aggregate data to perform statistical analyses collective characteristics and behavior of our registered users and measure user demographics and interests regarding specific areas Network, and to analyze how and where best to use our resources data, we would not know which parts of the Lycos Network are the popular, and we would not be able to change and update the conte services appropriately. Please note that we may share this aggreg; information with third-party companies.

- Lycos collects an aggregate list of search terms from its HotBot an search services. This information is collected anonymously and use for the purposes of product development, monitoring, and improve as targeted advertising. Please note, however, that we may share anonymous information with third-party companies.

- Lycos sometimes uses an individual registered user's data to "pre-online forms that are displayed for the purpose of collecting additi data by the Lycos Network, selected third-party sites, and/or spon advertisers.

- Lycos may, from time to time, use your information to contact you changes or enhancements to Products and Services on the Lycos M issues regarding your account, or Lycos Network Terms and Condi violations or suspensions.

- If you enter a sweepstakes or a contest on the Lycos Network, we information you provided to contact you in the event you win.

- If you told Lycos that you were interested in receiving special offer Lycos clients, Lycos or third parties on Lycos's behalf (i) will send ' postal mail about products and services that we feel may be of int and (ii) may combine information we have about you with informa about you from third parties for the purpose of providing you with appropriate products, services, and offerings. If you do not wish to this program, please follow the opt-out instructions set forth in Se policy.

- **Subscription Customers:** Your credit card information is used to recurrent subscription fees for Quote.com, Matchmaker.com, or ot services.

- **Lycos Family Membership Customers:** Your credit card informa verify the age of a parent or guardian. The credit card will not be c the Lycos Family Membership registration process, and only the la a transaction number will be stored as proof of transaction. Click information.

**5. With whom does the Lycos Network share the information that**
By providing Lycos with your personally identifiable information, you auth internally share that information with other companies in the Terra Lycos including companies that become part of the Terra Lycos group in the fut see a current list of Terra Lycos companies here: http://www.terra.com/i en/group.htm.

Any company in the Terra Lycos group (including Lycos) is authorized to personally identifiable information with any other company of the Terra L the following purposes: to manage, administer, provide, expand and impr existing Terra Lycos group products and services, and to offer new produ services; to adapt such products and services to your tastes and preferen service updates to Terra Lycos users; to send, by traditional and/or electr technical, operational and commercial information relating to the product: offered by the Terra Lycos group or through any of the sites operated by Lycos group, currently and in the future; and to send you survey forms, v not required to fill in. Of course, Lycos and the Terra Lycos group compar give you the option to opt out of receiving any information or notices as c above, other than legal notices and other notices that are necessary to th of the Products and Services, during the time that you are using the Prod Services or maintain an active registration with the Lycos Network. Comp Terra Lycos group may have a physical address in a foreign country. In a Lycos will take precautions to maintain the confidentiality and security of information sent abroad.

The Lycos Network will sometimes share personally identifiable informatio party companies and organizations. In most cases, you agree to share yo when you choose to register at a **co-branded** Web site. Co-branded sites by third-party companies and offer a particular service or product to Lyco members. We may also maintain **private label** relationships where a thir company provides Lycos with technology, services and/or content under l branding.

Whenever you provide registration information on co-branded or private l that data may be shared with the third-party company providing the serv should make every effort to read the individual privacy policies of such th make an informed decision on your own whether to continue based upon privacy practices and your own discretion. **You may opt-out of sharing information with such providers by choosing not to use that servic content.**

When you find goods or services through Lycos Shopping, you submit dat
the individual merchants from whom you order goods or services. Please
carefully the privacy policies of particular merchants that you access thro
Shopping.

In addition to finding co-branded and private label sites, you will find dire
site to sites offered by third parties. Some of these sites are authorized tc
Lycos Network brands and/or logos. No third-party sites are covered by tl
Policy. If you feel that a site using a Lycos Network brand and/or logo doe
an acceptable privacy policy, please contact the Lycos Privacy Site Coordi
at privacy@lycos.com.

Lycos may disclose information about individual users to third parties whc
provide services to Lycos and who agree to maintain the confidentiality of
information in accordance with this Privacy Policy. These third parties will
variety of services to Lycos, including, without limitation, processing and
information, helping to create new content and promotions for the Lycos |
sending or coordinating the sending of marketing communications that us
consented to receive. Lycos will disclose information about individual user
governmental or judicial authorities or law enforcement agencies, or to ot
or entities in response to subpoena, court order, or other legal process. Ii
involving a danger to personal or public safety, Lycos may voluntarily pro
information to appropriate governmental authorities.

If you elect to receive Lycos Registration Offers during registration for the
Network, Lycos will release personally identifiable information to the appl
or advertiser. Information released may include name, email address, po:
and other information supplied in the Lycos Network registration process.
that the sponsor or advertiser will not be bound by this Lycos Network Pri

If Lycos is acquired by or merged with another company, Lycos may tran:
personally-identifiable information about you to that company. Lycos will
the event that your personally-identifiable information is transferred unde
circumstances and becomes subject to a different privacy policy.

Matchmaker.com Customers: Lycos creates your public profile by using yt
the Matchmaker.com questionnaire and your ZIP Code, along with any ph
images you post. Users will have the ability to search and view the public

Lycos Messenger Customers: Lycos creates a public profile for you by usii
information that you submitted as part of the Lycos Messenger registratic
you indicated should be made public. Users will have the ability to search
public profiles for the purpose of finding others for their "buddy" lists.

Lycos Domains Customers: Users of Lycos Domains will be required to de
administrative contact and, in some instances, a technical contact for the
names they register. Lycos will assume that the Lycos member who regis
Lycos Domains service will serve as these contacts, although users will ha
to designate other contacts. Lycos will disclose the name, address, phone
number, and email address of the administrative and technical contacts tc
domain name provider, which in turn will make such information publicly
through an online WHOIS database.

**6. How can you access or edit your information?**

The Lycos Network provides its registered users the ability to access and personal information in their user profiles. For most membership sites on Network (**My Lycos, Lycos Mail, Gamesville, htmlGEAR, Tripod, Ang Bull and Quote.com**) you can access your user profile by following thes

- Go directly to this page. You will receive a prompt to log in to the your Lycos Network Member Name and password.

- After you log in, you will be taken to the Membership Information contains your user profile. If you see a field that needs to be upda appropriate **Edit** button.

- Make the necessary changes and click the **Update** button to save

For some other sites on the Lycos Network, you will have to follow differe update the personal information in your user profile.

- **Matchmaker.com** at http://www.matchmaker.com: After you log the "Member Tools" link at the bottom of any community page, se Page", and select the information you would like to update or revis responses to any community survey by clicking on the "Member T selecting "Edit Page", and selecting "Review/edit the Survey Quest make an adjustment to your username, or your selection for gend preference, click on the "Feedback" button and complete the form.

- **Lycos Messenger** at http://messenger.lycos.com: After you log i "Activate" link and the information that you have previously provic displayed on the page. Edit the information or settings you would such as your public display preferences, and click on "Activate."

**7. What is the opt-out policy for the Lycos Network?**

You can opt out of sharing your personally identifiable information with a service or content providers in any areas of the Lycos Network by choosir such areas.

In addition, you may opt-opt of sharing your personally identifiable inforn third-party service providers and sponsors by clearing the appropriate ch the point of initial collection. You will see these checkboxes near the bott registration page.

After the point of initial collection, we offer you the ability to opt-out of re updates and information about new Lycos products and services, as well offers from selected service providers and sponsors. The instructions to o Lycos Network email newsletters and direct mail communications are the instructions for editing user information profiles. Simply follow these step

your Lycos Network Member Name and password.

- After you log in, you will be taken to the Membership Information contains your email subscriptions. Click the **Edit** button under the **Subscriptions** banner.

- Make the necessary changes and click the Update **button** to save

In addition, all Lycos Network newsletters and direct email communicatio to-follow unsubscribe instructions at the bottom of each email.

If you are receiving email newsletters from Matchmaker.com, follow the u instructions found at the bottom of each email communication. If you are email newsletters from Wired Digital, Lycos Music, Lycos Computers or Sc the unsubscribe instructions found at the bottom of each email communic directly to this Web page: http://hotwired.lycos.com/email/unsub.

If you have a question about the Lycos opt-out process that is not answei please send an email to privacy@lycos.com.

### 8. What kinds of security procedures are in place to protect again: misuse or alteration of your information?
The Lycos Network has security measures in place to attempt to protect a loss, misuse and alteration of your user data under our control. Lycos use electronic, and procedural safeguards to protect any personally identifiabl on its computers. Only authorized employees have access to the informat provide us. Any particularly sensitive information, such as a credit card ni purchase premium services from Quote.com or Matchmaker.com, is encry transmission.

While we cannot guarantee that loss, misuse or alteration to data will not take many precautions to prevent such unfortunate occurrences.

You are ultimately responsible for the security of your Lycos Network ID a Please take care when using and storing them. Lycos recommends that yo divulge your password to anyone. You should log out of your browser at t each computer session to ensure that others cannot access your personal and correspondence, especially if several people have access to your pers or you are using a computer in a public place like a library or Internet caf

### 9. How does the Lycos Network comply with the Children's Online Protection Act (COPPA)?
The Children's Online Privacy Protection Act (COPPA) of 1998 provides sai protect children who use the Internet by regulating the online collection o information from children under the age of 13. Because of these safeguar under 13 are not able to access or use all Products and Services on the Ly Parents of children under 13 can authorize their children to use some of c signing up for a Lycos Family Membership.

Parents can learn more about the Lycos Family Membership and obtain de answers about our compliance with COPPA by clicking here.

## 10. What you can do to better protect yourself on the Internet? Know the risks.

Meeting new people in an online community (chat room, forum, newsgrou board, Web page, etc.) is one of the best things about the Internet, but y always be careful about disclosing personal information such as an actual member name, email address, and so on. This information may be collect by others within the online community to send unsolicited email message parties, outside the Lycos Network. Some of the messages you receive m to you, but some may not. In an effort to curtail unsolicited email, Lycos email addresses and domains from sending messages to email addresses domains.

### Educate yourself.

Search the Web for as much information as you can about how to protect Look for a privacy policy on the Web sites you visit. A good place to start an independent, non-profit organization with a mission to build trust and the Internet. The Federal Trade Commission has a great Web site with us information on being a Savvy Internet Traveler along with other privacy i Additional privacy resources can be found at by clicking on any of the foll

### Department of Education: Parents Guide to the Internet
http://www.ed.gov/pubs/parents /internet/

### Better Business Bureau (BBB)
http://www.bbbonline.com

### Center for Democracy and Technology
http://www.cdt.org/privacy/ - Data Privacy
http://www.cdt.org/privacy/guide/ - Guide to Online Privacy

### Direct Marketing Association (DMA)
http://www.the-dma.org/

### Electronic Frontier Foundation - non-profit dedicated to protecting pul online privacy.
http://www.eff.org

### EPIC.org (Electronic Privacy Information Center)
http://www.epic.org

### Georgetown Internet Privacy Study
http://www.msb.edu/faculty/culnanm/gippshome.html

### Net Nanny - child safety software that filters potentially harmful Web sit
http://www.netnanny.com/

### NetCoalition.com
http://www.netcoalition.com

### Network Advertising Initiative
http://www.networkadvertising.org/

### Online Privacy Alliance

http://www.privacyalliance.org/

**The Privacy Rights Clearinghouse**
http://www.privacyrights.org/

**Tell your children: "Never talk to strangers!"**
While Lycos works hard to protect children on the sites within the Lycos N
cannot protect their privacy once they leave. Please teach children that th
reveal their names or other personal information to anyone they encounte
Internet. They should also be instructed not to fill out any forms or regist
site without your knowledge and consent. Parents can also prevent or lim
access to inappropriate material on the Web by using commercially availa
control protections (such as computer hardware, software, or filtering ser
advantage of the online resources for parents available on the Lycos Netv
SearchGuard and GetNetWise.

**Use PGP (Pretty Good Privacy)** http://www.pgp.com or another encryp

**Contact Us**
Questions regarding this statement should be directed to:

**Lycos Privacy Site Coordinator**
Lycos, Inc.
100 5th Ave
Waltham MA 02451
(781) 370-2700
(781) 370-2886 (Fax)
**privacy@lycos.com**

If you do not receive acknowledgment of your inquiry or your inquiry has
satisfactorily addressed, you should then contact TRUSTe, who will serve
with the Lycos Network to resolve your concerns.

**Updates**
The Lycos Network will update this policy from time to time so please che
periodically. When such changes occur, you will see the word "Updated" r
Privacy Policy link on the front page of each site on the Lycos Network. If
we decide to use personally identifiable information in a manner different
stated at the time it was collected, we will prominently post such changes
implementing them.

Last updated August 18, 2003.

EXHIBIT "4"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNIVERSAL COMMUNICATION ) <br> SYSTEMS, INC. (A Nevada Corporation), ) <br> MICHAEL J. ZWEBNER (individually) & ) <br> Others Similarly Situated ) <br>       Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> LYCOS INC. *dba* THE LYCOS ) <br> NETWORK & TERRA LYCOS, INC. ) <br> _____/ | CIVIL ACTION <br> NO. 05-10435-REK <br> CONSOLIDATED WITH <br> NO. 05-11172-REK |

CONSOLIDATED PROCEEDINGS

| | |
|---|---|
| UNIVERSAL COMMUNICATION ) <br> SYSTEMS, INC. (A Nevada Corporation), ) <br> MICHAEL J. ZWEBNER (individually) & ) <br> Others Similarly Situated ) <br>       Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> LYCOS INC. *dba* THE LYCOS ) <br> NETWORK & TERRA NETWORKS, S.A.,) <br> JOHN DOE #1 aka *"the_worm06"*, ) <br> JOHN DOE #2 aka *"no_insiders"*, ) <br> JOHN DOE #3 aka *"the_worm_06A"*, ) <br> JOHN DOE #4 aka *"65175R"*, ) <br> JOHN DOE #5 aka *"Henry_Johnson123"* &) <br> JOHN DOE #6 aka *"quondo1"* ) <br> JOHN DOE #7 aka *"Tobias95"* ) <br> JOHN DOE #8 aka *"CrawleySmith"* ) <br>       Defendants ) <br> _____/ | CIVIL ACTION <br> CASE NO. 05-11172-REK <br> LEAD CASE |

## DECLARATION OF MICHAEL J. ZWEBNER IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS [DE 66, 67]

I MICHAEL J. ZWEBNER, do hereby declare and state as follows:

1.     I am a Plaintiff in this action, and reside, when in the United States, within the city of Miami Beach, Miami-Dade County, Florida;

2.     For more than four (4) years, both myself and one or more of the companies with which I am affiliated, have been the target of an essentially continuous barrage of hate email and misinformation posted on the internet, specifically, on the "YAK" and "UCSY" message boards of the Raging Bull web site, that is hosted by LYCOS, Inc. (LYCOS).

3.     Although I do not a have an accurate count, I would estimate that the number of such emails directed at me personally has been in excess of 10,000, items.

4.     Representative samples of the hate mail directed at me are annexed to the Amended Complaint, which is before the Court.

5.     Many of these hate email items have been posted under different pseudonyms/aliases, notwithstanding that their wording and content thereof is identical.

6.     Upon information and belief, the vast majority of hate email, which are directed at me, originate from the same individual, or a limited number of individuals acting in concert with each other.

7.     Under the Terms & Conditions of use contained in my Subscriber Agreement with LYCOS, LYCOS, I have repeartedly apprised LYCOS of the offensive messages which target both me personally that appear on the YAK and UCSY message boards, with little or no response.

1

8.     In 2002, and more recently beginning in July 2004, I have undertaken concerted legal action action against both the posters of such hate email, and the web hosts on whose sites such postings appear, to ascertain the true identity of these posters and to enjoin such posters from their continued harrassment of myself, and from their continued interference in my company's businesses. My efforts have met with limited success.

9.     In virtually every instance were I have sued a poster, who was a regisetered subscriber to the LYCOS Network, LYCOS resisted disclosure of the identity of the poster, or information that would lead to their identity, even after receipt of legal process, notwithstanding the such posters have waived of disclosure of his personal information at the time of subscription to the LYCOS Network. (LYCOS *Privacy Policy, Paragraph (5)* - annexed to concurrently file Opposition To Motion To Dismiss, as Exhibit "3").

10.     Most recently, I obtained an injunction against one of the more obnoxious of the LYCOS authorized posters, Roberto Villasenor, in State Court in Miami, and notwithstanding the entry of such injunction against him, he continues to post the same hate emails and misinformation on the LYCOS supported web sites.

11.     LYCOS has intervened in the State Court proceeding in Miami in an effort to quash the injunction entered against their authorized posters, and, upon information and belief, is providing aid and counsel to the individuals named in the injunction, to assist them in their individual capacity to vacate such injunction.   The Judge in Miami has refused to vacate the injunction against such individuals, and has stayed the enforcement of the injunction until such time as this Court has ruled upon the LYCOS immunity, if any, under the CDA.

2

1 2.    The hate email directed to me, and detrimental effect of such postings of misinformation regarding my companies, has caused me severe emotional distress to the point were I require medical attention.

Pursuant to *28 U.S.C. §1746*, I hereby declare, under penalty of perjury, that statements made herein are truthful, and based upon information and belief as to the truthfulness and accuracy of such statements.

August 18, 2005

MICHAEL J. ZWEBNER                Date
(electronic signature)

3

## CERTIFICATE OF SERVICE

I hereby certify the foraging paper entitled:

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS [DE 66, 67]

was served upon counsel of record, as per attached Distribution, by First Class Mail,

postage pre-paid, this 19th day of August, 2005.

Respectfully,

John P. Faro, Esq. (BBO #159260

DISTRIBUTION:

Richard Kirby, Esq.
Matthew Zayotti, Esq.
KEEGAN WERLIN LLP
265 Franklin Street
Boston, MA 02110-3113
Phone (617) 951-1400
Facsimile (617) 951-1354

Daniel J. Cloherty, Esq.
DWYER & COLLARA, LLP
600 Atlantic Avenue
Boston, MA 02210
Phone (617) 371-1021
Facsimile (617) 371-1037

Thomas G. Rohback, Esq.
James J. Reardon, Jr.
LeBoeuf, Lamb, Greene, & MacRae, LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103
Phone 860, 293-3596
Fax    860, 293-3555

John J. Moakley, Clerk
U. S. District Court
United States Courthouse
1 Courthouse Way
Boston, MA  02210