UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| UNIVERSAL COMMUNICATION SYSTEMS | ) | |
| INC., a Nevada Corporation; MICHAEL J. | ) | |
| ZWEBNER, individually; and | ) | |
| others similarly situated | ) | |
|     Plaintiffs, | ) | Civil Action |
| | ) | NO. 05-10435-REK |
|     v. | ) | CONSOLIDATED WITH |
| | ) | NO. 05-11172-REK |
| LYCOS, INC. and TERRA LYCOS, INC., d/b/a | ) | |
| THE LYCOS NETWORK, | ) | |
|     Defendants. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| _____ | ) | |
| UNIVERSAL COMMUNICATION SYSTEMS | ) | |
| INC., a Nevada Corporation; MICHAEL J. | ) | |
| ZWEBNER, individually; and | ) | CONSOLIDATED PROCEEDINGS |
| others similarly situated | ) | |
|     Plaintiffs, | ) | Civil Action |
| | ) | NO. 05-11172-REK |
|     v. | ) | LEAD CASE |
| | ) | |
| LYCOS, INC., d/b/a THE LYCOS | ) | |
| NETWORK and TERRA NETWORKS, S.A. , | ) | |
| JOHN DOE #1 aka "the worm06" | ) | |
| JOHN DOE #2 aka "no_insiders" | ) | |
| JOHN DOE #3 aka "the worm06A" | ) | |
| JOHN DOE #4 aka "65175R" | ) | |
| JOHN DOE #5 aka "Henry_Johnson123" & | ) | |
| JOHN DOE #6 aka "quondo1" | ) | |
| JOHN DOE #7 aka "Tobias95" | ) | |
| JOHN DOE #8 aka "CrawleySmith" | ) | |
|     Defendants. | ) | |
| _____ | ) | |

## REPLY MEMORANDUM IN SUPPORT
## OF LYCOS INC'S MOTION TO DISMISS THE COMPLAINTS[1]

Lycos' Memorandum Of Law in support of its Motion To Dismiss The Complaints (the "Memorandum") explains how each and every one of the claims asserted by the Plaintiffs against Lycos in this case is barred by Section 230 of the Communications Decency Act ("Section 230"). See 47 U.S.C. § 230; Green v. America Online (AOL), 318 F.3d 465, 470 (3d Cir. 2003); see also, e.g., Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123-24 (9th Cir. 2003); Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997); Noah v. AOL Time Warner, Inc., 261 F. Supp. 2d 532, 537-40 (E.D. Va. 2003), aff'd 2004 WL 602711 (4th Cir. 2004); Blumenthal v. Drudge and America Online, Inc., 992 F. Supp. 44, 46 (D.D.C. 1998).

Lycos' Memorandum also explains how the Plaintiffs' attempt to circumvent the impact of Section 230 through the use of a supposed "trade name dilution" claim in Count II of the Complaint is inconsistent not only with controlling First Circuit precedent, see L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 32-33 (1st Cir. 1987), but also with well-established principles of trademark law. See Restatement (Third) of Unfair Competition § 25(2) comment i. Finally, Lycos' Memorandum discusses how the Plaintiffs' various claims are barred by the broad release (the "Release") set forth in Paragraph 29 of the Lycos Subscriber Agreement and

---

[1] During the parties' Rule 7.1 conference on August 5, 2005, Lycos' undersigned counsel specifically asked Plaintiffs' counsel whether Plaintiffs intended to dismiss either of the two Complaints filed in the consolidated actions. Plaintiffs' counsel responded that Plaintiffs intended to proceed on both cases. Accordingly, on August 9, 2005, Lycos filed its Motion to Dismiss targeting both of the consolidated Complaints. On August 23, 2005, Plaintiffs unilaterally dismissed the Complaint in Civil Action No. 05-10435-REK. Accordingly, Lycos' Motion to Dismiss, remains pending only against the Plaintiffs' sole remaining Complaint, filed in Civil Action No. 05-11172-REK. The term "Complaint" as used in this Reply Memorandum refers to the Amended Complaint that has been filed in that remaining action.

that the Plaintiffs' dubious efforts to assert private rights of action under 47 U.S.C. § 223

("Section 223") and Fla. Stat. 784.048 are invalid.[2]

In response to these arguments, Plaintiffs largely ignore the extensive case law cited in

Lycos' Memorandum and instead attempt to cobble together a novel theory arguing that Section

230 does not insulate Lycos from all liability in this case. See Opposition to Defendants' Motion

to Dismiss (the "Opposition"), passim. Plaintiffs also appear to contend that the Release is

unenforceable, id. at 6-7, 12-13, 19, and that they are entitled to assert a private right of action

under Section 223. See Opposition at 14-17. Plaintiffs also attempt to sidestep an obvious

defect in the Complaint by claiming that a statute cited in support of a claim was a mere

"typographical error." See Opposition at 21-23. Finally, Plaintiffs assert a spurious argument

claiming that Lycos is an indispensable party to this case under Rule 19. See Opposition at 23-

24.

The Plaintiffs' desperate attempts to stave off dismissal of their claims should be rejected.

Plaintiffs' claims are barred by Section 230, and the other arguments advanced in their

Opposition are wholly without merit. Accordingly, Plaintiffs' claims against Lycos should be

summarily dismissed with prejudice.

### A.     The Plaintiffs' Claims Are Barred By Section 230.

In apparent recognition that a plain reading of Section 230 would bar each and every one

of their claims for relief against Lycos, the Plaintiffs appear to argue that their claims should not

be dismissed because Lycos supposedly provided what the Plaintiffs call "culpable assistance" to

the third parties who posted allegedly defamatory statements on the *Raging Bull* website. See

---

[2] Lycos' Memorandum also argued separately that the Plaintiffs' Complaint in Case No. 05-10435-REK failed to state a claim under Massachusetts Consumer Protection Act, Mass. Gen L. ch. 93A ("Chapter 93A"). See Lycos Memorandum at 19-20. Because Plaintiffs have unilaterally dismissed that Complaint, the Court need not address that argument.

Opposition at 5-6, 11-12. Elsewhere, the Plaintiffs attempt to challenge the application of Section 230 to their claims for relief by contending that the claims are specifically exempt from Section 230 immunity. See id. at 12, 16, 19, and 22. And Plaintiffs even make the remarkable argument that Lycos is not a provider of an "interactive computer service" for the purposes of Section 230. See id. at 16-17. We address each of these arguments in turn.

### 1.   Plaintiffs' "Culpable Assistance" Theory is Invalid.

In support of their novel theory regarding "culpable assistance," Plaintiffs rely almost exclusively upon the Seventh Circuit's decision in Doe v. GTE Corp., 347 F.3d 655, 659 (7th Cir. 2003). Specifically, Plaintiffs contend that the GTE Corp. decision authorizes claims against Lycos based upon Lycos' supposed "subscription practices" and Lycos' supposed "promotion" of the UCSY message board. See, e.g., Opposition at 6. In fact, a review of the GTE Corp. decision reveals that Plaintiffs have drastically misread that case. Specifically, the GTE Corp. court's reference to "culpable assistance" arose in connection with its analysis of whether the Plaintiffs had a claim for relief for wrongful wiretapping under the Electronic Communication Privacy Act (the "ECPA"), not the Communication Decency Act. See 347 F.3d at 658-59. In this case, by contrast, there are no claims of wiretapping or other wrongful interception of information. Accordingly, the GTE Corp. court's discussion of "culpable assistance" under the ECPA is entirely irrelevant here.

Moreover, the GTE Corp. court found that the defendant's transmittal of a third parties' pictures was not 'culpable assistance' to the wrongdoer under either an ordinary understanding of term or under the ECPA. Id. at 659. The GTE Corp. court correctly explained that a web host is not liable for the transmittal of information created by third parties. Id. Indeed, the Seventh Circuit held that even if a web host knows that the third party information being

transmitted is illegal, it is still not liable for the content.  Id.  Thus, even if the Plaintiffs'
"culpable assistance" standard were applicable here—and it is not—the allegations against Lycos
would be insufficient to support a claim under that theory.

Finally, and perhaps most importantly, in affirming the district court's rejection of the
plaintiffs' state law tort claims, the GTE Corp. court took care to note that every single federal
court of appeals that has addressed Section 230 has interpreted the statute as granting providers
with broad immunity from liability for *any* material, offensive or otherwise, that they may
transmit.  GTE Corp., 347 F.3d at 659-660 (citing, inter alia, Zeran and Green).  In so doing, the
court never considered or applied a "culpable assistance" exception to that broad grant of
immunity.  Thus, the Plaintiffs are simply wrong in their assertion that GTE Corp. creates a
"culpable assistance" exception to Section 230 immunity, or that it otherwise indicates that the
law is not settled on the issue.  Id.; compare Plaintiffs' Opposition at 5.[3]

Indeed, despite Plaintiffs' repeated efforts to lump Lycos in with "traditional media
defendants," see, e.g., Plaintiffs' Opposition at 3-4, there can be no dispute that one of the
primary purposes of the Communications Decency Act was to effectuate the *different* treatment
Congress wished to afford providers of interactive computer services versus the treatment

---

[3] To be sure, the GTE Corp. court does suggest, in *dicta*, that two alternative understandings of
the immunity conferred by Section 230 might be as palatable as the settled law on the subject.
Id. at 660.  First, the court advanced a reading of § 230(c)(1) whereby if an ISP "creates the
objectionable information" it would lose the benefit of immunity.  Id.  The court also suggested
that 230(c)(1) could be read to foreclose any liability that depends upon deeming the ISP a
"publisher" e.g., defamation, while allowing states to regulate in other areas.  Id.  Notably, even
if these alternative readings were controlling law, *neither reading would affect Lycos' immunity
from liability in this case*.  The Complaint in this case makes clear that Lycos did not create any
of the alleged objectionable information, see Complaint ¶¶ 29-33, 42-44, 57-59, 66-68, and the
claims forwarded by the Plaintiffs arise directly out of the supposedly defamatory content of
those third-party statements.  See Complaint, passim.

typically afforded traditional media publishers and distributors.  That is precisely why the statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  See 47 U.S.C. § 230(c)(1); see also Carafano, 339 F.3d at 1122 ("As a result [of the enactment of Section230] Internet publishers are treated differently from corresponding publishers in print, television and radio.").  Plainly, Section 230 is meant to aid the growth and development of the Internet industry by shielding internet providers from tort liability.  See Zeran, 129 F.3d at 330 (stating that "[t]he purpose of this statutory immunity is not difficult to discern. . . . The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech.").  Zeran, the leading case defining the contours of Section 230, found that  "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  Id.

Indeed, as the GTE Corp. court recognized, every federal court of appeals considering the issue has equally concluded that Section 230 immunity exists regardless of whether the interactive computer service knows or does not know of the truth or falsity of information transmitted.  See Carafano, 339 F.3d at1123-24; Green, 318 F.3d at 471; Ben, Ezra, Weinstein & Co. v. America Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000); see also Noah, 261 F. Supp. 2d at 537-40, aff'd 2004 WL 602711 (4th Cir. 2004).  And numerous other federal district courts have adopted similar conclusions.  See, e.g., PatentWizard, Inc. v. Kinko's, Inc., 163 F. Supp. 2d 1069, 1071-72 (D.S.D. 2001); Morrison v. America Online, Inc., 153 F. Supp. 2d 930, 933-34 (N.D. Ind. 2001)); Blumenthal v. Drudge and America Online, Inc., 992 F. Supp. 44, 46 (D.D.C. 1998).

Accordingly, the notion that Lycos would somehow lose its Section 230 immunity by transmitting objectionable information provided by third parties is plainly at odds with the expansive scope of the statute's language and applicable case law.  Indeed, federal courts have applied Section 230's immunity to claims alleging consumer fraud and other torts requiring heightened proof of intent.  See Green, 318 F.3d at 473; Noah, 261 F. Supp. 2d at 539 (applying Section 230 immunity to federal civil rights claim and explaining the "broad immunity" granted by Section 230's "expansive language"); PatentWizard, 163 F. Supp. 2d at 1071-72 (applying Section 230 immunity to claim alleging intentional spoliation of evidence); cf. Schneider v. Amazon.com, Inc., 31 P.3d 37, 42 (Wash. Ct. App. 2001) (explaining that "the legislative history [of Section 230] demonstrates that Congress intended to extend immunity to all civil claims").

> 2.    None of the Plaintiffs' Claims for Relief are Exempt from Section 230 Immunity.

Apparently aware of the fatal effect of Section 230 on their claims for relief, Plaintiffs make repeated efforts to contend that those claims are specifically exempt from the scope of Section 230 immunity.  See Opposition at 12, 16, 19, and 22.  These arguments border on the frivolous.

First, in support of their argument that their Florida state securities fraud claim in Count I of the Complaint is exempt from the application of Section 230, Plaintiffs cite to 47 U.S.C. § 230(e)(1).  See Opposition at 12.  But that provision specifically exempts the enforcement of various *Federal* criminal statutes from the scope of Section 230.  See §

230(e)(1).  The statute says nothing about state securities laws.[4]

Second, Plaintiffs cite to the same provision to suggest that their supposed private right of action under Section 223 in Count II of the Complaint is exempt from the scope of Section 230 immunity.  See Opposition at 15-16.  But as we have argued extensively elsewhere (see Memorandum at 16-17), Section 223 is a *criminal* statute that contains no private right of action.  Accordingly, the exemption set forth in § 230(e)(1) necessarily applies only to cases involving the criminal enforcement of Section 223.

Third, while Plaintiffs' citation to 47 U.S.C. § 230(e)(2) as authority for exempting their trade name dilution claim (see Opposition at 19) at least has some support in the text of the statute, the trade name dilution claim actually set forth in Count III of the Complaint is barred by controlling First Circuit precedent, and is also inconsistent with the Restatement (Third) of Unfair Competition.  See L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 32-33 (1st Cir. 1987); Restatement (Third) of Unfair Competition § 25(2) comment i.  According to these authorities, the Plaintiffs' dilution claim is in fact a defamation claim in disguise, and as such is not entitled to the benefit of Section 230(e)(2).  Plaintiffs' Opposition ignores this argument, choosing instead to assert summarily—and incorrectly—that there is "no dispute or question" that their trademark claim is entitled to the benefit of the intellectual property exemption.  See Opposition at 19.  That contention is simply wrong.

---

[4]At various points in their Opposition, Plaintiffs argue that Florida law is controlling on all of the state law issues presented in their Complaint.  See Opposition at 9,10,18,19,21-23.  In fact, Massachusetts law—not Florida law—applies to the Plaintiffs' claims.  The Subscriber Agreement entered into between Lycos and the members of Plaintiffs' putative class selects Massachusetts law as the law governing all disputes relating to the *Raging Bull* website.  See Complaint in Case No. 05-10435-REK at Exhibit 1 ¶ 33.  Furthermore, Lycos' alleged conduct occurred—if at all—in Massachusetts.  For these reasons, the Plaintiffs' claims brought under Florida law should be dismissed.  Cf. Northeast Data Systems, Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609-10 (1st Cir. 1993).

Fourth, Plaintiffs argue that the claim in Count IV of the Complaint under the Florida "cyberstalking" statute is exempt from Section 230 immunity pursuant to 47 U.S.C. § 230(e)(3) because the claim is "consistent with this section." See Opposition at 22. But as we have argued extensively elsewhere (see Memorandum at 18-19), the suggestion that this claim is "consistent" with the purposes of Section 230 is absurd. Plaintiffs' state law cyberstalking claim specifically seeks to hold Lycos liable for supposed "annoying, threatening, harassing and abusive communications" authored by third parties. See Complaint ¶ 65, 67. It also complains about Lycos' alleged failure to "implement controls to curtail" this third party activity. Id. ¶ 66. Section 230 was designed to protect providers from liability arising from such activity. See, e.g., Green, 318 F.3d 471 (refusing to hold Internet provider liable for alleged negligence in "failing to address certain harmful content on its network as Section 230 'specifically proscribes liability' in such circumstances.") (quoting Zeran, 129 F.3d at 332-33). Accordingly, Plaintiffs' bald assertion that this "cyberstalking" claim[5] is exempt from Section 230 immunity is baseless.

3.    Lycos Is a Provider of An Interactive Computer Service Entitled to Section 230 Immunity.

Finally, Plaintiffs' curious suggestion that Lycos is not an "interactive computer service" (see Opposition at 16-17) is belied not only by the allegations in the Complaint, see Complaint ¶¶ 7-8 (describing Lycos' functions in detail), but also by established federal caselaw holding that a Lycos web site qualifies as such a service. See Carafano, 339 F.3d at 1125 (holding that Matchmaker.com, another Lycos website, is entitled to Section 230 immunity). This decision is consistent with numerous other cases holding that Section 230 immunity applies to web site

---

[5] As discussed infra, Plaintiffs now appear to attempt to base their claim on a different Florida statute—claiming that their prior citations to Fla. Stat. 784.048 were a "typographical error." Because the claim attempts to impose liability upon Lycos for the content of third party website postings, Section 230 immunity bars the use of either statutory claim for relief.

operators.  See Batzel v. Smith, 333 F.3d 1018, 1030-32 (9th Cir. 2003) (operator of an online newsletter was an "interactive computer service" under Section 230); Gentry v. eBay, 99 Cal. App. 4th 816, 831 n.7 (2002) (concluding that eBay, an online auction site, was entitled to the protections of Section 230); Schneider v. Amazon.com, Inc., 31 P.3d 37, 43 (Wash. Ct. App. 2001) (applying Section 230 immunity to an operator of an interactive website); see also Novak v. Overture Services, 309 F. Supp. 2d 446, 452-53 (E.D.N.Y. 2004) (applying Section 230 immunity to Google, Inc., which maintained a website with an online discussion group). Accordingly, to the extent that Plaintiffs suggest that Section 230 immunity is unavailable to Lycos, they are simply wrong.

### B.    The Plaintiffs' Claims Are Barred By The Release.

By its express terms, the Release embraces all four of the claims asserted in the Complaint, as it applies to "any and all claims, demands, debts, obligations, damages (actual or consequential), costs, and expenses of any kind whatsoever, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, that you may have against them arising out of or in any way related to . . . [Lycos'] Products and Services . . . ."  See Complaint in Civil Action No. 05-10435-REK at Exhibit 1, ¶ 29.  Plaintiffs attempt to counter this broad Release language by claiming that it violates public policy and should thus be ignored.  Essentially, Plaintiffs present a circular argument contending it would be against public policy to enforce the Release because Plaintiffs believe that Lycos is liable for the alleged claims.  See Plaintiffs' Opposition at 7, 12-13.

Massachusetts courts in fact regularly enforce broad general releases.  See Eck v. Godbout, 444 Mass. 724, 728 (2005) ("broad wording in [a] release operates to settle all other, unrelated matters"); Leblanc v. Friedman, 438 Mass. 592, 597-98 (2003) (same).  Massachusetts

courts have further upheld releases implicating general policies of fairness where such releases involved private claims.  See, e.g., Canal Electric Co. v. Westinghouse Electric Corp., 406 Mass. 369 (1990) (enforcing release of consequential damages and Chapter 93A claims); Kristi's Restaurant Group, Inc. v. Zussman, 2000 WL 282513 (Mass. Super. Ct. Feb. 14, 2000) (enforcing release of Chapter 93A claim); Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118 (1986) (enforcing release of consequential damages even when those damages exceeded total contract price).

Finally, the United States Congress, through Section 230, has itself codified protection for Lycos similar to that set forth in the Release: broad protection from precisely the types of claims the Plaintiffs raise.  While the Plaintiffs may not agree with the public policy concerns undergirding the enactment of Section 230 – the growth and freedom of the Internet and related industries – *that* is the public policy as articulated by Congress and recognized by numerous federal courts throughout the country.  Accordingly, the Release is valid and enforceable, and the Plaintiffs' claims are absolutely barred.[6]

### C.      There Is No Private Right Of Action Under 47 U.S.C. § 223.

Lycos' Memorandum explains that Count II of the Complaint also fails to state a claim for two additional and independent reasons.  First, 47 U.S.C. § 223 ("Section 223"), upon which Count II is purportedly based, applies only to the use of telephones and telecommunications devices and is expressly inapplicable to interactive computer services, such as the Raging Bull Message Board that is at issue in this case.  See Memorandum at 16 (citing 47 U.S.C. §

---

[6] Plaintiffs argue at one point that, unlike Plaintiff Zwebner, the individual Plaintiff UCSY is not a signatory to the Subscriber Agreement and is therefore not bound by its terms.  See Opposition at 19.  As explained in our opening Memorandum, however, by suing to enforce the provisions of the Subscriber Agreement, UCSY is bound by that Agreement's terms.  See Memorandum at 14-15 (citing Intergen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003)).  Plaintiffs' Opposition never responds to this argument.

223(h)(1)(B)).  Second, Section 223 does not create a private right of action for civil plaintiffs.

See id. at 17-18.

In response, Plaintiffs first contend that Section 223 is nevertheless applicable to Lycos

because computer modems have been deemed telecommunications devices for the purposes of

the Communications Decency Act.  See Opposition at 16.  This argument is non-responsive.  As

an initial matter, Lycos is obviously not a computer modem.  More importantly, Section 223

explicitly does *not* apply to interactive computer services (except with respect to certain conduct

involving minors).  See 47 U.S.C. § 223(h)(1)(B).  Accordingly, to the extent that Count II

purports to allege a violation of Section 223 by Lycos, it cannot survive.

Equally important, despite the Plaintiffs' protestations to the contrary, there is nothing in

Section 223's text or legislative history that supports the Plaintiffs' claim that the statute created

a private right of action for civil litigants.  While the Plaintiffs contend that 47 U.S.C. §

223(f)(1)'s use of the term "cause of action" allows for claims to be brought by private

individuals, see Opposition at 15, the provision provides exactly the reverse:

> *No cause of action may be brought in any court* or administrative agency *against any
> person* on account of *any activity* that is not in violation of any law punishable by
> criminal or civil penalty, and that the person has taken in good faith to implement a
> defense authorized under this section or otherwise to restrict or prevent the transmission
> of, or access to, a communication specified in this section.

47 U.S.C. § 223(f)(1) (emphasis added).  Plainly, this provision was meant to invalidate claims

inconsistent with the Communications Decency Act — not to authorize a separate private right

of action.  Cf. Frazier v. Fairhaven School Committee, 276 F.3d 52, 67-68 (1st Cir. 2002) (noting

a general presumption against reading an implied right of action into a statute).

### D.    Plaintiffs' Effort to Advance A Wholly New Claim Under Count IV is Invalid.

As Lycos' Memorandum explains, Count IV of the Complaint could not survive a motion to dismiss because Florida Statute § 784.048 contains no private right of action.  See Memorandum at 18-19; Fla. Stat. § 784.048.  In response, and in apparent recognition that Count IV is in fact invalid as a matter of law, Plaintiffs now contend that the Amended Complaint contains a "typographical error."  Plaintiffs' claim that they actually intended to proceed under Fla. Stat. § 784.046, a statute which permits a private party to seek an order to restrain acts of "repeat violence."  See Opposition at 21.

As an initial matter, Lycos is dubious of Plaintiffs' assertion that the references to 784.048 in the Amended Complaint are typographical errors.  The citations to Section 784.048 were not only in the Amended Complaint filed on February 3, 2005, they were also set forth in the original Complaint filed on January 19, 2005. See Original Complaint in Civil Action No. 05-11172-REK (filed January 19, 2005).  In *both* versions of the Complaint, Count IV is styled as a claim against "cyberstalking," a classification that makes sense insofar as Section 748.048 is known as Florida's "stalking statute."[7]  See also Huch v. Marrs, 858 So.2d 1202, 1203 n.3, 1204 (Fla. 3d DCA 2003) (referring to Section 784.048 as "the stalking statute.").  And when the parties briefed the issues relating to this cause of action before the Southern District of Florida, the Plaintiffs specifically referenced Section 784.048, and even cited to a case discussing that provision.  See Plaintiffs' Opposition to Defendant Lycos Inc.'s Motion to Dismiss or Transfer,

---

[7] Section 748.046, by contrast, is appropriately referred to as the statute providing injunctive protection against "repeat violence" "dating violence" or "sexual violence."  See, e.g., Administrative Order No. 5-14.1, Adoption Of Domestic Violence Policies And Procedures In And For Polk County, Florida Exhibit A (March 2004) (explaining Section 784.046 procedures).

and for Immediate Stay at 6 (filed March 18, 2005).  In light of this history, the Plaintiffs' new contention that they have always intended to proceed under Section 784.046 is questionable.

Regardless, even if Plaintiffs had intended—or now intend—to proceed against Lycos on a statutory claim under Section 784.046, such a claim is invalid.  Under Florida law, any claim for a restraining order under Section 748.046 must be sought through a "Petition for Injunction for Protection Against Repeat Violence, Sexual Violence or Dating Violence."  See Fla. Stat. § 784.046(4)(a).  To state the obvious, neither the Original Complaint, nor the Amended Complaint has anything to do with sexual violence or dating violence.  Indeed, Section 748.046 provides that a private party may seek a temporary restraining order only against persons committing "repeat violence."  See Fla. Stat. § 748.046 (2).  "Repeat violence" is defined as "two incidents of violence or stalking *committed by the respondent*, one of which must have been within 6 months of filing of the petition, which are directed against the petitioner or the petitioner's immediate family member."  See Fla. Stat. § 748.046 (1)(b) (emphasis added).  The allegations in the Complaint contain nothing to suggest that Lycos has *ever* committed *any* incidents of violence or stalking.  Nor does Plaintiff Zwebner's newly-filed Declaration claim otherwise.  See Opposition at Exhibit 4 (describing harassment by third parties—not Lycos).  Accordingly, Plaintiffs efforts to salvage Count IV by recasting it under a different Florida statute are baseless.  The claim must be dismissed.

### E.    Lycos is Not an Indispensable Party to this Case

Finally, Plaintiffs make the broad assertion that this Court cannot dismiss their claims against Lycos because Lycos is an "indispensable party" to this litigation under Rule 19 of the Federal Rules of Civil Procedure.  Apparently, Plaintiffs believe that Lycos should remain a party to this suit regardless of whether Plaintiffs are able to state a claim for relief against Lycos.

-14-

This contention is nonsense.  If Plaintiffs have viable claims against other defendants, they can pursue those claims and seek whatever remedy the law permits.  There is no reason that Lycos is "indispensable" to those claims.  See Green, 318 F.3d at 468 n.1 (noting that the plaintiff's pendant state claims against various "Doe" defendants were remanded to state court for further proceedings after plaintiff's claims against AOL were dismissed under Section 230).

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Lycos' Memorandum In Support Of Its Motion To Dismiss The Complaints, Lycos respectfully request that this Court issue an Order granting that Motion and dismissing the Plaintiffs' claims against Lycos with prejudice.


LYCOS, INC.,


 By its attorneys,



/s/ David A. Bunis

David A. Bunis        (BBO #550570)
Daniel J. Cloherty     (BBO #565772)
Rachel Zoob-Hill      (BBO #659041)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 371-1000


Dated: September 27, 2005