UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ) | |
| UNIVERSAL COMMUNICATION SYSTEMS ) | |
| INC., a Nevada Corporation; MICHAEL J. ) | |
| ZWEBNER, individually; and ) | |
| others similarly situated ) | |
| ) | |
|     Plaintiffs, ) | Civil Action |
| ) | NO. 05-11172-REK |
|     v. ) | |
| ) | |
| LYCOS, INC., d/b/a THE LYCOS ) | |
| NETWORK and TERRA NETWORKS, S.A. , ) | |
| JOHN DOE #1 aka "the worm06" ) | |
| JOHN DOE #2 aka "no_insiders" ) | |
| JOHN DOE #3 aka "the worm06A" ) | |
| JOHN DOE #4 aka "65175R" ) | |
| JOHN DOE #5 aka "Henry_Johnson123" & ) | |
| JOHN DOE #6 aka "quondo1" ) | |
| JOHN DOE #7 aka "Tobias95" ) | |
| JOHN DOE #8 aka "CrawleySmith" ) | |
| ) | |
|     Defendants. ) | |

_____)

**MEMORANDUM IN SUPPORT OF
DEFENDANT LYCOS' MOTION FOR RULE 11 SANCTIONS AGAINST
PLAINTIFFS AND ATTORNEY JOHN FARO**

On October 11, 2005, this Court dismissed all claims against Lycos, Inc.

("Lycos"). The Court ruled that Section 230 of the Communications Decency Act

immunizes Lycos because the allegedly defamatory Internet postings that were the bases

for the Plaintiffs' Complaint were made by third parties, and not by Lycos. Two days

after the dismissal, Plaintiffs filed a motion seeking leave to amend the Complaint to add

the allegation that Lycos itself had supplied the content of the objectionable Internet

postings ("Motion for Leave").

Plaintiffs' new allegations deserve Rule 11 sanctions for two reasons. First, the allegations are unfounded and it is clear beyond doubt that the Plaintiffs conducted no factual inquiry whatsoever before making them. Second, Plaintiffs Motion for Leave is the most recent example of Plaintiffs' pattern of making false allegations against Lycos, misleading the court, and filing what the Plaintiffs themselves have characterized as purely "tactical" litigation. See Plaintiffs Motion for Leave to File Reply Memorandum in Support of Motion for Leave to File Amended Complaint at n.4 & 12.

This is not the Plaintiffs' first brush with Rule 11 in a case involving Lycos. On August 29, 2005, United States District Judge Adalberto Jordan of the Southern District of Florida imposed Rule 11 sanctions against Plaintiffs and Attorney Faro for similar conduct involving Lycos. Judge Jordan dismissed the Plaintiffs' defamation lawsuit against CNN (and others) for lack of subject matter jurisdiction. The Judge then sought to preempt a second amended complaint and ruled that the entire action was "baseless." See Universal Communication Systems, Inc. et al v. Turner Broadcasting System, Inc. et al, No. 05-20047-CIV-JORDAN (S.D. Fla.)(March 17, 2005 Order of Dismissal at pp. 2, 5)("In case the plaintiffs file a second amended complaint omitting the John Doe defendants, I address the media defendants' motion to dismiss, and grant it. . . . I will wait to see if the plaintiffs file a second amended complaint before addressing the pending Rule 11 motion.")

When the Plaintiffs sought leave to amend their complaint, Rule 11 sanctions were imposed. Judge Jordan specifically found that the Plaintiffs and Attorney Faro had "filed their complaint in federal court for the sole underlying purpose of exerting political and business pressures upon a defendant [Lycos]in another lawsuit, and to obtain

discovery it had been denied in other cases." See Turner Broadcasting System (Sanctions Order at 3)(August 29, 2005) (internal quotations omitted)(Ex. A hereto).

There is more. In *another* case filed by the Plaintiffs, Florida Circuit Court Judge Marc Schumacher excoriated Plaintiffs and their attorneys – including Attorney Faro – after the judge discovered that Plaintiffs' attorneys had tried to obtain an injunction against Lycos by trickery. Stymied by their inability to obtain an injunction in several lawsuits pending directly against Lycos, on December 28, 2004, Plaintiffs filed suit in Florida state court – not against Lycos – but against "John Doe" defendants who had allegedly made defamatory postings about the Plaintiffs on the Lycos *Raging Bull* message board. See Universal Communications Systems, Inc. et al v. Pedro Dembovich, Robeto Villasenor AKA worm_06, scri852, worm_06A, no_insiders, quondol, 65175RBlacksheep9110, ovenjanegra0, Blacksheepdip, doggonebad911, pinherring, ovanegra0, busholini, silvesterca, and wolfblitzzer0, Case No. 04-27383CA01 (11th Jud. Cir. Fla. 2004)(Schumacher, J.).

Predictably, the "John Doe" defendants defaulted. At a hearing on March 7, 2005, the Plaintiffs presented Florida Circuit Court Judge Marc Schumacher with an *ex parte* motion to enter an injunction by default against the "John Doe" defendants. After Judge Schumacher agreed to enter the injunction, he asked Plaintiffs' counsel to submit a proposed form of order for him to sign. Deceitfully, Plaintiffs' counsel drafted and submitted (*ex parte*) an order for the Judge's signature that permanently enjoined the John Doe defendants and all Internet providers from publishing statements about the Plaintiffs. See id. (Hearing Tr. of May 11, 2005, Ex. B hereto.) The injunction, as

worded, required Lycos to constantly police its website and investigate the identities of any posters submitting commentary about Plaintiffs or otherwise be in contempt.

As a result of Plaintiffs' bait and switch tactics, the Judge mistakenly signed a permanent injunction which far exceeded the scope of his prior ruling. Judge Schumacher soon discovered he had been duped. The transcript of Judge Schumacher's lecture to the Plaintiffs' counsel at a hearing on May 11, 2005 speaks for itself:

> "I never made any findings or ruling concerning a portion of this order as it relates at the bottom of page 2; and it was never brought to my attention, and for that, I think Mr. Cooper, you were here at the time.
>
> I never intended to enter an order and I'll tell you right now with the words, 'anyone or any entity ….' I mean that was never the court's intention and I can tell you when an order is given to the court *ex parte* after notice, you have an obligation really to just track what the court did, not to put words in the court's mouth especially that it is published in an order.
>
> I can tell you that had this been brought to my attention, and it's my fault for signing it, and I'll tell you I shouldn't have signed it; but it's also incumbent on counsel to let the court know if, in fact, anything that's going to be contained in an order goes beyond the issue that was placed before the court that the Court ruled upon on that day."

(Ex. B, hereto.)

In *another* hearing on August 5, 2005, Judge Schumacher bluntly told Attorney Faro: "… the court never intended for that language to be included in the order and signed the order not realizing that counsel had put that language in the order." (Tr. of August 5, 2005, Ex. C hereto.) Plaintiffs, unthwarted, brazenly sought to reinvigorate the suit and added Lycos as a party. Judge Schumacher has now stayed the case as to Lycos pending a ruling from this Court. See id.

Plaintiffs' Motion for Leave is part and parcel of this meritless, vexatious litigation against Lycos which has already raised the ire of two judges – one in state and

one in federal court. Plaintiffs' underhanded tactics continue unabated, and should be sanctioned.

**I.    Plaintiffs' Motion For Leave Is Frivolous and Was Filed Without Factual Inquiry For An Improper Purpose.**

Federal Rule of Civil Procedure 11 authorizes this Court to impose sanctions when "an attorney or party submits a pleading to the court that (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." Lancelloti v. Fay, 909 F.2d 15, 18 (1st Cir. 1990). As set forth below, there is abundant evidence that Plaintiffs submitted their Motion for Leave for an improper purpose and without any inquiry into whether certain facts alleged in the proposed Amended Complaint are true.

    A.    The Motion For Leave Was Filed For An Improper Purpose.

A pleading violates Rule 11 if "interposed for an improper purpose." Rule 11(b)(1). Improper purposes include harassment or needless increase in the cost of litigation. See EEOC v. Tandem Computers, Inc., 158 F.R.D. 224, 226 (D.Mass 1994)(Rule 11 "deter[s] dilatory and abusive tactics in litigation, and [ ] streamline[s] the litigation process by lessening frivolous claims or defenses."); Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendment).

Plaintiffs have filed no fewer than 11 separate lawsuits alleging that they have been disparaged by anonymous postings on various Internet message boards including Lycos' *Raging Bull* website. Within the substantial number of suits directly and indirectly involving Lycos, Plaintiffs' unjustifiable motions practice in each case demonstrates the extent to which Plaintiffs have harassed Lycos over the last year and a half. To wit:

5

Plaintiffs filed three actions (in addition to this case) in federal district court and one in state court directly against Lycos, all premised on identical claims.

- Universal Communications Sys., Inc. v. Lycos, Inc., Case No. 05-21618-CIV-MARTINEZ/Klein (S.D. Fla.), Plaintiffs amended their complaint, moved for preliminary injunction, amended their motion for preliminary injunction, and appealed transfer to this Court in the Eleventh Circuit Court of Appeals, which appeal was dismissed by the Court.  Plaintiffs finally voluntarily dismissed the Complaint, ceding that it duplicates the claims in this case.

- Universal Communications Sys., Inc. v. Lycos, Inc., Case No. 05-20916-CIV-Cooke/Brown (S.D. Fla.), a Petition for Bill of Discovery dismissed for lack of jurisdiction.  Plaintiffs' appeal to the Eleventh Circuit Court of Appeals was dismissed for lack of jurisdiction.

- Universal Communications Sys., Inc. v. Lycos, Inc., Case No. 05-20197-CIV-Lenard/Klein (S.D. Fla.), a second Petition for Bill of Discovery, was also dismissed for lack of jurisdiction.  Appeal to the Eleventh Circuit Court of Appeals was dismissed for lack of prosecution.

- Universal Communications Systems, Inc. et al v. Dembovich et al, Case No. 04-27383CA01 (11th Jud. Cir. Fla. 2004).  As referred to previously, Lycos intervened when Plaintiffs filed a motion for contempt against Lycos for violating an *ex parte* injunction drafted by the Plaintiffs – the wording of which was in contravention of the Judge's order.  The matter is stayed as to Lycos pending a ruling from this Court.  See id. (Order of Aug. 5, 2005).

Plaintiffs have also indirectly, but substantially, involved Lycos in other actions.

Examples include:

- Zwebner v. John Does – Alias "Tobias", et al., Case No. 03-CV-22328-MORENO (S.D. Fla.).  Lycos received subpoenas from the Plaintiffs demanding the names and contact information for approximately 75 *Raging Bull* anonymous users.  The Florida judge denied Plaintiffs' motion to compel Lycos to product the names.  Id.  (Order of January 13, 2004 denying motion to compel response to subpoena).

- Universal Communications Systems, Inc. v. Turner Broadcasting System, Inc., Case No. 05-20047-CIV- JORDAN/Brown (S.D. Fla.).  Plaintiffs sent a letter to Cable Network News, Inc. (CNN) demanding it exert political and business pressure on Lycos so Lycos would deny access to the *Raging Bull* website to certain persons.  The next day, the Plaintiffs sued Turner Broadcasting Systems, CNN, and Wolf Blitzer for defamation.  Plaintiffs' bizarre claim argued that the media outlets defamed them through their failure

6

to enforce their trademark rights against a *Raging Bull* website user who allegedly defamed the Plaintiffs using the moniker "wolfblitzzer0". To no one's surprise, as soon as Plaintiffs filed suit against CNN, they issued subpoenas to obtain discovery from Lycos. Plaintiffs filed suit for sanctions against Lycos for failure to comply with the subpoenas. As previously mentioned, the Court dismissed the case, concluding that there was strong circumstantial evidence that the suit was brought for "an improper purpose", issued Rule 11 sanctions against Plaintiffs and Attorney Faro, and granted attorneys' fees to the media defendants. See id. (Sanctions Order at 3-4, Ex. A hereto). Plaintiffs appealed to the Eleventh Circuit Court of Appeals on the merits and voluntarily withdrew their appeal of the sanctions as "untimely".

Incredibly, Plaintiffs' Reply to Lycos' Opposition to the Motion for Leave admits that the aforementioned matters are mere "tactical lawsuits." See Plaintiffs Motion for Leave to File Reply Memorandum in Support of Motion for Leave to File Amended Complaint at n.4 & 12. These duplicative and harassing "tactics" are exactly what Rule 11 guards against.

The foregoing history demonstrates that Plaintiffs are undeterred by the sanctions and reprimands imposed against them by federal and state judges in Florida. If sanctions are not entered in this case, Plaintiffs will doubtless continue to litigate with abandon against Lycos based on unfounded and frivolous allegations in order to evade this Court's ruling that Lycos is entitled to immunity under Section 230.

B.    Plaintiffs Knowingly Assert A Baseless Allegation Of Harassment Against Lycos, Having Conducted No Factual Inquiry Into the Allegation.

By affixing his signature to the Motion for Leave and proposed Amended Complaint, Attorney Faro certified that after conducting a reasonable inquiry, the factual contentions therein were warranted and supported. See Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992)(signer of the pleading has a duty of reasonable inquiry to plead only upon knowledge he somehow acquires); Muthig v. Brant Point Nantucket,

Inc., 838 F.2d 600 (1st Cir. 1988) (sanction imposed on an attorney for naming a defendant without inquiring into whether the defendant engaged in unlawful conduct).

The allegation that merits Rule 11 sanctions in this case is contained in Count V of Plaintiffs' proposed Amended Complaint (attached to Plaintiffs' Motion for Leave). Count V alleges that Lycos is directly making "repeated anonymous annoying, threatening, harassing and abusive communications." Proposed Amended Complaint ¶ 71.

Plaintiffs have litigated against Lycos for over one year, have filed four lawsuits directly against Lycos (amending the initial complaint in each suit), and have implicated Lycos in other suits – yet Plaintiffs never alleged that Lycos was directly harassing and threatening them – until now. Compare Complaint, Count IV ¶ 65:

> "THE LYCOS NETWORK has and continues to be used by the TERRA LYCOS authorized subscribers to make repeated anonymous annoying, threatening, harassing and abusive communications . . . ."

> with proposed Amended Complaint, Count V ¶ 71:

> "THE LYCOS NETWORK, specifically, the 'UCSY' message board of the RAGING BULL web site, has and continues to be used by the TERRA LYCOS, acting in concert with it [sic] authorized subscribers, to make repeated anonymous annoying, threatening, harassing and abusive communications . . . ."

In fact, the briefest of inquiries demonstrates that Plaintiffs' allegations are baseless, and that Lycos has never harassed Plaintiffs and has never supplied any content concerning the Plaintiffs. Yet Plaintiffs would have the Court believe that between the afternoons of October 11th (the date of the hearing on Lycos' motion to dismiss) and October 13th (when Lycos was served with the Motion for Leave), Plaintiffs unearthed information that Lycos was directly harassing them and inquired as to its veracity

sufficient to satisfy Rule 11.  Plaintiffs have provided no affidavits to substantiate this claim, or even a single example of this harassment, but instead ask this Court to accept their conclusory falsehoods without question.  Adding to the absurdity, Count V of the proposed Amended Complaint also asks this Court to provide <u>emergency</u> injunctive relief through a Florida Statute intended to protect battered women from repeated violence.  <u>See</u> proposed Amended Complaint ¶ 74; Fla. Stat. § 784.046 (providing procedure for injunctive relief from repeated violence).

Upon information and belief, Plaintiffs failed to make any factual inquiry before submitting this new, preposterous allegation against Lycos.  Plaintiffs and Attorney Faro should therefore be sanctioned here as they were in Florida because they submitted a claim to the Court without regard to its falsity.  <u>See</u> <u>Muthig</u>, 838 F.2d at 605 (Rule 11 violated where reasonable inquiry into facts demonstrates claim is without merit); <u>see also</u> <u>Turner Broadcasting System, Inc.</u>, (Sanctions Order at 2, Ex. A hereto) (sanctioning Plaintiffs and Faro because "the claim had no reasonable basis in fact or law.").

C.    <u>The Motion For Leave Is Frivolous As It Directly Ignores This Court's Previous Ruling On Dismissal.</u>

Plaintiffs' original Complaint was explicitly rejected by this Court on the basis of Section 230 immunity because there was no allegation that Lycos supplied the content about which Plaintiffs complained.  Plaintiffs have ignored the Court's ruling and submitted a proposed Amended Complaint that simply rewords claims already rejected by this Court.  Such conduct is sanctionable.  As Magistrate Judge Collings has noted, "There is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness."  <u>EEOC v. Tandem Computers, Inc.</u>, 158 F.R.D. 224, 229 (D.Mass

1994)(internal quotation omitted)(issuing Rule 11 sanctions to Plaintiff where its

"persistence in rehashing the same arguments time and again without success" was

"nothing but harassment at this juncture."); see also Vakalis v. Shawmut Corp., 925 F.2d

34, 37 (1st Cir. 1991)(upholding sanctions imposed on attorney and client where they

chose to ignore rather than directly challenge the court's order); Ryan v. Clemente, 901

F. 2d 177 (1st Cir. 1990)(attorney sanctioned $26,000 for frivolous complaint); Robinson

v. Dean Witter Reynolds, Inc., 129 F.R.D. 15, 22 (D.Mass. 1989)("In light of [the

opposition's] warning and the clear citations of controlling precedent, [counsel] cannot

defeat an award of sanctions.").

 Counts II, III, and IV of the proposed amended complaint all refer to a single

paragraph as grounds for claiming that Lycos is an information content provider.  This

paragraph simply repeats the rejected claim that Lycos' transmission of third-party

postings is tantamount to creating or providing the content of the postings themselves:

> The actions of TERRA LYCOS which contribute to the [sic] to the
> development and promotion of such false and misleading information . . .
> includes (a) the configuration of the TERRA LYCOS subscriber registration
> process so [sic] to augment the repetition of the same offensive posting . . . (b)
> the promotion of illegal activities . . . by linkage [sic] such message board [sic]
> to other financial sites within the LYCOS NETWORK . . . (c) the concealment
> of the identity of subscribers . . . so as to frustrate the initiation of legal action .
> . . (d) the intervention in legal proceedings against its subscribers . . . (e) upon
> information and belief, the providing [sic] legal advice and assistance to posters
> to resist the enforcement of injunctive relief . . .

Proposed Amended Complaint, ¶ 43.

 The Court's bases for dismissal of all claims against Lycos apply with equal force

to these "amended" claims.  Three things are clear: 1) the proposed claims are meritless;

2) amending the complaint to assert such claims is futile; 3) the claims are ripe for Rule

11 sanctions.

**II.**    **Sanctions Are Necessary To Deter Plaintiffs' Conduct.**

The sanctions issued against Plaintiffs and Faro in Florida are strong evidence that Plaintiffs have again pursued litigation against Lycos with an improper purpose. <u>See</u> <u>Anderson v. Boston Sch. Comm.</u>, 105 F.3d 792, 769 (1st Cir. 1997) (district courts in the First Circuit may consider past sanctions imposed on an attorney in determining whether and what sanctions should be imposed). Plaintiffs' latest Motion for Leave with attached proposed Amended Complaint makes clear that Plaintiffs and counsel will assert any claims against Lycos, no matter how groundless, and no matter how many courts in Massachusetts and Florida have already rejected the bases for those claims.

As this Court has previously ruled, Lycos is immune from suit for any claims the Plaintiffs have asserted against it. Yet Lycos has been forced to spend thousands of dollars defending itself against Plaintiffs' duplicative, often nonsensical, ceaseless motions practice. "One of the central purposes of Rule 11 is to protect parties and the Court from wasteful, frivolous, and harassing lawsuits and the rule provides for sanctions as a deterrent to such abusive conduct." <u>Jones v. Social Security Administration</u>, 2004 WL 2915290 *3 (D.Mass. 2004); Fed.R.Civ.P. 11(c)(2)(sanctions are a necessary deterrent to "repetition of such conduct or comparable conduct by others similarly situated.") Such deterrent is required here.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court issue an order granting Lycos' Motion for Rule 11 Sanctions and specifically ordering Plaintiffs and their counsel to reimburse Lycos for its reasonable costs and expenses incurred in the preparation of this Motion and Lycos' Opposition to Plaintiffs Motion For Leave to Amend the Complaint.  Undersigned counsel will provide the Court with an Affidavit attesting to the legal fees and costs it is seeking in this Motion.  Lycos also respectfully asks the court to impose such further sanctions as the court deems appropriate under the circumstances.

Respectfully submitted,

LYCOS, INC.

By its attorneys,

/s/ Rachel Zoob-Hill
David A. Bunis        (BBO #550570)
Daniel J. Cloherty      (BBO #565772)
Rachel Zoob-Hill      (BBO #659041)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
January 3, 2006              (617) 371-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-20047-CIV-JORDAN



UNIVERSAL COMMUNICATION )
SYSTEMS, INC., et al., )
)
Plaintiffs )
)
vs. )
)
TURNER BROADCASTING SYSTEM, )
INC., et al., )
)
Defendants )
_____ )

## ORDER

On January 7, 2005, the plaintiffs filed a one-count complaint alleging a claim for defamation against the media defendants. *See* Compl. [D.E. 1]. The complaint alleges that a third party (not the media defendants) disseminated allegedly defamatory statements about the plaintiffs on the "Raging Bull" website allegedly operated by Lycos, Inc., who is not a defendant in this action. *See generally id.* On January 21, 2005, the plaintiffs filed an amended complaint, containing the same defamation count against the media defendants, but adding a count for defamation against John Doe #1 and John Doe #2. *See* Am. Compl. [D.E. 8]. The John Does are not alleged to be related in any way to the media defendants. *See id.*

On February 7, 2005, the media defendants filed a motion to dismiss the amended complaint, [D.E. 17, 18], and on February 28, 2005, they filed a motion for attorneys' fees and sanctions. [D.E. 27]. On March 18, 2005, I dismissed the amended complaint for lack of subject matter jurisdiction, and alternatively for failure to state a claim upon which relief may be granted. *See* Order of Dismissal [D.E. 32]. I reserved judgment, however, on whether the media defendants would be entitled to attorneys' fees and/or sanctions under Rule 11. I now address the media defendants' motion for attorneys' fees and sanctions [D.E. 27], which is GRANTED.

"Rule 11 stresses the need for some prefiling inquiry." *See Worldwide Primates v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "Rule 11 sanctions are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory

that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *See id.* (citations omitted). In the Eleventh Circuit, "a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *See id.* If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. *Id.* The reasonableness of the inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the violative document; or whether he depended on forwarding counsel or another member of the bar. *See id.*

Here, the plaintiffs' claim against the media defendants was objectively frivolous. As explained in the order of dismissal, the claim had no reasonable basis in fact or law. Indeed, the plaintiffs concede that the media defendants are "not the source or origin of the defamatory statements," and that the media defendants "[do] not host the Raging Bull web site, nor [are they] responsible for administration thereof." *See* Pl. Resp. Memo [D.E. 31] at 2. Further, the plaintiffs admit that their claims against the media defendants are "not based upon their origination of the defamatory posting, but rather seeks to hold [them] accountable for the misuse of [their] intellectual property . . ." *See id.* As set out in the order of dismissal, however, there is no legal basis under Florida law for the plaintiffs to sue the media defendants *for defamation* because they were not publishers of the defamatory statements. *See* Order of Dismissal at 4.

Furthermore, I conclude that the plaintiffs did not have a good faith basis for seeking an extension of currently existing law. *See Fox v Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (affirming grant of Rule 11 sanctions where the plaintiffs presented "no argument, let alone good faith argument" for the reversal or modification of existing law); *Di Sisto College, Inc. v. Line*, 888 F.2d 755, 766 (11th Cir. 1989) (affirming grant of Rule 11 sanctions because the plaintiffs' counsel failed to acknowledge that "the binding precedent of [the Eleventh] Circuit disfavored [the p]laintiffs' position on legislative immunity," and although counsel insisted that his position was warranted by the law of another circuit, he failed to make any argument that the Eleventh Circuit's

2

existing law should be extended to incorporate that position).

The next question, then, is whether the plaintiffs' counsel knew, or would have known upon a reasonable inquiry, that the claims were frivolous. I conclude that Mr. Faro failed to make a reasonable inquiry into the facts on which the plaintiffs' defamation claim was predicated. Had he made such a reasonable inquiry, he would have discovered that the plaintiffs' defamation claim against the media defendants was frivolous. Indeed, a reasonable inquiry into the law of defamation would have revealed that the fundamental elements of a defamation claim were lacking, and that there was no legal authority for recovery under any of the theories the plaintiffs alleged.

Under *Worldwide Primates*, my findings thus far mandate the award of sanctions against Mr. Faro. *See* 87 F.3d at 1254. Rule 11 sanctions are even more appropriate here, however, because there is evidence that the plaintiffs filed their amended complaint in bad faith or for improper purposes. *See id.*

As the media defendants have pointed out, the plaintiffs filed several other lawsuits against Lycos, Inc. and other third parties related to the web sites also at issue in this action. *See Universal Communication Systems, Inc., et al. v. Lycos, Inc., et al.*, Case No. 04-21618 (S.D. Fla.); *Universal Communication Systems, Inc., et al. v. Lycos, Inc., et al.*, Case No. 05-20149 (S.D. Fla.); *Zwebner, et al. v. Coughlin, et al.*, Case No. 05-20168 (S.D. Fla.). The media defendants are not named in these lawsuits. Significantly, however, the plaintiffs attached to the amended complaint a letter dated January 6, 2005 – a day or two after Lycos opposed the plaintiffs' motion to compel discovery – from Mr. Faro to Johnita Due, in-house counsel for CNN. In that letter (attached as Exhibit 3 to the first amended complaint), Mr. Faro states:

> [M]y clients believe that there are both political and business pressures that can be brought to bear by CNN/AOL upon Lycos to cause them to exercise responsible internet community citizenship and, once and for all, permanently deny access to their Raging Bull web sites by individuals whom they know are abusive and misuse their web services to manipulate securities and/or extortion.

This statement evinces that the plaintiffs filed their complaint in federal court for the sole underlying purpose of exerting "political and business pressures" upon a defendant in another lawsuit, and to obtain discovery it had been denied in the other cases. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1515 (11th Cir. 1991) ("Where . . . [the court has] no direct evidence of the party's and

3

counsel's state of mind, [the court] must examine the circumstantial evidence at hand and ask, objectively, whether an ordinary person standing in the party's or counsel's shoes would have prosecuted the claim."). Given the plaintiffs' lack of reasonable inquiry, and the statements in Mr. Faro's letter to one of the media defendants, I conclude that an ordinary person in the plaintiffs' and Mr. Faro's shoes would not have prosecuted this claim. On the record available to me, I find strong circumstantial evidence that the plaintiffs brought this defamation suit against the media defendants for an improper purpose.

For the foregoing reasons, and pursuant to Rule 11, the media defendants' motion for attorneys' fees and sanctions [D.E. 27] is GRANTED. In accordance with Rule 11(c)(2), the media defendants are entitled to their reasonable attorneys' fees and costs related to the defense of this action from plaintiffs' counsel. If the parties cannot agree as to the amount, the media defendants shall file a more detailed motion as required by Local Rule 7.3(B) by no later than September 10, 2005.

DONE and ORDERED in chambers in Miami, Florida, this 24th day of August, 2005.

Adalberto Jordan
United States District Judge

Copy to:       Magistrate Judge Klein
               All counsel of record

4

5-11-05 Hg.txt

1

```
 1              IN THE CIRCUIT COURT OF THE
                ELEVENTH JUDICIAL CIRCUIT IN
 2              AND FOR MIAMI-DADE COUNTY

 3              CASE NO. 04-27383-CA-01

 4
      UNIVERSAL COMMUNICATION
 5    SYSTEMS, INC., and AIRWATER CORP.,

 6                    Plaintiffs,
      vs.
 7
      PEDRO DEMBOVICH and ROBERTO
 8    VILLASENOR, a.k.a worm_o6, scri_852,
      worm_06A, no_insiders, quondol,65175R,
 9    Blacksheep9110, ovejanegra0, Blacksheedip,
      Doggonebad911, pinkherring, ovanegra0,
10    Busholini, silvesterca, and wolfbitsser0,

11                    Defendants,
                                          /
12

13                    Dade County Courthouse
                      Miami, Florida
14                    May 11, 2005
                      9:15 a.m. -  9:30 a.m.
15

16              TRANSCRIPT OF PROCEEDINGS

17
              MOTION in above-styled cause taken before
18    Judge Marc Schumacher, reported by Deborah A. Harris,
      Court Reporter and Notary Public in and for the State
19    of Florida at Large, pursuant to Notice filed in the
      above cause.
20                    - - - - - - -

21    Reported By:
      Deborah A. Harris, Court Reporter
22    Notary Public, State of Florida
      Esquire Deposition Services
23    Fort Lauderdale Office
      Phone -  800-211-3376
24              (954) 331-4400

25    Job No. 728705
```

2

1

Page 1

5-11-05 Hg.txt

```
 2
 3
 4
 5    Appearances:
 6
 7
 8        On Behalf of the Plaintiff:
 9
10            ROBERT H. COOPER, P.A.
11            2999 N.E. 191 Street, Suite 704
12            Aventura, Florida  33180
13            (954) 792-4343
14            BY:   ROBERT H. COOPER, ESQ.
15
16
17            LAW OFFICES OF FARO & ASSOCIATES, P.A.
18            44 West Flagler Street, Suite 1100
19            Miami, Florida  33130
20            (305) 424-1112
21            BY:   JOHN H. FARO, ESQ.
22
23
24        On Behalf of the Defendant:
25
```

3

```
 1        BLACK, SCREBNICK, KORNSPAN & STUMPF, P.A.
          201 S. Biscayne Boulevard, Suite 1300
 2        Miami, Florida  33131
          (305) 371-6421
 3        BY:  LARRY A. STUMPF, ESQ.
          BY:  AARON ANTHON, ESQ.
                    Page 2
```

5-11-05 Hg.txt

4

5    Also Present:

6

7

            Roberto Villasenor, in Pro Per

8

            (via telephone.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1

2

3

4

5            P R O C E E D I N G S:

6

Page 3

5-11-05 Hg.txt

```
 7          THE COURT:   Good morning ladies and gentlemen.
 8
 9      We're here regarding Universal Communications
10
11      versus Dembovich.   Would counsel please state your
12
13      appearances for the record?
14
15          MR. STUMPF:   Larry Stumpf, Black, Srebnick,
16
17      Kornspan & Stumpf for the proposed intervener,
18
19      Lycos, Inc.
20
21          MR. COOPER:   Robert Cooper on behalf of the
22
23      Plaintiffs.
24
25          MR. FARO:   John Faro on behalf of Plaintiffs.
```

5

```
 1          MR. VILLASENOR:   This is Roberto Villasenor
 2      representing pro se, myself, Defendant.
 3          THE COURT:   Thank you.   We're here on the
 4      motion of Lycos intervening in this matter.
 5          MR. STUMPF:   Yes, sir and to stay the impact
 6      of the final judgment and injunction.
 7          THE COURT:   I just want everyone one to know,
 8      when these orders are given to me, these orders,
```

Page 4

5-11-05 Hg.txt

9    I'm a little concerned because this matter was

10   originally placed before me and I've read the order

11   and there are certain things contained in this

12   order that I didn't -- sometimes we just sign these

13   orders from where I'm sitting and I didn't agree to

14   do certain things in this order.

15

16

17

18

19

20

21

22

23

24

25

6

1

2

3

4

5         One of the things, I know this was on a motion

6

7    for judgment, final judgement based upon a default;

8

9    and the language that's contained in this order

10

11   deals with the default which the Court entered, but

Page 5

5-11-05 Hg.txt

12

13      I never made any findings or ruling concerning a

14

15      portion of this order as it relates at the bottom

16

17      of page 2; and it was never brought to my

18

19      attention, and for that, I think Mr. Cooper, you

20

21      were here at the time.

22

23          I never intended to enter an order and I'll

24

25      tell you right now with the words, anyone or any

7

1      entity with notice of this judgement which

2      republishes the past Internet postings made by the

3      Defendant or any of the Defendant's aliases or any

4      other alias of the Defendant known to said person

5      or entities which identifies Plaintiff or Michael

6      Zebner and/or aids and/or assists either defendant

7      in violation of this order is also in violation and

8      could be held in criminal or civil contempt.

9          I mean, that was never the Court's intention,

10      and I can tell you that when an order is given to

11      the Court ex parte after notice, you have an

12      obligation really to just track what the Court did,

13      not to put words in the Court's mouth especially

Page 6

5-11-05 Hg.txt
14     that it is published in an order.

15

16

17

18

19

20

21

22

23

24

25

8

1

2

3

4

5          I can tell you that had this been brought to

6

7     my attention, and it's my fault for signing it, and

8

9     I'll tell you I shouldn't have signed it; but it's

10

11    also incumbent upon counsel to let the Court know

12

13    if, in fact, anything that's going to be contained

14

15    in an order goes beyond the issue that was placed

16

Page 7

5-11-05 Hg.txt

17      before the Court that the Court ruled upon on that

18

19      day.

20

21          MR. STUMPF:    At that hearing, Your Honor,

22

23      there obviously at that point was no opposition and

24

25      I did explain, Your Honor, that we were only

9

1       seeking final judgment on the injunctive relief.

2       There's also claims for damages that were still

3       pending and I thought I had gone through and

4       explained the nature of the relief we were

5       requesting.

6           THE COURT:    What you are telling me what you

7       are asking the Court to do, that was my intent to

8       do.    It was never the Court's intention on the

9       default matter to go so far beyond and to include

10      this language.

11          So at this point in time before I even hear

12      the motion to intervene at this time the Court is

13      going to, as it relates to the order of 7 March,

14      2005, the Court is going to enter an amended final

15

16

17

18

5-11-05 Hg.txt

19

20

21

22

23

24

25

10

1

2

3

4

5       judgment of injunction deleting that paragraph and

6

7       those words that the Court just read into the

8

9       record from the order.

10

11          MR. FARO:   It is my understanding that if

12

13      someone has notice of the order that they are not

14

15      going to be bound by the order?

16

17          THE COURT:   No.

18

19          MR. FARO:   Even though the ruling is not going

20

21      to provide for that?

5-11-05 Hg.txt

22

23        THE COURT:   To tell you the truth at this

24

25    point in time I'm striking those words from the


11


1     order.   You can go ahead and send out notice.   If

2     someone does something that you feel they shouldn't

3     do place it back before the Court.   I'm telling you

4     right now, I'm very concerned when an order is

5     submitted to the Court as it's submitted to the

6     Court for the Court's signature and the Court at

7     this time is reaffirming its previous ruling and

8     I'm striking those words from the Court order.

9        MR. FARO:   Is the intervention then moot?

10        MR. STUMPF:   I don't think so at all, Your

11    Honor, because in 90 seconds let me tell you why

12    not.

13        THE COURT:   If you still want to intervene.

14        MR. STUMPF:   I still want to intervene.

15

16

17

18

19

20

21

22

23

5-11-05 Hg.txt

24

25

12

1

2

3

4

5      THE COURT:   The motion to intervene at this

6

7    time then we can adjudicate the issue that you just

8

9    raised, counsel.   The motion to intervene at this

10

11   time is granted.

12

13       MR. STUMPF:   I would like an order staying

14

15   application of the injunction even as amended to

16

17   Lycos pending only Your Honor's determination of

18

19   our motion to vacate the injunction which is

20

21   specially set on May 25th.

22

23       I'll tell you why, two days after this motion

24

25   the default judgment of injunction was entered as

Page 11

5-11-05 Hg.txt

13

1       Plaintiff, Universal Communications Systems issued
2       a press release that said they will continue to
3       monitor web sites at and absolutely without
4       hesitation take to the Court any and all alleged
5       violations and seek civil and criminal contempt
6       orders with the demands for financial sanctions.
7           Two days after the press release Plaintiff's
8       counsel sent a letter to Lycos basically saying,
9       you are our target.  Your Honor, this whole Lycos
10      is an innocent bystander to a dispute between
11      Universal and its principals and Msrs. Villasenor
12      and the other individual defendant, Lycos is merely
13      an Internet service provider.
14          It's like suing the United States Postal
15
16
17
18
19
20
21
22
23
24
25

14

5-11-05 Hg.txt

```
 1
 2
 3
 4
 5          Service if someone defames you by a letter.  All
 6
 7          Lycos is seeking to do now is Intervene in this
 8
 9          case because they have definitely been put on
10
11          notice that their rights are, according to
12
13          Plaintiff, at risk and to stay the application of
14
15          the final injunction pending again on Your Honor's
16
17          hearing of our motion to vacate or modify the
18
19          injunction which we served at the same time we
20
21          served our motion to intervene on March 29th which
22
23          is set for special hearing before Your Honor on May
24
25          25th.
```

                                                            15

```
 1              MR. FARO:  May I address that point?
 2              THE COURT:  Your motion is denied at this
                            Page 13
```

5-11-05 Hg.txt

3    time.   The Court has stricken the language that was

4    applicable to whatever notice that you received.

5        At this point in time the motion is denied.

6    I'll deal with this at the hearing.

7        MR. STUMPF:   Motion to intervene is granted.

8        THE COURT:   Motion to intervene is granted.

9    Thank you very much.   Have a good day.

10        (At 9:30 a.m., the proceedings were

11    concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

16

1

2

3

4

```
                        5-11-05 Hg.txt
 5                  COURT CERTIFICATE
 6
 7
 8   STATE  OF  FLORIDA:
 9                   : SS.
10   COUNTY  OF  BROWARD:
11
12
13
14
15        I, Deborah A. Harris, being a Court Reporter
16
17   and Notary Public in and for the State of Florida at
18
19   Large, certify I was authorized to and did
20
21   stenographically report the foregoing proceedings and
22
23   that the transcript is a true record.
24
25        DATED this 14th day of May, 2005.
```

17

```
 1
 2
 3
 4
 5               _ _ _ _ _ _ _ _ _ _ _
 6               Deborah A. Harris
 7
```

5-11-05 Hg.txt

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

18

1
2
3
4
5
6
7
8
9

5-11-05 Hg.txt

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1                        IN   THE CIRCUIT  COURT OF  THE
                         11TH  JUDICIAL CIRCUIT IN  AND
2                        FOR MIAMI-DADE COUNTY, FLORIDA

3                        GENERAL JURISDICTION DIVISION

4                        CASE NO.  04-27383 (CA 01)

5   UNIVERSAL COMMUNICATIONS
    SYSTEMS, INC., et al.,
6
               Plaintiffs,
7   vs.

8   PEDRO DEMBOVICH, et al.,

9              Defendants,
    and
10
    LYCOS, INC.,
11
               Intervener.
12   _____/

13

14           The above-entitled cause came on for
    hearing before the Hon. Marc Schumacher as Judge of
15   the above-styled Court, in his Chambers in the Dade
    County Courthouse at Dade County, Florida, on the
16   5th day of August, 2005, at 8:00 a.m., pursuant to
    notice.
17

18                  APPEARANCES:

19                  JOHN FARO, ESQ.,
                    on behalf of the Plaintiffs.
20
                    ROBERT H. COOPER, ESQ.,
21                  on behalf of the Plaintiffs.

22                  ROBERTO VILLASENOR,
                    on behalf of the Defendants.
23
                    LARRY A. STUMPF, ESQ.,
24                  AARON ANTHON, ESQ.,
                    of the law firm of
25                  Black, Srebnick, Kornspan & Stumpf,
                    on behalf of Lycos, Inc.
```

```
1              THE COURT:  Hello.  This is Judge
2    Schumacher.  Good morning.
3              MR. VILLASENOR:  Hello, Your Honor.
4              THE COURT:  Are you Mr. Villasenor?
5              MR. VILLASENOR:  Yes.
6              THE COURT:  Before I ask you to state
7    your appearance for the record, let me just
8    get on the record, I do have a lot of
9    individuals before me, this is Universal
10   Communications Systems versus Villasenor, et
11   al.  Would counsel, starting with the
12   plaintiffs, please state your appearances for
13   the record.
14             MR. FARO:  John Faro appearing on behalf
15   of Universal Communications.
16             MR. COOPER:  Robert Cooper on behalf of
17   plaintiffs.
18             THE COURT:  And, Mr. Villasenor, just
19   state your appearance for the record, please.
20             MR. VILLASENOR:  This is Roberto
21   Villasenor, representing pro say the
22   defendant.
23             MR. STUMPF:  I'm Larry Stumpf, and this
24   is my associate Aaron Anthon.  We're here
25   representing the intervenor, Lycos, Inc.
```

3

```
 1              UNIDENTIFIED PERSON:  Your Honor, we're
 2       just observers.  We don't want to be of
 3       record.
 4              THE COURT:  Okay.  Thank you.
 5              We're here on a number of matters.  I
 6       believe one of the matters has been withdrawn.
 7       That was the contempt that had been filed by
 8       the plaintiff against Lycos.  Is that correct?
 9              MR. COOPER:  That's correct, Your Honor.
10              MR. STUMPF:  Yes.  But we want to be
11       heard on that, Your Honor.  We think we're
12       entitled to an award of fees and costs.
13              THE COURT:  I'm going to reserve on that
14       issue right now so we can get to the other
15       issues, but I believe, Mr. Stumpf, you have
16       other matters before the court?
17              MR. STUMPF:  Yes, Your Honor.  The first
18       thing we have before the court is our long
19       standing motion to dissolve the injunction,
20       and the other matter, that may or may not be
21       on, depending upon time allotted, is
22       plaintiffs' motion to amend the complaint.
23              Your Honor, since all the matters before
24       you involve, obviously, the same procedural
25       history and so forth, I would like to take
```

4

1        just a couple minutes and set forth the

2        procedural history of this matter.  I think

3        it's important to put this in context.

4             THE COURT:  Just so you know, I have

5        received numerous pleadings on behalf of both

6        the plaintiffs and defendant Lycos, and I have

7        reviewed all of the pleadings.  I reviewed all

8        of the memoranda submitted.  I reviewed the

9        case law in this matter.  I feel that I'm up

10       to date on most of these issues.  And rather

11       than sit here making a record, whatever you

12       filed is part of the record so I would like

13       you to just get to the argument concerning

14       these issues.  If you want to lay a short

15       foundation, you're free to do that, but I

16       don't want to spend all the time laying a

17       foundation and then I'm saying "Time's up."

18            MR. STUMPF:  Trust me, I'll be very

19       short.

20            THE COURT:  Okay.

21            MR. STUMPF:  We represent the

22       intervenor.  This is a dispute between the

23       plaintiff and the individual defendants.  The

24       case started in December of '04.  There was a

25       final judgment of injunction entered on March

```
1        7th before Lycos was a party to this case.

2        That resulted, Your Honor, in a press release

3        by the plaintiffs captioned "Court issues

4        mandatory preliminary injunction" and warning

5        of civil and criminal contempt for violations.

6             There followed, I'll characterize it, as

7        a threatening letter to Lycos on March 11th,

8        threatening all sorts of adverse consequences

9        to Lycos if it violated the injunction.

10            So on March 29th, to preserve its

11       rights, with respect to the injunction, Lycos

12       moved to dissolve the injunction and to

13       intervene in the case.  There was a hearing on

14       May 11th on that motion.

15            Our motion to intervene was granted and

16       the court struck the language from the default

17       injunction that plaintiffs rely upon to argue

18       that that injunction is applicable to Lycos.

19            THE COURT:  Just so the record is clear

20       concerning this issue, again this is history,

21       we're all aware of what transpired, but the

22       court never intended for that language to be

23       included in the order and signed the order not

24       realizing that counsel had put that language

25       in the order.
```

1          MR. STUMPF:  I understand that, and I

2     think it's important background, because, as a

3     result of that hearing, plaintiffs issued

4     another press release, this time saying the

5     court pronounced ruling that it was denying

6     Lycos' motion to stay the applicability of the

7     injunction against Lycos, telling the world,

8     in effect, that the injunction is still out

9     there.

10          We had a hearing set on our motion to

11     dissolve the injunction in late May.

12     Unfortunately, that didn't get heard for

13     reasons of the court's docket.  We attempted

14     to get that motion heard numerous times.

15     Every time we tried to get it set, there was a

16     scheduling problem with plaintiffs' counsel.

17          Then on June 15th, the plaintiffs moved

18     for contempt against Lycos and others for

19     violating the injunction that had been

20     modified.  They seek, in their motion for

21     contempt, a civil fine of $100,000 a day for

22     violating this injunction that had been

23     modified.

24          On June 30th, we noticed this hearing.

25     There was a hearing on July 6th on

```
 1              Mr. Villasenor's motion to quash and so forth.

 2              You recall that the court, at that time,

 3              ordered the plaintiffs to provide copies of

 4              third party subpoenas, and so forth, that had

 5              been served in this case.  To this day, we

 6              don't have them.  To this day, we don't have

 7              copies of those subpoenas as they have been

 8              served.  The court ordered the plaintiffs to

 9              file those papers that it displayed to the

10              court supporting its position that

11              Mr. Villasenor had been properly served,

12              ordered the plaintiffs to file those papers

13              with a notice of filing.  To this day, we do

14              not have them.

15                   THE COURT:  You don't represent

16              Mr. Villasenor.

17                   MR. STUMPF:  I'm a party to the case.  I

18              do not.  I'd like to be apprised of everything

19              that's filed in the case.

20                   Finally, Wednesday, 48 hours before this

21              hearing, after the hearing had been set for

22              six weeks and Lycos had prepared its

23              opposition to this motion for contempt -- and

24              we can do the math in which they're seeking,

25              what, five million dollars in damages, a
```

8

```
1       hundred thousand dollars a day for six
2       weeks -- finally, 24 hours before the hearing,
3       the plaintiffs, over my e-mail, comes an
4       e-mail saying, "The motion for contempt, I'm
5       going to file today a withdrawal of the motion
6       for contempt."
7            THE COURT:  This is history and the
8       problem is we're on a time clock, because I
9       have other hearings scheduled this morning
10       through the full day.  So I need you to get
11       down to the nitty-gritty.  I told you I was
12       going to reserve as it related to any claims
13       for attorneys' fees as a result of the filing
14       and the withdrawal of that motion, but I need
15       to move on.
16            MR. STUMPF:  The injunction should be
17       dissolved, Your Honor, because it's based on
18       an improper default.  The record is clear that
19       Mr. Villasenor was never properly served.
20       We've set forth the reasons for that in our
21       brief.  I don't have a dog in that direct
22       fight.  However, as we have set out in our
23       brief, under the Communications Decency Act,
24       the Federal Statute, Section 230 of that
25       statute expressly provides that an internet
```

1      service provider has no liability as a poster,

2      a poster of other people's communications and

3      publications.  The law could not be clearer.

4           We've cited at length the Zaren case,

5      which sets forth, in, frankly, outrageous

6      circumstances, somebody posted on a site that

7      you could buy T-shirts that were sort of pro

8      the Oklahoma bombings, of all things, and the

9      person whose address was given as the place

10     where you could purchase those outrageous

11     shirts sought to have the internet service

12     provider in that case retract those or not

13     allow those postings.  And the court said,

14     "Look, the law is perfectly clear."  Under

15     Section 230 of the Communications Decency Act,

16     the internet service provider, the poster can

17     have no liability in these circumstances.  I

18     know it's maybe a childish analogy that we've

19     set forth in our papers, but it's no different

20     than suing the post office for carrying a

21     defamatory message or the phone company for

22     providing the vehicle by which, allegedly, a

23     defamatory message can be conveyed.

24           THE COURT:  Let me just ask you, because

25     I'm not exactly sure what the bottom line is

1           right now.  If you set aside the court not

2           taking the action right now concerning setting

3           aside the temporary injunction, are you

4           requesting that the court enter a ruling

5           concerning whether or not Lycos can be held in

6           contempt based upon the court's issuance of

7           the temporary injunction?

8                   MR. STUMPF:  I want the injunction

9           vacated nun pro tunc, if possible, because the

10          record is clear, as long as there is any

11          injunction out there, plaintiffs are going to

12          seek to impose liability on Lycos for that

13          injunction being out there.  We think the

14          injunction was improperly granted, it's a

15          prior restraint on speech, and had other

16          defects, and we want the injunction gone.

17          There's no bond.  There's no showing of

18          likelihood of success on the merits.  Lycos

19          wants the injunction gone.  That's what we

20          want.

21                  THE COURT:  And if the injunction is not

22          gone, then what is your next step that Lycos

23          is requesting?

24                  MR. STUMPF:  We would like an order

25          saying that it was never the intent of the

```
 1            court that Lycos is subject to the injunction,

 2            it's not subject to the injunction, and Lycos

 3            could have no liability as a result of

 4            allegedly violating the injunction, because it

 5            can't be acting in active concert and

 6            participation with the defendants, because

 7            under Section 230 of the federal statute, that

 8            plaintiffs admit in their responsive papers,

 9            received yesterday, by the way, they admit

10            that that statute provides such immunity to an

11            internet service provider.  Lycos should not

12            be here.  We don't have a dog in this fight.

13            This is a dispute between the plaintiffs and

14            the individual defendants.  You can see what's

15            happening here.  The plaintiffs are

16            manipulating the process with default

17            judgments, handing the court orders to sign

18            that provides for civil and criminal contempt

19            and so forth and so on, press releases, demand

20            letters seeking to impose liability on Lycos,

21            who was not a party when the injunction was

22            granted, but the injunction is being used as a

23            tool to attempt to foist liability on Lycos.

24                 Even when, as plaintiffs admit in their

25            responsive papers, there's now two federal
```

1       court actions, started in the Southern

2       District of Florida, transferred to the

3       District of Massachusetts, in which Lycos is a

4       defendant, and these same claims are advanced,

5       and somehow, now, in their opposing papers

6       received late yesterday, plaintiffs take the

7       position that Lycos is precluded from

8       challenging this injunction because these

9       other actions involving these exact same

10      claims are pending in the federal court.

11      Well, if there are cases pending in the

12      federal court advancing the claims against

13      Lycos, then there's another action pending and

14      we should be gone.  How many times can the

15      same claim be advanced in how many different

16      courts?

17          Your Honor, Lycos has spent tens of

18      thousands of dollars.

19          THE COURT:  I'm fully aware of this.

20      Why don't I do this.  I'm going to stop you

21      just for a moment.  Let me hear from counsel

22      and then I'll get back to you after that.

23          MR. FARO:  Your Honor, my name is John

24      Faro, as you know.  First of all, let's put

25      this in perspective.  This is commercial

1       litigation.  The claim is specific that the

2       plaintiff in this case is going after the

3       named posters, because one of them, in fact,

4       was a competitor and the other was, in fact,

5       acting in concert with the competitor.

6       Collectively they used the press releases of

7       my client where he announced certain business

8       relationships with prospective customers to

9       identify those entities and then to try to

10      interfere with those relationships.  That's

11      number one.

12           Number two.  As far as the arguments

13      that counsel has made regarding an end run or

14      the comity argument, counsel himself has

15      suggested to the court in his most recent

16      filing on August 3rd that the court should not

17      or should defer ruling on the immunity

18      arguments because it's set before federal

19      district court, and we provided case law.

20      This is the intervenor's motion in opposition

21      to amend the complaint.  Counsel makes the

22      exact same arguments that plaintiff makes in

23      its opposition regarding deferral of ruling.

24           THE COURT:  And your position regarding

25      deferral?

1          MR. FARO:  Deferral, Your Honor, is a

2      matter of comity.  It's not mandatory.  Where

3      there is a case pending in the court which has

4      previously exercised jurisdiction, that

5      jurisdiction should be permitted to entertain

6      issues which are common to both cases.  In

7      this case, the issue that is common to both

8      cases is not whether the effect is disguised

9      as a motion to dismiss, but rather a

10     declaratory judgment relative to the scope of

11     the federal immunity statute.  Mr. Stumpf has

12     seen this before.

13          I neglected not to include the entire

14     text of this in my memorandum, but it's clear

15     that the federal policy is manifestly

16     consistent with the court's order.  I mean the

17     federal policy underlying the immunity statute

18     is to prevent stocking and to enforce criminal

19     law.  There are numerous exceptions to the

20     immunity statute within the Communications

21     Decency Act.  Specifically one, which I think

22     is important in this case, is that the

23     immunity statute specifically states that

24     immunity does not extend to any state laws

25     which would not be inconsistent with the

1        granting of immunity.  Again, in this case, I

2        want to emphasize that we have a commercial

3        case.  We have interference with business.

4        And, in addition to that, there is a state

5        law, an anti-stocking statute in the State of

6        Florida, which is, I believe, unique to the

7        State of Florida in that it protects private

8        rights under that statute and providing

9        enforcement of that state criminal statute.

10              So in regard to the environment of the

11       context for which we're dealing here, we have,

12       admittedly, an immunity statute that provides

13       exemptions from immunity.  We have state law,

14       which is consistent with the federal statute,

15       both providing remedies for stocking, and we

16       have, in this state, the ability to privately

17       enforce the stocking statute.

18              Now, Lycos has embraced the Zaren

19       decision as being the Holy Grail for immunity.

20       Zaren is very, very limited on its facts.

21       Number one, Zaren was a case involving a very

22       limited publication of some material on the

23       internet, which was ultimately removed within

24       a period of about 30 to 60 days.

25              Also, very notable in Zaren, and I want

1        to quote from Zaren, it says "Zaren did not

2        bring any action against the party who posted

3        the offensive messages." So the context is

4        substantially different here.  Zaren is the

5        inverse of what we have here.  We brought an

6        action against the posters and seek to have

7        this court effectively enforce its order by

8        noticing others, who are, in this case, in

9        privity with the posters.  Lycos is in privity

10       with these posters.  Clearly they have tied to

11       the posters through their subscriber

12       agreement, and, in fact, this subscriber

13       agreement, which we attached to our

14       opposition, specifically provides, I believe

15       it's in Paragraph 6, that the very conduct

16       which they now seek to protect is, in fact,

17       prohibited under their subscriber agreement,

18       and, in point of fact, their agreement has, in

19       fact, been exercised by them to delete the

20       very postings that have appeared on their web

21       page which my client has objected to.  So

22       these are very substantial differences.

23            I don't believe that there is a First

24       Amendment issue in this case, but I commend to

25       this court's attention -- and I did bring a

1    copy with me.  I don't have another copy for

2    Mr. Stumpf, but I'm sure you're aware of this

3    case -- this is the Norton versus Glenn case

4    out of the Supreme Court of Pennsylvania.  It

5    provides a survey of the First Amendment law

6    in the area of media defendants and the kind

7    of offensive materials that have been posted

8    in this case.  We don't believe there is a

9    prior restraint issue here, because this is

10   not course speech.  It's involving an

11   anti-competitive conduct by Villasenor, and,

12   clearly, the entity who we seek to enjoin has

13   had notice of the injunction, is in privity

14   with the defendants in this case, has the

15   ability to prevent any further posting by the

16   individuals through its exercise of its

17   contract with these defendants, and, has, in

18   fact, done so in the past through its honoring

19   of Mr. Swender's request to delete offensive

20   material.

21        What's problematic in this case, Your

22   Honor, and it's not really in this case, it's

23   more geared to the federal case, is that the

24   same materials are being posted over and over

25   and over again under different aliases.  So

```
1          Lycos either lacks the ability to do so or is
2          turning a blind eye, is permitting these
3          individuals, like Villasenor, to continually
4          register under new aliases and then just
5          recycle the same vitriol and the same
6          misinformation and the same everything.
7              Now, again, the context here is
8          important.  This information is appearing on a
9          financial web site.  We're not talking about a
10         personal site or some gossip site.  The way an
11         individual is directed to this material is, if
12         you go into the web and you say "How do I get
13         a quote on stock?" and you go into Google, for
14         example, which is a typical search engine, and
15         you type in "quote," the first hit that you're
16         going to get is going to be quote.com and it's
17         Lycos' web site.  You go into Lycos' web site
18         and you type in the ticker symbol UCSY and you
19         get some objective information, specifically
20         the stock quote, and then they conveniently
21         provide a link to the Raging Bull web site for
22         more information concerning the company.
23         Well, they know that information is, at best,
24         incorrect, and, at worst, it's calculated to
25         damage the company and its image and
```

1        potentially manipulate the stock.  They

2        recognize that potential abuse in their

3        subscriber agreement and they choose to do

4        nothing to prevent that from recurring over

5        and over again.

6              We're talking about activities, Your

7        Honor, that have gone on three or four years.

8        The Zaren case went on for about a month and a

9        half, involved one or two postings, and,

10       again, Zaren is distinguishable because in

11       Zaren they did not sue the poster.  In our

12       case, we did sue the poster.  We're not

13       seeking to impose liability on Lycos.  All

14       we're seeking to do is to have this court

15       exercise its inherit power to ensure that its

16       orders are enforced.  Lycos is not being asked

17       to pony up any damages for past activities of

18       these posters.  We only seek prospective

19       relief against Lycos.

20             Even a sovereign, Your Honor, that

21       enjoys sovereign immunity is subject to

22       injunctive relief.  The case, I believe, is

23       "Ex Parte Young."  You sue the State of

24       Florida, you are entitled to get an injunction

25       prospectively against, for example, future

1    infringements, as I did on the sound barrier

2    laws on I-95.  You can get an injunction, but

3    you can't get money.  So under the best case

4    scenario, if we accord Lycos the same immunity

5    as we would a sovereign, we're still entitled

6    to equitable relief, in the nature of

7    injunction, to enjoin them from assisting, in

8    this case, through their contractual

9    relationship with the posters, the continued

10   violation of this court's order.  The

11   Communications Decency Act does not exclude

12   enforcement of the statutes regarding criminal

13   activities or anything consistent with federal

14   law.

15        THE COURT:  Let me ask you a question.

16   Criminal activity means intent --

17        MR. FARO:  That's correct.

18        THE COURT: -- and if, in fact, the

19   federal court is correct that Lycos has

20   immunity, it's very difficult for you to show

21   intent, and everything is really like circling

22   the wagons right now because we have a federal

23   decision concerning the status of Lycos and

24   you're asking the court, at this time, to take

25   action knowing that there already has been a

1    determination and that matter is up on appeal,

2    correct?

3         MR. FARO:  That's not correct.  That's

4    an incorrect statement of the status.

5         What's happened in this case, and to

6    quote the judge in Massachusetts, he

7    characterized the motion practice in the

8    federal court as a scorched earth policy.  We

9    have not had a determination on the issue of

10   immunity in any federal jurisdiction.  We have

11   requested that.  We have requested it under

12   the local rules, and the judge in the Federal

13   District Court in Miami elected to transfer

14   the matter to Boston.

15        Now, I want to emphasize, Your Honor, I

16   mean they make a big deal on the fact that we

17   met with little success.  They could have

18   called up their motion to dismiss, and they

19   were not inclined to do that for whatever

20   reason.  So their motion to dismiss was

21   pending, I believe, for six months or five

22   months and they made no effort to call it off.

23   They were just trying to move the case up to

24   Massachusetts to increase our expense hoping

25   it would go away.  That hasn't happened.  So

1          there has been no determination at all.

2                  THE COURT:   What's pending?

3                  MR. FARO:   There is nothing pending in

4          Massachusetts.   The judge in Massachusetts

5          struck all the Lycos motions to dismiss and

6          the other parties' motions to dismiss.   He

7          characterized the motion practice as a

8          scorched earth policy and he admonished the

9          attorneys.   This occurred, I believe, on the

10         26th of July at a hearing that I attended

11         personally.   Mr. Stumpf was not there.

12                 The status of the case in Boston is as

13         follows.   The judge has said that if, in fact,

14         there is going to be any further motion

15         practice regarding this immunity statute, he

16         wants the motions filed by September, I

17         believe, the 28th.

18                 THE COURT:   And those are parallel

19         issues?

20                 MR. FARO:   It's the identical issue

21         regarding the scope of the immunity statute,

22         whether in fact it's applicable to Lycos.   We

23         don't believe it's applicable to Lycos.   We

24         respectfully disagree with the court's

25         conclusion and interpretation of Zaren.   We

1       don't believe that Lycos sits in the same

2       chair as an AOL.  They's not an internet

3       service provider.  We don't believe that they

4       enjoy the same immunity, and we don't have any

5       case and we dispute their interpretation of

6       case law that finds them to be comparable in

7       terms of protection to an internet service

8       provider.

9            THE COURT:  So there is a set period of

10      time when this matter is going to be briefed

11      up in Massachusetts?

12           MR. FARO:  I'm going to give you what is

13      going to transpire.  If anything is going to

14      be filed, it has to be filed by September

15      28th.

16           At that hearing, we took the position,

17      and the judge reserved on this, that we are

18      entitled to challenge their claim that they

19      are, in fact, within the ambit of the statute,

20      and that's not a radical position to take.

21      It's, in fact, permitted under various

22      circumstances where somebody claims their

23      entitlement to an exemption under the immunity

24      statute.  We're entitled to claim that they,

25      in fact, fit within the exemption.  So we

```
 1          requested, and the judge reserved on that, we

 2          requested limited discovery, and, in point of

 3          fact, we have requested limited discovery in

 4          this case and Lycos has ignored our request

 5          for documentation to establish their interest.

 6          We haven't set it down, because I just felt it

 7          was unnecessary.

 8               MR. STUMPF:  I have to interject.  We

 9          haven't ignored anything.

10               MR. FARO:  That's right.  You moved for

11          a protective order.

12               MR. STUMPF:  We haven't ignored

13          anything.

14               MR. FARO:  I stand corrected.

15               MR. STUMPF:  Thank you.

16               THE COURT:  There is a difference, you

17          know.

18               MR. FARO:  I know.  I regard that as

19          ignoring it.

20               MR. STUMPF:  I don't.

21               MR. FARO:  I mischaracterized it, and I

22          apologize.  I won't do it again, sir.

23               The Zaren case, to me, if you look at

24          the Zaren decision --

25               THE COURT:  I don't need you to
```

1        distinguish your position regarding Zaren.   I

2        think you spelled that out in your briefs.

3            MR. FARO:  As far as the procedural

4        matters go, we believe we're entitled to

5        limited discovery in Massachusetts, and the

6        judge reserved on that issue.  So we're not

7        going to have anything further decided

8        regarding our right to limited discovery to

9        challenge their claim of immunity or that they

10       are within the class of the entity that is

11       entitled to immunity.  We believe that

12       immunities are contingent on certain factors,

13       and they haven't either alleged or filed an

14       affidavit to satisfy those factors.  But

15       that's really where we are, Your Honor.

16           MR. STUMPF:  One minute of rebuttal

17       here, Your Honor.

18           THE COURT:  Go ahead.

19           MR. STUMPF:  We don't rely simply on the

20       Zaren case.  Obviously, there is a Supreme

21       Court of Florida case that is exactly on

22       point, Stowe versus AOL.  That is a claim

23       against the internet service provider.  It is

24       a claim against the internet service provider

25       that it failed to comply with the terms of its

1       service agreement with its posters.  It could

2       not be on four corners more directly on point

3       to this case.  It's a claim against an

4       internet service provider for allowing

5       postings, allegedly, to cause damage to the

6       plaintiff in violation of the internet service

7       provider's service agreement with its posters.

8            Mr. Faro has also misstated the history

9       of the cases in the federal courts.  Number

10      one, one does not call up motions for hearing

11      in federal court.  Lycos made its motions to

12      dismiss at the same time it made its motions

13      to transfer.  Before the motions to dismiss

14      were heard, the case got transferred to

15      Massachusetts.  Based upon the federal

16      immunity statute, the federal court in Florida

17      determined that plaintiffs were not entitled

18      to any discovery against Lycos, and there was

19      a hearing on that matter.

20           So Mr. Faro, unfortunately, has not only

21      misstated Lycos' position with respect to its

22      document request, but the history of the

23      cases.  Be that as it may, Your Honor, this

24      injunction was improperly, with all due

25      respect, granted at the request of the

```
 1        plaintiffs on the basis of a default against
 2        the defendants before Lycos was made a party.
 3        The law is clear --
 4              THE COURT:  I don't want to reargue this
 5        issue.
 6              MR. FARO:  May I address the Florida
 7        case?
 8              THE COURT:  No.
 9              So without further comment, the court
10        has had the opportunity to fully review the
11        court file and review what transpired in this
12        particular case.  The court has had the
13        opportunity to fully review the memorandums
14        supplied by both plaintiffs' and defense
15        counsel, and the subsequent motions filed.
16              As it relates to the motion to dissolve
17        the temporary injunction, that is going to be
18        denied at this time.  However, what the court
19        is going to do, based upon the fact that there
20        are parallel matters pending at this time, the
21        court is going to stay, as it relates to
22        Lycos, any action against Lycos, as it relates
23        to any violations, alleged violations, of that
24        order based upon the fact that it was never
25        the intent of the court when it issued its
```

1          injunction to, in fact, make a determination

2          as to Lycos.  The court is fully aware of the

3          pending matters up in Massachusetts.  I'm also

4          fully aware of the prior case law concerning

5          this matter.  All issues concerning the

6          issuance of that temporary injunction as it

7          pertains to Lycos will be stayed.

8               Going on to the next matter, therefore,

9          there was also the plaintiffs' motion for

10         leave to amend.  I think that's going to

11         basically fall into line with the court.  If

12         you want the court to hear additional

13         argument, I will, but it's my position that

14         until the issue concerning the immunity has

15         been resolved, the issues set forth in the

16         plaintiffs' motion to amend, I believe, should

17         also be stayed pending the court's

18         determination as to what transpires in

19         Massachusetts in the federal court and how it

20         relates to this particular case.

21              MR. FARO:  May I, Your Honor?

22              THE COURT:  Yes.

23              MR. FARO:  We would like you, if you

24         could, to modify that.  I would like you, if

25         you could, to review the immunity statute that

29

1     I provided to you, and we would like, if it's

2     appropriate, some guidance as to whether or

3     not the claims that we have in this case are

4     consistent or inconsistent with the immunity

5     accorded to an internet service provider.

6     There are explicit exemptions to an internet

7     service provider in the immunity statute, and

8     to the extent that these involve state law

9     claims that are not in the federal court in

10    Boston, not before the federal court, we would

11    submit that it is appropriate for the court to

12    make a determination with regard to the motion

13    to amend as to whether or not the claim that's

14    submitted in that motion to amend is

15    consistent or inconsistent with the purposes

16    of the federal immunity statute.  I provided

17    the court with a copy of the statute from

18    Westlaw that I printed this morning.

19         THE COURT:  And I'm fully aware of what

20    you provided.  However, in order for the court

21    to make a determination, the court needs to

22    find out specifically what the rulings will be

23    as it relates to the determination of the

24    federal court in Massachusetts.  I think I

25    really can't piece together --

1          MR. FARO:  I understand the court.  I'm

2     going to tell you what our position is.  Our

3     position is that immunity can never apply to

4     an internet service provider, whether there is

5     an exemption or not.

6          THE COURT:  I know what your position

7     is.  But, at this time, that motion is denied.

8          MR. STUMPF:  Your Honor, I want to

9     understand the court's ruling, because,

10    frankly, we had some issues with that among us

11    before.  You are staying all claims against

12    Lycos pending the determination and the cases

13    pending in Massachusetts as to the scope and

14    applicability of the immunity statute.

15         THE COURT:  That is correct.  In this

16    case.  I'm not going outside.  Let's make it

17    clear.  Just in this case.

18         MR. STUMPF:  The order is also going to

19    state that it was never the court's intent

20    that the injunction be applicable to Lycos?

21         THE COURT:  I never heard of Lycos

22    before.  And what just concerns me, and I'll

23    tell you, I don't want to keep rehashing

24    something, but when that order was submitted

25    to the court by Mr. Cooper it contained

1        matters that were never even placed before the

2        court.  It was a simple default with an

3        issuance of an injunction, and it was

4        specifically addressed to the defendants in

5        this case.  Lycos' name, or the existence of

6        Lycos as any potential defendant in this case,

7        had never been brought to the court's

8        attention.

9            MR. STUMPF:  So we can have that in the

10        order, that it was never the intent that the

11        injunction be applicable to Lycos.

12            THE COURT:  And that's the reason why

13        the court is taking this action as to the

14        stay.

15            MR. FARO:  One thing, Your Honor, you

16        did state at the time you struck that language

17        was that, whether or not Rule 1.610(c) would

18        be applicable to Lycos, required a separate

19        determination by you.

20            THE COURT:  I just said at the time it

21        came before the court, nothing was ever

22        brought to the court's attention concerning

23        that issue.

24            MR. STUMPF:  One other matter, Your

25        Honor, from the July 6th hearing, we submitted

1           a proposed order, and in our proposed order we

2           incorporated the court's verbal ruling that we

3           would be entitled to receive copies of

4           subpoenas, and so forth, and that the service

5           documents be filed, and we think that order is

6           appropriately entered and no order has been

7           entered resolving that.

8                THE COURT:  I need you all to get

9           together concerning that matter.  You all have

10          a copy of the transcript.  The order should

11          reflect what is contained in the transcript.

12               MR. COOPER:  I don't have a problem with

13          Lycos' order, Your Honor.

14               MR. VILLASENOR:  There was no court

15          reporter so there was no transcript.

16               THE COURT:  So I have an agreed order

17          that will be submitted at this time?

18               MR. STUMPF:  Yes.

19               THE COURT:  Thank you.  Anything else?

20               MR. STUMPF:  We have Mr. Villasenor's

21          issues, and I'd also like to be heard on my

22          motion for costs.

23               THE COURT:  I'm going to reserve as to

24          that issue.  We're not going to be able to get

25          to that this morning.

```
1              MR. VILLASENOR:  May I speak?

2              THE COURT:  Let me just date and sign

3         this order, and before you speak, I need to

4         find out, I believe the motion that Mr. Cooper

5         is going to be talking about is the

6         plaintiffs' motion?

7              MR. COOPER:  That's correct, Your Honor.

8         It's plaintiffs' amended motion for contempt

9         for violation of the final judgment of

10        injunction, which is now temporary injunction,

11        against Mr. Villasenor.

12             MR. VILLASENOR:  Judge, I would like to

13        interrupt.

14             THE COURT:  You can't interrupt.  I'll

15        give you an opportunity in just two seconds.

16        I just want to hear what is before us right

17        now, and then I'll give you the opportunity

18        before I take any action and/or any testimony

19        on this matter.

20             MR. COOPER:  Your Honor, we have spent,

21        in addition to contacting Lycos and Google and

22        all of these other internet service providers

23        and asking them to please voluntarily remove

24        these postings, Mr. Villasenor was ordered as

25        part of the injunctive relief to go wherever
```

1    he made these postings to have them removed.

2    He has not done that.  He has continued.  He

3    has made new aliases.

4         I believe what I'd like at this point,

5    Your Honor, just because of the time

6    constraint, is have Your Honor enter an order

7    to show cause.  We'll set this for an

8    evidentiary hearing 30 days or so from now.  I

9    can go ahead and be able to take

10   Mr. Villasenor's deposition so I can have

11   admissible testimony from him -- it can't be

12   done by phone -- before Your Honor, before the

13   court, and properly on the record, and have an

14   order to show cause entered for him to show

15   cause how he has complied with the court's

16   injunctive order, and I believe at this point

17   I don't think it's necessary to go beyond

18   that.  I think procedurally that will be the

19   proper method to go forward on this.

20        THE COURT:  Mr. Villasenor?

21        MR. VILLASENOR:  Judge, I specifically

22   reserved this period for a special meeting for

23   my motion to dismiss.  Lycos specifically

24   reserved the other half hour for their

25   motions.

1           THE COURT:  Mr. Villasenor, at this

2    time, unfortunately, my time is up.  I'm going

3    to ask that this matter be rescheduled.

4           MR. VILLASENOR:  So let's do this --

5           THE COURT:  Mr. Villasenor, just listen

6    to me for a moment.  It's going to be

7    rescheduled.  In the meantime, I think it

8    would behoove you, until the court takes any

9    action that you are requesting, because if the

10   court does not grant the motion to dismiss,

11   that order is out there, and I think it would

12   behoove you to purge yourself of any future

13   sanctions that the court can impose in this

14   matter, that you read the court's order and

15   take whatever action would be necessary to

16   purge yourself of any sanctions if, in fact,

17   your motion to dismiss is not granted, because

18   you would be in direct violation of a court

19   order, possibly, if, in fact, Mr. Cooper's

20   allegations turn out to be correct.

21          MR. VILLASENOR:  Yes, Your Honor.  Now,

22   let me say, I was served on notice of hearing

23   for motions for contempt.  I was never served

24   on the actual motion for contempt.  I have at

25   least six requests, in writing, to receive, at

1     least, seven filings they have filed that I

2     have not been served on, including two of the

3     motions for contempt.

4           THE COURT:  Mr. Villasenor, what I'm

5     going to do at this time, since there is no

6     hearing today, I'm going to request that

7     counsel give you -- well, I want to make sure

8     you get that to counsel again, whatever you

9     haven't received.  I would like either a fax

10    number where you could fax his request to --

11          MR. VILLASENOR:  He has my fax number.

12          THE COURT:  But do you have their fax

13    number?

14          MR. VILLASENOR:  Yes, I have their fax

15    number.

16          THE COURT:  So what I would like you to

17    do is refax and send out a hard copy of

18    whatever requests you have.  I'd like you to

19    do that as quickly as possible.  I'm going to

20    order that whatever had has been requested be

21    supplied, so that we don't have too many

22    further delays, within the next 21 days.

23         Thereafter, I'd like a hearing

24    scheduled.  You're going to be setting a

25    hearing no sooner than 45 days from today to

1      give everyone the opportunity to take whatever

2      further discovery is necessary for that

3      hearing.  The court just wants to make it

4      clear that any action that the court might

5      take for any past violations of this court

6      order, you would be able to purge yourself of

7      any sanctions with compliance.  So just be

8      aware of that fact so that by the next time we

9      all come together, you are aware of my

10     position regarding this matter.

11             MR. VILLASENOR:  Yes, Your Honor.

12             What I ask is that I have an opportunity

13     to respond to whatever motion for contempt

14     they filed.  If I don't have an opportunity,

15     you can't see both sides, Judge.

16             THE COURT:  But that's what hearings are

17     all about.  You're going to get that

18     opportunity to do so, but I just want to let

19     you know that in the event you're successful,

20     you walk out of here, or wherever you are,

21     with a smile on your face.  If you're not

22     successful, there are going to be sanctions

23     imposed and the happy face is going to turn to

24     a frown real quick.

25             MR. VILLASENOR:  So, Judge, therefore,

```
 1          in the motion for contempt that the plaintiffs

 2          just mentioned, you haven't ruled anything.

 3               THE COURT:  I haven't done anything, and

 4          you can file whatever responsive pleadings you

 5          want to file to the motion for contempt.

 6               MR. VILLASENOR:  Judge, the reason I'm

 7          saying this --

 8               THE COURT:  You don't have to give me

 9          the reason.  I'm just letting you know that

10          that's what you do.  Okay?

11               MR. VILLASENOR:  So to review, we are

12          not hearing my motion to dismiss now?

13               THE COURT:  We're not hearing the motion

14          to dismiss or the motion for contempt at this

15          time.  I'm going to give everyone an

16          opportunity to make sure that they have all

17          received all papers and documents beforehand

18          so that when the court proceeds, they'll have

19          a full picture before it.

20               MR. COOPER:  One quick matter, Your

21          Honor.  We have not filed, in conjunction with

22          the motion for contempt, the libelous

23          postings, because we don't want to republish

24          them in the court file and make them public

25          record.  I'd like to get a seal order on that.
```

1        THE COURT:  The court will allow you to

2    file whatever you wish to file, and it will be

3    filed under seal.  What I would like you to do

4    is make sure it's not sent directly to the

5    Clerk's Office, that it's sent directly to my

6    chambers, and what the court will do is we'll

7    enter an order that it will be filed with the

8    Clerk's Office, but remain under seal and will

9    not be opened without a court order to do so.

10        MR. COOPER:  Thank you.

11        MR. VILLASENOR:  Judge, I would like

12    another request, that whatever orders occurred

13    today that you only find upon the agreement of

14    all three parties.

15        THE COURT:  Just so you know, the orders

16    that are between Lycos and the plaintiffs, I

17    do not need you to review before the court

18    signs those.  The orders that the court has

19    entered as it relates to your motion to

20    dismiss and the contempt orders, those orders

21    I am requesting that counsel get in contact

22    with you and that there will be an agreement

23    before those orders are submitted to the

24    court.

25        MR. VILLASENOR:  Is it possible that you

1        order the plaintiffs not to issue a press

2        release on all these things, like they've done

3        a few hours after each time you've signed one

4        of these?

5              THE COURT:   Unfortunately, that's a

6        little bit beyond the scope of my authority at

7        this time.

8              MR. VILLASENOR:   So to review --

9              THE COURT:   There's nothing to review at

10       this time.   Thank you very much.   Have a good

11       day.

12             (Thereupon, the hearing was concluded at

13              8:45 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

41

1                    CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA:   :   ss.

4    COUNTY OF DADE:

5         I, STEVEN WASSERMAN, Certified Shorthand

6    Reporter in and for the State of Florida, do hereby

7    certify that I reported in shorthand, the

8    proceedings had before the Hon. Marc Schumacher at

9    the time and place set out herein; that the

10   foregoing pages, numbered from 1 to 40, inclusive,

11   constitute a true and correct transcript of the item

12   thereof.

13        I further certify that I am not an attorney nor

14   counsel to any of the parties, nor related to any of

15   the parties, nor financially interested in the

16   action.

17        WITNESS my hand and official seal this 5th day

18   of August, 2005.

19

20

21

22

23                    STEVEN WASSERMAN
                          Notary Public
24          My Commission Expires April 20, 2007