UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNIVERSAL COMMUNICATION SYSTEMS )
INC., a Nevada Corporation; MICHAEL J. )
ZWEBNER, individually; and )
others similarly situated )
   )
   )
   Plaintiffs, )   Civil Action
   )   NO. 05-11172-REK
   v. )
   )
LYCOS, INC., d/b/a THE LYCOS )
NETWORK and TERRA NETWORKS, S.A., )
JOHN DOE #1 aka "the worm06" )
JOHN DOE #2 aka "no_insiders" )
JOHN DOE #3 aka "the worm06A" )
JOHN DOE #4 aka "65175R" )
JOHN DOE #5 aka "Henry_Johnson123" & )
JOHN DOE #6 aka "quondo1" )
JOHN DOE #7 aka "Tobias95" )
JOHN DOE #8 aka "CrawleySmith" )
   )
   Defendants. )
_____)

## REPLY SUPPORTING LYCOS' FIRST AND SECOND MOTIONS FOR RULE 11 SANCTIONS

## I.   INTRODUCTION

Plaintiffs' Oppositions to Lycos' Motion for Sanctions and Second Motion for Sanctions argue that both Motions are rendered moot by the actions of this Court. This is incorrect as a matter of law. In fact, the very case law cited by the Plaintiffs supports Lycos' proposition that this Court should fully consider both of Lycos' Motions for Sanctions on the merits. See Giganti v. Gen-X Strategies, 222 F.R.D. 299 (E. D. Va. 2004), attached hereto at Exhibit A.

## II.   ARGUMENT

In each Opposition, Plaintiffs twice cite to Giganti for the proposition that Lycos' Motions for Sanctions are moot because Plaintiffs were not availed of the full twenty-one day

"safe-harbor" period described in Federal Rule of Civil Procedure 11(c)(1) for either the Motion for Leave to Amend the Complaint or the Motion for Clarification.  See Plaintiffs' Opposition to Motion for Sanctions, pp. 1, 6; Plaintiffs' Opposition to Second Motion for Sanctions, pp. 2-3. Giganti in fact holds that where there is demonstrable evidence in the record that the non-movant had no intention of withdrawing the offending pleading within the safe-harbor period, it is of no consequence that the full twenty-one day period was not available to the non-movant.  See id., 222 F.R.D. at 305-307.  The Giganti Court found that, notwithstanding its dismissal of the offending claims during the twenty-one day safe-harbor period, the plaintiffs made clear during that time that they would support their claims by vigorously asserting those claims to the Court. Id.  The plaintiffs in Giganti thus knowingly waived any right to complain about not having the full safe-harbor period within which to withdraw their claims, and were duly sanctioned.  Id. at 307, 315-16.

In this case, on December 19, 2005, six days after being served a copy of Lycos' First Motion for Sanctions, Plaintiffs filed a Reply to Lycos' Opposition of the Motion for Leave to Amend.  Plaintiffs' decision to file that Reply brief is an unambiguous indication that Plaintiffs had no intention of abandoning their claims and would not consider withdrawing the Motion for Leave to Amend within the twenty-one day safe-harbor period.  In light of that decision, Plaintiffs cannot now argue that they did not have the entire period to consider the option.  See Giganti, 222 F.R.D. at 307 ("[T]he party against whom sanctions were sought could not be heard to complain about the loss of the benefit of the twenty-one day safe harbor when it was clear that the party rejected that option.") (citing Hadden, et al v. Cty. Bd. of Commissioners, 1997 WL 434413 * 1 (6th Cir. 1997)).

Nor was the filing of Plaintiffs' Reply brief the only evidence of Plaintiffs' intent. On December 27, 2005, Plaintiffs filed a Motion for Clarification in which they repeated and reasserted the same frivolous arguments set forth in their Motion for Leave to Amend. And then on February 6, 2006, Plaintiffs filed their Opposition to Lycos' Motion for Rule 11 Sanctions, which <u>itself</u> repeats the claim that the Motion for Leave to Amend did not violate the tenets of Rule 11.

It is equally clear that Plaintiffs had no intention of withdrawing, during the safe-harbor period, the frivolous claims asserted in their Motion for Clarification. On January 13, 2006, one day after being served with Lycos' Second Motion for Sanctions, Plaintiffs' communicated to the Court a request for an extension of time to oppose Lycos' Motion for Sanctions. As in <u>Giganti</u>, Plaintiffs could have at that time articulated their intent to withdraw their Motion for Clarification. Instead, they remained silent as to the existence of the Second Motion for Sanctions. This silence clearly belies any assertion that had Plaintiffs been afforded the full twenty-one days of safe-harbor (rather than twenty), they would have withdrawn the Motion for Clarification. Indeed, to this day, Plaintiffs continue to emphatically deny the impropriety of these Motions in their Oppositions.[1] Thus, the evidence is overwhelming that Plaintiffs had no intention of withdrawing their Motion for Leave to Amend or their Motion for Clarification. <u>See</u> <u>Giganti</u>, 22 F.R.D. at 307.

Regarding the substantive arguments raised in Plaintiffs' Oppositions, Lycos directs the Court to its Motion for Sanctions and Second Motion for Sanctions and further notes the mounting evidence corroborating Lycos' argument that Plaintiffs' litigation is frivolous and improper. On February 14, 2006, the Eleventh Circuit Court of Appeals found frivolous

---

[1] Additionally, a court may *sua sponte* impose Rule 11 sanctions and in doing so need not comply with the safe harbor procedural requirements. <u>See</u> Fed. R. Civ. P. 11(c)(1)(B).

Plaintiffs' appeal of a related matter (discussed in some detail in Lycos' Motion for Sanctions).

See Universal Communications Sys, Inc. v. Turner Broadcasting Sys., 05-12698 (11th

Cir.)(Order of February 14, 2006), attached hereto at Exhibit B.  Pursuant to Federal Rule of

Appellate Procedure 38, the Court granted double costs and attorneys' fees to the appellees.  See

id.; see also Anderson v. Boston Sch. Comm., 105 F.3d 792, 769 (1st Cir. 1997)(district courts in

the First Circuit may consider past sanctions in determining whether and what sanctions to

impose).

For these reasons, and those set forth in Lycos' Motion for Rule 11 Sanctions and Second

Motion for Rule 11 Sanctions, Lycos, Inc. respectfully requests that this Court sanction Plaintiffs

so as to deter them from continued conduct in violation of Rule 11.

Respectfully submitted,

LYCOS, INC.

By its attorneys,

_____/s/ Rachel Zoob-Hill_____
David A. Bunis (BBO #550570)
Daniel J. Cloherty (BBO #565772)
Rachel Zoob-Hill (BBO #659041)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

Dated: February 24, 2006



United States District Court,
E.D. Virginia,
Alexandria Division.
Joseph GIGANTI, Veritas Media Group, Inc.,
Plaintiffs,
v.
GEN-X STRATEGIES, INC., Jeffrey Frederick,
Amy Noone Frederick, Defendants.
No. 1:03cv737.

July 12, 2004.

**Background:**  Media consulting company and its
principal sued provider of Internet-related services,
alleging claims under Racketeer Influenced and
Corrupt Organizations Act (RICO), Truth in Lending
Act, and other claims relating to provider's collection
efforts.  Provider moved to dismiss, and subsequently
moved for sanctions.

**Holdings:**  The District Court, Ellis, J., held that:
(1) company waived benefit of 21-day safe harbor
provision to withdraw claims and avoid sanctions;
(2) company's RICO claim was not well-grounded
in law;
(3) company's counsel reasonably concluded that
provider's actions violated Truth in Lending Act; and
(4) sanctions were excessive.
Ordered accordingly.

**\*301** Michael Alex Wasylik, Law Office of Michael
Alex Wasylik, McLean, VA, Geoffrey Martin Bohn,
Cunningham & Associates, Arlington, VA, for
Plaintiffs/Movants.

Seth Charles Berenzweig, Albo & Oblon LLP,
Arlington, VA, Christopher Thomas Craig, Herge,
Sparks, & Christopher, McLean, VA, for
Defendants/Respondents.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

 The twelve claims in this lawsuit, including claims
under the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1961 *et
seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. §

1601 *et seq.*, and the Sherman Act, 15 U.S.C. § 2,
have now been finally dismissed.  Only the question
of possible Rule 11, Fed.R.Civ.P., sanctions remains.
**\*302** That question was referred to a magistrate
judge, pursuant to 28 U.S.C. § 636, who, in turn,
issued a Report and Recommendation recommending
that sanctions be imposed jointly and severally
against plaintiffs and plaintiffs' counsel in the amount
of $37,393.57 on the grounds (i) that plaintiffs'
counsel did not appropriately investigate whether
plaintiffs' claims under RICO, TILA, and the
Sherman Act were warranted by existing fact or law
and (ii) that these claims were filed for an improper
purpose.  *See Giganti, et al. v. Gen-X Strategies, Inc.,
et al.*, Civil Action No. 03-737-A (E.D.Va. Mar. 16,
2004) (Report and Recommendation).  Plaintiffs filed
timely objections to the magistrate judge's Report and
Recommendation.  As the sanctions issues have been
fully briefed and argued, they are now ripe for
disposition.

I.

 This lawsuit is but the latest chapter in a saga that
bears recounting here.  Plaintiff, Joseph Giganti, a
Maryland resident, is a principal of Veritas Media
Group, Inc., a Maryland corporation engaged in the
business of providing media consulting services.
Defendant Jeffrey Frederick, a Virginia resident, is a
principal of Gen-X Strategies, Inc., a Virginia
corporation and provider of Internet-related services.
In June 2000, Giganti and Frederick, whose personal
relationship pre-dated their business dealings, entered
into an oral contract whereby Gen-X agreed to host
Veritas' website on its servers and to set up e-mail
accounts for Veritas.  Pursuant to this agreement,
Gen-X, as it routinely does for its customers,
registered in its own name three domain names for
Veritas:  veritasmediagroup.com, vmginc.org, and
giganti.org. Also pursuant to the agreement, Gen-X,
using its servers, hosted websites for Veritas at these
domain names and provided Veritas with e-mail
services.

 Within a few months, Veritas failed to pay for the
various services Gen-X provided pursuant to the
agreement.  In response, Gen-X sent a letter to
Veritas in February 2001 indicating that it intended to
charge a ten percent per month finance charge on all
overdue balances for services rendered.  Thereafter,
between February 2001 and August 2003, Gen-X
sent Veritas monthly invoices, both electronically and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by mail, seeking collection of the amounts Veritas owed for services rendered. These invoice amounts included finance charges on Veritas' overdue balances of at least ten percent per month. [FN1]

> FN1. Although not material here, Veritas claims that the finance charges on occasion exceeded ten percent per month.

In early 2002, Giganti requested by e-mail that Frederick (i) reduce the amounts Veritas owed and (ii) transfer ownership of Veritas' domain names. Gen-X rejected both requests. In March 2002, Veritas terminated the contract. A month later, Gen-X made clear that it intended to maintain control of the domain names as "leverage" until Veritas paid its bills. [FN2] Moreover, at about the same time, Gen-X disabled Veritas' e-mail accounts by changing Veritas' passwords. As a result of these actions, Veritas alleges it was unable to operate its business efficiently. [FN3]

> FN2. Specifically, in an April 12, 2002 e-mail, Frederick told Giganti that Veritas had "got to get your balance zeroed out" "before [Gen-X] can let your stuff loose (so to speak)...." And in an April 29, 2002 e-mail, Frederick stated:
> I think you should take [the other web hosting company's offer], but you still have an obligation with us, and often, short of going to court and spending money on legal fees (which we have had to do before), maintaining control of a client's technology and domain names insures our leverage--especially when in most cases, that is work and services we've provided but have not yet been paid. While we have not prevented you from having a website and email..., we have to sometimes be less flexible when you ask that we turn everything over to you when you still have yet to pay for it.... In terms of moving yoru [sic] site to [another provider], we would first require a signed note for the amount due, plus applicable interest charges, signed by you in your capacity with VMG, and guaranteed by you personally. We would also take ownership of all your domain names (you would still be able to use them, however, just as you are using them today) until the note was paid off.

> FN3. Gen-X ultimately relinquished ownership of the domain names and, in

April 2003, Veritas registered the names.

To collect the amounts owed by Veritas, Gen-X filed a lawsuit in Alexandria General **\*303** District Court in September 2002 alleging that plaintiffs owed Gen-X in excess of $5,000. The amount claimed included interest of ten percent per month plus attorney's fees. Plaintiffs here removed that case to the Alexandria Circuit Court pursuant to Virginia Code § 16.1-92, where following a bench trial, the presiding judge in September 2002 found Veritas liable for overdue balances and finance charges in the amount of $4,598. Veritas, however, was not found liable for amounts billed after March 2002 because Veritas had by then terminated the agreement and cancelled the services. Even so, the state court judgment included finance charges and interest that accrued from March 2002 and to September 2002 on overdue balances for the services rendered before the termination. Notably, the state court entered judgment in the amount of $4,598 only against Veritas, which elected not to pursue an appeal.

Yet, this judgment did not mark the end of the parties' feud. Apparently unhappy with the state court judgment and with defendants' collection efforts, Veritas and Giganti, having foregone an appeal of the state judgment, chose instead to file a federal complaint in this district on June 6, 2003 against Gen-X and Frederick alleging seven state claims [FN4] and the following five federal claims:

> FN4. Plaintiffs' seven state claims were:
> (1) conversion;
> (2) breach of contract;
> (3) misappropriation of a name, in violation of Va.Code § 8.01-40(A);
> (4) fraud;
> (5) statutory conspiracy, in violation of Va.Code § 18.2-499;
> (6) tortious interference with contract or business expectation; and
> (7) violation of Virginia Computer Crimes Act, Va.Code § 18.2-152.

(1) Racketeer Influenced and Corrupt Organizations Act violations, 18 U.S.C. § 1961 *et seq.;*
(2) Truth in Lending Act violations, 15 U.S.C. § 1601 *et seq.;*
(3) Cybersquatting, in violation of 15 U.S.C. § 1125(d);
(4) Attempted Monopolization, in violation of 15 U.S.C. § 2; and
(5) Violations of Fair Debt Collection Practices

222 F.R.D. 299                                                                                                                    Page 3
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

Act, 15 U.S.C. § 1692 *et seq.*

At this point, the timeline of activities in this federal lawsuit becomes particularly important. On November 21, 2003, defendants filed a motion to dismiss all twelve counts. On the same day, notably, defendants served on Veritas and Giganti a motion for sanctions pursuant to Rule 11(c)(1)(A), Fed.R.Civ.P., arguing that plaintiffs' claims were frivolous, ungrounded in fact and law, and filed for an improper purpose. Appropriately, this sanctions motion was not filed with the court at this time. [FN5] Also on November 21, 2003, defendants noticed a hearing on their dismissal motion for December 12, 2003, precisely twenty-one days after service of the sanctions motion on Veritas and Giganti. At the December 12 hearing, counsel for Veritas and Giganti appeared and argued vigorously in support of the challenged claims. Significantly, counsel said nothing in the course of the hearing about having been served with a sanctions motion, nor did he ask for additional time to decide whether to withdraw any of the claims subject to the sanctions motion. At the conclusion of oral argument, a bench ruling dismissed all but two of plaintiffs' claims, namely the FDCPA and the ACPA claims. *See Giganti, et al. v. Gen-X Strategies, Inc., et al.,* Civil Action No. 03-737-A (E.D.Va. Dec. 12, 2003) (Order). [FN6]

FN5. *See* Rule 11(c)(1)(A), Fed.R.Civ.P. ("It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.").

FN6. Plaintiffs' state claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367, which allows district courts to decline to exercise supplemental jurisdiction over state claims. *See Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611, 616 (4th Cir.2001).

Three weeks later, defendants, on January 9, 2004, filed a motion for summary judgment with respect to the remaining two claims and, shortly thereafter, plaintiffs filed a cross motion for summary judgment. After a hearing, defendants' motion for summary judgment with respect to plaintiffs' FDCPA claim **\*304** was granted and the parties' motions with regard to plaintiffs' ACPA claim were taken under

advisement. *See Giganti, et al. v. Gen-X Strategies, Inc., et al.,* Civil Action No. 03-737-A (E.D.Va. Jan. 23, 2004) (Order). Thereafter, settlement negotiations ensued, and on February 5, 2004, the parties filed a stipulated order dismissing the final remaining claim, the ACPA claim. *See Giganti, et al. v. Gen-X Strategies, Inc., et al.,* Civil Action No. 03-737-A (E.D.Va. Feb. 5, 2004) (Stipulated Order of Dismissal).

Approximately two weeks later, on February 17, 2004, defendants filed their previously-served motion for sanctions pursuant to Rule 11, Fed.R.Civ.P., and this matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636. Following a hearing on February 27, 2004, the magistrate judge entered a Report and Recommendation recommending that sanctions be imposed against plaintiffs and plaintiffs' counsel in the amount of $37,393.57 with regard to plaintiffs' RICO, TILA, and Sherman Act claims. [FN7] Plaintiffs timely filed five objections to the magistrate judge's Report and Recommendation. [FN8] Specifically, plaintiffs contend that the magistrate judge's recommendations must be rejected and defendants' motion for sanctions denied because:

FN7. Accordingly, none of the other federal or state claims are the subject of sanctions and thus are not addressed here.

FN8. Omitted from plaintiffs' list of objections, but asserted for the first time during the district court hearing on their Report and Recommendation, is that the forty-four pages of attachments to defendants' filed motion for sanctions should not be considered because they were not attached to the motion when it was originally served on plaintiffs. The bulk of these attachments relate to defendants' claim for fees incurred in defending the frivolous claims and obviously these documents did not exist and could not have been attached to the motion when it was served. In any event, plaintiffs' failure to raise this objection within ten days of being served with the magistrate judge's Report and Recommendation constitutes a waiver of this objection. *See* Rule 72(a), Fed.R.Civ.P. ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.");

*see also* *In re Search Warrants Served On Home Health & Hospice Care, Inc.,* 1997 WL 545655, at *12, 1997 U.S.App. LEXIS 23547, at *34 (4th Cir. Sept. 5, 1997) (unpublished disposition).

Notably, at this point in the proceedings, plaintiffs' counsel, finding himself the subject of sanctions, retained counsel to represent himself as well as plaintiffs during the subsequent district court proceedings. Thus, plaintiffs' counsel appeared along with his counsel at the district court hearing on sanctions.

(1) Defendants failed to comply with the procedural requirements of *Rule 11(c)(1)(A), Fed.R.Civ.P.,* namely (i) that plaintiff must be afforded at least twenty-one days after service of the motion for sanctions during which plaintiff may elect to withdraw the allegedly offending claims and (ii) that the motion for sanctions must be filed before conclusion of the case;

(2) Defendants failed to notice the hearing on their motion for sanctions more than eleven (11) days in advance of the hearing to allow plaintiffs adequate time to respond and present their defenses, as required by Local Rule 7;

(3) Plaintiffs' amended complaint was well-grounded in fact and law and not filed for an improper purpose;

(4) The recommendation to impose sanctions was based on letters written by the parties in pursuit of a settlement that are not properly considered under *Rule 408, Fed.R.Evid.*; and

(5) The recommended amount of sanctions was unwarranted, excessive, and failed to take account of plaintiffs' ability to pay.

[1][2] Pursuant to *28 U.S.C. § 636(b)* and *Rule 72(a), Fed.R.Civ.P.,* each of these objections is reviewed here under the clearly erroneous and contrary to law standard. *See* *28 U.S.C. § 636(b)*; *Rule 72(a), Fed.R.Civ.P.* [FN9] **\*305** Pursuant to the clearly erroneous standard of review, the magistrate judge's order must be affirmed unless after review of the entire record, " 'the reviewing court... is left with the definite and firm conviction that a mistake has been committed.' " *See* *Allmond v. Dunning,* 2003 WL 23330683, at *1 (E.D.Va. Jan.2, 2003) (unpublished disposition) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

FN9. Consistent with the governing statute, 28 U.S.C. § 636, Rule 72 distinguishes

between dispositive and non-dispositive matters in prescribing the appropriate district court standard of review: Dispositive matters are reviewed *de novo,* whereas non-dispositive matters are reviewed more deferentially pursuant to the clearly erroneous or contrary to law standard. *Compare* *Rule 72(a), Fed.R.Civ.P. with* *Rule 72(b), Fed.R.Civ.P.* The circuits are not uniform on whether *Rule 11* sanctions matters are dispositive or non-dispositive and it does not appear that the Fourth Circuit has yet spoken definitively on this point. *Compare* *Maisonville v. F2 America, Inc.,* 902 F.2d 746, 747 (9th Cir.1990) (stating that *Rule 11* sanctions are non-dispositive and thus subject to review pursuant to the clearly erroneous or contrary to law standard); *Weeks Stevedoring Co., Inc. v. Raymond Int'l Bldrs., Inc.,* 174 F.R.D. 301, 303 (S.D.N.Y.1997) (same); *Robinson v. Eng,* 148 F.R.D. 635, 641 (D.Neb.1993) (same); *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 952-53 (D.Del.1987) (same) *with* *Alpern v. Lieb, et al.,* 38 F.3d 933, 935 (7th Cir.1994) (holding that *Rule 11* sanctions are dispositive and thus subject to *de novo* review); *Bennett v. General Caster Serv. of N. Gordon Co., Inc.,* 976 F.2d 995, 998 (6th Cir.1992) (same). The better reasoned cases conclude that the issue of *Rule 11* sanctions is a non-dispositive matter subject to clearly erroneous review under *Rule 72(a),* unless the nature of the sanction imposed, *i.e.,* dismissal of the offending claim or defense, is itself dispositive of the claim or defense. *See* *Segal v. L.C. Hohne Contractors, Inc.,* 303 F.Supp.2d 790, 794 (S.D.W.Va.2004) ("Accordingly, I find that when a party brings any motion for sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether *Rule 72(a)* or *72(b)* applies.") (citing *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir.1995)); *Weeks Stevedoring Co.,* 174 F.R.D. at 303-04 ("[T]he imposition of sanctions is reviewable under the 'clearly erroneous or contrary to law' standard *unless the sanction itself can be considered dispositive of a claim.*") (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525-26 (2d Cir.1990)) (emphasis added);

222 F.R.D. 299                                                                                                Page 5
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

*see also* 14 Moore's Federal Practice § 72.11[1][b] (3d ed. 2004) ("[T]he imposition of sanctions is reviewable under the clearly erroneous standard *unless the sanction itself can be considered dispositive of a claim.*") (emphasis added). This view is adopted here.

## II.

At the threshold, plaintiffs advance two procedural arguments that, if accepted, would bar the imposition of Rule 11 sanctions. Specifically, plaintiffs, citing the Rule's language and the Fourth Circuit's decision in *Brickwood Contractors v. Datanet Engineering, 369 F.3d 385 (4th Cir.2004)*, argue that sanctions cannot be imposed (i) because defendants failed to comply with Rule 11(c)(1)(A)'s twenty-one day "safe harbor" provision and (ii) because the motion for sanctions was not filed until two days after the conclusion of the case. Neither argument is ultimately persuasive.

[3][4] It is true, to be sure, that Rule 11(c)(1)(A) contemplates the following procedure for seeking sanctions: First, a party must serve a motion for sanctions on the allegedly offending party and second, twenty-one or more days after service, the party must file the motion with the court, provided the allegedly offending claim was not withdrawn or corrected during the twenty-one day period. [FN10] As the Advisory Committee's Note and pertinent authority also make clear, the twenty-one day "safe harbor" period guaranteed by the Rule is intended to "giv[e] litigants a specific amount of time [after service of a motion for sanctions] in which to withdraw an offending filing or allegation before a motion is filed" with the court. [FN11] Thus, a motion for sanctions must **\*306** not be filed if the alleged violation is corrected by the opposing party within the twenty-one day "safe harbor" period. [FN12] Nor can sanctions be imposed where a motion for sanctions is filed earlier than twenty-one days after service of the motion on the opposing party [FN13] or where the allegedly offending claim is dismissed by court order less than twenty-one days after service. [FN14] This is so because in both instances--(i) when the motion is filed less than twenty-one days after service and (ii) when the claim is dismissed by court order less than twenty-one days after service--the allegedly offending party is not afforded the full twenty-one day period during which the party can withdraw the offending claim. [FN15]

FN10. *See* Rule 11(c)(1)(A), Fed.R.Civ.P.; *Brickwood Contractors v. Datanet*

*Engineering, 369 F.3d 385, 389 (4th Cir.2004)* ("The requirements of the rule are straightforward: The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after service of the motion."); *Radcliffe v. Rainbow Construction Co., 254 F.3d 772, 788-89 (9th Cir.2001)* ("To comply with the Rule, Rainbow Construction was required to serve its Rule 11 motion on the plaintiffs with a demand for retraction of the allegedly offending allegations, and then to allow the plaintiffs at least twenty-one days to retract the pleading before filing the motion with the court.").

Although not relied on here, it is worth noting that a court may *sua sponte* impose sanctions pursuant to Rule 11(c)(1)(B), and in doing so need not comply with the safe harbor procedural requirements. *See Brickwood, 369 F.3d at 389 n. 2; Howell v. Nesbit, 149 F.3d 1168 (Table), 1998 WL 340291, at \*3 (4th Cir.1998)* (unpublished disposition).

FN11. *Rector v. Approved Fed. Sav. Bank, 265 F.3d 248, 252 (4th Cir.2001); see also* Rule 11, Fed.R.Civ.P. Advisory Committee's Note ("These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation."); *Barber v. Miller, 146 F.3d 707, 710 (9th Cir.1998)* ("The purpose of the safe harbor, however, is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions."); *Ridder v. City of Springfield, 109 F.3d 288, 294 (6th Cir.1997); Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir.1995)* ("The 'safe harbor' provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention.").

222 F.R.D. 299                                                                                                          Page 6
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

FN12. *See* Rule 11, Fed.R.Civ.P. Advisory Committee's Note;    *see also Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.,* 177 F.R.D. 351, 356 (E.D.Va.1998) (denying sanctions because the offending claim was withdrawn during the twenty-one day safe harbor period).

FN13. *See Brickwood,* 369 F.3d at 389 (noting that "failure to comply with the procedural requirements precludes the imposition of the requested sanctions") (citing *Elliott,* 64 F.3d at 216); *Rector,* 265 F.3d at 252 ("If the movant files the motion less than 21 days after giving notice, the party against whom the motion is filed may assert the 21 day safe harbor provision as a defense."); *Ridder,* 109 F.3d at 297 ("[W]e hold that sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposed party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court."); *Truelove v. Heath,* 86 F.3d 1152 (Table), 1996 WL 271427, at *2 (4th Cir. May 22, 1996) (unpublished disposition) ("When a Rule 11 movant fails to serve the other party twenty-one days prior to filing a motion for sanctions with the court, sanctions should be denied.").

FN14. *See Howell,* 149 F.3d 1168 (Table), 1998 WL 340291, at *3 (denying sanctions on the ground that the court dismissed the case one day after plaintiff was served with the Rule 11 motion such that plaintiff "did not have the advantage of the twenty-one day safe harbor provision"); *Ridder,* 109 F.3d at 297 (denying sanctions on the ground that the motion for sanctions was served and filed after summary judgment was granted); *Truelove,* 86 F.3d 1152 (Table), 1996 WL 271427, at *2 (reversing district court's grant of sanctions because action was dismissed eleven days after allegedly offending party was served with the motion for sanctions); *cf. Shlikas v. Wake Forest Univ.,* 1999 WL 1939241, at *3 n. 2 (M.D.N.C.1999) (concluding that the court could consider defendants' motion for sanctions although plaintiff voluntarily dismissed his claims because plaintiff failed to dismiss the claims during the twenty-one day safe harbor period).

FN15. *See Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1030 (8th Cir.2003) (denying sanctions on the ground that "Appellant was not afforded the benefit of the twenty-one day 'safe harbor' provision allowing him the opportunity to withdraw his allegedly frivolous pleading"); *Barber,* 146 F.3d at 710 (denying sanctions on the ground that plaintiff had not been served with the motion for sanctions prior to filing and thus "was not given the opportunity to respond to Imageware's motion by withdrawing his claim, thereby protecting himself totally from sanctions pursuant to that motion"); *Ridder,* 109 F.3d at 297 ("By filing a motion for sanctions without previously having served the motion on the opposing party for the designated period and by waiting until summary judgment had been entered, Springfield failed to afford Ridder's counsel the twenty-one day 'safe harbor' period mandated by the 1993 revised rule."); *Truelove,* 86 F.3d 1152 (Table), 1996 WL 271427, at *2.

 [5] Plaintiffs rely on these principles to argue that sanctions are barred here because the allegedly offending claims were dismissed at about noontime on December 12, 2003, the twenty-first day of the safe period, and plaintiffs were thus not afforded the benefit of the Rule's mandatory safe harbor provision.  The facts refute plaintiffs' argument.  This case, unlike *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.,* 335 F.3d 293 (4th Cir.2003), and the other cases plaintiffs rely on, [FN16] does not involve denying a party the opportunity to withdraw the offending pleading or claim during the Rule's twenty-one day safe harbor period.  To the contrary, the record in this case makes unmistakably clear that defendants deliberately **\*307** chose not to avail themselves of the protection of the Rule's twenty-one day safe harbor provision.  Thus, in the first twenty days, plaintiffs took no steps to withdraw the offending claims and indeed, on the twenty-first day, plaintiffs, far from abandoning the claims, appeared by counsel at the hearing on the motion to dismiss the claims and argued vigorously in opposition to the motion.  Not once in the course of the hearing did plaintiffs' counsel advise the Court that a sanctions motion had been filed, that approximately five hours remained in the twenty-one day safe harbor period, and that plaintiffs wanted to use that time to consider withdrawing one or more of the putatively frivolous claims even though plaintiffs

222 F.R.D. 299                                                                                        Page 7
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

surely knew (or should have known) that a ruling on the motion to dismiss would likely issue from the bench, before the end of the day, as is customary in this district.

FN16. *See Rector,* 265 F.3d 248; *Truelove,* 86 F.3d 1152 (Table), 1996 WL 271427.

 The conclusion compelled by these record facts is inescapable:  Plaintiffs never had any intention of withdrawing any of the challenged claims, nor of availing themselves of the protection of the safe harbor provision.  Put differently, by choosing to remain steadfast in their support of the offending claims during the hearing on the motion to dismiss, even in the face of defendants' cited authorities and the Court's suggestion that the RICO and Sherman Act claims might well violate Rule 11, [FN17] plaintiffs, by counsel, knowingly waived the benefit of the twenty-one day period and knowingly waived any right to complain about loss of no more than approximately five hours of the twenty-one day period. [FN18]

> FN17.  More specifically, the Court questioned plaintiffs' counsel as to the legitimacy of the RICO and Sherman Act claims and stated that the Sherman Act claim is "fantastical, bizarre, nonsense, bordering on Rule 11."

> FN18. It bears noting that the conclusion reached here does not depend on the fact that only a few hours remained in the twenty-one day period.  Effective waivers can occur earlier.  For example, a clear case of waiver can arise if a party appears at a hearing well before the end of the twenty-one day period and advises the court that it does not intend to withdraw the challenged claim or defense within the twenty-one day period.

 While there appears to be no authority in this circuit on what conduct might constitute a valid, effective waiver of the Rule's twenty-one day safe harbor period, there is Sixth Circuit authority that squarely supports the result reached here.  In *Hadden, et al. v. Cty. Bd. of Commissioners,* 1997 WL 434413, 1997 U.S.App. LEXIS 20001 (6th Cir.1997) (unpublished disposition), the Sixth Circuit affirmed the district court's grant of sanctions even though defendants failed to comply with the technical requirements of the twenty-one day safe harbor rule on the ground that plaintiffs had had ample opportunity to choose to

dismiss the offending claims, but chose instead to file their own motion for summary judgment, objections to the magistrate judge's report, and response to the motion for sanctions.  *See id.,* 1997 WL 434413, at *1, 1997 U.S.App. LEXIS 20001, at *3-4. [FN19]  In other words, in *Hadden,* as plaintiffs here, made clear their intent to forego the twenty-one day safe harbor.  There, as here, the party against whom sanctions were sought could not be heard to complain about the loss of the benefit of the twenty-one day safe harbor when it was clear that the party rejected that option.

> FN19. The unpublished *Hadden* decision is cited here because there appears to be no published decision in the Sixth Circuit or elsewhere that is factually on point.  It is worth noting that while circuit courts of appeal may currently seek to limit the precedential effect of unpublished decisions by use of local rules restricting citation of such opinions in cases before those courts, this practice is under review by appropriate Judicial Conference committees and may be changed by a national rule.  *See* http://www.uscourts.gov/rules. In any event, whatever the local circuit court of appeals rule may say about unpublished opinions, there can be no doubt that such opinions, including *Hadden,* were issued by a properly constituted panel of the court after full briefing and, in many cases, oral argument, as well.  Put more colloquially, the circuit court panel issuing the opinion unquestionably "said it" and that court must be therefore assumed to have "meant what it said," unless and until it says otherwise.

 [6] Plaintiffs' objection to the magistrate judge's recommendation on the ground that the motion for sanctions was not filed until two days after conclusion of the case is similarly unpersuasive. At the threshold, this objection must be denied because it was not **308** argued before the magistrate judge and cannot be raised for the first time as part of plaintiffs' Rule 72 motion. [FN20]  Even assuming *arguendo* that plaintiff could raise this objection now for the first time, it would nonetheless fail for the following reason.  It is true, to be sure, as plaintiff contends, that the Fourth Circuit stated in *Brickwood* that "the very structure of the safe-harbor provisions [sic] makes it clear that a sanctions motion must be served and filed before the conclusion of the case." *Brickwood,* 369 F.3d at 398. Yet, while the Advisory Committee's Note and authority in this and other

222 F.R.D. 299                                                                                    Page 8
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

circuits leave no doubt that a sanctions motion **served** after conclusion of the case must be denied, [FN21] it is nonetheless clear, even after *Brickwood,* that sanctions may be granted when a sanctions motion is **filed** after conclusion of the case, provided it is served at least twenty-one days prior to filing and conclusion of the case, as occurred here. [FN22] This principle finds firm support in the purpose of Rule 11's twenty-one day safe harbor period, namely to allow the offending party twenty-one days to withdraw the offending claims **\*309** and escape sanctions. [FN23] There is no doubt that this purpose is served where the motion is served at least twenty-one days prior to filing or dismissal of the offending claims, even if it is filed after conclusion of the case. [FN24] Moreover, plaintiffs' contention must be rejected not only because the statement plaintiff relied on in *Brickwood* is *dictum,* [FN25] but also because nothing in Rule 11, the Advisory Committee's Note, or the cases suggests that a sanctions motion must be filed before conclusion of the case. [FN26] Nor would such a rule make sense, for if a party were required to file a sanctions motion before conclusion of the case, the party, in preparation for a hearing on a motion to dismiss scheduled twenty-two days after service of the sanctions motion, should prudently file the sanctions motion at precisely 5:00 p.m. on the twenty-first day of the safe harbor period, just in case the dismissal motion is granted via a bench ruling or order issued first thing on the morning of the twenty-second day. The point is that courts, as is often the case, will be unaware that a sanctions motion has been served on a party and may proceed to dismiss the case without a hearing or before the party serving the motion has a reasonable opportunity to file the sanctions motion. In this event, a movant's right to seek Rule 11 sanctions would be cut off through no fault of the movant and importantly, with no notice to the movant to be found anywhere in the Rule's language.

FN20. *See Claytor v. Computer Assocs. Int'l, Inc.,* 211 F.R.D. 665, 667 (D.Kan.2003) (refusing to consider objections not raised in front of the magistrate judge on the ground that clearly erroneous review does not permit a party to obtain a " 'second shot' based on new arguments") (citing *City of Wichita v. Aero Holdings, Inc.,* 192 F.R.D. 300, 302 (D.Kan.2000)); *Proffit v. Veneman,* 2002 WL 1758232, at *3 (W.D.Va. July 15, 2002) ("This issue, however, was not argued before the Magistrate Judge at the time of Plaintiff's disclosures, nor was it argued during the

May 31 hearing. It is improper, therefore, for the defendant to raise this issue for the first time as part of her Rule 72 motion."); *Assoc. Financial Servs. Co., Inc. v. Mercantile Mortgage Co.,* 727 F.Supp. 371, 374 (N.D.Ill.1989); *cf. Haines v. Liggett Group Inc.,* 975 F.2d 81, 91 (3d Cir.1992) (stating that on review under Rule 72(a), "the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact").

Nonetheless, it is worth noting that in this circuit, a court reviewing a magistrate judge's recommendation *de novo* is obligated to consider new arguments and evidence. *See United States v. George,* 971 F.2d 1113, 1118 (4th Cir.1992) ("We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.").

FN21. In these circumstances, obviously, there is no opportunity at all to take advantage of the safe harbor period. *See* Rule 11, Fed.R.Civ.P. Advisory Committee's Note ("Given the 'safe harbor' provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."); *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 152 (4th Cir.2002) (stating that sanctions under Rule 11(c)(1)(A) would be improper because defendant served the sanctions motion fourteen months after summary judgment was granted); *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir.1997) (denying sanctions because defendant did not move for sanctions until after plaintiff had moved to voluntarily dismiss the offending claims); *Ridder,* 109 F.3d at 297 (denying sanctions on the grounds that defendant did not serve the motion prior to filing it with the court and filed the motion after summary judgment had been granted); *Royal Ins., et al. v. Lynnhaven Marine Boatel, Inc., et al.,* 216 F.Supp.2d 562, 566 (E.D.Va.2002) (denying sanctions because "the motions were not served upon Plaintiffs until after Defendants were dismissed from the case when the Court granted their

motions for summary judgment").

FN22. *See* *Payman v. Mirza,* 82 Fed. Appx. 826, 827-28, 2003 WL 22952588, at *1 (4th Cir. Dec.16, 2003)* (unpublished disposition) (finding unavailing plaintiff's contention that Rule 11 required that sanctions motion be filed prior to the disposition of case); *Powell v. Squire, Sanders & Dempsey,* 990 F.Supp. 541, 545 (S.D.Ohio 1998)* ("[T]here is no language in the new version of Rule 11 which requires that a Rule 11 motion be filed before the entry of judgment."); *see also* G. Joseph, Sanctions: The Federal Law of Litigation Abuse 33 (3d ed. Supp.2004) (stating that a Rule 11 "movant is not precluded from the safe harbor from filing the motion with the court after judgment" provided "the ... motion is served at least 21 days prior to the conclusion of the case...."). The authority cited in *Brickwood* provides additional support for the requirement that a sanctions motion must be served twenty-one days prior to filing and conclusion of the case. *See* *Gordon,* 345 F.3d at 1029-30 (denying sanctions on the ground that plaintiffs did not serve the motion on defendants prior to filing it with the court); *Radcliffe,* 254 F.3d at 789 (same); *AeroTech, Inc.,* 110 F.3d at 1528 (denying sanctions because defendant did not move for sanctions until after plaintiff had moved to voluntarily dismiss the offending claims); *Ridder,* 109 F.3d at 297 (denying sanctions on the grounds that defendant did not serve the motion prior to filing it with the court and filed the motion after summary judgment had been granted); *Elliott,* 64 F.3d at 216 (denying sanctions on the ground that plaintiffs did not serve the motion on defendants prior to filing it with the court); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995)* (same).

FN23. *See supra* note 11 and accompanying text.

FN24. This is so because under these circumstances, the offending party is "given the full and meaningful benefit of the twenty-one day period... in which to consider the motion and correct any problem." *Powell,* 990 F.Supp. at 545; *see also* Joseph, Sanctions at 33 ("That is because the offender had the full safe-harbor

period in which to reconsider and withdraw or correct.").

FN25. The facts presented in *Brickwood* did not require the panel in that case to consider whether eligibility for sanctions is barred by filing the motion after conclusion of the case. There, because the motion was served and filed after conclusion of the case, the only question the panel was required to decide was whether the service of the motion after the offending claims had been dismissed precluded an award of sanctions because the non-movant was deprived of the benefit of the twenty-one day safe harbor. *See* *Brickwood,* 369 F.3d at 390, 398.

FN26. The Advisory Committee's Note states only that "a party cannot delay *serving* its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Rule 11, Fed.R.Civ.P. Advisory Committee's Note (emphasis added).

 In sum, plaintiffs' objections to the magistrate judge's recommendation on the grounds (i) that defendants failed to comply with Rule 11(c)(1)(A)'s twenty-one day safe harbor provision and (ii) that the sanctions motion was filed two days after conclusion of the case must be overruled as the magistrate judge's recommendation to the contrary, for the reasons stated here, are neither clearly erroneous nor contrary to law.  Moreover, plaintiffs' objection on the ground that the sanctions motion was filed after conclusion of the case also fails because that objection was not raised before the magistrate judge. [FN27]

FN27. *See supra* note 20 and accompanying text.

### III.

 [7] Plaintiffs next object to the magistrate judge's recommendation to impose sanctions on the ground that defendants failed to notice the February 27, 2004 hearing on the motion for sanctions more than eleven (11) days prior to the hearing as required by Local Rule 7. As a result, plaintiffs contend they were not provided eleven days to respond to defendants' motion, but instead received only nine days.  This objection fails because Local Rule 7(E) specifically provides that it may be trumped by a contrary court order.  Thus, the Rule states that an opposing party shall file a responsive brief within eleven days of

222 F.R.D. 299                                                                                                    Page 10
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

service of a motion "[u]nless otherwise directed by the Court." *See* Local Rule 7(E). Precisely this occurred here. The Scheduling Order entered in this case required that a moving party provide ten working days notice for dispositive motions, such as motions to dismiss and for summary judgment, but only one week notice for non-dispositive motions, such as a motion for sanctions. [FN28] It follows, then, that plaintiffs **\*310** are mistaken in contending that Local Rule 7(E) required that defendants notice the motion for sanctions more than eleven days prior to the hearing. Moreover, because defendants noticed the motion for sanctions more than one week before the February 27, 2004 hearing, as required by the Scheduling Order, plaintiffs' objection on this ground must be overruled. [FN29]

> FN28. *See Giganti, et al., Gen-X Strategies, Inc., et al.,* Civil Action No. 03-737-A (E.D.Va. Oct. 29, 2003) (Scheduling Order) ("Non-dispositive motions must be filed and delivered by the Friday before the Friday for which noticed, with responses due not later than the Wednesday before the hearing."). Defendants' motion complied with this directive.

> FN29. Plaintiffs also appear to argue that defendants' motion was procedurally improper under Local Rule 7(D) on the ground that defendants did not make an effort to confer with plaintiffs prior to the February 27, 2004 hearing to "narrow the area of disagreement" between the parties. *See* Local Rule 7(D) ("Before endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement."). Plaintiffs are precluded from raising this objection here because they did not raise it before the magistrate judge. *See supra* note 20 and accompanying text. In any event, even were plaintiffs allowed to raise this objection, the record in fact reflects that defendants made several efforts to obtain agreement as to the allegedly offending claims including (i) the serving of the motion for sanctions and (ii) the initiation of written correspondence concerning the claims.

                    IV.

Plaintiffs next object to the magistrate judge's recommendation on the ground that the allegedly offending claims were (i) well-grounded in fact and law and (ii) not filed for an improper purpose. Rule 11(b), Fed.R.Civ.P., provides that a party is entitled to sanctions in the event an opposing party files a pleading or motion that is:

> (1) "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,"
> (2) not "warranted by existing law or a by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or
> (3) lacking in "evidentiary support" and "[un]likely to have evidentiary support after reasonable opportunity for further investigation or discovery."
> Rule 11(b)(1)-(3), Fed.R.Civ.P.

[8][9][10][11] To begin, plaintiffs object to the magistrate judge's recommendation to impose sanctions on the ground that the offending claims did not violate Rule 11(b)(2) and (3), *i.e.* they were well-grounded in fact and law. Authority interpreting Rule 11(b)(2) and (3) makes clear that these provisions of the Rule "require[ ] that an attorney conduct a reasonable investigation of the factual and legal basis for his claim before filing." *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991) (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.,* 827 F.2d 984, 987 (4th Cir.1987)); *see also Davis v. Hudgins,* 896 F.Supp. 561, 573 (E.D.Va.1995). A party or attorney may escape sanctions provided his prefiling investigation into both the facts and the law is objectively reasonable under the circumstances. *See Brubaker,* 943 F.2d at 1373; *see also In re Kunstler,* 914 F.2d 505, 517 (4th Cir.1990). In this regard, a prefiling factual investigation is objectively reasonable provided it "uncover[s] some information to support the allegations in the complaint" [FN30] and a prefiling legal investigation passes muster under Rule 11 provided the claim has some " 'chance of success under the existing precedent,' " [FN31] even if that chance amounts to a mere "glimmer." *Hoover Universal, Inc. v. Brockway Imco, Inc.,* 809 F.2d 1039, 1044 (4th Cir.1987).

> FN30. *Brubaker,* 943 F.2d at 1373; *see also Davis v. Hudgins,* 896 F.Supp. at 573.

> FN31. *Brubaker,* 943 F.2d at 1373 (quoting *Cleveland Demolition Co.,* 827 F.2d at 988); *see also Davis v. Hudgins,* 896 F.Supp. at 573.

222 F.R.D. 299                                                                                                    Page 11
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
(Cite as: 222 F.R.D. 299)

[12] Plaintiffs' objection to the magistrate judge's imposition of sanctions on the ground that the RICO and Sherman Act claims were well-grounded in law fails. To begin, there was no objectively reasonable basis to conclude, as plaintiffs assert in their complaint, that defendants violated RICO (i) by attempting to collect an "unlawful debt" or (ii) by engaging in a "pattern of racketeering activity," as those terms are defined in the statute. 18 U.S.C. § 1961. [FN32] Nor was it *311 objectively reasonable to conclude that plaintiffs' RICO claim was not barred from relitigation by Virginia *res judicata* law as set forth in *Davis v. Marshall Homes*, 265 Va. 159, 576 S.E.2d 504 (2003), [FN33] as federal *res judicata* law clearly governs here under the principles set forth in *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiffs' claim of attempted monopolization under the Sherman Act is similarly unreasonable as this claim also had no chance of success under the standard set out in *Advanced Health-Care Servs., Inc. v. Radford Community Hosp.*, 910 F.2d 139 (4th Cir.1990). [FN34] Accordingly, the magistrate judge's recommendation to impose sanctions on this ground was neither clearly erroneous nor contrary to law.

FN32. Notably, to establish that defendants collected an "unlawful debt," plaintiffs must show that defendants attempted to collect a debt that was (i) either "incurred or contracted in gambling activity... or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury," and (ii) either "incurred in connection with the business of gambling... or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). Plaintiffs' counsel was unreasonable in concluding that defendants were in the business of lending money or a thing of value, as it is clear that defendants instead were in the business of providing internet-related services. *See Durante Bros. and Sons Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 247-48 (2d Cir.1985) (stating that the "unlawful debt" collection provision is targeted only to those in the "business of lending" because Congress was primarily concerned with eliminating loan sharking practices); *Arrington v. Colleen, Inc.*, 2000 WL 34001056, at *7, 2000 U.S. Dist.

LEXIS 20651, at *24 (D.Md.2000) (citing *Durante Bros.*, 755 F.2d at 247- 48). Moreover, plaintiffs' counsel was objectively unreasonable in concluding that the enforceability of the debt under Virginia's usury laws could be relitigated under the doctrine of collateral estoppel, *i.e.* issue preclusion, as that issue had previously been determined by the Alexandria Circuit Court. *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir.2002) ("Issue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation.'") (quoting *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996)).

And, to establish that defendants engaged in a "pattern of racketeering activity," plaintiffs must show that defendants engaged in "at least two acts of racketeering activity," defined in the statute as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical... which is chargeable under State law and punishable by imprisonment for more than one year...." 18 U.S.C. § 1961. In this regard, plaintiffs alleged in their complaint that defendants engaged in a pattern of extortionate credit transactions, mail fraud, wire fraud, trafficking in goods and services bearing counterfeit marks, and extortion under Virginia Code § 18.2-59. Given the nature of the dispute in this case, plaintiffs' allegations of these crimes are not only objectively unreasonable, but fantastical and preposterous.

FN33. Specifically, plaintiffs' counsel asserts that in *Davis v. Marshall Homes* the Supreme Court of Virginia rejected the use of rigid transactional analysis to determine whether claims are part of a single cause of action and held instead that a court must not bar a claim under the doctrine of *res judicata* unless the new claim depends on the same evidence as a previously litigated claim. *See Davis v. Marshall Homes*, 265 Va. at 171, 576 S.E.2d 504. Not decided here is whether plaintiffs' RICO claim would have been barred under Virginia's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

law.

FN34. This standard requires that a plaintiff establish the following three elements for a claim of attempted monopolization: (i) that defendant had a specific intent to monopolize the relevant market; (ii) that defendants undertook predatory or anti-competitive acts; and (iii) that there was a dangerous probability of successful monopolization. *See Advanced Health-Care Servs., Inc.,* 910 F.2d at 147.

Moreover, plaintiffs' objection on the ground that the RICO and Sherman Act claims do not warrant sanctions because they were nonetheless well-grounded in fact is also unpersuasive. Simply put, plaintiffs' counsel's prefiling factual investigation with regard to the RICO and Sherman Act claims was uninformed by an adequate understanding of the legal principles that underlie these claims. Had plaintiffs' counsel fully understood these legal principles, his prefiling factual investigation would have been more sharply and appropriately focused and he would have realized that the facts in this case would not support RICO and Sherman Act violations. Accordingly, while it is true that plaintiffs' counsel may have devoted substantial time to a prefiling factual investigation into these claims that included (i) discovery during the state court litigation, (ii) review of Gen-X documents, including marketing materials, advertisements, and commercial solicitations, **\*312** and (iii) interviews with numerous potential witnesses acquainted with Gen-X and Frederick, including current and former Gen-X customers and their employees, the offending claims were nonetheless not well-grounded in fact because the prefiling factual investigation was not adequately informed by the law. For instance, although the Fourth Circuit made clear in *Advanced Health-Care Services, Inc.,* 910 F.2d 139, that a plaintiff must identify a relevant market and specific predatory or anti-competitive acts to prove attempted monopolization under the Sherman Act, *id.* at 147, plaintiffs' counsel appears to have made no effort to do so, nor to hire experts, who are typically relied on for these factual matters in antitrust cases. *See, e.g., Virginia Vermiculite, Ltd. v. W.R. Grace & Co.,* 108 F.Supp.2d 549, 581 (W.D.Va.2000) (plaintiff relying on qualified antitrust economics expert to define relevant market). Accordingly, plaintiffs' objection on the ground that its RICO and Sherman Act claims do not warrant sanctions because they are well-grounded in fact also must be overruled.

[13] Yet, plaintiffs' objection on the ground that the TILA claim was well-grounded in fact and law compels a different conclusion. That plaintiffs' counsel's prefiling investigation revealed (i) that Giganti had requested Gen-X's services in setting up a personal website and (ii) that Gen-X regularly deferred payments from its clients points persuasively to the conclusion that it was in fact objectively reasonable for plaintiffs' counsel to conclude that the parties' agreement was a "consumer credit transaction," defined by the statute as a credit transaction entered into "primarily for personal, family, or household purposes," 15 U.S.C. § 1602(h), and that Gen-X was a "creditor," defined by the statute as an individual or entity that "regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required...," 15 U.S.C. § 1602(f), and thus, it was also objectively reasonable for plaintiffs' counsel to conclude that Gen-X's failure to make disclosures, including the total amount of principal and interest owed, violated TILA. *See Redic v. Gary H. Watts Realty, Co.,* 762 F.2d 1181, 1185 (4th Cir.1985). It was also not manifestly unreasonable for plaintiffs' counsel to conclude that plaintiffs' TILA claim was not barred by *res judicata* as a consequence of defendants' state court action on the ground that some courts have held that a plaintiffs' TILA and Fair Debt Collections Practices Act claims challenging a defendant's debt collections practices brought after state litigation by the defendant to collect the debt are not barred by *res judicata.* [FN35] Moreover, plaintiffs' counsel engaged in a substantial factual investigation with regard to the elements of his TILA claims. Accordingly, while plaintiffs' objection on the ground that its RICO and Sherman Act claims were well-grounded in fact and law must be overruled, the objection must be sustained with regard to the TILA claim as the magistrate judge's recommendation as to this claim was clearly erroneous and contrary to law.

FN35. *See Whitaker v. Ameritech Corp.,* 129 F.3d 952, 957 (7th Cir.1997); *Egge v. Healthspan Servs. Co.,* 115 F.Supp.2d 1126, 1130 (D.Minn.2000); *Zhang v. Haven-Scott Assoc., Inc.,* 1996 WL 355344, at \* 14, 1996 U.S. Dist. LEXIS 8738, at \*26 (E.D.Penn.1996); *Leatherwood v. Universal Business Serv. Co.,* 115 F.R.D. 48, 50 (W.D.N.Y.1987).

Worth noting here is that plaintiffs' TILA claim was dismissed pursuant to Rule

12(b)(6), Fed.R.Civ.P., (i) because it was barred by the doctrine of *res judicata* and (ii) because plaintiffs failed to allege that defendants were qualified "creditors" and that the transaction was a "consumer credit transaction." *See Giganti, et al. v. Gen-X Strategies, Inc., et al.,* Civil Action No. 03-737-A (E.D.Va. Dec. 12, 2003) (Order). An award of sanctions does not necessarily follow, however, from the dismissal of a claim under Rule 12(b)(6). *See Dee-K Enterprises, Inc., 177 F.R.D. at 354* ("Were [a dismissed claim always subject to Rule 11 sanctions]..., Rule 11 would essentially collapse into Rule 12(b)(6), for every time a plaintiff failed to state a claim upon which relief could be granted, it would also be liable for fees or other sanction under Rule 11. Such a result is plainly contrary to the language and intent of the Rules.").

[14] Finally, plaintiffs also contend that sanctions are unwarranted because the offending claims were not filed for an improper purpose. Rule 11 provides that an attorney and/or plaintiff must be sanctioned for filing **\*313** a claim "for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11(b)(1), Fed.R.Civ.P. And Fourth Circuit authority interpreting the Rule makes clear that an improper purpose may be inferred from a claim's lack of factual or legal foundation or other factor such as the timing of the filing of the complaint. *See In re Kunstler,* 914 F.2d 505, 518 (4th Cir.1990). While plaintiff objects to the magistrate judge's recommendation that the offending claims were filed for an improper purpose on the ground that the complaint was filed on June 6, 2003 in preparation for the birth of plaintiffs' counsel's child and not for the purpose of injuring Frederick's prospects for victory in a primary election, the evidence concerning the birth of plaintiffs' counsel's child was not presented to the magistrate judge and thus must not be considered here. [FN36] Accordingly, as no evidence, other than plaintiffs' bare assertions that the RICO and Sherman Act claims were not filed for an improper purpose, was offered to rebut the inference of improper purpose, the magistrate judge's recommendation with regard to these claims is not clearly erroneous or contrary to law. [FN37] Nonetheless, because plaintiff's TILA claim was well-grounded in law, the magistrate judge's determination that this claim was filed for an improper purpose was clearly erroneous and contrary to law and plaintiff's objection with regard to this

claim must be sustained.

FN36. *See supra* note 20 and accompanying text.

FN37. Notably, even were it proper to consider new evidence in reviewing a magistrate judge's recommendation under the clearly erroneous and contrary to law standard and even assuming the new evidence concerning the birth of plaintiffs' counsel's child warranted the conclusion that the complaint was not filed for an improper purpose, sanctions would nonetheless be appropriate here because plaintiffs' RICO and Sherman Act claims were not warranted by the facts or by existing law or any good faith extension of that law. This is so because under Rule 11 a claim's lack of factual or legal basis and plaintiffs' improper purpose in filing a claim are independent and alternative bases for awarding sanctions. *See* Rule 11(b), Fed.R.Civ.P.

V.

[15] Plaintiffs also object to the magistrate judge's Report and Recommendation on the ground that letters between the parties concerning settlement submitted by defendants with its motion for sanctions and relied on by the magistrate judge must be excluded from consideration by Rule 408, Fed.R.Evid. That Rule provides that evidence of settlement discussions are "not admissible to prove liability for or invalidity of the claim or its amount." Rule 408, Fed.R.Evid. The Rule does not require exclusion of this evidence, however, "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.* While the Rule itself does not expressly indicate that a motion for sanctions qualifies as "another purpose" such that the rule of exclusion does not apply here, courts in this and other circuits have considered settlement documents when ruling on a motion for sanctions. [FN38] Thus, the letters concerning settlement were properly submitted and, to the extent necessary, could have been relied on by the magistrate judge. In any event, nowhere in the Report and Recommendation does it appear that the magistrate judge relied on these letters, nor are they relied on here. Therefore, plaintiffs' objection on this ground must be overruled.

FN38. *See* CNA Fin. Corp. v. Brown, 162

F.3d 1334, 1338 (11th Cir.1998) (considering settlement offers under Rule 408 in denying a motion for sanctions); *Eisenberg v. Univ. of New Mexico,* 936 F.2d 1131, 1134 (10th Cir.1991) (holding that evidence of settlement may be considered under Rule 408 when reviewing a motion for sanctions); *Ausherman v. Bank of America Corp.,* 212 F.Supp.2d 435, 453-54 (D.Md.2002) (same); *see also Carney v. American Univ.,* 151 F.3d 1090, 1095 (D.C.Cir.1998) (citing *Eisenberg,* 936 F.2d at 1134 with approval).

VI.

[16] Finally, assuming *arguendo* that sanctions are proper, plaintiffs object to the magistrate judge's recommendation with regard to the amount of sanctions on the grounds that the recommended sanctions are unwarranted, excessive, and fail to take account **\*314** of plaintiffs' and plaintiffs' counsel's ability to pay.

[17] Rule 11 offers little guidance as to an "appropriate sanction" for a violation of the Rule's requirements. Rule 11(c), Fed.R.Civ.P. In this regard, the Rule simply states that:

the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Rule 11(c)(2), Fed.R.Civ.P. With regard to the amount of a monetary sanction, the Rule states only that the sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id.* And authority interpreting the Rule makes clear that in determining the amount of a monetary sanction, a court must keep in mind that "the primary ... purpose of Rule 11 is to deter future litigation abuse." *In re Kunstler,* 914 F.2d at 522-23. To determine the amount of a monetary sanctions, a court should consider four factors: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.* at 523 (citing *White v. General Motors Corp.,* 908 F.2d 675 (10th Cir.1990)).

The magistrate judge recommended imposing sanctions of $37,393.57, the amount of defendants' attorney's fees, because (i) defendants' hourly billing

rates and the number of hours billed were reasonable, (ii) that amount would deter future violations, (iii) plaintiffs' financial status does not warrant a reduction in that amount, and (iv) plaintiffs' Rule 11 violation is severe. While the magistrate judge correctly identified the controlling legal principles, her application of those principles to this case falls short and leads to a clearly erroneous excessive award. Reduction in the amount of sanctions is warranted chiefly because the magistrate judge granted sanctions to compensate defendants for fees related to *all* claims brought against plaintiffs, not merely those claims for which sanctions are warranted. Moreover, the magistrate judge's award includes fees incurred after December 12, 2003, the day the offending claims were dismissed. As such, defendants' fee claim includes substantial time devoted to claims not the subject of sanctions. In these respects, the magistrate judge's award runs afoul of both Rule 11 and Fourth Circuit authority that make clear that sanctions based on attorney's fees may only account for fees incurred in responding to the sanctioned claims. [FN39] Accordingly, the magistrate judge's recommendation to award sanctions to cover (i) fees incurred after December 12, 2003 or (ii) fees incurred prior to December 12, 2003 for work on claims other than the offending claims, was contrary to law, as those fees were not incurred "as a direct result of the violation." *See* Rule 11(c)(2), Fed.R.Civ.P. Reduction in the amount of sanctions is also warranted on the grounds (i) that fees of nearly $40,000 incurred in response to plaintiffs' patently frivolous claims are plainly excessive and unreasonable [FN40] and (ii) that such sanctions are well in excess of the amount needed to deter future Rule 11 violations. [FN41]

FN39. *See* Rule 11(c)(2), Fed.R.Civ.P. ("[T]he sanction may consist of, or include, ... an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses *incurred as a direct result of the violation.*") (emphasis added); *In re Kunstler,* 914 F.2d at 523 ("Only attorney time which is in response to that which has been sanctioned should be evaluated."); *Harmon v. O'Keefe,* 149 F.R.D. 114, 118 (E.D.Va.1993) (citing *In re Kunstler,* 914 F.2d at 523).

FN40. *See In re Kunstler,* 914 F.2d at 523 (stating that "it is appropriate for the court to consider ... whether the large amount of time devoted to the pursuit of sanctions was warranted..." and that "[t]he injured party

222 F.R.D. 299                                                                                                    Page 15
222 F.R.D. 299, 2004-2 Trade Cases P 74,500, RICO Bus.Disp.Guide 10,733
**(Cite as: 222 F.R.D. 299)**

has a duty to mitigate costs by not overstaffing, oversearching or overdiscovering meritless claims."); *The Chosin Few, Inc. v. Scott,* 209 F.Supp.2d 593, 606 (W.D.N.C.2002) (citing Rule 11(c)(1)(A), Fed.R.Civ.P.).

**FN41.** *See In re Kunstler,* 914 F.2d at 523 (considering the minimum amount needed to deter as a factor in determining the amount of sanctions).

***315** Defendants argument that the fees incurred in responding to the claims were necessary and reasonable is unpersuasive as that argument plainly contradicts their contention, accepted here, that the RICO and Sherman Act claims were obviously frivolous. More persuasive is defendants' argument that plaintiffs' and plaintiffs' counsel's financial status should not be considered here. Although *Kunstler* stated that a party's ability to pay is a factor used to determine the amount of sanctions, it is not proper to consider new evidence presented here concerning the financial status of plaintiffs and plaintiffs' counsel as this evidence was not presented to the magistrate judge. [FN42]

FN42. *See supra* note 20 and accompanying text. Even were the new evidence of the financial status of plaintiffs and plaintiffs' counsel's appropriately considered here, such evidence would not compel a conclusion different from the conclusion reached here as to the proper sanctions award as there is no reason to believe that plaintiffs and plaintiffs' counsel cannot afford the sanctions ultimately imposed here or that this amount will bankrupt either of them. *See In re Kunstler,* 914 F.2d at 524 ("It is particularly inappropriate to use sanctions as a means of driving certain attorneys out of practice."); *Harmon,* 149 F.R.D. at 119 ("When considering the third [Kunstler] factor, this court must, of course, avoid 'imposing a monetary award so great it will bankrupt the offending part [y].' ") (citing *In re Kunstler,* 914 F.2d at 524).

[18] Although it is clear that the magistrate judge's recommendation to impose sanctions of $37,393.57 is excessive, the calculation of the proper amount of sanctions is not an arithmetically precise exercise, but instead requires that a court exercise its judgment and discretion in light of the pertinent factors [FN43] and the facts and circumstances presented. [FN44] This

is particularly true where, as here, a sanctions award that relies chiefly on the movant's fees is problematical given that it is often difficult or impossible to distinguish in defendants' counsel's billing records between the time spent on the offending claims and the time spent on plaintiffs' other claims prior to December 12, 2003, when the offending claims were dismissed. Assuming that of the $24,714.24 total fees incurred prior to December 12, 2003, the fees incurred defending against each of plaintiffs' twelve claims were equivalent, defendants would have incurred only $4,119.04 in responding to the RICO and Sherman Act claims. And, given the patent frivolousness of these claims, it is appropriate to conclude that of the total fees incurred, only a small portion of those fees should have been incurred as a direct result of those claims. Moreover, even if all of defendants' fees were incurred as a direct result of the offending claims, sanctions of that amount would not necessarily be warranted as "a district court has the discretion... to fashion a sanction... which awards part, but not all, of the opposing party's fee request" for "[a]dequate deterrence may permissibly fall short of full compensation." *Ballentine,* 135 F.R.D. at 123 (citing *Harris v. Marsh,* 679 F.Supp. 1204, 1390 (E.D.N.C.1987)). Yet, it is nonetheless appropriate in this instance to impose sanctions jointly and severally against plaintiffs and plaintiffs' counsel in the amount of $7500, [FN45] somewhat more than the actual estimated ***316** fees incurred, as this amount is necessary (i) adequately to compensate defendants for fees incurred in responding to the offending claims and preparing and presenting the sanctions motion, [FN46] (ii) to ensure specific and general deterrence of future Rule 11 violations, and (iii) effectively to punish plaintiffs and plaintiffs' counsel for this severe Rule 11 violation. *See In re Kunstler,* 914 F.2d at 522-23 (citing factors to consider in determining the amount of monetary sanctions); *Harmon,* 149 F.R.D. at 117 (noting that "Rule 11 sanctions serve many purposes, including punishing the violating party, compensating the victim of the violation, and, most importantly, deterring future violations") (citing *In re Kunstler,* 914 F.2d at 522). Moreover, there is no doubt that plaintiffs and plaintiffs' counsel can afford this amount and will not be driven out of practice or into bankruptcy. *See In re Kunstler,* 914 F.2d at 524; *Harmon,* 149 F.R.D. at 119.

FN43. These factors include "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related

to the severity of the Rule 11 violation." *In re Kunstler,* 914 F.2d at 523 (citing *White,* 908 F.2d 675).

FN44. *See Harmon,* 149 F.R.D. at 118 (exercising judgment in concluding that "[n]o more than half an hour [of the hours spent responding to plaintiff's complaint] can be fairly attributed to this single non-violating claim"); *Ballentine v. Taco Bell Corp.,* 135 F.R.D. 117, 123 (E.D.N.C.1991) ("Rule 11 provides the court with substantial discretion to fashion an appropriate sanction to deter similar conduct.") (citing *Cabell v. Petty,* 810 F.2d 463 (4th Cir.1987)).

FN45. Although it was noted at the June 8 hearing that sanctions would be imposed only against plaintiffs' counsel, this initial conclusion was based on the premise, no longer valid, that the sole ground for the imposition of sanctions was that the claims were not warranted by existing law. Rule 11(c) provides that a court may impose sanctions "upon the attorneys, law firms, or parties," but that "monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)," the Rule's provision that requires that all pleadings and motions be "warranted by existing law." *See* Rule 11, Fed.R.Civ.P. This is so because to conclude otherwise would improperly "render a client responsible for the frivolous claims asserted by its attorneys." *See Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 177 (2d Cir.1999). Here, it is proper to impose sanctions jointly and severally on plaintiffs and plaintiffs' counsel because sanctions are imposed not only because the claims were not warranted by existing law, but also because the magistrate judge found they were not well-grounded in law and filed for an improper purpose and this conclusion is not clearly erroneous.

FN46. At the June 8 district court hearing, defendants submitted supplemental billing records representing additional fees incurred of $11,073.80, a substantial portion of which was incurred in preparing and presenting the sanctions motion. Fees incurred in filing preparing and presenting a sanctions motion are another factor for courts to consider in determining the appropriate sanctions

award. *See Wassel v. Samuel,* 46 F.3d 1130, 1995 WL 5772, at *2 (Table) (4th Cir. Jan.9, 1995) (unpublished disposition) ("[A] district court may properly include in a Rule 11 sanction attorney's fees and expenses that the opponent incurred in establishing the Rule 11 violation.") (citing *Brandt v. Schal Assoc., Inc.,* 960 F.2d 640 (7th Cir.1992)); *Ballentine,* 135 F.R.D. at 126 (awarding sanctions to compensate defendant for attorney's fees incurred in preparing and presenting sanctions motion).

 Accordingly, for the reasons set forth herein, plaintiffs' objections to the magistrate judge's recommendation to impose sanctions jointly and severally against plaintiffs and plaintiffs' counsel in the amount of $37,393.57 must be sustained in part and overruled in part and sanctions imposed jointly and severally on plaintiffs' and plaintiffs' counsel in the amount of $7500.

 An appropriate order will issue.

 222 F.R.D. 299, 2004-2 Trade Cases ¶ 74,500, RICO Bus.Disp.Guide 10,733

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00737 (Docket) (Jun. 06, 2003)

END OF DOCUMENT

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2006
THOMAS K. KAHN
CLERK

No. 05-12698

Non-Argument Calendar

D. C. Docket No. 05-20047-CV-AJ

UNIVERSAL COMMUNICATION SYSTEMS, INC.,
a Nevada Corporation,
MICHAEL J. ZWEBNER, individually and others
similarly situated,

Plaintiffs-Appellants,

versus

TURNER BROADCASTING SYSTEMS, INC.,
Georgia Corporation,
CABLE NEWS NETWORK, INC., Georgia
Corporation, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(February 14, 2006)

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

Post-It® Fax Note    7671    Date 2/15    # of ► 2 pages

To Jay Canter                From Gary Canter

Co./Dept.                    Co.

Phone #                      Phone 305 714 1921

Fax # 17-321-1037            Fax #

PER CURIAM:

Plaintiffs-Appellants Universal Communications Systems ("Universal") sued Defendants-Appellees Turner Broadcasting Systems ("Turner") alleging defamation. Universal has failed to demonstrate, at any level of this case, how Turner was responsible (directly or indirectly) for the publication of the allegedly defamatory statements. Accordingly, we AFFIRM the district court's order dismissing the action and refusing to alter or amend the order of dismissal, and we REMAND the case to the district court to determine the reasonable attorneys' fees incurred by appellees in defending this appeal.[1]

---

[1] Turner's motion for damages and costs on appeal under Rule 38 of the Federal Rules of Appellate Procedure is GRANTED in the amount of double costs and reasonable attorneys' fees in defending this appeal. The Clerk of this Court shall assess the costs, and the amount of attorneys' fees shall be determined by the district court on remand. Universal's Motion for Imposition of Professional Sanctions against Turner is DENIED. Turner's Motion to Strike Motion for Imposition of Professional Sanctions is DENIED as moot.

2