IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2006 APR -6  P 12: 17
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNIVERSAL COMMUNICATION SYSTEMS, INC. (A Nevada Corporation), MICHAEL J. ZWEBNER, et al,<br>Plaintiffs,<br><br>vs.<br><br>ROBERTO VILLASENOR, JR., et al<br>Defendants;<br><br>-and-<br><br>ROBERTO VILLASENOR, JR.<br>Counterclaim Plaintiff<br><br>vs.<br>UNIVERSAL COMMUNICATION SYSTEMS, INC. (A Nevada Corporation), MICHAEL J. ZWEBNER (an individual),<br>Counterclaim Defendants, and<br><br>ANDREW CUNNINGHAM, ROBERT H. COOPER, OMAR GHAFFAR, and DOES 1 through 8<br>Individual Third-Party Defendants | CIVIL CASE NO. 05-11172-REK |

### ROBERTO VILLASENOR'S AFFIRMATIVE DEFENSES, ANSWER, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS

Comes now the defendant Roberto Villasenor ("Defendant" or "Villasenor") appearing pro se to answer and aver the allegations set forth in Plaintiffs' second amended complaint. All service, documents, and correspondence should be served/delivered to the address of the Defendant as follows:

Roberto Villasenor, Defendant Pro Se
PO Box 64914
Los Angeles, CA 90064

## ANSWER

For his answer, Defendant admits, denies, and avers as follows:

1. Defendant is known by the Internet account aliases as "the_worm06", "the_worm06a", and "petersanders1". This information is known to Plaintiffs, and was known to Plaintiffs at the time of filing of this lawsuit, and various other lawsuits Plaintiffs have filed against Defendant.

2. Admits the first paragraph of Paragraph 13, Paragraphs 23, 25, and 26 of Plaintiffs' complaint.

3. Denies paragraphs 7 through 10, the fourth paragraph of Paragraph 14, the third paragraph of Paragraph 15, the second and third paragraphs of Paragraph 16, the second and third paragraphs of Paragraph 17, the third paragraph of Paragraph 18, the second and third paragraph of Paragraph 19, Paragraphs 20, 22, 27, 32, 33, the first, second, and fourth paragraphs of Paragraph 34, and Paragraphs 36 through 41.

4. Defendant has insufficient knowledge to determine the truthfulness or falsity relating to the allegations of paragraphs 1 through 6 of Plaintiffs' complaint, except that Defendant denies that Defendant's message board posts are "false, defamatory and harassing" and accordingly Defendant denies the balance of these paragraphs;

5. Denies Paragraph 11 to the extent that UCSY is traded over the counter, is quoted through the OTC Bulletin Board which is a quotation service accessible to market makers, and is not listed on any exchange as alleged in the complaint;

6. Has insufficient knowledge as to any subscriber agreement which ZWEBNER alleges he maintains with Lycos and/or whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same, but admits the balance of Paragraph 12;

7.     Denies the second paragraph of Paragraph 13 to the extent that Defendant does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same, and admits the balance of the second paragraph of Paragraph 13;

8.     Denies the third paragraph of Paragraph 13 to the extent that Defendant has never published under the aliases of "no_insiders" or "Tobias95" and accordingly denies the same;

9.     Has no knowledge of the allegations of Paragraph 14 and accordingly deny the same;

10.    Denies the first and second paragraphs of Paragraph 15, the first paragraph of Paragraph 16, and the first paragraph of Paragraph 17 to the extent that that Defendant does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same;

11.    Has no knowledge of the allegations of the first and second paragraphs of Paragraph 18, and accordingly denies the same;

12.    Denies the first paragraph of Paragraph 19 to the extent that Defendant does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same;

12.    Denies Paragraph 21 to the extent that the alleged physical location of Lycos' servers, offices, and equipment form any basis for venue in this action, deny that the alleged postings are fraudulent, and deny that Defendant entered into a contract with Lycos, and accordingly denies the same;

13.    Denies Paragraph 28 to the extent that no subscriber agreement exists between Defendant and Lycos, and admits the balance of this paragraph;

14. Denies Paragraph 29 to the extent that Defendant has a subscriber agreement with Lycos, that the alleged "vast number of these 57,000 postings" are associated with Defendant, and to the extent that most of the fraudulent, false, and defamatory postings were published by plaintiffs ZWEBNER, UCSY, and their associates;

15. Denies Paragraph 31 to the extent that Defendant has no knowledge of "no_insiders" and "Tobias95", and accordingly denies the same;

16. Denies the third paragraph of Paragraph 34 to the extent that no cartel exists, and no class has been alleged in this complaint; admits that ZWEBNER has been involved in securities fraud, has forged documents submitted in legal proceedings, and has committed perjury, and has no knowledge of the balance of Paragraph 34 and accordingly denies the same; and

17. Denies Paragraph 35 to the extent that any cartel exists, and has no knowledge of the balance of Paragraph 35 and accordingly denies the same.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

18. The statements which Plaintiffs alleges were published by Defendant are true.

### SECOND AFFIRMATIVE DEFENSE

19. Plaintiffs' First Claim for Relief for Defamation fails to state facts sufficient to state a cause of action against any party, including Defendant Villasenor.

### THIRD AFFIRMATIVE DEFENSE

20. The statements which Plaintiffs allege were made by Defendant, if they were in fact made by Defendants, were privileged because they were published in the public interest in a reasonable manner, for a proper purpose and for the protection or advancement of the respective Defendant's own legitimate interests.

FOURTH AFFIRMATIVE DEFENSE

21. The statements which Plaintiffs alleges were made by Defendant, if they were in fact made by Defendants, were privileged because they were published in the public interest in a reasonable manner, for a proper purpose and for the protection of the interests of person(s) other than the publisher.

FIFTH AFFIRMATIVE DEFENSE

22. The statements which Plaintiffs allege were made by Defendant, if they were in fact made by Defendants, were privileged because they were published in a reasonable manner, for a proper purpose and for the protection or furtherance of the common interests of the publisher and the recipient(s).

SIXTH AFFIRMATIVE DEFENSE

23. Plaintiffs are both public persons and have failed to mitigate their claimed damages.

SEVENTH AFFIRMATIVE DEFENSE

24. The statements which Plaintiffs allege were made by Defendant, if they were in fact made by Defendants, were privileged because they constitute fair comment on matters of public concern under the First and Fourth Amendments to the United States Constitution.

EIGHTH AFFIRMATIVE DEFENSE

25. The statements which Plaintiffs allege were made by Defendant, if they were in fact made by Defendants, were privileged because they constitute fair comment on matters of public concern under the Constitution of the Commonwealth of Massachusetts and other states with similar law.

NINTH AFFIRMATIVE DEFENSE

26. Plaintiffs' claims for relief are barred by the doctrines of waiver and estoppel.

TENTH AFFIRMATIVE DEFENSE

27. Plaintiffs' claims for relief are barred by the doctrine of unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

28. Plaintiffs' claims are barred by the equitable doctrine of laches.

## **COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

29. Villasenor re-alleges Paragraphs 1 through 28 as though fully incorporated herein. This court already has jurisdiction over Plaintiffs-Counterclaim Defendants ZWEBNER and UCSY because Villasenor's counterclaims are directly related to the within action of Plaintiffs ZWEBNER. This court has jurisdiction over third-party defendants Andrew Cunningham ("CUNNINGHAM"), Robert H. Cooper ("COOPER"), and DOES 1 through 8 because CUNNINGHAM has been employed and resided within the Commonwealth of Massachusetts, and because complete diversity exists among all other defendants. Defendants ZWEBNER and UCSY have already acceded jurisdiction to this District.

30. The within action brought by Plaintiffs ZWEBNER and UCSY is merely one more of a duplication of a series of defamation actions already brought by ZWEBNER against Villasenor, and other "Does", in other venues. Ultimately, the courts have redirected jurisdiction to this District. In a previous action in the state court in the Commonwealth of Massachusetts, ZWEBNER alleged that Villasenor, along with other persons, was responsible for republication of alleged "defamatory" Internet publications, which turned out later to be true.

31. Upon information and belief, Plaintiffs ZWEBNER and UCSY are public persons, as ZWEBNER is the chairman and defacto CEO of the publicly-traded corporation UCSY, which ZWEBNER controls, and in which ZWEBNER beneficially owns a controlling interest in UCSY.

32. The within underlying lawsuit, and the other related cases, arise from ZWEBNER's attempts to quash public criticism of his and UCSY's various business defalcations committed by ZWEBNER and UCSY.

33.     Since about August, 2000, Counter-claim defendants ZWEBNER and Third-party defendant CUNNINGHAM and DOES 1-3 began to publish a series of defamatory messages and news releases directed at attacking Defendant Villasenor. Since about 2002, Counter-claim defendant UCSY also began to publish a series of defamatory messages and news releases directed at attacking Defendant Villasenor. The statements in these messages were false, defamatory, and fraudulent, and were intended to attack and destroy the public reputation and business reputation of Villasenor, as well as to threaten Villasenor's life and right to peace and tranquility. Villasenor has suffered emotional distress leading to additional distress, emotional suffering, loss of employment and productivity as a direct result of the actions of ZWEBNER, UCSY, CUNNINGHAM, and DOES 1-3. The false and defamatory statements include, but are not limited to, the following false, threatening, and defamatory statements:

that Villasenor is a "convicted felon";

that Villasenor has been convicted of "financial fraud";

that Villasenor manufactures and sells illegal drugs "to support [Villasenor's] habit";

that Villasenor's "time is up" and "you will be buried deep in ground, maggot"

and numerous other false and defamatory statements directed at harming Villasenor.

34.     The conduct alleged above was calculated as a conspiracy among the Counter-claim and Third-party defendants to apply injury to Villasenor in the form of humiliation, destruction of reputation, deprivation of employment opportunities, and done with malice and with the advance knowledge of the Counter-claim and Third-party defendants that Villasenor would be injured.

35.     The statements published by the Counter-claim and Third-party defendants were libelous per se, in that they were published on Internet message boards and chat rooms, and then the messages were re-published en masse throughout the Internet in various locations, by third parties, at the request of ZWEBNER and UCSY.

## FIRST COUNTERCLAIM/THIRD-PARTY CLAIM
(against ZWEBNER, UCSY, CUNNINGHAM, and DOES 1-3)
Defamation, Assault, False Light Invasion

36.     Villasenor re-alleges paragraphs 1 through 35 as though fully incorporated herein.

37.     Since about 2002, Counter-claim Defendants and Third-party defendants ZWEBNER, UCSY, CUNNINGHAM, and DOES 1-3 have engaged in a systematic, coordinated effort of Internet libel to defame Villasenor's personal and public reputation, by publishing, republishing, and distributing thousands of false and defamatory statements regarding Villasenor. Said statements were intended to deprive Villasenor's right to livelihood, and were aimed at subjecting Villasenor to constant fear and ridicule.

38.     As a direct and proximate result of the malicious conduct and actions of Counter-claim Defendants and Third-party defendants, Villasenor was injured in an amount and amounts to be proven at trial, but in no case less than $2,500,000.00.

## SECOND COUNTERCLAIM/THIRD-PARTY CLAIM
(against all Counter-claim Defendants and Third-party defendants)
Civil Conspiracy

39.     Villasenor re-alleges paragraphs 1 through 38 as though fully incorporated herein.

40.     The Counter-claim Defendants and Third-party defendants organized to gather information on Villasenor, threaten Villasenor, and when Villasenor refused to respond to said threats, then conspired to injure Villasenor by publishing false and defamatory statements relating to Villasenor on the internet for the purpose of defaming Villasenor and destroying his public and business reputation. The Counter-claim Defendants and Third-party defendants further organized to present their false and defamatory statements in the context with legitimate court documents for the purpose of casting a false light on Villasenor, and to attempt to lend credibility to the Counter-claim Defendants and Third-party defendants' false and defamatory statements.

41. The statements published by the Counter-claim Defendants and Third-party defendants were false, the Counter-claim Defendants and Third-party defendants knew or should have known the falsity of those statements, and were published by the Counter-claim Defendants and Third-party defendants with malice. Each Counter-claim Defendant and Third-party defendant had full knowledge of the intent of the other Counter-claim Defendants and Third-party defendants.

42. Third-party defendants COOPER, GHAFFAR, and DOES 4-8 specifically engaged in the conspiracy by obtaining and receiving from the other Counter-claim Defendants and Third-party defendants and using the information to injure Villasenor's reputation, and also by providing the other Counter-claim Defendants and Third-party defendants with information which the other Counter-claim Defendants and Third-party defendants would then publish online to injure Villasenor.

43. As a direct and proximate result of the malicious conduct and actions of Counter-claim Defendants and Third-party defendants, Villasenor was injured in an amount and amounts to be proven at trial, but in no case less than $2,500,000.00.

### THIRD COUNTERCLAIM/THIRD-PARTY CLAIM
(against all Counter-claim Defendants and Third-party defendants)
Fraud, Wire Fraud, Identity Theft, Invasion of Privacy

44. Villasenor re-alleges paragraphs 1 through 43 as though fully incorporated herein.

45. In or about mid-year 2005, COOPER and DOES 4-6 arranged to contact Villasenor's personal telephone service provider, by telephonic communication and/or by Internet communication, and by falsely providing Villasenor's identity information which COOPER and DOES had previously obtained, hijacked Villasenor's telephone service account access by persuading the telephone service provider to change the account access password and login information, thus granting COOPER and DOES access to Villasenor's confidential telephone call logs and billing information. At the same time, access to Villasenor's own billing record was denied as a result of the password changes.

46. Upon information and belief, DOES 4-6 assisted COOPER and GHAFFAR in impersonating Villasenor to obtain said phone records, and hijacking the account.

47. COOPER and GHAFFAR, who at all material times were also representing ZWEBNER and UCSY as attorneys in a related action in Florida against Lycos and Villasenor, used the illegally-obtained telephone account information to analyze the phone numbers by searching them through one or more cross-reference directories. COOPER and GHAFFAR then issued approximately fifteen or more subpoenas under the Florida state case caption, to mostly jurisdictions outside of the state of Florida, to persons, who, while they were unknown to COOPER and GHAFFAR, names appeared on the cross-reference "reverse lookup" phone directories. The subpoenas were issued without the knowledge or permission of the Florida court, and were used strictly as a harassment method against persons who COOPER, GHAFFAR, and the other Counter-claim Defendants and Third-party defendants believed to be personal and business contacts of Villasenor. The subpoenas demanded, under threat of retribution from the court, that the deponents turn over any and all documents and information relating to Villasenor, and were constructed to harass and intimidate the deponents, and to give the false impression that Villasenor had engaged in illegal activities.

48. When an attorney representing one of the deponents alleged in the preceding paragraph contacted COOPER's law firm, GHAFFAR answered the telephone and threatened the deponent's lawyer that the deponent had better comply "if he knew what was good for him."

49. After it was discovered that attorney GHAFFAR had been previously charged with biting the genitals of a female stripper at a strip club, GHAFFAR disappeared from public time, and it is believed that GHAFFAR disengaged from the conspiracy as alleged above sometime after this time.

50. Attorneys COOPER and GHAFFAR are not entitled to immunity or privilege in the conduct described in Paragraphs 40 through 43 and 45 through 49 above because the illegal conduct

alleged of these two defendants is outside the scope of the legal, ethical, and professional conduct permitted by a licensed attorney.

51.  As a direct and proximate result of the malicious conduct and actions of COOPER, GHAFFAR, and the other Counter-claim Defendants and Third-party defendants, Villasenor was injured in an amount to be proven at trial.

### FOURTH COUNTERCLAIM/THIRD-PARTY CLAIM
(against COOPER, GHAFFAR, ZWEBNER, and UCSY)
Abuse of Process

52.  Villasenor re-alleges Paragraphs 1 through 52 as though fully incorporated herein.

53.  COOPER, GHAFFAR, ZWEBNER, and UCSY has demonstrated by the within action, and the related lawsuits referenced herein, his intent to use the service of process, including the use of unauthorized subpoenas, for the unlawful purpose of silencing critics and harassing their target defendants, including Villasenor, from engaging in Constitutionally protected anonymous free speech in the public interest.

54.  COOPER, GHAFFAR, ZWEBNER, and UCSY has used the litigation, including the service of unauthorized subpoenas, as a club to punish Villasenor and other defendants by invading their constitutionally protected right to anonymity, and COOPER, GHAFFAR, ZWEBNER, and UCSY have done so with directed malice.

55.  In pursuit of this malicious conduct, ZWEBNER and/or UCSY, have sued or are currently Villasenor as a named defendant or as a John Doe defendant, on virtually the same allegations as this case, in <u>seven</u> lawsuits, as follows: (1) *Talk Visual Corp. v. Roberto Gonzalez Villasenor, Jr*, Civil No. 000901274 (3rd Dist. Ct. Utah) 1/14/2000; (2) *Zwebner v. Villasenor*, No. 00-02239 (Mass. Super. Ct.) 5/22/2000; (3) *Zwebner v. John Does 1-100*, Alias "Tobias", Case No. 03-22328-CIV (S.D. Fla.) 2003; (4) *Universal Communication Systems, Inc. v. Turner Broadcasting System, Inc.*, Case No.

05-20047-CIV-JORDAN-Brown (S.D. Fla) 2005; (5) *Universal Communication Systems, Inc.* v. Lycos, Inc., Case No. 05-20149-CIV-MARTINEZ/Klein (S.D. Fla.) 2005; (6) Universal Communication Systems, Inc. v. Roberto Villasenor, Jr., Case No. 05-11172-REK (D. Mass) 2005; and (7) *Universal Communications vs. Dembovich*, ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA, NO. 04-27383-CA-09.

56. In continuance of using litigation as a club to harass Villasenor, COOPER and GHAFFAR issued unauthorized subpoenas and acted upon them as part of the process of the litigation.

57. COOPER, GHAFFAR, ZWEBNER, and UCSY have betrayed the legitimate intention of service of process by using the litigation to publicly promote ZWEBNER's own self-interests as a public person, and to conceal the business defalcations committed by ZWEBNER in relationship to UCSY and other enterprises, from the inquiring public.

58. COOPER, GHAFFAR, ZWEBNER, and UCSY have used the litigation unlawfully in an effort to prevent the public participation of Villasenor and the other defendants in matters of the public interest, public safety, and public concerns, by punishing Villasenor and other defendants for their efforts to protect the public's interests.

59. As a direct and proximate result of the malicious actions and conduct of COOPER, GHAFFAR, ZWEBNER, and UCSY described herein, Villasenor has been injured in an amount to be proven at trial, but in no case less than $250,000.00.

### FIFTH COUNTERCLAIM/THIRD-PARTY CLAIM
(against all Counter-claim Defendants and Third-party defendants)
Emotional Distress

60. Villasenor re-alleges Paragraphs 1 through 59 as though fully incorporated herein.

61. The conduct of all Counter-claim Defendants and Third-party defendants described herein has subjected Villasenor to unbearable emotional distress, leading to illness, loss of employment opportunity, and loss of family relationships.

62. As a result of the conduct of all Counter-claim Defendants and Third-party defendants described herein, Villasenor has had, since 2000 and at all times material to this lawsuit, live in constant fear of threat to life and limb. Defendant has been unable to engage in social activities and in public conversation because of fear of retribution from the Counter-claim Defendants and Third-party defendants. Villasenor's quality of life has diminished enormously as a result of the aforementioned conduct.

63. As a direct and proximate result of the malicious conduct and actions of Counter-claim Defendants and Third-party defendants, Villasenor has been, and continues to be injured in an amount and amounts to be proven at trial, but in no case less than $1,200,000.00

/// /// ///

/// /// ///

/// /// ///

WHEREFORE, having fully answered Plaintiffs ZWEBNER and UCSY's complaint by admitting, denying, and averring the same, Defendant Villasenor prays that Plaintiffs take nothing by their second amended complaint and all the claims for relief incorporated therein, and that:

Judgment be awarded in favor of Defendant Villasenor in each and every allegation of Plaintiffs' second amended complaint;

Judgment be awarded in favor of Defendant Villasenor for compensatory damages for the injuries pleaded in Defendant's counterclaims in an amount to be proven at trial, but in no case less than $4,000,000; and

Defendant Villasenor be awarded his costs and expenses of suit, and attorney fees if any, herein.

DATED this 4th Day of April, 2006.

By _/s/ Roberto Villasenor_

Roberto Villasenor, Defendant Pro Se
PO Box 64914
Los Angeles, CA 90064
Phone: 310-388-0145
Fax: 310-388-0145

## PROOF OF SERVICE

I hereby certify that a complete, true copy of the forgoing ROBERTO VILLASENOR'S AFFIRMATIVE DEFENSES, ANSWER, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS was/were served upon the Plaintiffs through their last known lead counsel of record, at the address listed below on the date indicated by facsimile and pre-paid U.S. First Class Mail:

Richard B. Kirby
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, MA 02110-3113
Ph. 617-951-1400
Fax: 617-951-1323

and by overnight U.S. Post Office Express Mail:

Clerk, U.S. District Court
John Joseph Moakley
U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA  002210
Ph: 617-748-9152


DATED this April 4th, 2006

_____
Roberto Villasenor, Defendant Pro Se
PO Box 64914
Los Angeles, CA  90064
Phone: 310-388-0145
Fax: 310-388-0145