IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERKS OFFICE
2006 APR 12 P 4: 04
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNIVERSAL COMMUNICATION SYSTEMS, INC. (A Nevada Corporation), MICHAEL J. ZWEBNER, et al,
    Plaintiffs and Counterclaim Defendants

vs.

ROBERTO VILLASENOR, JR., et al
    Defendant, Counterclaim Plaintiff, and Third-party Plaintiff

vs.

ANDREW CUNNINGHAM, ROBERT H. COOPER, OMAR GHAFFAR, HOWARD K. HAGER, and DOES 1 through 8
    Individual Third-Party Defendants

CIVIL CASE NO. 05-11172-REK

## ROBERTO VILLASENOR'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS

Pursuant to Rule 15(a) Defendant/Counterclaim Plaintiff Roberto Villasenor (hereinafter "Defendant/Counterclaim Plaintiff", or "Villasenor") amends his answer to the allegations set forth in Plaintiffs' second amended complaint, and amends his affirmative defenses, counterclaims, and third-party claims as follows. The address of Defendant/Counterclaim Plaintiff is:

> Roberto Villasenor
> PO Box 64914
> Los Angeles, CA 90064
> Phone: 310-388-0145, Fax: 310-388-0145

### ANSWER

For his amended answer, Defendant/Counterclaim Plaintiff Villasenor admits, denies, and avers as follows:

1.  Villasenor is known by the Internet account aliases as "the_worm06", "the_worm06a", and "petersanders1". This information is known to Plaintiffs, and was known to Plaintiffs at the time of filing of this lawsuit, and various other lawsuits Plaintiffs have filed against Villasenor.

2.  Admits the first subparagraph of Paragraph 13, and Paragraphs 23, 25, and 26 of Plaintiffs' complaint.

3.  Denies paragraphs 7 through 10, the fourth subparagraph of Paragraph 13, the third subparagraph of Paragraph 15, the second and third subparagraphs of Paragraph 16, the second and third subparagraphs of Paragraph 17, the third subparagraph of Paragraph 18, the second and third subparagraph of Paragraph 19, Paragraphs 20, 22, 27, 32, 33, the first, second, and fourth subparagraphs of Paragraph 34, and Paragraphs 36 through 41.

4.  Villasenor has insufficient knowledge to determine the truthfulness or falsity relating to the allegations of paragraphs 1 through 6 of Plaintiffs' complaint, except that Villasenor denies that Villasenor's message board posts are "false, defamatory and harassing" and accordingly Villasenor denies the balance of these paragraphs;

5.  Denies Paragraph 11 to the extent that UNIVERSAL stock is traded over the counter under the stock symbol "UCSY", is quoted through the OTC Bulletin Board which is a quotation service accessible to market makers, and is not listed on any exchange as alleged in the complaint;

6.  Has insufficient knowledge as to any subscriber agreement which ZWEBNER alleges he maintains with Lycos and/or whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same, but admits the balance of Paragraph 12;

7.  Denies the second subparagraph of Paragraph 13 to the extent that Villasenor does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers

are hosted in Massachusetts, and accordingly denies the same, and admits the balance of the second subparagraph of Paragraph 13;

8. Denies the third subparagraph of Paragraph 13 to the extent that Villasenor has never published or republished under the aliases of "no_insiders" or "Tobias95", nor has Villasenor republished nor continues to publish under any alias stated in the complaint therein, and accordingly denies the same;

9. Has no knowledge of the allegations of Paragraph 14 and accordingly deny the same;

10. Denies the first and second subparagraphs of Paragraph 15, the first subparagraph of Paragraph 16, and the first subparagraph of Paragraph 17 to the extent that that Villasenor does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same;

11. Has no knowledge of the allegations of the first and second subparagraphs of Paragraph 18, and accordingly denies the same;

12. Denies the first subparagraph of Paragraph 19 to the extent that Villasenor does not, and has not had a Subscriber Agreement with Lycos, has insufficient knowledge whether Lycos' servers are hosted in Massachusetts, and accordingly denies the same;

13. Denies Paragraph 21 to the extent that the alleged physical location of Lycos' servers, offices, and equipment form any basis for venue in this action, deny that the alleged postings are fraudulent, and deny that Villasenor entered into a contract with Lycos, and accordingly denies the same;

14. Denies Paragraph 28 to the extent that no subscriber agreement exists between Villasenor and Lycos, and admits the balance of this paragraph;

15. Denies Paragraph 29 to the extent that Villasenor has a subscriber agreement with Lycos, that the alleged "vast number of these 57,000 postings" are associated with Villasenor, and to the extent that most of the fraudulent, false, and defamatory postings were published by plaintiffs ZWEBNER, UNIVERSAL, and their associates;

16. Denies Paragraph 31 to the extent that Villasenor has no knowledge of "no_insiders" and "Tobias95", and accordingly denies the same;

17. Denies the third subparagraph of Paragraph 34 to the extent that no cartel exists, and no class has been alleged in this complaint; no posts in plaintiffs' "Exhibit 1" were published after January 2005; admits that ZWEBNER has been involved in securities fraud, has forged documents submitted in legal proceedings in relationship to a mortgage contract as referenced in published case law, as well as an SEC filing where the auditor's statement was forged by plaintiffs, and has committed perjury; and has no knowledge of the balance of Paragraph 34 and accordingly denies the same; and

18. Denies Paragraph 35 to the extent that any cartel exists, and has no knowledge of the balance of Paragraph 35 and accordingly denies the same.

19. Except as expressly admitted in the answer, answering defendant denies each and every paragraph, allegation, matter and thing in Plaintiff's Amended Complaint and the whole thereof.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

20. The statements which Plaintiffs alleges were published by Villasenor, in fact they were made by Villasenor, are true.

### SECOND AFFIRMATIVE DEFENSE

21. Plaintiffs' First Claim for Relief for Defamation fails to state facts sufficient to state a cause of action against any party, including Defendant/Counterclaim Plaintiff Villasenor.

### THIRD AFFIRMATIVE DEFENSE

22. The statements which Plaintiffs allege were made by Villasenor, if they were in fact made by Villasenor, were privileged because they were published in the public interest in a reasonable manner, for a proper purpose and for the protection or advancement of the respective Villasenor's own legitimate interests.

### FOURTH AFFIRMATIVE DEFENSE

23. The statements which Plaintiffs alleges were made by Villasenor, if they were in fact made by Villasenor, were privileged because they were published in the public interest in a reasonable manner, for a proper purpose and for the protection of the interests of person(s) other than the publisher.

### FIFTH AFFIRMATIVE DEFENSE

24. The statements which Plaintiffs allege were made by Villasenor, if they were in fact made by Villasenor, were privileged because they were published in a reasonable manner, for a proper purpose and for the protection or furtherance of the common interests of the publisher and the recipient(s).

### SIXTH AFFIRMATIVE DEFENSE

25. Plaintiffs are both public persons and have failed to mitigate their claimed damages.

### SEVENTH AFFIRMATIVE DEFENSE

26. The statements which Plaintiffs allege were made by Villasenor, if they were in fact made by Villasenor, were privileged because they constitute fair comment on matters of public concern under the First and Fourth Amendments to the United States Constitution.

### EIGHTH AFFIRMATIVE DEFENSE

27.  The statements which Plaintiffs allege were made by Villasenor, if they were in fact made by Villasenor, were privileged because they constitute fair comment on matters of public concern under the Constitution of the Commonwealth of Massachusetts and other states with similar law.

### NINTH AFFIRMATIVE DEFENSE

28.  Plaintiffs' claims for relief are barred by the doctrines of waiver and estoppel.

### TENTH AFFIRMATIVE DEFENSE

29.  Plaintiffs' claims for relief are barred by the doctrine of unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

30.  Plaintiffs' claims are barred by the equitable doctrine of laches.

### **COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

### PARTIES

31.  Villasenor re-alleges Paragraphs 1 through 30 as though fully incorporated herein.

32.  Plaintiff/Counterclaim Defendant Zwebner is a citizen of Israel and United Kingdom. Plaintiff/Counterclaim Defendant Universal Communication Systems, Inc. ("UNIVERSAL") is a Nevada Corporation and has an office in Florida and in other jurisdictions. Universal's only known physical operation and employees are located in Maryland through a wholly owned subsidiary. UNIVERSAL has described itself as a "holding company".

33.  Defendant/Counterclaim Plaintiff Villasenor is a resident of California. The counterclaim torts and third-party torts described herein have substantially occurred in Arizona, California, Florida, Massachusetts, New York, and Oregon.

34.  Third party defendant Andrew Cunningham ("CUNNINGHAM") resides and works in Massachusetts and Rhode Island, and his last known place of employment was in or near Boston,

Massachusetts. It is alleged herein that CUNNINGHAM continues to work for ZWEBNER and UNIVERSAL on an informal basis in exchange for payments in stocks and other considerations.

35.   Third-party defendant Robert H. Cooper ("COOPER") is employed by ZWEBNER and UNIVERSAL and lives and works in Florida. The torts described herein committed by COOPER have substantially occurred in Arizona, California, Florida, Massachusetts, New York, Oregon, and elsewhere.

36.   Third-party Defendant Omar Ghaffar (herinafter "GHAFFAR") has resided in New York, Connecticut, and Florida. The torts described herein committed by GHAFFAR have substantially occurred in Arizona, California, Florida, Massachusetts, New York, and elsewhere.

37.   Third-party Defendant Howard K. Hager (hereinafter "HAGER") resides in Massachusetts. His last known address is 425 Winter Street, Holliston, Massachusetts 01746; HAGER is advertised as a "consultant" to UNIVERSAL; HAGER is paid to promote the stock of UCSY.

38.   The whereabouts and certain identity of Third-party defendants DOES 1 through 8 are unknown at this time, but it is believed that DOES 1 through 8 reside in different jurisdictions.

## JURISDICTION AND VENUE

39.   Jurisdiction is proper in District Court over Plaintiff/Counterclaim Defendants ZWEBNER and UNIVERSAL because Villasenor's counterclaims and Third-party claims are directly related to the within action of ZWEBNER and UNIVERSAL.

40.   Jurisdiction is proper in District Court over all other Third-party defendants including DOES 1 through 8 pursuant to 28 USC § 1332.

41.   Venue is proper in this District over all parties pursuant to 28 USC § 1391(a).

## FACTS

42. ZWEBNER has at various times boasted that he has performed informant services for covert governmental security agencies, and that as a result of his "service" with these alleged agencies, ZWEBNER has claimed that he is immune from regulatory and investigative actions by agencies in the United States related to the conduct attributed to ZWEBNER herein.

43. ZWEBNER has at various times publicly claimed that he as access to CARNIVORE databases which are maintained by the Federal Bureau of Investigation ("FBI"), and that he has used said information in the conduct attributed to ZWEBNER herein. CARNIVORE is alleged to be a covert surveillance and database where the FBI monitors and collects data transmitted through the Internet; the data is allegedly filtered and analyzed for leads related to terrorist and other criminal activity.

44. The within action brought by Plaintiffs ZWEBNER and UNIVERSAL is one more of a series of defamation and stock manipulation actions already brought by ZWEBNER and/or UNIVERSAL against Villasenor, and other "Does", in other venues. Ultimately, the courts have directed jurisdiction to this District. The torts alleged herein are spread over many jurisdictions. In a previous action in the state court in the Commonwealth of Massachusetts, ZWEBNER alleged that Villasenor, along with other persons, was responsible for republication of alleged "defamatory" Internet publications. The alleged Internet publications were not defamatory, but rather were shown later to be true.

45. ZWEBNER and UNIVERSAL are public persons; ZWEBNER is the chairman and CEO of the publicly-traded corporation UNIVERSAL; ZWEBNER beneficially owns a controlling interest in UNIVERSAL.

46. The price of UNIVERSAL's stock has been artificially inflated from time to time by the issuance of false and/or misleading press releases and promotional mailings authorized by UNIVERSAL and ZWEBNER which claimed that various agreements, orders, sham transactions, and sales were in place, which in fact were never completed and which never had the potential to be completed.

47. The price of UNIVERSAL's stock has been artificially inflated from time to time by the issuance of false and/or misleading press releases and promotional mailings authorized by UNIVERSAL and ZWEBNER which also included false statements that UCSY owned, as subsidiaries, significant assets that were never owned by UCSY.

48. The price of UNIVERSAL's stock has been artificially inflated from time to time by the issuance of false and/or misleading press releases and promotional mailings authorized by UNIVERSAL and ZWEBNER by Universal's use of promotional service companies wherein the promoter has been convicted of securities fraud for similar Internet promotions which artificially inflate the prices of stocks.

49. The price of UNIVERSAL's stock has been negatively impacted from time to time as a result of the issuance of hundreds of millions of shares of stock of UNIVERSAL by ZWEBNER and UNIVERSAL.

50. The price of UNIVERSAL's stock has been negatively impacted from time to time by as a result of the selling of hundreds of millions of shares of stock of UNIVERSAL by ZWEBNER, UNIVERSAL, HAGER, CUNNINGHAM, and DOES 1 through 8, and by off-shore entities of which ZWEBNER has beneficial interest and/or control.

51. The price of UNIVERSAL's stock has been negatively impacted from time to time by as a result of the conduct of off-shore entities that converted the debt, preferred stock, and derivatives of

UNIVERSAL into common stock at significant discounts to the market, and then sold the common stock into the market, as a result of agreements made by UNIVERSAL and ZWEBNER.

52. The price of UNIVERSAL's stock has been negatively impacted from time to time by as a result of stock-shorting for profit, and related manipulation activities, of UNIVERSAL's common stock, by offshore entities including some of which are beneficially controlled by ZWEBNER, and which are involved in "private investments in public enterprise" ("PIPE") arrangements with UNIVERSAL.

53. UNIVERSAL, ZWEBNER, HAGER, CUNNINGHAM, COOPER, GHAFFAR, and DOES 1 through 8 have all benefited from the conduct described herein, by manipulating the price of UNIVERSAL's stock, and in the unloading and sale of UNIVERSAL's stock. The conduct of UNIVERSAL, ZWEBNER, HAGER, CUNNINGHAM, COOPER, GHAFFAR, and DOES 1 through 8 as alleged in the torts herein, including, but not limited to, abuse of process, defamation, and invasion of privacy, was motivated for the purpose of continuing to benefit from the ongoing manipulation of UNIVERSAL's stock.

54. COOPER, GHAFFAR, HAGER, and CUNNINGHAM sought to contribute to the actions of UNIVERSAL and ZWEBNER by interfering in Villasenor's business and personal relationships, to invade Villasenor's privacy, and to silence Villasenor, thereby contributing to the artificial manipulation of the price of UNIVERSAL's stock for their own benefit, which UNIVERSAL and ZWEBNER have falsely alleged against and attributed to, Villasenor.

55. As a result, Third-party defendants HAGER, CUNNINGHAM, COOPER, GHAFFAR, and DOES 1 through 8 are persons who are liable to defendant for all or part of the plaintiff's claim against him.

56.  Plaintiff/counterclaim defendants' underlying lawsuit and the other related cases stem from ZWEBNER's attempts to quash public criticism of his and UNIVERSAL's various business defalcations, as described herein and otherwise, committed by ZWEBNER and UNIVERSAL.

57.  Since about August, 2000, Counter-claim defendants ZWEBNER and Third-party defendant CUNNINGHAM and DOES 1-3 began to publish a series of defamatory messages and news releases in a coordinated effort directed at attacking Villasenor and Villasenor's public credibility. Since about 2002, UNIVERSAL, and later HAGER also began to publish a series of defamatory messages and news releases directed at attacking Defendant Villasenor. The statements in these publications were false, defamatory, and fraudulent, and were intended to attack and destroy the public reputation and business reputation of Villasenor, threaten Villasenor's life, peace, and tranquility, and were intended to have the effect of manipulating the price of UNIVERSAL's stock. Villasenor has suffered emotional distress leading to additional distress, emotional suffering, physical illness, loss of employment and productivity as a direct result of the actions of ZWEBNER, UNIVERSAL, HAGER, CUNNINGHAM, and DOES 1-3. The false and defamatory statements include, but are not limited to, the following false, threatening, and defamatory statements:

that Villasenor is a "convicted felon";

that Villasenor has been convicted of "financial fraud";

that Villasenor manufactures and sells illegal drugs "to support [Villasenor's] habit";

that Villasenor's "time is up" and "you will be buried deep in ground, maggot"

and numerous other false and defamatory statements directed at harming Villasenor.

58.  The conduct alleged above was calculated as a conspiracy among the Counter-claim and Third-party defendants to apply injury to Villasenor in the form of humiliation, destruction of reputation,

deprivation of employment opportunities, and done with malice and with the advance knowledge of the Counter-claim and Third-party defendants that Villasenor would be injured.

59. The statements published by the Counter-claim and Third-party defendants were libelous per se, in that they were published on Internet message boards and chat rooms, and then the messages were re-published en masse throughout the Internet in various locations, by third parties, at the request of ZWEBNER, CUNNINGHAM, HAGER, and UNIVERSAL.

### FIRST COUNTERCLAIM/THIRD-PARTY CLAIM
(against ZWEBNER, UNIVERSAL, CUNNINGHAM, HAGER, and DOES 1-3)
Defamation

60. Villasenor re-alleges paragraphs 1 through 59 as though fully incorporated herein.

61. Since about 2002 ZWEBNER, UNIVERSAL, CUNNINGHAM, HAGER, and DOES 1-3 have engaged in a systematic, coordinated effort of Internet libel to defame Villasenor's personal and public reputation, by publishing, republishing, and distributing thousands of false and defamatory statements regarding Villasenor. Said statements were intended to deprive Villasenor's right to livelihood, and were aimed at subjecting Villasenor to constant fear and ridicule.

62. As a direct and proximate result of the conduct therein, Villasenor was injured in an amount to be proven at trial, but in no case less than $2,500,000.00.

### SECOND COUNTERCLAIM/THIRD-PARTY CLAIM
(against ZWEBNER, UNIVERSAL, CUNNINGHAM, HAGER, and DOES 1-3)
Assault

63. Villasenor re-alleges paragraphs 1 through 62 as though fully incorporated herein.

64. ZWEBNER, UNIVERSAL, CUNNINGHAM, HAGER, and DOES 1-3 have engaged in a systematic, coordinated effort of Internet to subject Villasenor to a constant and frequent state of apprehension of immediate and harmful contact. Said apprehension includes, but is not limited to, immediate direct contact with Villasenor and immediate physical contact with his person and premises.

65. As a direct and proximate result of the conduct therein, Villasenor was injured in an amount and amounts to be proven at trial, but in no case less than $2,500,000.00.

**THIRD COUNTERCLAIM/THIRD-PARTY CLAIM**
(against ZWEBNER, UNIVERSAL, COOPER, GHAFFAR, CUNNINGHAM, HAGER, and DOES 1 through 3)
False Light Invasion of Privacy

66. Villasenor re-alleges paragraphs 1 through 65 as though fully incorporated herein.

67. In or about mid-year 2005, UNIVERSAL, ZWEBNER, COOPER, GHAFFAR, and DOES 4-6 arranged to contact Villasenor's personal telephone service provider, by telephonic communication and/or by Internet communication, and by falsely providing Villasenor's identity information which COOPER, GHAFFAR, and DOES had previously obtained, hijacked Villasenor's telephone service account access by persuading the telephone service provider to add additional access login ID's, thus granting COOPER, GHAFFAR, and DOES access to Villasenor's confidential telephone call logs and billing information.

67. Upon information and belief, DOES 4-6 assisted COOPER and GHAFFAR in impersonating Villasenor to obtain said phone records, and hijacking the account.

68. COOPER and GHAFFAR, who at all material times were also representing ZWEBNER and UNIVERSAL as attorneys in a related action in Florida against Lycos and Villasenor, used the illegally-obtained telephone account information to analyze the phone numbers by searching them through one or more cross-reference directories. COOPER and GHAFFAR then issued approximately fifteen or more subpoenas under the Florida state case caption, to mostly jurisdictions outside of the state of Florida, to persons, who, while they were unknown to COOPER and GHAFFAR, names appeared on the cross-reference "reverse lookup" phone directories. The subpoenas were issued without the knowledge or permission of the Florida court, and were used strictly as a harassment method against persons who COOPER, GHAFFAR, and the other Counter-claim Defendants and Third-party

defendants believed to be personal and business contacts of Villasenor. The subpoenas demanded, under threat of retribution from the court, that the deponents turn over any and all documents and information relating to Villasenor, and were constructed to harass and intimidate the deponents, and to give the false impression that Villasenor had engaged in illegal activities.

69. When an attorney representing one of the deponents alleged in the preceding paragraph contacted COOPER's law firm, GHAFFAR answered the telephone and threatened the deponent's lawyer that the deponent had better comply "if he knew what was good for him."

70. After it was discovered that attorney GHAFFAR had been previously charged with biting the genitals of a female stripper at a fraternity, GHAFFAR disappeared from public view, and it is unknown what participation GHAFFAR has engaged in this conduct after this time.

71. Attorneys COOPER and GHAFFAR are not entitled to immunity or privilege in the conduct described in Paragraphs 40 through 43 and 45 through 49 above because the illegal conduct alleged of these two defendants is outside the scope of the legal, ethical, and professional conduct permitted by a licensed attorney.

72. By obtaining under false pretenses Villasenor's telephone account information, and other information, ZWEBNER, UNIVERSAL, COOPER, GHAFAR, CUNNINGHAM, HAGER, and DOES 1-3 have engaged in an unwarranted, coordinated effort to appropriate and exploit the publicizing of Villasenor's private affairs and confidential information with which the public has no legitimate concern, and have engaged into a wrongful intrusion into Villasenor's private activities.

73. The conduct alleged in the previous Paragraph has resulted in severe outrage, and has caused mental suffering, shame, and humiliation to Villasenor.

74.     As a direct and proximate result of the malicious conduct and actions of Counter-claim Defendants and Third-party defendants, Villasenor was injured in an amount and amounts to be proven at trial, but in no case less than $2,500,000.00.

### FOURTH COUNTERCLAIM/THIRD-PARTY CLAIM
(against all Counter-claim Defendants and Third-party defendants)
Civil Conspiracy

75.     Villasenor re-alleges paragraphs 1 through 74 as though fully incorporated herein.

76.     The Counter-claim Defendants and Third-party defendants as co-conspirators organized at one time or another, or in the alternative joined in at one time or another, to gather information on Villasenor, make threats against Villasenor, and subject Villasenor to assault. When Villasenor refused to respond in the manner desired by the co-conspirators, the co-conspirators then acted to injure Villasenor by publishing false and defamatory statements relating to Villasenor on the Internet for the purpose of defaming Villasenor and negatively affecting his public and business reputation, and to interfere with Villasenor's business relationships by contacting Villasenor's substantial business contacts. The co-conspirators further acted to propagate their false and defamatory statements in the context with court documents for the purposes of furthering the individual torts alleged herein.

77.     Third-party defendants COOPER, GHAFFAR, and DOES 4-8 specifically engaged in the conspiracy by obtaining and receiving from the other Counter-claim Defendants and Third-party defendants and using the information to injure Villasenor's reputation, and also by providing the other Counter-claim Defendants and Third-party defendants with information which the other Counter-claim Defendants and Third-party defendants would then publish online to injure Villasenor.

78.     The legal liability should be imposed upon all co-conspirators as alleged above for the torts and resulting damages alleged in defendant's counterclaims.

## FIFTH COUNTERCLAIM/THIRD-PARTY CLAIM
(against COOPER, GHAFFAR, ZWEBNER, and UNIVERSAL)
Abuse of Process

79. Villasenor re-alleges Paragraphs 1 through 78 as though fully incorporated herein.

80. COOPER, GHAFFAR, ZWEBNER, and UNIVERSAL have used the service of process, including the use of unauthorized subpoenas, for the purpose of stopping Villasenor from engaging in Constitutionally protected anonymous free speech in the public interest.

81. COOPER, GHAFFAR, ZWEBNER, and UNIVERSAL have used the service of process, including the use of unauthorized subpoenas, for the purpose of invading Villasenor's privacy and subjecting him to an immediate apprehension of peril.

82. COOPER, GHAFFAR, ZWEBNER, and UNIVERSAL has used the litigation, including the service of unauthorized subpoenas, as a club have done so with directed malice.

83. ZWEBNER and/or UNIVERSAL, have sued or are currently suing Villasenor as a named defendant or as a John Doe defendant, on virtually the same allegations as this case, in <u>seven</u> lawsuits, as follows: (1) *Talk Visual Corp. v. Roberto Gonzalez Villasenor, Jr*, Civil No. 000901274 (3rd Dist. Ct. Utah) 1/14/2000; (2) *Zwebner v. Villasenor*, No. 00-02239 (Mass. Super. Ct.) 5/22/2000; (3) *Zwebner v. John Does 1-100*, Alias "Tobias", Case No. 03-22328-CIV (S.D. Fla.) 2003; (4) *Universal Communication Systems, Inc. v. Turner Broadcasting System, Inc.*, Case No. 05-20047-CIV-JORDAN-Brown (S.D. Fla) 2005; (5) *Universal Communication Systems, Inc. v. Lycos, Inc.*, Case No. 05-20149-Civ-Martinez/Klein (S.D. Fla.) 2005; (6) Universal Communication Systems, Inc. v. Roberto Villasenor, Jr., Case No. 05-11172-REK (D. Mass) 2005; and (7) *Universal Communications vs. Dembovich*, (11th Ct. Miami-Dade, Fla.), No. 04-27383-CA-09. A pattern of this abusive conduct exists from these previous and current actions.

84. In continuance of using litigation as a club to impede Villasenor and to invade his privacy, COOPER and GHAFFAR issued unauthorized subpoenas and acted upon them as part of the process of the litigation.

85. As a direct and proximate result of the malicious actions and conduct of COOPER, GHAFFAR, ZWEBNER, and UNIVERSAL described herein, Villasenor has been injured in an amount to be proven at trial, but in no case less than $2,500,000.00.

**SIXTH COUNTERCLAIM/THIRD-PARTY CLAIM**
(against all Counter-claim Defendants and Third-party defendants)
Emotional Distress

86. Villasenor re-alleges Paragraphs 1 through 85 as though fully incorporated herein.

87. The acts of all Counter-claim defendants and Third-party defendants as herein alleged were intentional and outrageous in the extreme. Counter-claim defendants and Third-party defendants acted with deliberate malice and oppression in an effort to cause Villasenor to incur severe and extreme emotional trauma or with a reckless disregard for whether its conduct would inflict emotional distress on Villasenor. Counter-claim defendants and Third-party defendants' conduct was not privileged under state or federal law.

88. As a direct and proximate result of the intentional and outrageous acts of the Counter-claim defendants and Third-party defendants, Villasenor has suffered severe emotional distress. Villasenor reacted to Counter-claim defendants and Third-party defendants 's outrageous acts with great fear, humiliation, embarrassment and anger, all of which are substantial and enduring and for which Villasenor has been required to seek medical attention. Villasenor's distress is severe in the sense that it is substantial and enduring as distinguished from trivial or transitory. Villasenor's resulting emotional trauma has exhibited itself in the following physical manifestations: hypertension and elevated blood

pressure, headaches, bloody bowels, inability to sleep, nervous tics, stuttering, and inability to focus attention.

89. As a further proximate result of the acts of Defendant, Plaintiff has suffered shame and indignity which has caused and continues to cause Plaintiff great mental anguish and nervous pain and suffering.

90. The intentional actions of the Counter-claim defendants and Third-party defendants were done in a malicious manner, were oppressive and despicable, for which Villasenor should be awarded punitive damages.

91. As a direct and proximate result of the malicious conduct and actions of Counter-claim Defendants and Third-party defendants, Villasenor has been, and continues to be injured in an amount and amounts to be proven at trial, but in no case less than $2,500,000.00.

### SEVENTH COUNTERCLAIM/THIRD-PARTY CLAIM
(against UNIVERSAL and ZWEBNER)

92. Villasenor re-alleges Paragraphs 1 through 91 as though fully incorporated herein.

93. UNIVERSAL and ZWEBNER have sought to libel and defame Villasenor in the conduct and activities alleged herein, including Internet defamation and direct contact with business relationships, with the proximate result to interfere with Villasenor's business and working relationships.

94. As a direct and proximate result of the malicious conduct and actions of UNIVERSAL and ZWEBNER, Villasenor has been, and continues to be injured in an amount and amounts to be proven at trial.

WHEREFORE, having fully answered Plaintiffs ZWEBNER and UNIVERSAL's complaint by admitting, denying, and averring the same, Defendant Villasenor prays that Plaintiffs take nothing by their second amended complaint and all the claims for relief incorporated therein, and that:

Judgment be awarded in favor of Defendant Villasenor in each and every allegation of Plaintiffs' second amended complaint;

Judgment be awarded in favor of Defendant Villasenor for compensatory damages for the injuries pleaded in Defendant's counterclaims in an amount to be proven at trial, but in no case less than $4,000,000;

Judgment be awarded punitive damages in an amount as permitted by the court, and

Defendant Villasenor be awarded his costs and expenses of suit, and attorney fees if any, herein.

DATED this 11th Day of April, 2006.

By _____

Roberto Villasenor, Defendant Pro Se
PO Box 64914
Los Angeles, CA  90064
Phone: 310-388-0145
Fax:  310-388-0145

## PROOF OF SERVICE

I hereby certify that a complete, true copy of the forgoing ROBERTO VILLASENOR'S AFFIRMATIVE DEFENSES, ANSWER, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS was/were served upon the Plaintiffs through their last known lead counsel of record, at the address listed below on the date indicated by FAX and by pre-paid U.S. First Class Mail:

Richard B. Kirby
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, MA 02110-3113
Ph. 617-951-1400
Fax: 617-951-1323

and by overnight Express Mail

Clerk, US District Court

DATED this April 11th, 2006

*[signature: Roberto Villasenor]*

Roberto Villasenor, Defendant Pro Se
PO Box 64914
Los Angeles, CA 90064
Phone: 310-388-0145
Fax: 310-388-0145