UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
UNIVERSAL COMMUNICATION SYSTEMS,  )
INC., MICHAEL J. ZWEBNER, and others  )
similarly situated,                             )
       Plaintiffs                                 )
                                          )
      v.                                     )
                                          )
LYCOS INC. d/b/a THE LYCOS                )
NETWORK, TERRA NETWORKS, S.A.,     )
ROBERT VILLASENOR, JR., a/k/a         )     CIVIL ACTION
"the_worm06,"                               )     NO. 05-11172-REK
JOHN DOE #2 a/k/a "no_insiders,"       )
ROBERT VILLASENOR, JR., a/k/a         )
"the_worm_06A,"                          )
JOHN DOE #4 a/k/a "65175R,"          )
JOHN DOE #5 a/k/a "Henry_Johnson123," )
JOHN DOE #6 a/k/a "quondo1,"         )
JOHN DOE #7 a/k/a "Tobias95," and     )
JOHN DOE #8 a/k/a "CrawleySmith,"     )
       Defendants                                )
_____  )

**Memorandum and Order**
April 18, 2006

**I.  Pending Matters**

Pending for decision are matters related to the following filing:

Plaintiffs' Motion for Entry of Separate and Final Judgment (Docket No. 104, filed

February 27, 2006).

**II. Factual and Procedural Background**

Plaintiff Michael J. Zwebner is the chief executive officer and chairman of the

board of plaintiff Universal Communications Systems, Inc. ("UCSY"), which is incorporated in Nevada and has corporate offices in Florida. Plaintiffs brought suit on behalf of themselves and a class of similarly situated persons for claims arising out of allegedly defamatory messages posted on the Raging Bull Internet message board dedicated to messages related to UCSY. Plaintiffs allege that defendants Lycos, Inc., doing business as The Lycos Network ("Lycos"), and Terra Networks, S.A. ("Terra"), play some role in operating this message board. Plaintiffs also allege that the eight John Doe defendants are individual subscribers to The Lycos Network who posted defamatory messages on the message board.

Plaintiffs brought four counts against these multiple defendants. Count I alleged fraudulent securities transactions under Fla. Stat. § 517.301. Count II alleged cyberstalking under 47 U.S.C. § 223. Count III alleged dilution of trade name under Fla. Stat. § 495.151 et seq. Count IV alleged cyberstalking under Fla. Stat. § 784.048 et seq. Plaintiffs sought damages of $100 million each for Counts I, II, and III, as well as an injunction requiring defendants to delete the message board and any previous postings on the message board. Plaintiffs also sought an injunction prohibiting defendants from creating and maintaining any similar message board.

In another action arising out of the allegedly defamatory message board postings, the same plaintiffs brought suit against Lycos, Inc. and Terra Lyco, Inc., doing business as The Lycos Network, for consumer fraud under Massachusetts law, cyberstalking under federal law, and trade dilution in violation of Florida law. This latter action was transferred to the District of Massachusetts because the Lycos Subscriber Agreement stated that Massachusetts was the exclusive venue for resolution of disputes. The instant case was then transferred from the Southern District of Florida on June 1, 2005. On July 26, 2005, I ordered the consolidation of the

two cases and designated the instant case as the lead case. On August 23, 2005, plaintiffs filed a notice of voluntary dismissal without prejudice for the trailing case, leaving only this case before the court.

On August 9, 2005, Lycos filed a motion to dismiss. Defendant Terra filed its motion to dismiss on August 16, 2005. I heard arguments on these motions on October 11, 2006, and I granted both motions to dismiss, thereby dismissing plaintiffs' case against Lycos and Terra and leaving only the eight John Does as defendants. On October 18, 2005, plaintiffs then filed their motion for leave to file an amended complaint. Lycos filed its opposition to this motion on November 14, 2005, and on November 18, 2005, plaintiffs filed a reply memorandum in support of their motion. On December 21, 2005, I allowed plaintiffs' motion for leave to file an amended complaint only to the extent that I allowed plaintiffs to raise Count I against the eight John Doe defendants. On December 27, 2005, plaintiffs filed a motion for clarification or modification of my Order denying the remainder of their motion for leave to file an amended complaint. I denied this motion on February 1, 2006.

On January 4, 2006, Lycos filed its Motion for Rule 11 Sanctions Against Plaintiffs and Attorney John Faro. On February 6, 2006, plaintiffs filed their opposition to this motion. On February 6, 2006, Lycos filed its Second Motion for Rule 11 Sanctions Against Plaintiffs and Attorney John Faro. On February 13, 2006, plaintiffs filed their opposition to this motion. On February 16, 2006, Lycos filed its Motion for Leave to File Reply, which I allowed on February 24, 2006. In a Memorandum and Order on March 3, 2006, I dismissed Lycos's first motion for sanctions as moot and denied Lycos's second motion for sanctions.

On February 27, 2006, plaintiffs filed their second amended complaint, which

changed the named defendants to Roberto Villasenor, Jr., a/k/a "the_worm06," John Doe #2, a/k/a "no_insiders," Roberto Villasenor, Jr., a/k/a "the_worm_06A," John Doe #4, a/k/a "65175R," John Doe #5, a/k/a "Henry_Johnson123," John Doe #6, a/k/a "quondol," John Doe #7, a/k/a "Tobias 95," and John Doe #8, a/k/a "CrawleySmith." Also on February 27, 2006, plaintiffs filed a Motion for Entry of Separate and Final Judgment. On March 10, 2006, Lycos filed its opposition to plaintiffs' motion. On March 15, 2006, plaintiffs filed a Motion for Leave to File Reply to Lycos Opposition to Plaintiffs' Motion for Entry of Separate & Final Judgment, which I allowed on April 5, 2006.

On April 6, 2006, Villasenor filed his answer to the amended complaint, in which he also brought third-party claims against Robert H. Cooper, Andrew Cunningham, Omar Ghaffar, and the Doe defendants. On April 12, 2006, Villasenor filed an amended answer.

### III. Analysis

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, plaintiffs move this court to enter a separate and final judgment dismissing Counts I through IV against Lycos and Terra. Lycos opposes this motion and requests that the court instead order a final judgment as to all parties in the case.

Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and

> liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Lycos argues that separate and final judgment is not appropriate under this rule because the court should instead order a final judgment as to all parties in this case. Lycos asserts that, in my rulings of October 11, 2005, and December 21, 2005, I disposed of all claims over which this court had subject matter jurisdiction and personal jurisdiction. Because of this assertion, I will thus construe Lycos's opposition in the first instance as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). See Fed. R. Civ. P. 12(h)(3) (stating that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

Plaintiffs contend that this court may exercise subject matter jurisdiction over their claim pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction, and 28 U.S.C. § 1332, which provides for diversity jurisdiction. Different subsections of Section 1332 apply to class actions and to actions not brought on behalf of other similarly situated individuals. Although plaintiffs in their Second Amended Complaint have labeled this action a class action, in which "[t]he PLAINTIFFS are representative of each of the classes of Plaintiffs set forth herein, and shall fairly and adequately protect the interest of each of these classes [and t]he Defendants named herein comprises [sic] a class of defendant against whom the following claims are asserted" (Docket No. 102 at 3), they have done nothing to show that their claim meets the prerequisites for class certification under Rule 23, see Fed. R. Civ. P. 23(a) (allowing class certification only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class"). I will therefore determine whether I have diversity jurisdiction over plaintiffs' claims by referring to the subsection of Section 1332 that does not apply to class actions.

> Section 1332(a) provides:
>
> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state...as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a). Plaintiffs in this case are Zwebner, a citizen of Israel and the United Kingdom, and UCSY, a citizen of Nevada and Florida, see 28 U.S.C. § 1332(c) (stating that, in general, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). The defendants who remain after my earlier rulings are Robert Villasenor, Jr., an alleged citizen of California, and six John Doe defendants of uncertain citizenship. The general rule regarding the citizenship of John Doe defendants for purposes of subject matter jurisdiction based on diversity is that the diverse citizenship of the fictitious defendants must be established by the plaintiff in a federal court action. 14 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3642 (3d ed. 1998); see Howell by Goerdt v. Tribune Entertainment Co., 106 F.3d 215, 218 (7th Cir. 1997) (stating that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits").

In other words, diversity is normally destroyed by the inclusion of "John Doe" defendants unless the plaintiff can show that their citizenship is diverse from that of the plaintiff or plaintiffs. Three major exceptions apply to this rule, however. Diversity is not destroyed by the inclusion of "John Doe" defendants if: (i) the "John Doe" defendants are merely formal or nominal parties, see 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, § 3606 (2d ed. 1984) (defining formal or nominal parties as those who "ha[ve] no real interest in the dispute"), (ii) the claim being asserted against the "John Doe" defendants is a sham or frivolous, or (iii) citizenship is being considered for purposes of removal by the defendants, see 28 U.S.C. § 1441(a) (stating that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded"). 14 Federal Practice and Procedure § 3642.

None of these three exceptions applies to the case before me. Plaintiffs have included claims against the "John Doe" defendants in three versions of their complaint, and they allege that these complaints are significant enough to have warranted the filing of a second amended complaint after this court dismissed their claims against Lycos and Terra. The "John Doe" defendants are thus not mere nominal parties, and the claims against them are not frivolous in the sense that plaintiffs would retain an equally strong claim were those defendants eliminated. Moreover, this case originated in another federal district court, so the removal exception does not apply. The "John Doe" defendants thus destroy the diversity required to establish jurisdiction under Section 1332.

The next question is thus whether this court has subject matter jurisdiction over this action based on a federal question. Section 1331 of Title 28 of the United States Code

provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs argue that this court has federal question jurisdiction pursuant to Section 1331 because their claim against the remaining defendants states a claim "for violation of both federal and state security laws, Sections 9 & 10, Securities & Exchange Act of 1934." (Docket No. 110, Exh. A at 5.) I will construe this assertion to mean that plaintiffs argue that they raise a claim recognized by Sections 9 and 10 of the Securities Exchange Act of 1934 ("Securities Exchange Act"), 15 U.S.C. § 78(i) and § 78(j).

In my Memorandum and Order of December 21, 2005, I allowed plaintiffs to amend their complaint to the extent that I allowed them to bring **only** Count I against the eight "John Doe" defendants, as plaintiffs had proposed in the amended complaint attached to their motion to amend. Count I raised a claim under the securities law of Florida only. Months after I allowed this amendment, and without permission of the court, plaintiffs then filed a second amended complaint in which they changed their claim to fall under federal securities law and the securities law of Massachusetts as well as the securities law of Florida. Given that I had dismissed plaintiffs' only federal claims in my initial dismissal of their claims against Terra and Lycos, this amendment far exceeded the amendment that I had allowed, and effectively amounted to the filing of an entirely new claim. The Federal Rules of Civil Procedure only permit a party to amend its pleading at this point in a proceeding by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). The Federal Rules provide that "leave shall be freely given when justice so requires." Id.

Justice does not require that leave be granted in this case because the new claim under federal law fails to meet the fundamental requirement that "[t]he federal claim must be a

'substantial' one" in order to confer federal question jurisdiction. 13B <u>Federal Practice and Procedure</u> § 3564. No reason thus exists for me to allow plaintiffs to amend their complaint to include the federal claim since it would not confer jurisdiction to this court over this proceeding. "The requirement of substantiality does not refer to the value of the interests that are at stake but to whether there is any legal substance to the position the plaintiff is presenting." <u>Id.</u> Plaintiffs refer to Sections 9 and 10 of the Securities Exchange Act. Section 9 provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange –
> (1) For the purpose of creating a false or misleading appearance of active trading in any security registered on a national securities exchange, or a false or misleading appearance with respect to the market for any such security, (A) to effect any transaction in such security which involves no change in the beneficial ownership thereof, or (B) to enter an order or orders for the purchase of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties, or (C) to enter any order or orders for the sale of any such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been or will be entered by or for the same or different parties.
> (2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange or in connection with any security-based swap agreement...with respect to such security creating actual or apparent active trading in such security, or raising or depressing the sale of such security, for the purpose of inducing the purchase or seal of such security by others.
> (3) If a dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the security or a security-based swap agreement...with respect to such security, to induce the purchase or sale of any security registered on a national securities exchange or any security-based swap agreement...with respect to such security by the circulation or dissemination in the ordinary course of business of information to the effect that the price of any such security will or is likely to rise or fall because of the market operations of any one or more persons conducted for the purpose of raising or depressing the price of such security.
> (4) If a dealer or broker, or the person selling or offering for sale or

> purchasing or offering to purchase the security or a security-based swap agreement...with respect to such security, to make, regarding any security registered on a national securities exchange or any security-based swap agreement...with respect to such security, for the purpose of inducing the purchase or sale of such security or such security-based swap agreement, any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading.
> (5) For a consideration, received directly or indirectly from a dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the security or a security-based swap agreement... with respect to such security, to induce the purchase of any security registered on a national securities exchange or any security-based swap agreement...with respect to such security by the circulation or dissemination of information to the effect that the price of any such security will or is likely to rise or fall because of the market operations of any one or more persons conducted for the purpose or raising or depressing the price of such security.
> (6) To effect either alone or with one or more persons any series of transactions for the purchase and/or sale of any security registered on a national securities exchange for the purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78i(a). Section 9 also provides for a private right of action, 15 U.S.C. § 78i(e), the statute of limitation of which was increased to two years by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201, see <u>Friedman</u> v. <u>Rayovac Corp.</u>, 295 F.Supp.2d 957, 975 (W.D.Wis. 2003) (finding that § 9 is preempted by Sarbanes-Oxley Act).

> Section 10 provides in relevant part:
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
> (a)(1) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors....
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not

> so registered, or any securities-based swap agreement..., any manipulative
> or deceptive device or contrivance in contravention of such rules and
> regulations as the Commission may prescribe as necessary or appropriate
> in the public interest or for the protection of investors.

15 U.S.C. § 78j.  Courts have understood Section 10 to also create a private right of action.  See Equidyne Corp. v. John Does 1-21, 279 F.Supp.2d 481 (D.Del. 2003) (deciding case by corporation against contributors to Internet message board pursuant to, inter alia, Section 10).

Plaintiffs' claims have no legal substance under either Section 9 or Section 10 of the Securities Exchange Act.  Plaintiffs allege that defendants posted numerous defamatory statements referring both to Zwebner's personal life, supposed criminal history, and alleged fraudulent actions as well as UCSY's unprofitability.  Although these accusations are damning, they do not raise a substantial federal question.  Plaintiffs claim that defendants caused injury by:

> (a) first "shorting" the stock in such companies,
> (b) "trashing" such company and/or the integrity/competency of its
> management, through the systematic and orchestrated posting of fraudulent
> information about the financial condition, business prospects and
> management integrity of the such company on an [I]nternet accessible
> message board devoted to such company, which fraudulent information
> was calculated to disparage the value of such company, and thereby
> artificially depress the market price of the publicly traded stock of the
> such company, and
> (c) "covering his shorts" by buying the publicly traded stock in such
> company at a depressed market price, so as to profit at the expense [of]
> shareholders who sell their stock in such company at such depressed
> market prices.

(Docket No. 102 at 12.)  "Shorting" refers to short selling, which occurs when an investor, rather than profiting when the price of a stock increases, profits when the price of a stock decreases.  To short sell, an investor borrows a security and then sells it at the going price (A).  If the price of the security decreases, the investor will then buy it back at the new lower price (B), return the borrowed security to its original owner, and profit from the difference (A-B).  If the price of the

11

stock increases, however, the investor will have to buy it back at the new higher price in order to return the borrowed security to its original owner, and will thus suffer a loss equal to the difference (B-A).  Thus, in order to state a claim under either of the two sections of the Security Exchange Act to which plaintiffs refer, plaintiffs must show that the fraudulent posting was coupled with the improper purchase or sale of shares in UCSY.

In this case, plaintiffs argue that defendants first borrowed and sold shares in UCSY at the going price, then used their postings to lower the price of those shares, and finally bought the lower-priced shares in order to short sell and make a profit.  Unfortunately for plaintiffs, they fail to make the specific allegation anywhere that any individual defendant was actually an owner, buyer, or seller of shares in UCSY.  In cases where fraud is alleged, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  Plaintiffs refer in their seconded amended complaint to the postings on the Raging Bull message board and allege that defendants posted those messages, but never allege that any individual defendant owned, borrowed, sold, or purchased any shares in UCSY.  The entirety of the second amended complaint alleges that defendants "acted in concert...to manipulate the price of the USCY publicly trade securities" by posting messages.  Plaintiffs thus make only a broad, non-individualized allegation of short sales and never mention a specific sale or purchase.  Plaintiffs thus fail to raise a sufficiently substantial federal question for this court to exercise jurisdiction over this case.  I thus find that plaintiffs' second amended complaint, filed without leave of this court, was filed improperly.  I furthermore find that this court lacks subject matter jurisdiction over the remaining defendants.  I therefore deny plaintiffs' motion for entry of separate and final judgment and order the Clerk to enter a final judgment as to all defendants and

close the case. The finding that this court lacks subject matter jurisdiction over all defendants also dismisses Villasenor's counterclaims.

## ORDER

For the foregoing reasons, it is ORDERED:

(i) Plaintiffs' Motion for Entry of Separate and Final Judgment (Docket No. 104) is DENIED; and

(ii) The Clerk is ordered to enter the following Final Judgment:

    (1) This case is dismissed as to all defendants.
    (2) This case is now closed.

                          /s/Robert E. Keeton
                            Robert E. Keeton
                      Senior United States District Judge